**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEHIGH VALLEY 1 LLC SUCCESSOR BY ASSIGNMENT TO WINDSTREAM CAPITAL LLC, SUCCESSOR BY ASSIGNMENT TO THE UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT SUCCESSOR BY ASSIGNMENT TO M&T REALTY CAPITAL CORPORATION, | No. 5:24-cv-02627-CH |
| Plaintiff, | Honorable Catherine Henry, J. |
| v. | |
| WHITEHALL FIDUCIARY LLC, AS TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007, | |
| Defendant. | |
| WHITEHALL FIDUCIARY LLC, AS, TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007 | |
| Third-Party Plaintiff, | |
| v. | |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | |
| -and- | |
| MATTHEW E. AMMON, in his Official Capacity as Acting Secretary of the UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | |
| Third-Party Defendants. | |

Defendant/Third-Party Plaintiff, Whitehall Fiduciary LLC, as Trustee of Whitehall Trust U/T/A dated August 1, 2007 ("Whitehall Trust" or Third-Party Plaintiff"), by and through its undersigned counsel, as and for its Third-Party Complaint against the Third-Party Defendants UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and MATTHEW E. AMMON, in his Official Capacity as Acting Secretary of the UNITED STATES

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (collectively referred to as "HUD" or the "Department" or "Third-Party Defendants"), respectfully alleges, upon information and belief, as follows:

## INTRODUCTION

1.      This is a third-party complaint filed pursuant to Federal Rule of Civil Procedure 14 by Whitehall Trust against Third-Party Defendants who are or may be liable to Whitehall Trust for all or part of Lehigh Valley 1 LLC's ("Lehigh Valley 1") claims against Third-Party Plaintiff as described in Lehigh Valley 1's Amended Complaint. See Dkt. 7.

2.      This is also a petition for judicial review, seeking review of HUD's final agency action, pursuant to the Administrative Procedures Act, 5 U.S.C. Section 701, et seq. (the "APA"), as well as an action for declaratory relief, pursuant to 5 U.S.C. Section 702, and 28 U.S.C. Sections 2201 and 2202. An immediate, actual controversy exists which requires resolution by this Court.

## PARTIES

3.      Third-Party Plaintiff is a Pennsylvania trust with its principal place of business at 1177 Sixth Street, Whitehall, Pennsylvania 18052.

4.      Third-Party Defendant, the United States Department of Housing and Urban Development, is a United States government agency, located at 451 7th Street S.W., Washington, DC 20410, and having a field office at The Strawbridge Building, 801 Market Street, 12th Floor Philadelphia, Pennsylvania 19107.

5.      Third-Party Defendant, Matthew E. Ammon, is the Acting Secretary of the United States Department of Housing and Urban Development, with an office located at 451 7th Street S.W., Washington, D.C. 20410.

## JURISDICTION AND VENUE

6.     The Court has subject matter jurisdiction based on 28 U.S.C. §§ 1331 and 1343(a)(3), because: (i) this case seeks judicial review of federal agency action, pursuant to the APA, 5 U.S.C. §§ 702 and 706, and (ii) this case raises violations of Whitehall Trust's federal constitutional rights under the Fifth Amendment and is brought pursuant to 28 U.S.C. §§ 2201 (for declaratory relief). This matter raises numerous federal questions.

7.     Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

*(i)*     *History of the Property*

8.     Whitehall Trust is the owner of real property located at 1177 6th Street, Whitehall, Pennsylvania 18052 (the "Property").

9.     Third Party Plaintiff's relationship with HUD originated in the early 2000s. At that time, Whitehall Trust began the process of applying for a HUD-backed mortgage loan for the Property in or around January 2012. HUD agreed to insure the loan for the project, pursuant to Section 221(d)(4) of the National Housing Act, 12 U.S.C. § 1701, et seq. On January 26, 2012, Third-Party Plaintiff executed a Regulatory Agreement with HUD. A true and correct copy of the Regulatory Agreement, dated January 26, 2012, is attached hereto as Exhibit A.

10.     The Regulatory Agreement reflected the agency's agreement to insure the loan that was, at that time, owned by M&T Realty Capital Corporation ("M & T"), pursuant to the documents encumbering the Property (the "Mortgage Loan"). See Mortgage Loan, January 19, 2012, a true and correct copy of which is attached hereto as Exhibit B, and Deed of Trust Note, dated January 26, 2012 (the "Note") a true and correct copy of which is attached hereto as Exhibit C (collectively known as the "Loan Documents").

11.     Thereafter, Whitehall Trust set to work rehabilitating the property.

12.     Since then, Whitehall Trust has maintained to the building in compliance with State and Federal regulations for nursing home programs and also to ensure that its operator/tenant (the "Operator Tenant") is able to maintain the excellent standard of care provided to the most vulnerable members of its community.

13.     The Regulatory Agreement was to remain in effect so long as the contract of mortgage insurance continues in effect, pursuant to Section 232 of the National Housing Act. See Regulatory Agreement.

14.     Pursuant to the Regulatory Agreement, in the event the Third-Party Plaintiff was unable to make a regular payment due under the Note, HUD could grant the mortgagee/lender authority to withdraw sufficient funds from an existing reserve account to make said payment. Ex. A ("In the event that the owner is unable to make a mortgage note payment on the due date and that payment cannot be made prior to the due day of the next such installment or when the mortgagee has agreed to forgo making an election to assign the mortgage to the Secretary based on a monetary default, or to withdraw an election already made, the Secretary is authorized to instruct the mortgagee to withdraw funds from the reserve fund for replacements to be applied to the mortgage payment in order to prevent or cure the default.")

15.     The Property is occupied solely by the Operator Tenant, for the limited purpose of the aforesaid personal care facility.

16.     Commencing in 2020, and solely due to the nationwide impact of the COVID-19 pandemic, the Operator Tenant suffered a cash flow deficiency as a result of both the need for it to purchase substantial personal protective equipment to protect its employees during the health crisis and its patients being unable to pay for their stay in the facility.  Additionally, the Operator Tenant was bound by certain governmental regulations that prohibited from evicting patients who

were unable to pay.  As a result, the Operator Tenant ceased to pay rent to Third-Party Plaintiff and, in turn, Whitehall Trust was unable to service its debt to M&T.

17.     During that time period, Whitehall Trust made numerous inquiries to determine its options under the Loan Documents, the National Housing Act, and the Regulatory Agreement to ensure that it met both its obligations to its patients and to HUD.

18.     Also, during this time, the President of the United States issued various Emergency Declarations in acknowledgement of the financial crisis caused by the COVID-19 Pandemic and designed to provide emergency support to government borrowers like Whitehall Trust, whose cash flow deficiencies were exacerbated, in part, by regulations that were in place to protect patients.

19.     In accordance with the Emergency Declarations declaring a national emergency due to the COVID-19 pandemic, the government passed the Coronavirus Relief, and Economic Security Act (the "CARES Act"), which provides a mortgage payment forbearance option for all borrowers who suffer a financial hardship due to the COVID-19 national emergency. The relief under Section 4022 of the CARES Act is available to anyone who has a federally backed mortgage **regardless of delinquency status.** See Section 9056(a)(b) of Title 15 of the United States Code.

20.     Whitehall Trust sought all options available to it under the Emergency Declarations (which, as stated, also prohibited the Operator Tenant from evicting tenants in default of their payment obligations to Third-Party Plaintiff), the National Housing Act and the Regulatory Agreement. See Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55292, 55293 (Sept. 4, 2020).

21.     At the same time, HUD regulations, as well as the Regulatory Agreement authorized HUD to take regularly monthly mortgage payments from a Reserve Account that had

been consistently maintained by Whitehall Trust, which, at times relevant hereto, held nearly a very substantial sum of funds deposited by the Third-Party Plaintiff (the "Reserve Account").

22.    Consistent with HUD regulations and the Regulatory Agreement, at various times during the COVID 19 crisis, HUD did make payment toward the Note from the Reserve Account to avoid a default on the loan and ensure that the operations could continue on the Property.

23.    Indeed, HUD drew three (3) payments from the Reserve Account per the request of the Third-Party Plaintiff and consistent with its own regulations, the National Housing Act, its agreement with the Third-Party Plaintiff. Such conduct was also consistent with various Presidential decrees intended to alleviate the financial burden of businesses like the Whitehall Trust's caused by the COVID-19 pandemic.

24.    For reasons unknown to the Third-Party Plaintiff, without any notice to Third-Party Plaintiff, and albeit the fact that the Mortgage was still insured by Section 232 of the National Housing Act, HUD refused to draw the regular monthly debt service due under the Note from the Reserve Account. Such conduct was a deviation from HUD's prior course of conduct and inconsistent with HUD's rights under the Regulatory Agreement.

25.    After causing Whitehall Trust's default on the loan by refusing to draw funds from the Reserve Account, despite both regulatory and contractual authority to do so, HUD acted contrary to the initiatives and actions of the United States, to the extreme prejudice and harm of the Third-Party Plaintiff, and did further act without good faith or fair dealing in response to the national crisis, by refusing to discuss, work with and otherwise achieve a resolution of the loan with Third-Party Plaintiff, especially where the United States would have received greater benefit financially and for the benefit of housing a special needs group of Americans as is a purpose of the program for such lending. Between August 2021 and July 2023, HUD made no attempt to

negotiate a workout agreement with Third-Party Plaintiff to enable the Third-Party Plaintiff cure any default under the Note despite the fact that Section 5.5(A)(2) of Part III of the Section 232 Handbook required HUD to negotiate a possible workout of default in good faith.

26.     Instead, inexplicably, in July 2023, HUD notified the Third-Party Plaintiff of its intention to sell the loan at an auction.

27.     Upon inquiry to M&T Realty Credit Corp to determine the status of the Reserve Account, Third-Party Plaintiff received an informal notice that HUD , despite its refusal to utilize the Reserve Account to draw the monthly debt service due under the Note, which would have prevented the payment default, had, instead, depleted the Reserve Account at the time of loan assignment to reduce the balance due — without allowance or application as cure or other beneficial purpose.

28.     In its notice of intent to sell the note at auction, HUD also advised Third-Party Plaintiff that Third-Party Plaintiff was prohibited from acquiring the loan despite Whitehall Trust's willingness to offer fair value of the loan and its willingness to offer more than the sum received by HUD in the restricted auction.

29.     There are no regulations or authority that prohibited Third-Party Plaintiff from acquiring and/or curing the loan.

30.     Thereafter, on September 23, 2023, HUD purportedly assigned the Loan Documents — other than the Regulatory Agreement - to Windstream.

31.     Such actions of, by and for HUD explicitly and wrongfully excluding the Regulatory Agreement as the Project was still insured under Section 232.

32.     To date, HUD has not provided the Third-Party Plaintiff with an Estoppel Letter, a Certificate of Balance Due, nor an accounting of the amount due on the Note as of the date of the assignment.

33.     The loan was assigned to HUD in on or about November 16, 2022. <u>See</u> Assignment of Mortgage to HUD, dated November 16, 2022, a true and correct copy of which is attached hereto as Exhibit D.

34.     Prior to the time of the assignment, from M & T to HUD, Whitehall Trust's representative frequently proposed various resolutions, including a re-finance of the Mortgage Loan, or other prepayment of same. Due to Whitehall Trust's purported default in the Regulatory Agreement, however, HUD has refused to allow Third-Party Plaintiff to satisfy the Mortgage Loan and clear its ownership of the Property.

35.     Since the time of the Assignment, and during related proceedings, HUD has suggested that it intended to foreclose the outstanding Mortgage Loan.

36.     HUD has refused to utilize the workout process required by Section 232 of the National Housing Act, which is intended to avoid foreclosure of residential care facilities.

*(ii)*     <u>*HUD's Improper Sale and Subsequent Closing of the Mortgage Loan*</u>

37.     At this time, however, HUD has purported to sell the Mortgage Loan to a third-party purchaser, Windstream, instead of pursuing foreclosure proceedings itself.

38.     Specifically, on or about June 20, 2023 HUD issued correspondence to Third-Party Plaintiff, as the owner of the Property, indicating that the Mortgage Loan would be sold, along with several others, in an "upcoming loan sale," <u>i</u>. <u>e</u>. , an auction of multifamily mortgage loans, but did not specify the date upon which the sale or closing was to take place (the "<u>Loan Sale Letter</u>"). A true and correct copy of the Loan Sale Letter is attached as Exhibit E.

39.     The Loan Sale Letter also stated that "[t]he details of the sale will be published in the Sale Announcement after a loan sale date is determined You will be able to view the Sale Announcement on the HUD website at Asset Loan Sales Information." <u>See</u> Exhibit E.  Although a Sale Announcement was published in the Federal Register, it does not appear that any information on the loan sale was subsequently published on HUD's website.  <u>See</u> https://www.hud.gov/program_offices/housing/comp/asset/mfam/mprev (last accessed Jan. 29, 2024).

40.     Although dated June 20, 2023, no individual or entity acting on behalf of Third-Party Plaintiff had notice of the matters set forth in the Loan Sale Letter, until after the actual loan sale.

41.     As set forth in the Loan Sale Letter, Third-Party Plaintiff, as well as any of its affiliates, were expressly prohibited from participating in the bidding process, and sale of the loan extinguished Whitehall Trust's interest in the Regulatory Agreement. <u>See</u> Ex. E (stating that, "[n]either you, nor any of your principals, affiliates, and assigns can purchase the loan or qualify to bid in the loan sale . . . . Unless your loan is subordinate to another FHA-insured mortgage loan, the Regulatory Agreement between you and HUD will no longer apply after the loan sale is closed, and you will no longer be obligated to meet its requirements.").

42.     Again, there are no regulations or authority that prohibited Third-Party Plaintiff from acquiring and/or curing the loan.

43.     The Loan Sale Letter requested no comment on the part of Third-Party Plaintiff, and further, provided no opportunity to participate in the process of formulating the Loan sale; it only requested that Third-Party Plaintiff provide certain documents that HUD claimed were

necessary to conduct its due diligence with respect to the Property, and indicated that the mortgagor may need to provide access to the Property in order to conduct an appraisal.

44.     Subsequently, on July 28, 2023, HUD published notice of its intended loan sale in the Federal Register, Vol. 88, No. 144, a true and correct copy of which is attached hereto as Exhibit F. This notice contains a great deal of additional information that had not been set forth in the Loan Sale Letter, including the date of the sale, which was announced to be August 30, 2023. See Exhibit F.

45.     As indicated in the Federal Register notice, the loan sale at issue was denominated MHLS 2023-2, and described the noticed action as a sale of "one unsubsidized multifamily and nine unsubsidized healthcare mortgage loans, without Federal Housing Administration ("FHA") insurance, in a competitive, sealed bid sale on or about August 30, 2023.  See Exhibit F, at p. 48905.

46.     Were it not for HUD's explicit exclusion of Third-Party Plaintiff and any of its affiliates from the bidding process, and for its lack of notice of the matters published on the Federal Register, Third-Party Plaintiff would have proceeded to timely submit a bid to participate in the sale of the Mortgage Loan, as the Federal Register notice indicates was required. See id.

47.     Pursuant to that exclusion, however, the requisite terms of "Bidder Eligibility" for participation in the loan sale contained various criteria which explicitly prohibited any such individuals or entities from bidding. See id.

48.     Third-Party Plaintiff did not receive timely notice of the matters contained in the Federal Register notice.

49.     As set forth in the Federal Register notice, subsequent to the "competitive, sealed bid process" scheduled for August 30, 2023, "HUD anticipates that an award or awards will be

made on or before September 6, 2023." <u>See</u> <u>id</u>. Moreover, "[c]losing is expected to take place **on September 20, 2023**." <u>See</u> <u>id</u>. (emphasis added). To Whitehall Trust's knowledge, however, no subsequent notice was given before the sale and transfer of the Mortgage Loan were closed.

50.     Instead, on October 5, 2023, Windstream Capital, LLC ("<u>Windsteam</u>") sent to Third-Party Plaintiff, via certified mail and regular mail, a notice indicating that the mortgage loan has been sold, transferred and assigned by HUD to Windstream, and that all future payments should be made to Windstream. <u>See</u> correspondence dated October 5, 2023, a true and correct copy of which is attached hereto as Exhibit G.

51.     Third-Party Plaintiff has received from Lehigh Valley 1's counsel a document believed to reflect the assignment of the Mortgage Loan and Note from HUD to Lehigh Valley 1, LLC, dated May 15, 2024 a true and correct copy of which is attached hereto as Exhibit H.

52.     Any and all defaults alleged by Lehigh Valley 1 were caused in whole or in part by the actions of HUD.

53.     Any and all damages suffered by Lehigh Valley 1 resulted from the failure of HUD to comply with various regulations and agreements with Whitehall Trust.

54.     Any default alleged by Lehigh Valley 1 resulted from HUD's unreasonable behavior toward Whitehall Trust.

55.     At all times relevant hereto, Third-Party Defendants have acted in bad faith with regard to the Loan Documents.

56.     Third-Party Plaintiff has incurred attorneys' fees and costs in connection with the filing and prosecution of this lawsuit, and hereby requests to be made whole for same, pursuant to 42 U.S.C. § 1988, and pursuant to any other applicable source of law.

## CLAIMS FOR RELIEF

### COUNT I
### Judicial Review for HUD's Violation of 5 U.S.C. § 553,
### Pursuant to 5 U.S.C. §§ 702 and 706

57.    Third-Party Plaintiff hereby re-alleges and incorporates by reference all paragraphs set forth above, as if fully alleged herein.

58.    HUD has violated the notice-and-comment procedures set forth in the APA, because it has not provided Third-Party Plaintiff with adequate notice of its announced loan sale and subsequent closing of the loan sale, nor permitted the Third-Party Plaintiff to comment or otherwise participate in the administrative rule-making process.

59.    HUD's sale of Whitehall Trust's Mortgage Loan and its subsequent closing on the loan sale are each a "substantive rule," within the meaning of the APA. See 5 U.S.C. § 551(4).

60.    In pertinent part, the APA states that:

(b)    General notice of proposed rulemaking shall be published in the Federal Register, unless persons subject thereto are named and either personally served or have actual notice thereof in accordance with law. The notice shall include — (1) A statement of the time, place and nature of public rulemaking proceedings; (2) reference to the legal authority under which the rule is proposed; and (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved...(c) After notice required by this section, the agency shall give interested persons with or without opportunity for oral presentation...

See 5 U.S.C. § 553 (emphasis added).

61.    Section 553 goes on to provide that "[t]he required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except — (1) a substantive rule which grants or recognizes an exemption or relieves a restriction; (2) interpretive rules and statements of policy; or (3) as otherwise provided by the agency for good cause found and published with the rule." 5 U.S.C. § 553(d) (emphasis added).

62.    HUD did not publish notice of the date or time of its intended loan sale in the Loan Sale Letter dated June 20, 2023_. See Exhibit E. Moreover, although HUD subsequently published notice in the Federal Register, that notice did not specify the time or place that subsequent rulemaking in the form of closing on the loan sale would take place, even though its Federal Register notice indicated that "[c]losings are expected to take place on a specified date between November 29 and December 7, 2022. See Exhibit F.

63.    Nonetheless, HUD proceeded with an auction of the Mortgage Loan at issue here, on August 30, 2023, and apparently, an award of same "on or before September 6, 2023."  See Ex. F.  Subsequently, HUD's final agency action was reflected in an award of a contract to the successful third-party bidder, in HUD's discretion, and closing of the loan sale in favor of Windstream, on or about October 5, 2023. See Exhibit G.

64.    There was no good cause for HUD's consummating the sale of the Mortgage Loan without adequate notice to a highly interested party, *i.e.,* Third-Party Plaintiff.

65.    Moreover, the notice published in the Federal Register (see Exhibit F) made clear that, as the former mortgagor, Third-Party Plaintiff, and any of its affiliated entities were to be excluded from the bidding and from the sale, generally. Third-Party Plaintiff would not have been able to bid in the sale on November 16 even if it had timely received actual notice of the sale.

66.    As such, HUD's Federal Register notice violated 5 U.S.C. § 553(d), for providing insufficient notice of the rulemaking embodied in MHLS 2023-2, and for failing to provide Third-Party Plaintiff with the ". . .opportunity to participate in the rulemaking through submission of written data, views, or arguments." See 5 U.S.C. § 553(c).

67.    Under the APA, the Court may "hold unlawful and set aside [this] agency action," as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or as

"without observance of procedure required by law." <u>See</u> 5 U.S.C. § 706(2)(A), (2)(D). Third-Party

Plaintiff also seeks review under 5 U.S.C. § 702.

**COUNT II**
**Judicial Review for HUD's Violation of 12 U.S.C. § 1701z-11**
**and 12 U.S.C. § 1715z-11a, Pursuant to 5 U.S.C. §§ 702 and 706**

68.     Third-Party Plaintiff hereby re-alleges and incorporates by reference all paragraphs

set forth above, as if fully alleged herein.

69.     The National Housing Act, 12 U.S.C. § 1701, <u>et seq</u>. (the "<u>NHA</u>"), states, in

relevant part that "[t]he Secretary of [HUD] shall manage or dispose of multifamily housing

projects that are owned by the Secretary <u>or that are subject to a mortgage held by the Secretary</u> in

a manner that. . . (1) is consistent with the National Housing Act and this section; (2) <u>will protect</u>

<u>the financial interests of the Federal Government;</u> and (3) will, in the <u>least costly fashion</u> among

reasonable available alternatives, address [certain goals articulated by Congress as important to

NHA policy] ." <u>See</u> 12 U.S.C. § 1701z-11(a) (emphasis added).

70.     The NHA further states that "[d]uring fiscal year 1997 and fiscal years thereafter,

the Secretary may manage and dispose of multi-family properties owned by the Secretary...and

multifamily mortgages held by the Secretary on such terms and conditions as the Secretary may

determine, notwithstanding any other provision of law."). <u>See</u> 12 U.S.C. § 1715z-11a(a).

71.     Notwithstanding these broad discretionary statements, HUD's decisions under the

NHA are reviewable in this Court, as the NHA provides standards by which to assess them. <u>See</u>

<u>e.g.</u>, 12 U.S.C. § 1701z-11(a).

72.     In this case, however, HUD's announced MHLS 2023-2 ran afoul of these

standards, because the sale, and Whitehall Trust's exclusion from the bidding process, mean that

HUD disposed of the Mortgage Loan without duly considering the "financial interests of the

14

Federal Government," and may have effectuated a choice that is not the "least costly" among its several alternatives. See id.

73.     Due to Whitehall Trust's longstanding operation of the Property, and its massive investment of funds into same, Third-Party Plaintiff believes it had a more direct incentive in bidding the full amount of the outstanding loan, or as close thereto as need be, than any other third-party purchaser, who would seek to obtain the Mortgage Loan for the lowest price possible — including the purchaser Windstream who obtained an interest in the Mortgage Loan.

74.     As such, if Third-Party Plaintiff is correct, HUD's exclusion of Third-Party Plaintiff from the bidding process resulted in HUD receiving a lower amount in exchange for the Mortgage Loan, than it otherwise would have if Third-Party Plaintiff was permitted to participate. Even if Third-Party Plaintiff had not been the successful bidder, its involvement in the bidding process would undoubtedly have driven the bids of third-party participants higher, resulting in more financial recovery.

75.     By excluding Third-Party Plaintiff and its affiliates from the bidding process, however, HUD has disregarded these considerations and virtually guaranteed that foreclosure of the Mortgage Loan will be necessary by the third-party purchaser, Windstream, the assignee, Lehigh Valley 1, and/or any subsequent assignee, resulting in a loss to the public that otherwise could have been avoided.

76.     Under the APA, the Court may "hold unlawful and set aside [this] agency action," as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or as "without observance of procedure required by law." See 5 U.S.C. § 706(2)(A), (2)(D). Third-Party Plaintiff also seeks review under 5 U.S.C. § 702.

## COUNT III
### Judicial Review for HUD's Violation of 24 C.F.R. Part 290,
### Pursuant to 5 U.S.C. §§ 702 and 706

77.     Third-Party Plaintiff hereby re-alleges and incorporates by reference all paragraphs set forth above, as if fully alleged herein.

78.     Pursuant to the authority reflected in 12 U.S.C. § 1702, HUD has undertaken to promulgate additional regulations, which act to constrain its discretion in the disposition of non-performing mortgage loans.

79.     As to "unsubsidized projects," the regulations provide that "[d]elinquent mortgages may be sold without FHA mortgage insurance. However, delinquent mortgages will not be sold if: (1) HUD believes that foreclosure is unavoidable; and (2) The project securing the mortgage is occupied by very low-income tenants who are not receiving housing assistance and would be likely to pay rent in excess of 30 percent of their adjusted monthly income if HUD sold the mortgage." See 24 C.F.R. § 290.35 (emphasis added).

80.     Specialized definitions of what constitute "subsidized projects" and "unsubsidized projects" are set forth at 12 U.S.C. § 1701z-11(b)(2)-(b)(4).

81.     HUD's Federal Register notice (see Exhibit F), makes clear that the Mortgage Loan at issue pertains to an "unsubsidized" project.

82.     As the Property encumbered by the Mortgage Loan is to be considered an "unsubsidized project," within the meaning of the NHA, HUD violated 24 C.F.R. § 290.35, for conveying a Mortgage Loan even though foreclosure of the Mortgage Loan is utterly "unavoidable," for reasons that HUD itself has brought about (causing Whitehall Trust's default in the Regulatory Agreement, resulting in the assignment to HUD, and then arbitrarily excluding it from the bidding on its Mortgage Loan).

16

83.    Under the APA, the Court may "hold unlawful and set aside [this] agency action," as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or as "without observance of procedure required by law." See 5 U.S.C. § 706(2)(A), (2)(D). Third-Party Plaintiff also seeks review under 5 U.S.C. § 702.

### COUNT IV
### Violation of Fifth Amendment Right to Procedural Due Process,
### Pursuant to 28 U.S.C. §§ 2201 and 5 U.S.C. §§ 702, 706

84.    Third-Party Plaintiff hereby re-alleges and incorporates by reference all paragraphs set forth above, as if fully set alleged herein.

85.    Third-Party Plaintiff enjoyed a legitimate claim of entitlement to its interest in the Mortgage Loan (see Exs. B & C), as well as the Regulatory Agreement (see Exhibit A).

86.    Third-Party Plaintiff also enjoys a legitimate claim of entitlement to the Property encumbered by the Mortgage Loan, which will inevitably be extinguished in a foreclosure action by the third-party purchaser of the Mortgage Loan, Windstream, the assignee, Lehigh Valley 1, and/or any subsequent assignee, if the loan sale reflected in MHLS 2023-2 is not set aside by this Court.

87.    HUD has sold the Mortgage Loan to a third-party purchaser, without Whitehall Trust's involvement in the bidding process, and without any substantive input from Third-Party Plaintiff, or other participation in the rulemaking process. For instance, HUD held no hearing to determine that Third-Party Plaintiff and its affiliates should be excluded from the bidding process and did not even provide adequate notice of its actions to satisfy the APA.

88.    The procedure contemplated by HUD, as set forth in its Federal Register notice (see Exhibit F), did not provide Third-Party Plaintiff with "due process of law," within the meaning of

the Fifth Amendment to the United States Constitution, because it offered Third-Party Plaintiff no means of ensuring its rights were protected in connection with MHLS 2023-2.

89.    Under the APA, the Court may "hold unlawful and set aside [this] agency action: as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or as "contrary to constitutional right, power, privilege, or immunity." See 5 U.S.C. § 706(2)(A), (2)(B). Third-Party Plaintiff also seeks review under 5 U.S.C. § 702, and the Court may order declaratory relief pursuant to the APA, as well as pursuant to 28 U.S.C. § 2201, for HUD's constitutional violations.

**COUNT V**
**Violation of Fifth Amendment Right to Substantive Due Process,**
**Pursuant to 28 U.S.C. §§ 2201 and 5 U.S.C. §§ 702, 706**

90.    The Third-Party Plaintiff hereby re-alleges and incorporates by reference all paragraphs set forth above, as if fully alleged herein.

91.    Third-Party Plaintiff enjoyed a legitimate claim of entitlement to its interest in the Loan Documents (see Exs. B & C), as well as the Regulatory Agreement (see Exhibit A).

92.    Third-Party Plaintiff also enjoys a legitimate claim of entitlement to the Property encumbered by the Mortgage Loan, which will inevitably be extinguished in a foreclosure action by the third-party purchaser of the Mortgage Loan, Windstream, the assignee, Lehigh Valley 1, LLC, and/or any subsequent assignee, if the loan sale reflected in MHLS 2023-2 is not set aside by this Court.

93.    Through its own arbitrary conduct, HUD has directly precipitated the Whitehall Trust's default of the Mortgage Loan and of the Regulatory Agreement (Exhibit A), which resulted in an assignment of the Mortgage Loan to HUD. See Exhibit D.

94.    Now, in excluding Third-Party Plaintiff and any of its affiliates from the bidding process, without offering any explanation for this exclusion, HUD has arbitrarily determined that

18

Third-Party Plaintiff be deprived of its property interest in the Mortgage Loan, and in effect, that HUD will arbitrarily be deprived of its interest in the Property, upon a foreclosure action by the third-party purchaser, Windstream, the assignee, Lehigh Valley 1, and/or any subsequent assignee.

95.    There is no rational justification for HUD's exclusion of Third-Party Plaintiff from the bidding process.

96.    Because the exclusion resulted in HUD violating its statutory duties and recovering less funds for the public than if Third-Party Plaintiff had participated in the sale, *inter alia,* HUD's MHLS 2023-2 violated Whitehall Trust's right to substantive due process under the Fifth Amendment to the U.S. Constitution.

97.    Under the APA, the Court may "hold unlawful and set aside [this] agency action," as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or as "contrary to constitutional right, power, privilege, or immunity." See 5 U.S.C. § 706(2)(A), (2)(B). Third-Party Plaintiff also seeks review under 5 U.S.C. § 702, and the Court may order declaratory relief pursuant to the APA, as well as pursuant to 28 U.S.C. § 2201, for HUD's constitutional violations.

**COUNT VI**
**Violation of Fifth Amendment Right to Equal Protection,**
**Pursuant to 28 U.S.C. §§ 2201, 2202 and 5 U.S.C. §§ 702, 706**

98.    Third-Party Plaintiff hereby re-alleges and incorporates by reference all paragraphs set forth above, as if fully alleged herein.

99.    Third-Party Plaintiff enjoyed a legitimate claim of entitlement to its interest in the Mortgage Loan *(see Exs. B & C), as well as the Regulatory Agreement *(see Exhibit A).

100.    Whitehall Trust also enjoys a legitimate claim of entitlement to the Property encumbered by the Mortgage Loan, which will inevitably be extinguished in a foreclosure action by the third-party purchaser of the Mortgage Loan, Windstream, the assignee, Lehigh Valley 1,

and/or any subsequent assignee, if the loan sale reflected in MHLS 2023-2 is not set aside by this Court.

101.    Through its own arbitrary conduct, HUD has directly precipitated the Third-Party Plaintiff's default of the Mortgage Loan and of the Regulatory Agreement (Exhibit A), which resulted in an assignment of the Mortgage Loan to HUD. See Exhibit D.

102.    Now, in excluding Whitehall Trust and any of its affiliates from the bidding process, without offering any explanation for this exclusion, HUD has arbitrarily determined that EGAE will be deprived of its property interest in the Mortgage Loan, and in effect, that HUD will arbitrarily be deprived of its interest in the Property, upon a foreclosure action by the third-party purchaser, Windstream, the assignee, Lehigh Valley 1, and/or any subsequent assignee.

103.    There is no rational justification for HUD's intentional treatment of Third-Party Plaintiff and its affiliates, differently from similarly situated individuals or entities, including any other entity that may have wished to submit a bid on the Mortgage Loan.

104.    Because that differential treatment in intentionally excluding Third-Party Plaintiff has resulted in HUD violating its statutory duties and recovering less funds for the public than if Third-Party Plaintiff participated in the sale, HUD's MHLS 2023-2 violated Whitehall Trust's right to equal protection of the laws, under the Fifth Amendment to the U.S. Constitution.

105.    Under the APA, the Court may "hold unlawful and set aside [this] agency action," as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or as "contrary to constitutional right, power, privilege, or immunity." See 5 U.S.C. § 706(2)(A), (2)(B). Third-Party Plaintiff also seeks review under 5 U.S.C. § 702, and the Court may order declaratory and/or injunctive relief pursuant to the APA, as well as pursuant to 28 U.S.C. §§ 2201 and 2202, for HUD's constitutional violations.

## COUNT VII
### Declaratory Relief Pursuant to
### .S.C. § 2201 and 5 U.S.C. §§ 702 & 706

106.    Whitehall Trust hereby re-alleges and incorporates by reference all paragraphs set forth above, as if fully alleged herein.

107.    Based upon the foregoing allegations, there is presently existing between the parties hereto an actual, substantial, ongoing controversy that requires the Court's intervention. This request for a declaratory judgment is not seeking an advisory opinion from the Court.

108.    28 U.S.C. § 2201 provides, in relevant part, that

> In a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

109.    All the parties necessary to resolve the present controversies are presently before the Court, and subject to its jurisdiction.

110.    A declaratory judgment as requested below would resolve all controversies between the parties hereto.

111.    Among the various matters comprising the parties' dispute are:

(a)    Whether HUD's sale of the Mortgage Loan violated 5 U.S.C. § 553, for providing insufficient notice and/or otherwise violating HUD's notice-and-comment obligations under the APA;

(b)     Whether HUD's sale of the Mortgage Loan violated 12 U.S.C. § 1701z-11 and/or § 1715z-11 a, for not serving the goals of the National Housing Act, or otherwise;

(c)     Whether HUD's sale of the Mortgage Loan violated 24 C.F.R. Part 290, for not satisfying the procedural and/or other regulatory requirements for the sale of a Multifamily Mortgage Loan, under that Part;

(d)     Whether HUD's sale of the Mortgage Loan violated Whitehall Trust's Fifth Amendment right to procedural due process, for arbitrarily excluding it from the bidding process and thereby preventing it from avoiding injury to its interests in real property, and/or for not providing Third-Party Plaintiff with adequate notice of the announced sale, or otherwise;

(e)     Whether HUD's sale of the Mortgage Loan violated Whitehall Trust's Fifth Amendment right to substantive due process, for handling Whitehall Trust's interests in real property in an arbitrary fashion, and otherwise depriving Third-Party Plaintiff of rights guaranteed by the U.S. Constitution;

(f)     Whether HUD's sale of the Mortgage Loan violated Whitehall Trust's Fifth Amendment right to equal protection, for arbitrarily excluding it from the bidding

22

process and thereby preventing it from avoiding injury to its interests in real property, and/or for not providing Third-Party Plaintiff with adequate notice of the announced sale, or otherwise;

(g)     Whether the remedies requested here against HUD, in the form of setting aside the sale of the Mortgage Loan and any assignments relating thereto, are also properly applied as against the third-party purchaser, Windstream, pursuant to the APA or otherwise; and

(h)     Whether the remedies requested here against HUD, in the form of setting aside the sale of the Mortgage Loan and any assignments relating thereto, are also properly applied as against the assignee currently holding the Mortgage Loan, Windstream, pursuant to the APA or otherwise.

## COUNT VIII
### Contribution

112.    Third-Party Plaintiff hereby re-alleges and incorporates by reference all paragraphs set forth above, as if fully alleged herein.

113.    In the event, Whitehall Trust is found liable to Lehigh Valley 1, which liability is denied, Third-Party Defendants are jointly and severally liable with Whitehall Trust, and/or are liable over Whitehall Trust for contribution or such equitable apportionment as the Court shall deem appropriate.

## COUNT IX
## Common Law Indemnification

114.    Third-Party Plaintiff hereby re-alleges and incorporates by reference all paragraphs set forth above, as if fully alleged herein.

115.    In the event, Whitehall Trust is found liable to Lehigh Valley 1, which liability is denied, any liability is based upon non-active, passive, and non-contributory conduct, and the wrongdoing by HUD was the primary, active, and contributory caused of Lehigh Valley 1's injuries.

116.    As a result of the above, Whitehall Trust is entitled to common law indemnification.

## RELIEF REQUESTED

**WHEREFORE,** having set forth the claims for relief above, Third-Party Plaintiff. respectfully prays for relief as follows:

A.    That the Court declare that HUD's sale of the Mortgage Loan violated 5 U.S.C. § 553, for providing insufficient notice and/or otherwise violating HUD's notice-and-comment obligations under the APA;

B.    That the Court declare that HUD's sale of the Mortgage Loan violated 12 U.S.C. § 1701z-11 and/or § 1715z-11a, for not serving the goals of the National Housing Act, or otherwise;

C.    That the Court declare that HUD's sale of the Mortgage Loan violated 24 C.F.R. Part 290, for not satisfying the procedural and/or other regulatory requirements for the sale of a Multifamily Mortgage Loan, under that Part;

D.    That the Court declare that HUD's sale of the Mortgage Loan violated Whitehall Trust's Fifth Amendment right to procedural due process, for arbitrarily excluding it from the bidding process and thereby preventing it from avoiding injury to its interests in real

property, and/or for not providing Third-Party Plaintiff with adequate notice of the announced sale, or otherwise;

E. That the Court declare that HUD's sale of the Mortgage Loan violated Whitehall Trust's Fifth Amendment right to substantive due process, for handling Whitehall Trust's interests in real property in an arbitrary fashion, and otherwise depriving Third-Party Plaintiff of rights guaranteed by the U.S. Constitution;

F. That the Court declare that HUD's sale of the Mortgage Loan violated Whitehall Trust's Fifth Amendment right to equal protection, for arbitrarily excluding it from the bidding process and thereby preventing it from avoiding injury to its interests in real property, and/or for not providing Third-Party Plaintiff with adequate notice of the announced sale, or otherwise;

G. That the Court order declaratory relief: (i) vacating HUD's sale of the Mortgage Loan in MHLS 2023-2 on or around September 3, 2023, and/or setting aside the closing of the Mortgage Loan effective on December 6, 2022, as well as any subsequent assignments of the Mortgage Loan; (ii) declaring that HUD may not sell the Mortgage Loan in the future, as a violation of the National Housing Act and/or the regulatory requirements of 24 C.F.R. Part 290, or in the alternative; (iv) that HUD may not sell the Mortgage Loan without satisfying the notice-and-comment procedures of the APA, and allowing Third-Party Plaintiff to participate in the bidding process;

H. Judgment in Whitehall Trust's favor and against HUD for contribution for all sums of money that may be found due together with counsel fees and costs of suit;

I.  Judgment in Whitehall Trust's favor and against HUD for common law indemnification for all sums of money that may be found due together with counsel fees and costs of suit; and

J.  That the Court order such other relief as is deemed equitable and just.

Respectfully Submitted:

**NORRIS McLAUGHLIN P.A.**

Date: <u>01/30/25</u>                 /s/Raymond Lahoud

Raymond G. Lahoud, Esquire
515 West Hamilton Street, Suite 502
Allentown, PA 18101
P:  (484) 544-0022
F:  (610) 628-2481
E:  rglahoud@norris-law.com

**NORRIS McLAUGHLIN P.A.**

Date: <u>01/30/25</u>                /s/ *Rebecca J. Price*

Rebecca J. Price, Esquire
515 West Hamilton Street, Suite 502
Allentown, PA 18101
P:  (484) 544-0022
F:  (610) 628-2481
E:  rprice@norris-law.com

**NORRIS McLAUGHLIN P.A.**

Date: <u>01/30/25</u>                /s/Benjamin Sheppard

Benjamin P. Sheppard, Esquire
515 West Hamilton Street, Suite 502
Allentown, PA 18101
P:  (484) 765-2214
F:  (610) 391-1805
E:  bsheppard@norris-law.com

*Attorneys for Defendant/Third-Party Plaintiff*