**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEHIGH VALLEY 1 LLC SUCCESSOR BY ASSIGNMENT TO WINDSTREAM CAPITAL LLC, SUCCESSOR BY ASSIGNMENT TO THE UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT SUCCESSOR BY ASSIGNMENT TO M&T REALTY CAPITAL CORPORATION, | No. 5:24-cv-02627-CH

Honorable Catherine Henry, J. |
| Plaintiff, | |
| v. | |
| WHITEHALL FIDUCIARY LLC, AS TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S SUR-REPLY BRIEF IN FURTHER OPPOSITION TO PLAINTIFF'S**
**MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AND TO STRIKE**
**DEFENDANT'S AFFIRMATIVE DEFENSES**

AND NOW, comes Defendant, Whitehall Fiduciary LLC, as Trustee of Whitehall Trust, U/T/A dated August 1, 2007, (hereinafter referred to as "Defendant" or the "Trust"), by and through its undersigned Counsel, and submits this Memorandum of Law in support of Plaintiff's Sur-Reply for an order denying the Motion of Plaintiff, Lehigh Valley 1 LLC (hereinafter referred to as the "Plaintiff" or "LV1") to Dismiss Defendant's Counterclaims and to Strike Defendant's Affirmative Defenses (the "Motion").

**I.     ARGUMENT**

**A. Plaintiff lacks standing as the assignments are invalid**

LV1 argues that Defendant is misinterpreting Section 12.07 of the loan sale agreement and that the assignment is valid under commercial law principles. Plaintiff's Reply Brief in Support of Plaintiff's Motion to Dismiss Defendant's Counterclaims and to Strike Defendant's Affirmative Defenses (the "Reply Brief") at 4-8. However, Plaintiff's arguments fail to acknowledge the plain language of the loan sale agreement, the US Department of Housing and Urban Development's ("HUD") clear regulatory requirements, and fundamental principles of contract law. The assignment between Windstream Capital, LLC ("Windstream") and Plaintiff (the "Assignment") of the mortgage is void because it fails to meet three mandatory conditions: (1) an express assumption of liabilities, (2) the establishment of joint and several liability with HUD, and (3) timely notification to HUD. A true and correct copy of the Assignment is attached hereto as Ex. 1. These deficiencies render the assignment without legal effect, thereby depriving Plaintiff of standing to bring this action.

LV1 first incorrectly argues that Section 12.07 applies only to the loan sale agreement itself and not to mortgage assignments, relying on the capitalized term "Agreement." Reply Brief at 4-5. This argument is a deliberate mischaracterization of the loan sale agreement scope. See id. The Bidder Information Package explicitly governs post-sale assignments, including the transfer of mortgage loans, to ensure regulatory compliance and protect HUD's interests. A true and correct copy of a Bidder Information Package is attached hereto as Ex. 2. Assignments made after the sale remain subject to Section 12.07, as it governs how the loan may be transferred following its initial purchase. See Ex. 2 at 31. The fact that "Agreement" is capitalized does not nullify Section 12.07's application to assignments stemming from the loan sale agreement. Id. Courts interpret contracts as a whole, and nothing in the loan sale agreement suggests that mortgage assignments are exempt from its post-sale assignment conditions. See Volkswagen of Am., Inc. v. Bob

Montgomery, Inc., No. CIV.A. 82-3598, 1985 WL 2824 at * 3 n.3 (E.D. Pa. Sept. 25, 1985), aff'd, 791 F.2d 923 (3d Cir. 1986).

Additionally, the Assignment does not include an express assumption of liabilities and obligations, as required by Section 12.07. Compare Ex. 1; with Ex. 2. Exhibit 2 mandates that any post-sale assignment must contain a written statement affirming that the assignee assumes all liabilities and obligations of the original purchaser. Ex. 2 at 31. The Assignment, however, contains no such statement. See Ex. 1. Nowhere does Plaintiff affirmatively assume Windstream's obligations. Id. Instead, the assignment states that the mortgage is transferred "without recourse," a phrase that explicitly disclaims any continuing liability. See id. This omission directly violates Section 12.07 and renders the assignment invalid. See Ex. 2.

Furthermore, Section 12.07 also requires that both the assignor (Windstream) and the assignee (LV1) remain jointly and severally liable to HUD. See Ex. 2. This provision is essential to ensuring that HUD retains a responsible party for compliance and enforcement purposes. See generally Ex. 2. The Assignment, however, contains no provision imposing joint and several liability on the parties. See Ex. 1. Because Section 12.07 requires both the assignor and assignee to be jointly and severally liable, and because the Assignment fails to establish such liability, the assignment is non-compliant and therefore void. Compare Ex. 1; with Ex. 2.

Equally fatal to the assignment's validity is the absence of HUD notification. Section 12.07 explicitly states that any post-sale assignment must be promptly provided to HUD. See Ex. 2. This requirement is critical to HUD's ability to oversee assignments and ensure regulatory compliance. See generally id. There is no evidence that HUD was notified of this assignment. See Ex. 1. The Assignment does not contain any acknowledgment from HUD, nor does it reference any correspondence verifying that HUD was informed. See id. Without such proof, the

Assignment fails to meet a fundamental condition of the loan sale agreement and must be deemed legally ineffective.

LV1 further incorrectly contends that HUD and Plaintiff's predecessor defined the Assignment process through Attachment D of the Loan PSA and that, because Section 12.07 is not included in Attachment D, it is irrelevant to mortgage assignments. Reply Brief at 6. This argument is flawed for multiple reasons. First, Section 12.07 remains a binding condition for any assignment under the Loan PSA. See Ex. 2. The loan sale agreement governs all post-sale assignments—not just the initial transfer from HUD to Windstream. See id. Attachment D merely serves as a form document for assignments and does not override or replace the express conditions imposed by Section 12.07. If Attachment D were the sole governing document for mortgage assignments, HUD would have no oversight over subsequent transfers, which contradicts federal mortgage regulations and the purpose of the Loan PSA. Silence in Attachment D regarding Section 12.07 does not negate the section's applicability. Contract law dictates that agreements must be read as a whole, and no section should be rendered meaningless simply because it is not repeated in every sub-document.

LV1 also argues that mortgage and promissory note assignments follow standard commercial law principles and that recorded mortgage assignments and an allonge to the promissory note are sufficient to effectuate a valid assignment. Reply Brief at 4-8. This argument ignores the fact that HUD-imposed contractual terms take precedence over general commercial law. The mortgage loan at issue is not an ordinary commercial loan—it is governed by HUD regulations, the loan sale agreement and the Loan PSA, which establish unique and binding conditions for assignment. Unlike typical mortgage transfers, this loan requires compliance with specific HUD-

imposed conditions, including those in Section 12.07. See Ex. 2. Commercial law does not override contractually mandated federal compliance requirements.

Courts have repeatedly rejected attempts to evade HUD's assignment requirements by invoking general commercial law principles. Courts have consistently held that compliance with HUD regulations is a condition precedent to enforcing rights under FHA-insured loans, and they have rejected attempts to invoke general commercial law principles as a means to circumvent these requirements. For example, the Connecticut Supreme Court in Wells Fargo Bank, N.A. v. Lorson, held that HUD regulatory compliance is a prerequisite to foreclosure on FHA-insured mortgages, rejecting the lender's argument that commercial foreclosure laws alone governed the matter. 267 A.3d 1 (Conn. 2021). Similarly, the Illinois Appellate Court mandated strict adherence to HUD's face-to-face meeting requirements before foreclosure could proceed, emphasizing that contractual obligations under HUD programs supersede general commercial law principles. See Freedom Mortg. Corp. v. Olivera, 188 N.E.3d 446 (Il. Ct. App. 2021).

These cases underscore that HUD-imposed regulatory conditions cannot be disregarded in favor of standard commercial law doctrines. Rather, where HUD regulations impose assignment or foreclosure conditions, those conditions must be satisfied, and any failure to do so renders the attempted enforcement action invalid. Thus, Plaintiff cannot evade HUD's mandatory assignment provisions by improperly relying on commercial law principles that are inapplicable in the HUD-regulated loan context.

Since Plaintiff failed to meet the specific requirements of the loan sale agreement, the Assignment remains void regardless of any general commercial law principles Plaintiff attempts to invoke.

**B. Pennsylvania recognizes a cause of action for wrongful foreclosure**

Plaintiff incorrectly argues that Pennsylvania law does not recognize a cause of action for wrongful foreclosure. This is wrong. The Trust has already cited one case, Lewis v. CitiMortgage, Inc., acknowledging such a cause of action exists. To be clear, Pennsylvania law recognizes an action for wrongful foreclosure, where foreclosure is improper. Mancine v. Concord-Liberty Sav. & Loan Ass'n, 445 A.2d 744, 749 (Pa. Super. Ct. 1982) ("This was, therefore, a wrongful foreclosure.")

**C. The Trust must be permitted to supplement its affirmative defenses through discovery**

LV1 misconstrues the pleading process as it relates to affirmative defenses. A defendant is merely required to assert an affirmative defense so the plaintiff can be aware that an actual issue exists. Weed v. Ally Fin. Inc., No. CIV.A. 11-2808, 2012 WL 2469544 at *3 (E.D. Pa. June 28, 2012). Once the plaintiff has notice of the affirmative defense, a court must not grant a motion to strike where the defense may be further developed through factual discovery. All. Indus. Ltd. v. A-1 Specialized Servs. & Supplies, Inc., No. CIV.A. 13-2510, 2014 WL 4548474 at *3 (E.D. Pa. Sept. 11, 2014). Therefore, Plaintiff's request to strike Defendant's affirmative defenses is improper. LV1 is aware of the Trust's affirmative defenses, and the Trust will proceed with discovery to supplement or withdraw them as necessary in accordance with this Court's law.

## II.    **<u>CONCLUSION</u>**

As Plaintiff has failed to show entitlement to the relief sought in the Motion this Court must deny the Motion.

Respectfully submitted,

**NORRIS McLAUGHLIN, P.A.**

Dated: <u>March 12, 2025</u>

*/s/ Rebecca J. Price*
Rebecca J. Price, Esquire
Attorney I.D. No. 206182
Benjamin P. Sheppard, Esquire
515 Hamilton Street, Suite 502
Allentown, PA 18101
Phone: (610) 391-1800

**LAHOUD LAW GROUP, P.C.**

Date:  March 12, 2025

/s/ *Raymond G. Lahoud*
Raymond G. Lahoud, Esquire
600 Hamilton St., # 3
Allentown, PA 18101
P:  (484) 544-0022
E:  rgl@lahoud.com

*Attorneys for Defendant*

Exhibit 1

This instrument
prepared by:
Lehigh Valley 1 LLC
2100 Ponce de Leon Blvd., Suite 720
Coral Gables, FL 33134

After recording, please return to:
Lehigh Valley 1, LLC
2100 Ponce de Leon Blvd., Suite 720
Coral Gables, FL 33134

Premises: 1177 6th Street
Township of Whitehall
Parcel: 549893788632-2

## ASSIGNMENT OF MORTGAGE

Project Name: Whitehall Manor Senior Living City, State:  Whitehall, Pennsylvania

**Borrower: Whitehall Fiduciary, LLC Original Amount: $15,788,700.00**

WINDSTREAM CAPITAL LLC ("Assignor"), in consideration of Ten Dollars ($10.00) and other good and valuable consideration, hereby assigns, transfers, sets over and conveys to Lehigh Valley 1 LLC ("Assignee"), without recourse, the following:

1.     that certain Open-End Mortgage dated January 19, 2012, to be effective January 26, 2012 and recorded on January 26, 2012 as Instrument No. 2012002759, in the Office of the Recorder of Deeds of Lehigh County, Pennsylvania, as assigned, amended or modified from time to time (the "Mortgage", as further described on Exhibit B), which Mortgage secures that certain Mortgage Note dated January 26, 2012 (the "Note") and encumbers the property described herein and on Exhibit A attached hereto; and

2.     such other documents, agreements, installments, and other collateral (excluding the Regulatory Agreement reference in the Mortgage) which evidence, secure or otherwise relate to Windstream Capital LLC's right, title or interest in and to the Mortgage and/or the Note, including without limitation all security agreements, intercreditor agreements, deposit account instructions and service agreements, deposit account control agreements, and the title insurance policies and hazard policies that may presently be in effect.

**IN WITNESS WHEREOF,** Windstream Capital LLC has caused this Assignment to be executed and delivered under seal by its duly authorized agent as of the 15 day of May_____ 2024.

WITNESS:

Name: _Antoinette Hernandez_

Name: _KEVIN BANDEL_

WINDSTREAM CAPITAL LLC

By: _James Fratangelo_

Its: _Manager_

## ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing instrument was acknowledged before me this 15 day of May_____, 2024 by, _James Fratangelo_____, who is personally known to me or who has produced_____ as identification and who did take an oath.

NOTARY PUBLIC, STATE OF FLORIDA

SHANNA ALVAREZ
MY COMMISSION # HH 332785
EXPIRES: November 16, 2026

## CERTIFICATE OF RESIDENCE

The address of the within-named Assignee is:

Lehigh Valley 1 LLC
2100 Ponce de Leon Blvd., Suite 720
Coral Gables, FL 33134

On behalf of Assignee:

By:

Name: James Frantangelo
Title: Manager

## Exhibit A

**UNIT 1 OF WHITEHALL MANOR CONDOMINIUM, according** to the **Declaration** of Condominium of **Whitehall Manor** Condominium dated **August 13, 2008 recorded in the Office** of the **Recorder of Deeds of Lehigh County,** Pennsylvania as its Document ID# 7494518.

**PARCEL ID NO. 5498 9378 8632-2**

Together with an undivided interest of 50% of, in and to the Common Elements of the said **WHITEHALL MANOR CONDOMINIUM.**

## EXHIBIT B

### Mortgage Description – Assignments of Mortgage

1. Open-End Mortgage executed by Whitehall Fiduciary, LLC, as Trustee of Whitehall Trust U/T/A dated August 1, 2007, in favor of M&T Realty Capital Corporation, dated January 19, 2012, to be effective January 26, 2012, and recorded on January 26, 2012, as Instrument No. 2012002759, in the Office of the Recorder of Deeds of Lehigh County, Pennsylvania ("Recorder");

   a. Assignment of Mortgage executed by M&T Realty Capital Corporation to the United States Secretary of Housing and Urban Development dated November 8, 2022, effective as of November 16, 2022, and recorded on November 16, 2022, as Instrument No. 2022038363, with the Recorder;

   b. Assignment of Mortgage executed by the Secretary of Housing and Urban Development to Windstream Capital LLC dated September 20, 2023, and recorded on October 30, 2023, as Instrument No. 2023025934.

Inst. # 2024012857 - Page 6 of 6

### MICHELLE GRAUPNER
### LEHIGH COUNTY CLERK OF JUDICIAL RECORDS



**Recorder of Deeds Division**
**Lisa Stella-Ali, Chief Deputy**
**Lehigh County Courthouse**
**455 W. Hamilton Street - Room 122**
**Allentown, PA  18101-1614**
**(610) 782-3162**

\*RETURN DOCUMENT TO:
CAPITOL LIEN RECORDS & RESEARCH
1010 N DALE ST
ST. PAUL, MN 55117

**Instrument Number - 2024012857**
Recorded On 6/10/2024 At 3:00:10 PM
\* Instrument Type - ASSIGNMENT OF MORTGAGE
Invoice Number - 546999        User ID: KW          **\*Total Pages - 6**
\* Grantor -  WINDSTREAM CAPITAIL LLC  WHITEHALL FIDUCIARY LLC
\* Grantee - LEHIGH VALLEY 1 LLC
\* Customer - CAPITOL LIEN RECORDS & RESEARCH

\*FEES

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| STATE JCS | $40.25 |
| RECORDING FEES | $18.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| UPI CERTIFICATION FEES | $10.00 |
| TOTAL PAID | $73.75 |

I hereby CERTIFY that this document is
Recorded in the Recorder of Deeds Office
of Lehigh County, Pennsylvania



Michelle Graupner
Clerk of Judicial Records
Recorder of Deeds Division

**LCGIS Registry UPI Certification**
**On June 10, 2024 By TLL**

## THIS IS A CERTIFICATION PAGE

# Do Not Detach

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

INSTRUMENT NUMBER - **2024012857**

00E8SA



Exhibit 2



OFFICE OF HOUSING

# OFFICE OF ASSET SALES

OFFICE OF FINANCE AND BUDGET

# HUD Healthcare Loan Sale 2024-1

## *Sale Initiative*
## *"HLS 2024-1"*

# Bidder Information Package

**Sale Date: August 21, 2024**

**Seller:**
**U.S. Department of Housing and Urban Development**
**Federal Housing Administration**
**Office of Asset Sales**

**Transaction Specialist:**

**Falcon Capital Advisors LLC**

**July 24, 2024**

## DISCLAIMER AND RISK FACTORS

The information presented in this Bidder Information Package and in any updates, supplements or revisions hereto is not represented to be all of the information that may be material to a Bidder's decision to purchase any of the loans ("Mortgage Loans") included in the Healthcare Loan Sale 2024-1 ("HLS 2024-1" or the "Sale"). Falcon Capital Advisors ("Falcon Capital"), along with subcontractors Guidehouse, LLP ("Guidehouse") and Mission Capital, LLC ("Mission Capital") are serving as the transaction specialist for HUD and have not audited or independently verified any information contained in this Bidder Information Package, or otherwise currently provided, or to be provided, to Bidders.

Neither HUD, Falcon Capital, nor any of their respective affiliates, contractors, subcontractors, directors, officers, partners, employees, counsel, advisors or agents, make any representation or warranty, whether expressed, implied or created by operation of law, as to the accuracy or completeness of the Bidder Information Package or any of its contents or materials referred to therein, and no legal liability with respect thereto is assumed or may be implied. Any presentation of past, present or projected loan results, economic results or loan performance is not intended to be, and must not be taken as, a forecast or indicator of potential or future financial activity or performance. Such information cannot be relied upon by Bidders and is merely provided to assist Bidders in their independent analysis of the Mortgage Loans. Bidders should conduct their own independent investigation and analysis of the Mortgage Loans.

The loan sale agreement included in this Bidder Information Package ("Loan Sale Agreement") contains certain limited representations and warranties made by HUD with respect to the Sale and the Mortgage Loans. Except as expressly provided in the Loan Sale Agreement, the Mortgage Loans are being sold, transferred and assigned on an "AS IS" "WHERE IS" "WITH ALL FAULTS" basis, without any representation or warranty, whether expressed, implied or created by operation of law, and without any recourse to HUD, Falcon Capital, or any of their respective affiliates, contractors, subcontractors, directors, officers, partners, employees, counsel, advisors or agents. No person has been authorized to make or give any written or oral representation, warranty or assurance with respect to the Mortgage Loans or the accuracy or completeness of the information provided in this Bidder Information Package or otherwise, except for such representations or warranties as are expressly made by HUD in the Loan Sale Agreement, and if any such representation, warranty or assurance is made or given, it may not be relied upon by any Bidder in any fashion or for any reason.

The purchase of mortgage loans involves significant risks. Bidders and their advisors should review carefully the information set forth in this Bidder Information Package and any additional information made available by HUD, and should undertake their own investigations of the Mortgage Loans, the Mortgagors, the Mortgaged Properties and any other underlying collateral to evaluate the risks associated with a purchase.

**US Dept. of Housing and Urban Development**
**HLS 2024-1** _____    <u>Bidder Information Package</u>

### TABLE OF CONTENTS

## Contents

I. INTRODUCTION .................................................................................................................................. 4
II. EXECUTIVE SUMMARY ................................................................................................................... 5
III. SUMMARY TIMETABLE ................................................................................................................. 11
IV. BID INSTRUCTIONS AND CONDITIONS ..................................................................................... 12
V.  DUE DILIGENCE ............................................................................................................................. 20
VI. DUE DILIGENCE DATA AVAILABILITY MATRIX .................................................................... 27
VI. CLOSING INSTRUCTIONS ............................................................................................................. 28
VII. QUESTION SUBMITTAL VIA EMAIL .......................................................................................... 30
VIII. HUD SERVICING PRACTICES AND POST SALE ...................................................................... 31
IX. KEY CONTACTS .............................................................................................................................. 35
X. HUD HEALTHCARE RELATED LOAN PROGRAMS .................................................................... 36
XI.  PORTFOLIO INFORMATION ........................................................................................................ 37
XII.  SELECTED ATTRIBUTES LOAN DATABASE ("SALD") ......................................................... 41
XIII.  LOAN SALE AGREEMENT ......................................................................................................... 50

# I. INTRODUCTION

HUD is soliciting Bids to purchase Mortgage Loans in HLS 2024-1.  **The Bid Date is currently scheduled for August 21, 2024 ("Bid Day" or "Bid Date").**  Persons who have knowledge and experience in financial and business matters sufficient to evaluate the merits and risks of acquiring and servicing the Mortgage Loans, who have the financial ability to bear the risks of such a purchase, and who are not otherwise ineligible to bid ("Bidders"), are invited to bid on the Mortgage Loans.

This Bidder Information Package may be updated, supplemented and revised.  Falcon Capital, including its subcontractors and any other contractors, will use reasonable efforts to provide subsequent updates, supplements (including questions and answers) and revisions to all Bidders who have been sent or provided access to this Bidder Information Package.  Supplements will be available electronically on the HLS 2024-1 website at "market.missioncap.com".  All the updates, supplements and revisions constitute integral parts of this Bidder Information Package.  The "Disclaimer" section at the outset of this Bidder Information Package applies to all updates, supplements and revisions of this Bidder Information Package.

The terms and conditions of the Loan Sale Agreement shall exclusively govern the sale of any Mortgage Loans to a Successful Bidder.  The Loan Sale Agreement contains representations and warranties that are strictly limited in scope and duration.  In the event of a breach of any representation or warranty or any other default by HUD, the Successful Bidder may exercise only those rights and remedies (if any) expressly set forth in the Loan Sale Agreement.

Initially capitalized terms used in this Bidder Information Package (including the Disclaimer) have the meanings given them herein or, if not defined herein, in the Loan Sale Agreement or Qualification Statement.  By submitting a Bid, the Bidder accepts all of the terms and conditions set forth in the Bidder Information Package and the Loan Sale Agreement.  Bids may be submitted only under the terms offered by HUD as set forth herein.  Any conflict, whether actual or perceived, between the documents shall be resolved at the sole and absolute discretion of HUD.  **Any additional conditions, changes or adjustments made by a Bidder to any Bid documents will render the Bid non-conforming and constitute grounds for rejection of the Bid at the sole and absolute discretion of HUD.**

The HLS 2024-1 Loan Sale Information Center Web Page provides information on current sale opportunities, the history and mission of HUD's mortgage loan sale program, results of previous sales, and other information.  The URL for the site is:

"https://www.hud.gov/program_offices/housing/comp/asset"

Or for more detail on the sale visit the HLS 2024-1 website at:

"market.missioncap.com"

US Dept. of Housing and Urban Development
HLS 2024-1
**Bidder Information Package**

## II. EXECUTIVE SUMMARY

**Mortgage Loans Offered**

HUD is announcing the Sale of fifteen (15) Mortgage Loans (subject to change) with a current aggregate unpaid principal balance ("UPB") of approximately $128 million.  The Mortgage Loans are secured by one (1) defaulted hospital asset and fourteen (14) defaulted healthcare assets.  All of the Mortgage Loans are unsubsidized and originated under HUD programs.

**Mortgage Loan Pool**

For bidding purposes, the Mortgage Loans have been stratified into fourteen (14) separate Mortgage Loan Pools.  All of the pools contain one (1) loan, with the exception of Pool 240.  Pool 240 contains two (2) associated mortgage loans secured by one property which must be bid on and purchased together, pursuant to the terms of the Loan Sale Agreement.  Bidders will be able to bid on any or all Pools as further described in the Bid Instructions.   The following is a summary description of the Mortgage Loan Pools.

### HLS 2024-1 Portfolio Stratification

| Pool No. | Type | Loan Type | Performance | Operating Licensed Beds | Maximum Licensed Beds | # Of Loans | State | Principal |
|---|---|---|---|---|---|---|---|---|
| 230 | Healthcare | Unsubsidized | Non-Performing | *85 | *85 | 1 | MA | $ 3,455,465.81 |
| 231 | Healthcare | Unsubsidized | Non-Performing | *103 | *103 | 1 | MA | $ 5,936,033.84 |
| 232 | Healthcare | Unsubsidized | Non-Performing | *100 | *100 | 1 | MA | $ 4,538,682.28 |
| 233 | Healthcare | Unsubsidized | Non-Performing | *72 | *72 | 1 | PA | $ 6,055,973.02 |
| 234 | Healthcare | Unsubsidized | Non-Performing | 98 | 98 | 1 | OH | $ 4,439,899.68 |
| 235 | Healthcare | Unsubsidized | Non-Performing | *139 | *139 | 1 | OH | $ 6,195,470.12 |
| 236 | Healthcare | Unsubsidized | Non-Performing | *52 | *52 | 1 | VA | $ 3,091,799.82 |
| 237 | Healthcare | Unsubsidized | Non-Performing | 170 | 203 | 1 | IL | $ 20,989,197.99 |
| 238 | Healthcare | Unsubsidized | Non-Performing | *80 | *80 | 1 | IL | $ 17,389,891.58 |
| 239 | Healthcare | Unsubsidized | Performing | 90 | 96 | 1 | KS | $ 10,850,960.43 |
| 240 | Healthcare | Unsubsidized | Non-Performing | 65 | 78 | 2 | AZ | $ 9,655,908.29 |
| 241 | Healthcare | Unsubsidized | Non-Performing | 110 | 110 | 1 | AZ | $ 12,936,789.30 |
| 242 | Healthcare | Unsubsidized | Non-Performing | 85 | 85 | 1 | CA | $ 10,397,287.96 |
| | **Total Healthcare** | | | 1249 | 1301 | 14 | | $ 115,933,360.12 |
| 120 | Hospital | Unsubsidized | Non-Performing | *65 | *65 | 1 | TX | $ 12,128,588.71 |
| | **Total Hospital** | | | 65 | 65 | 1 | | $ 12,128,588.71 |
| | **Total Principal** | | | 1314 | 1366 | 15 | | $ 128,061,948.83 |

*Indicates properties that are vacant and non-operational. Beds value refers to previously Licensed Bed amount before closure.*

| | |
|---|---|
| **FHA Mortgage Insurance** | **THE MORTGAGE LOANS ARE SOLD WITHOUT FHA MORTGAGE INSURANCE.** |
| **Servicing** | The Mortgage Loans are currently being serviced for HUD by Dynaxys, LLC ("DAS") in Silver Spring, MD. HUD's Multifamily Notes Servicing Branch can be contacted for further details. HUD handles payoffs, bankruptcies, foreclosures, workout negotiations and releases of reserve for replacement funds for the Mortgage Loans. **THE MORTGAGE LOANS WILL BE SOLD AND SERVICING RELEASED.** |
| **Service Charges** | Currently, some Mortgage Loans require the Mortgagor to pay a servicing charge to HUD ("HUD Service Charge"). **The HUD Service Charge *will not be chargeable* by the Successful Bidder for any period after the Closing Date.** The Successful Bidder may, however, seek to collect for its own account HUD Service Charges accrued and unpaid as of the Closing Date. The HUD Service Charge is calculated every year on the anniversary date of a Mortgage Loan and charged monthly at the rate of 1/12 of 0.50% of the average scheduled UPB for the prior amortization year. |
| **Replacement Reserves** | The Mortgage Loans may have reserve for replacement accounts with balances, and as it pertains to the sale of the Mortgage Loans the disposition of any such funds shall be as set forth in the Loan Sale Agreement. |
| **Escrow for Taxes** | Certain Mortgage Loans offered in the Sale may require Mortgagors to escrow for taxes. Amounts held in tax escrow accounts as of the Cut-Off Date will be credited against the amount due from the Successful Bidder, and the Successful Bidder will be required to establish a replacement tax escrow account in the amount of the credit. HUD makes no representation as to the adequacy of any tax escrow account or whether tax payments are current or have been advanced by HUD. |
| **Other Escrows** | HUD also holds miscellaneous escrow accounts with respect to certain Mortgage Loans. In connection with the Sale, miscellaneous escrows will be handled in the same manner as described in the Loan Sale Agreement. |
| **Warranties** | All Mortgage Loans are being sold on an "AS IS" "WHERE IS" "WITH ALL FAULTS" basis, without any representation or warranty of any nature whatsoever, except as is expressly provided in the Loan Sale Agreement. All Mortgage Notes will be endorsed "Without Recourse." |

| | |
|---|---|
| **Loan Information** | The Loan Information is included as part of this Bidder Information Package.  The Loan Information is comprised of Microsoft Excel spreadsheets with preliminary loan information on the Mortgage Loans prepared by Falcon Capital.  The Loan Information is current as of July 19, 2024.  To the extent that additional information becomes available, the Loan Information may be updated prior to the Bid Date.  The Loan information is available at the HLS 2024-1 website, "market.missioncap.com." |
| **Due Diligence** | HUD has provided Bidders with the ability to efficiently review information on the Mortgage Loans by creating electronic images of the Asset Review Files.  Upon receipt of the signed Confidentiality Agreement and Qualification Statement, Bidders will be given secure access and can review due diligence information via a secure website. Additional information on obtaining the due diligence materials can be found in the Due Diligence Section (Section V) of this Bidder Information Package. |
| **Settlement Expenses** | The Successful Bidder will be required to pay all costs and expenses they incur in connection with the purchase of any Mortgage Loan, including, without limitation, (i) those relating to delivery of the Mortgage Loan Documents, Transfer Documents, Servicing Files and Project Information, (ii) any taxes, transfer, recording or filing fees (iii) any title commitment or title insurance costs, (iv) costs relating to the servicing transfer of the Mortgage Loan and (v) attorneys' fees and closing fees, including any fees associated with mobile notaries or remote online notarization. |

## *Bid Procedures:*

| | |
|---|---|
| **Bid Date** | August 21, 2024 |
| **Bid Period** | Bids will only be accepted during the period from 11:00 a.m. ET to 1:00 p.m. ET on August 21, 2024. |
| **Form of Sale** | Sealed Bid Auction. |
| **Bid Process** | Bids will be accepted only in accordance with the Bid Instructions and Conditions and any amendments or supplements thereto. |
| **Eligible Bidders** | Bids will be accepted only from persons who have completed, executed, and submitted a Confidentiality Agreement, Qualification Statement, and Bid Terms Acknowledgment Form (BTAF), Bidder Authorization and User Form (BAUF), each in form and substance acceptable to HUD, at HUD's sole and absolute discretion. The Confidentiality Agreement, Qualification Statement, Bid Terms Acknowledgment Form, and Bidder Authorization and User Form may be electronically signed pursuant to applicable laws governing electronic transactions, including, without limitation, the Electronic Signatures in Global and |

**US Dept. of Housing and Urban Development**
**HLS 2024-1**                                                    **Bidder Information Package**

National Commerce Act (E-SIGN) (15 U.S.C. 7001 et seq.), and the
Uniform Electronic Transactions Act (UETA).

US Dept. of Housing and Urban Development
HLS 2024-1                                                    __Bidder Information Package__

**Ineligible Bidders**      The following individuals and entities (either alone or in combination
                            with others) are ineligible to submit a Bid in HLS 2024-1:

(i) A mortgagor, including its principals, affiliates, family members,
and assigns, with respect to one or more of the Mortgage Loans
being offered in the Sale;

(ii) A mortgagor or healthcare operator, including its principals,
affiliates, family members, and assigns, with respect to any HUD
insured or subsidized mortgage loan (excluding the Mortgage
Loans being offered in the Loan Sale) who is in violation, default,
or noncompliance with any HUD mortgage, regulatory or business
agreement that cannot satisfy the requirements of provisions K and
L of the Qualification Statement;

(iii) Any individual or entity that is debarred, suspended, or excluded
from doing business with HUD pursuant to Title 2 of the Code of
Federal Regulations, Part 2424;

(iv) Any contractor, subcontractor and/or consultant or advisor
(including any agent, employee, partner, director, principal or
affiliate of any of the foregoing) who performed services for, or
on behalf of, HUD in connection with the Loan Sale;

(v) An FHA-approved mortgagee, including any principals, affiliates,
or assigns thereof, that has received FHA insurance benefits for
any one of the Mortgage Loans being offered in the Loan Sale;

(vi) An FHA-approved mortgagee and/or loan servicer, including any
principals, affiliates, or assigns thereof, that originated the
Mortgage Loans being offered in the Loan Sale if the Mortgage
Loan(s) defaulted within two years of origination and resulted in
the payment of an FHA insurance claim;

(vii) A healthcare operator with respect to one or more of the Mortgage
Loans being offered in the Loan Sale, including its principals,
affiliates, assigns, or member(s) of such individuals' family and
its Related Party;

(viii) An employee of HUD, a member of such employee's household,
or an entity owned or controlled by any such employee or member
of such an employee's family;

(ix) A limited partner or non-managing member (including tax credit
investors), including any of its principals, affiliates, assigns, or
member(s) of such individual(s)'s family, with respect to one or
more of the Mortgage Loans being offered for sale in the Loan

US Dept. of Housing and Urban Development
HLS 2024-1                                                    Bidder Information Package

|  |  |
|---|---|
|  | Sale that cannot satisfy the requirements of provisions A-N, inclusive in the Qualification Statement; |
| **Ineligible Bidders (cont.)** | (x) An Active Shareholder, or a healthcare operator, including their principals, affiliates, assigns, and family member(s), with respect to one or more of the Mortgage Loans being offered in the Loan Sale; |
|  | (xi) An individual or entity that uses the services, directly or indirectly, of any person or entity ineligible under subsections (i) through (x) above to assist in preparing its bid on the Mortgage Loans; |
|  | (xii) Any affiliate, principal or employee of any person or entity that, within the two-year period prior to August 1, 2024, serviced any of the Mortgage Loans or performed other services for or on behalf of HUD with respect to any of the Mortgage Loans; |
|  | (xiii) Any contractor or subcontractor to HUD that otherwise had access to information concerning any Mortgage Loans on behalf of HUD or provided services to any person or entity which, within the two-year period prior to August 1, 2024, had access to information with respect to the Mortgage Loans on behalf of HUD; and/or |
|  | (xiv) Any employee, officer, director or any other person that provides or will provide services to the prospective bidder with respect to the Mortgage Loans during any warranty period established for the Loan Sale within the two-year period prior to August 1, 2024: serviced any of the Mortgage Loans or performed other services for or on behalf of HUD with respect to any of the Mortgage Loans or had access to information with respect to the Mortgage Loans or provided services to any person or entity which, within such two-year period, serviced, performed services for HUD or otherwise had access to information with respect to the Mortgage Loans. |
| **Questions Regarding Bidder Information Package** | Any Bidder that has a question regarding anything contained in this Bidder Information Package should contact the HLS 2024-1 Sale Coordinator of the Falcon Asset Sales Team at 844-709-0763 or submit their question in writing via email to HUDSales@falconassetsales.com. |
|  | HUD will not respond in writing to all questions. If there are questions that HUD determines to be of general interest to all Bidders, HUD at its sole and absolute discretion may respond in writing to such questions and make such questions and answers available to all Bidders. |

US Dept. of Housing and Urban Development
HLS 2024-1                                                              Bidder Information Package

## III. SUMMARY TIMETABLE

### (Subject to change)

| Description | Preliminary Date |
|---|---|
| Due Diligence Period Begins | July 24, 2024 |
| Loan Cut-Off Date | July 31, 2024 |
| Bid Terms Acknowledgment Form & Bidder Authorization and User Form Deadline | August 19, 2024 |
| Due Diligence Period Ends | August 21, 2024 |
| Bid Period | 11:00 a.m. ET to 1:00 p.m. ET, August 21, 2024 |
| Bid Date and Deadline | 1:00 p.m. ET, August 21, 2024 |
| Best & Final Bid(s) (in HUD's sole and absolute discretion) | After 1:00 p.m. ET, August 21, 2024 |
| Award Date | On or before August 26, 2024 |
| Closing Date | September 11, 2024 |
| Retrieval of Servicing Files and Project Information | Within five Business Days after the date upon which HUD confirms receipt of the full amount of the Closing Date Payment |

US Dept. of Housing and Urban Development
HLS 2024-1                                                    Bidder Information Package

## IV. BID INSTRUCTIONS AND CONDITIONS

**HUD is selling the Mortgage Loans on an "AS IS" "WHERE IS" "WITH ALL FAULTS" basis, subject only to the limited representations and warranties expressly provided in the Loan Sale Agreement. HUD reserves the right, at its sole and absolute discretion, to terminate the Sale in whole or in part at any time and to accept or reject any and all Bids. Any Mortgage Loan may be withdrawn after the Award Date upon the terms set forth in the Loan Sale Agreement.**

**Invitation**

Bidders are invited to submit Bids in accordance with these Bid Instructions and Conditions. Failure to comply with the Bid Instructions and Conditions described herein may cause a Bid to be deemed non-conforming and subject to rejection by HUD.

**Bidders**

An eligible Bidder is a Person that has:

1. Submitted to HUD a completed and executed Confidentiality Agreement that is in form and substance acceptable to HUD, at HUD's sole and absolute discretion;
2. Certified that it is qualified to bid, by submitting to HUD a completed and executed Qualification Statement that is in form and substance acceptable to HUD, at HUD's sole and absolute discretion; and
3. Submitted to HUD a completed and executed Bid Terms Acknowledgement Form and Bidder Authorization and User Form, along with any other required documentation, agreeing to be bound by certain terms upon submission of a Bid.

*Bids will not be accepted from a Person that has not satisfied all of the above listed criteria.*

**Sale Structure**

On the Bid Day, HUD will conduct a Sealed Bid Auction for the Mortgage Loans. Bidders will be required to submit their Bids online via the HLS 2024-1 website at market.missioncap.com. Bidders will be permitted to submit Bids on individual Mortgage Loan Pools. Bidders may not create their own pools.

**Mortgage Loan Pools**

The Mortgage Loans have been pooled for bidding purposes into fourteen (14) Mortgage Loan Pools. Bidders will be able to bid on any or all of the Mortgage Loan Pools.

| | |
|---|---|
| **Bid Terms** | Each Bidder is solely responsible for, and bears the risk of, the proper completion, submission and delivery of its Bids, including any and all related documentation for the Bid. Neither HUD, Falcon Capital, nor any of their respective affiliates, officers, directors, partners, employees, contractors, subcontractors or agents accepts any responsibility for: (i) mistakes in the completion or submission of any Bid or (ii) any lost, stolen or undelivered Bid or any Bid delivered early or late (regardless of whether the inability to submit a Bid within the timeframes specified is due to communications failure or speed). |
| **Bid Percentage** | Bids are to be expressed as a percentage and are autoformatted to five decimal places, for example 99.55555 percent, of the Aggregate UPB as of the Cut-Off Date of the applicable Mortgage Loan Pool. |
| **Bid Process/Time** | ***Bids may only be submitted online via the HLS 2024-1 website during the period from 11:00 a.m. ET through 1:00 p.m. ET on August 21, 2024. Detailed bidding instructions will be provided in a Supplement to this Bidder Information Package.*** |
| | ***No Bids can be submitted before 11:00 a.m. ET or after 1:00 p.m. ET on the Bid Date.*** |
| **Bid** | A Bid is an offer to purchase one or more of the Mortgage Loan Pools.  **It is strongly suggested that Bids be submitted early on Bid Day in order to avoid any issues associated with submitting a timely Bid.** |
| **Bid Items** | **The Bid Items required to be submitted on or before Bid Day will be provided in a Supplement to this Bidder Information Package.** |

US Dept. of Housing and Urban Development
HLS 2024-1                                                      **Bidder Information Package**

| | |
|---|---|
| **Conditional Bids** | By submitting a Bid, or a Best and Final Bid (if conducted by HUD in its sole and absolute discretion), a Bidder has agreed to and is bound by the terms and conditions of the Loan Sale Agreement. |
| | **At HUD's sole and absolute discretion, any Bid or Best and Final Bid received that is or purports to be conditional, including any alteration to the Loan Sale Agreement, the Bid Confirmation Form, or any other Bid document will be considered non-conforming and subject to rejection.** |
| **Sealed Bid Auction Deposit** | For HLS 2024-1, Deposits will not be collected prior to Bid Day and will only be required upon notification from HUD ("Bid Deposit Confirmation"). The Bid Deposit Confirmation will provide a link to the "Bid Deposit Wire Transfer" Excel spreadsheet that must be completed and submitted after the Bid Deposit is wired to HUD. Bidders that have received a Bid Deposit Confirmation request will be required to wire transfer a Deposit amount equal to the greater of One Hundred Thousand Dollars ($100,000) or ten percent (10%) of the Aggregate Bid Price (rounded up to the nearest whole dollar) designated in the Bid Deposit Confirmation ("Bid Deposit"). In the event the Bidder's Aggregate Bid is less than One Hundred Thousand Dollars ($100,000), the minimum deposit shall be not less than fifty percent (50%) of the Bidder's Aggregate Bid rounded up to the nearest whole dollar. HUD will not confirm the potential award or Mortgage Loan details unless and until HUD receives the Bid Deposit and HUD has approved final awards. |
| | All Bidders will be required to wire transfer the Bid Deposit in the amount specified in the Bid Deposit Confirmation within one (1) business day of being notified by HUD ("Bid Deposit Notification Date") to: |

| | |
|---|---|
| R & T Number | 021030004 |
| Bank | TREAS-NYC |
| City/State | New York, NY |
| To Credit | FHA Multifamily & Healthcare Account |
| Account Number | 86090300 |
| Reference | HUD Healthcare Loan Sale 2024-1 for **[Insert your Bidding Entity Name]** |

US Dept. of Housing and Urban Development
HLS 2024-1

Bidder Information Package

In the event the Bid Deposit is not received by 5:00 p.m. ET on the first business day following the Bid Deposit Notification Date, HUD will re-allocate the Mortgage Loan(s) associated with the Bid Deposit Confirmation to the next highest bidders.

Bidders (including their individual members, affiliates, subsidiaries or other related parties) who do not submit the Bid Deposit within the required timeframe will be denied the ability to participate in one or more future HUD Asset Sales (HUD to determine penalty).

**Bidders will not be paid interest or earnings on their Deposits.**

HUD shall, at its sole and absolute discretion, evaluate the bids to determine a Successful Bidder, if any.

**Bid Evaluation**

**HUD reserves the right, at its sole and absolute discretion, to terminate the Sale in whole or in part at any time and to accept and reject any and all bids.**

**Assigned Bid Percentage**

Assigned Bid Percentage, per the LSA, is the percentage (carried to five (5) decimal places) that Purchaser has ascribed to a Mortgage Loan in connection with its Bid.   HUD reserves the right, at its sole and absolute discretion, to review and approve Assigned Bid Percentages.

US Dept. of Housing and Urban Development
HLS 2024-1                                                 **Bidder Information Package**

| | |
|---|---|
| **Best and Final Bid** | At HUD's sole and absolute discretion, HUD may conduct one or more Best and Final Bids among Bidders deemed to be in the competitive range or any or all Bidders, for any reason at its sole and absolute discretion ("Best and Final Bidders"). In such circumstances, after 1:00 p.m. ET on August 21, 2024, or such later date(s) determined by HUD (a "Best and Final Bid Date") the Best and Final Bidders may be notified via telephone and/or electronic mail, by HUD. |
| | Best and Final Bidders will be offered the opportunity to submit Best and Final Bids. Best and Final Bidders will only have the opportunity to increase their Bids. HUD will provide additional information on the timing and procedures for the submission of Best and Final Bids if, and when, it elects to exercise that option. |
| | While HUD reserves the right to conduct one or more Best and Final Bids or re-offer the Mortgage Loans in a subsequent sale, Bidders should not anticipate that HUD will exercise this right. Each Bidder should be sure that its initial Bid represents the highest possible Bid Price that the Bidder is willing to pay for the Mortgage Loan(s) covered by a particular Bid. Bidders should treat their initial Bid as their only opportunity to purchase the Mortgage Loan(s). HUD, at its sole and absolute discretion, can accept a Bidder's original Bid or its Best and Final Bid. |
| **Non-conforming Bids** | Any Bid received that is conditional or includes altered or missing documentation will constitute a non-conforming Bid and may be rejected. HUD has the right, in its sole discretion to waive and permit cures of nonconformities. HUD can require that such a cure be submitted within a reasonable time after the Bid Deadline. |
| **Contact Person** | If a Bidder does not submit a Best and Final Bid or fails to correct a non-conforming Bid, even if the failure to do so is due to the inability of HUD to contact the Bidder by telephone, electronic mail or facsimile, the Bidder will forfeit the opportunity to adjust its Bid or, at the sole and absolute discretion of HUD, correct a non-conforming Bid or Best and Final Bid. Bidders, therefore, are strongly advised to have a contact person available and readily accessible by telephone, electronic mail and facsimile from 1:00 p.m. to 6:00 p.m. ET on August 21, 2024 and from 9:00 a.m. to 5:00 p.m. ET on August 22, 2024. |

| | |
|---|---|
| **Withdrawal of Bids** | Bidders are allowed to submit, resubmit, increase or decrease bids during the bid period which will occur during the period from 11:00 a.m. ET to 1:00 p.m. ET on August 21, 2024. Submitted bids are irrevocable after the 1:00 p.m. ET deadline on August 21, 2024 and cannot be altered or withdrawn after that time. |
| **Bid Award** | It is anticipated that awards will be made on or about August 26, 2024 (the "Award Date"). HUD will attempt to first notify the Successful Bidders by telephone and will confirm its acceptance of one or more Bids by email of an Award Letter on or after the Award Date. Upon receipt of the Bid Deposit, a link to the Award Letter will be emailed to each Purchaser. The Award Letter will identify the loans that the Purchaser has been awarded and the Bid Deposit received from the Purchaser. The Mortgage Loan list is subject to change until two (2) Business Days prior to the Settlement Date, as provided for in the LSA. |
| | A Purchaser's Bid Deposit is not refundable. The Bid Deposit will be applied to the Sales Price on the Settlement Date. |
| **Unsuccessful Bidder(s)** | Each Bidder that is not a Successful Bidder (an "Unsuccessful Bidder") will be notified by telephone on or after the Award Date that its Bids were not accepted. |
| **Withdrawal of Mortgage Loans and/or Termination of Sale** | At its sole and absolute discretion, HUD reserves the right, for any reason, to (i) withdraw any or all of the Mortgage Loans from the Sale and/or (ii) terminate the Sale in whole or in part at any time prior to the award. HUD may re-offer Mortgage Loans not sold in this Sale in any manner whatsoever, at its sole and absolute discretion, free and clear of any Bidder's claims. HUD may withdraw a Mortgage Loan after the Award Date upon the terms set forth in the Loan Sale Agreement. |
| **Cut-Off Date** | **The Cut-Off Date of the Sale is July 31, 2024.** This date will be used to determine the UPB of the Mortgage Loans for bidding purposes and to prepare the Mortgage Loan Schedule. Partial payments received after the Cut-Off Date but prior to the Closing Date will be remitted to the Successful Bidder as provided in the Loan Sale Agreement. The payment in full of a Mortgage Loan on or prior to the Closing Date will result in the Mortgage Loan being treated as a Terminated Mortgage Loan under the Loan Sale Agreement. HUD will withdraw any such Mortgage Loan from the Sale and will retain such payment. |

US Dept. of Housing and Urban Development
HLS 2024-1                                                              **Bidder Information Package**

| | |
|---|---|
| **Brokers/Agents** | All Bids must be executed and submitted by a Bidder's principal or principals. No Bid may be submitted by an agent or broker, no matter in what capacity the agent or broker purports to act. In addition, each Bidder will indemnify and agree to hold HUD harmless from and against any claims for fees or commissions of any broker, agent or finder resulting from the transaction contemplated by the Loan Sale Agreement. By submitting a Bid, the Bidder will acknowledge that HUD will have no liability for the payment of any brokerage fees, commissions or finder's fees in connection with any activities of a Successful Bidder related to the Sale. |
| **Loan Sale Agreement Execution** | After the Award Date, HUD will complete the Loan Sale Agreement for each Successful Bidder, execute the signature page of the Loan Sale Agreement previously executed by each Successful Bidder, and deliver a fully executed Loan Sale Agreement to each Successful Bidder. **Other than completing information regarding the Successful Bidder's name, organizational status and address for notices, and inserting certain exhibits, no other changes will be made to the Loan Sale Agreement.** |
| **Entity Bidders** | Special purpose entities formed for the purpose of bidding on and purchasing the Mortgage Loans must be in existence and qualified as Bidders as of August 20, 2024 and through the Closing Date. Each entity that qualifies as a Bidder and submits a Bid must execute the Loan Sale Agreement and be prepared to accept the transfer of any Mortgage Loan awarded to it in the event such entity becomes the Successful Bidder. |
| | No Bidder may assign its Bid or its rights under the Loan Sale Agreement prior to its purchase of the Mortgage Loan. |

US Dept. of Housing and Urban Development
HLS 2024-1                                                                 **Bidder Information Package**

| | |
|---|---|
| **Terms and Conditions** | By submitting a Bid, a Bidder agrees to and is bound by the terms and conditions of the Loan Sale Agreement. Any Bid received that is or purports to be conditional, including, but not limited to, any alteration to the Bid Confirmation Form or the Loan Sale Agreement will be considered a non-conforming Bid and is subject to rejection. |
| | This Bidder Information Package may be updated, supplemented and revised. The Transaction Specialist will use reasonable efforts to provide subsequent updates, supplements and revisions to all Bidders. All updates, supplements and revisions, including any and all Loan Information provided with this Bidder Information Package or subsequent to its distribution, constitute integral parts of this Bidder Information Package. |
| **Disclosure of Information** | At its sole and absolute discretion, HUD reserves the right to disclose information regarding the Sale, including the identity of Successful Bidders, the terms of the Loan Sale Agreement, and the successful Bid Prices or Bid Percentages, upon the consummation of the Sale. Even if HUD elects not to disclose publicly any information relating to the Sale, HUD will have the right to disclose any information that HUD is obligated to disclose pursuant to the Freedom of Information Act and all regulations promulgated thereunder. |
| **HUD Discretion** | HUD reserves the right, at any time, without notice, at its sole and absolute discretion to: (i) modify or waive these Bid Instructions and Conditions and/or any terms and conditions of the Sale; (ii) waive any deficiency or irregularity in any Bid; (iii) reject any or all Bids, with or without cause; (iv) extend any deadline set forth in these Bid Instructions and Conditions or in the terms and conditions of the Sale; and (v) terminate the Sale, in whole or in part. |

US Dept. of Housing and Urban Development
HLS 2024-1
Bidder Information Package

## V. DUE DILIGENCE

**Executive
Summary**

To assist Bidders in the preparation of their bids, HUD, through its Transaction Specialist, has conducted a review of available information with respect to the Mortgage Loans. As part of this review process, the Transaction Specialist has identified and compiled certain information from the Mortgage Loan files and obtained the reports depicted in the following chart.

The Transaction Specialists' activities consisted solely of document review and data accumulation and did not include any credit underwriting.

The table below lists the fourteen (14) properties in the HLS 2024-1 sale and the Appraisal and Property Condition Assessment obtained for each property. Bidders can access the Appraisals and Property Condition Assessments in the Data Room on Mission Market at market.missioncap.com.

US Dept. of Housing and Urban Development
HLS 2024-1                                                            Bidder Information Package

| FHA | Project Name | Property Type | Appraisal or Update to previous Appraisal | Property Condition Assessment |
|---|---|---|---|---|
| 023-22105 | AIRAMIDMA4-WILLIMANSETT CENTER EAST | Healthcare | X | |
| 023-22106 | WILLIMANSETT CENTER WEST | Healthcare | X | |
| 023-22107 | AIRAMIDMA4-GOVERNOR-S CENTER | Healthcare | X | |
| 033-22064 | RHODES ESTATES | Healthcare | X | |
| 042-22145 | FAIRFAX PLACE | Healthcare | X | |
| 046-43063 | JUDSON CARE CENTER | Healthcare | X | |
| 051-22149 | DUTCH HAVEN ASSISTED LIVING | Healthcare | X | |
| 071-22137 | RAINBOW BEACH NURSING CENTER | Healthcare | X | |
| 071-43290 | ALEXI SENIOR LIVING | Healthcare | X | |
| 085-22097 | VICTORIA FALLS | Healthcare | X | |
| 115-13006 | ST. MARKS MEDICAL CENTER | Hospital | X | X |
| 123-43061 123-43061A | SOLTERRA AT WHITE MOUNTAINS | Healthcare | X | |
| 123-43110 | SOLTERRA SENIOR LIVING | Healthcare | X | |
| 129-43033 | PLAZA VILLAGE SENIOR LIVING | Healthcare | X | |

*Additional due diligence documents may become available and will be released in future supplements.*

US Dept. of Housing and Urban Development
HLS 2024-1                                                          **Bidder Information Package**

| | |
|---|---|
| **Materials Available for Review** | The Transaction Specialist has completed the Asset Review File ("ARF") for Bidder Review. This file is accessible via the HLS 2024-1 website, market.missioncap.com. |

An Asset Review File **may** contain the following information:

- The loan documents and collateral files, including legal documents;
- Property operating statements for the latest available three (3) years;
- Correspondence for the past five (5) years;
- Third party reports obtained in connection with the Sale as well as any historical reports;
- Bankruptcy and litigation information,
- Appraisals;
- Servicing information, including payment histories;
- Any other pertinent information.

| | |
|---|---|
| **Basic Loan Information** | The Basic Loan Information, available online at no charge with the Bidder Information Package, includes the following: (i) a Microsoft Excel spreadsheet (Selected Attributes Loan Database ("SALD")) that provides selected information for the Mortgage Loans, as of July 19, 2024, prepared by the Transaction Specialist; (ii) to the extent available, loan payment histories from the HUD database ("Payment History File"); and (iii) an Asset Summary Report (narrative) for each loan. Both the SALD and Payment History File will be updated and posted on the HLS 2024-1 website, market.missioncap.com, after the Cut-Off Date and prior to the Bid Date. |
| **Loan Information Supplements** | It is anticipated that, from time to time prior to the Bid Date, HUD may supplement or amend the Bidder Information Package to reflect additional and/or updated information, including Loan Information. **Supplements will be made available only to Bidders who have received or been provided online access to a Bidder Information Package.** |
| **Payment History** | A payment history for the time period that HUD has serviced the Mortgage Loans (after Assignment Date), is provided for the Mortgage Loans, if available. A payment history shows how the payments for a particular Mortgage Loan were applied and the related accrual period. In addition, payment histories are provided from the prior servicers in the Asset Review File, if available, along with the HUD payment history information referenced above. |

US Dept. of Housing and Urban Development
HLS 2024-1                                                          <u>Bidder Information Package</u>

**Asset Review Files**    The Asset Review Files prepared by the Transaction Specialist
are available online at <u>market.missioncap.com</u>. Each Bidder
who has completed the necessary qualification documents will
have the opportunity to review the Asset Review Files
remotely via a high-speed Internet connection.  The Asset
Review File for each Mortgage Loan may contain, where
available and as applicable to each Mortgage Loan, imaged
copies of the following:

| | | |
|---|---|---|
| **Volume I** | Section 1: | Note and any Related Riders or Modifications |
| | Section 2: | Mortgage or Deed of Trust and Assignments |
| | Section 3: | Letter Agreements |
| | Section 4: | Consolidation Agreement |
| | Section 5: | Transfer of Physical Assets |
| | Section 6: | Final Firm Commitment of Insurance |
| | Section 7: | Assignment of Rents and Leases |
| | Section 8: | Security Agreements/Chattel Mortgages |
| | Section 9: | UCC Financing Statements |
| | Section 10: | Title Policy(s) |
| | Section 11: | Senior/Subordinate Loan Documents |
| | Section 12: | Ground Lease |
| | Section 13: | Leasehold Subordinate Agreement |
| | Section 14: | Regulatory Agreement |
| | Section 15: | Provisional Workout Agreement and Management Improvement |
| | Section 16: | Indemnification Agreement |
| | Section 17: | Assignments to Secretary of HUD (Form 289) |
| | Section 18: | Documents Related to Litigation or Bankruptcy |
| | Section 19: | Notice of Default/Intent to Foreclose |
| | Section 20: | Other Legal Documents and HAP Information |
| | Section 21: | Trailing Documents |
| **Volume II** | Section 1: | Loan Summary |
| | Section 2: | Loan File Information Form |
| | Section 3: | Latest Audited Financial Statements |

US Dept. of Housing and Urban Development
HLS 2024-1                                                              **Bidder Information Package**

| | Section 4: | Monthly Operating Statements and Interim/Unaudited Financial Statements |
|---|---|---|
| | Section 5: | Latest Appraisal |
| | Section 6: | Payment History and Statement of Multifamily Mortgage Account |
| | Section 7: | Amortization Schedule |
| | Section 8: | Correspondence During the Most Recent 5 Years Period |
| | Section 9: | Tenant Estoppels |
| | Section 10: | Property Management Information |
| | Section 11: | Management Review Summary |
| | Section 12: | Property Inspection Report /Market Rent Study |
| | Section 13a: | Environmental Phase 1 Report |
| | Section 13b: | Physical Needs Assessment Report |
| | Section 14: | Insurance Policies/Certificates |
| | Section 15: | Rent Rolls/Census Reports |
| | Section 16: | Property Tax Statement |
| | Section 17: | Other/Miscellaneous Forms |
| | Section 18: | Trailing Documents |

**Due Diligence Website**

Bidders must be registered on the Mission Market Bidding System to review the due diligence materials. Once Bidders have completed the qualification process, they may review the due diligence information on the secure HLS 2024-1 website at market.missioncap.com.

Bidders will be able to view the updated SALD and access all currently available due diligence information. Bidders should expect to experience different speeds at which they access information depending on the quality of their Internet access. Electronic access is available 24 hours a day, 7 days a week. Electronic access to the imaged Asset Review File is expected to be available on or about July 24, 2024.

| | |
|---|---|
| **Compliance With Confidentiality Agreement** | Each Bidder must ensure that any third-party agents, representatives and employees of the Bidder performing due diligence for the Bidder are aware of and comply fully with the provisions in the Confidentiality Agreement that the Bidder executed to obtain this Bidder Information Package.  All parties identified on the Confidentiality Agreement will be registered on the HLS 2024-1 site if they are not already. Usernames will be provided to new registrants by the Transaction Specialist.  If you are not sure whether you have an existing username, you may go to the HLS 2024-1 site at "market.missioncap.com" and input your username and password.  If you already are registered, you will receive access to the due diligence materials once qualified by submitting the required Confidentiality Agreement and Qualification Statement.  If you are not yet registered, you may register on the HLS 2024-1 site. |
| **Bidder Questions** | Bidders that have a question regarding anything contained in this Bidder Information Package should contact the HLS 2024-1 Sale Coordinator of Falcon Asset Sales Team at 844-709-0763 or submit their question in writing via email to HUDSales@falconassetsales.com.  HUD responses to questions that are of interest to all Bidders may be distributed in Supplements to this Bidder Information Package and made available for viewing on the HLS 2024-1 website at "market.missioncap.com".  Supplements may also include certain corrections or clarifications of data contained in the Asset Review Files. |

US Dept. of Housing and Urban Development
HLS 2024-1                                                    **Bidder Information Package**

| | |
|---|---|
| **Trailing Documents** | It is expected that the Transaction Specialist will continue to receive various documents relating to the Mortgage Loans after the HUD Due Diligence period begins ("Trailing Documents"). These Trailing Documents will be imaged and placed on the secure HLS 2024-1 website and made available to registered Bidders. Notices of all such updates to the Loan Information and to the Asset Review Files will be provided to Bidders on a periodic basis during the Due Diligence period. |
| **Special Loan Considerations** | Bidders are encouraged to perform and are responsible for performing their own due diligence on the Mortgage Loans. Without limiting the foregoing, the following information has come to HUD's attention regarding certain of the Mortgage Loans about which Bidders should be aware: |

*Bankruptcy Proceedings:* Certain Mortgagors, including Mortgagors of healthcare facilities and/or their affiliated and/or unaffiliated healthcare operators may be in bankruptcy. The Mortgagors' obligations and HUD's rights as mortgagee under the Mortgage Loans, including the application of payments pertaining to, and interests in, among other things, collateral related to the Mortgage Loans, may be affected by any such bankruptcy, or other court orders, and related settlements. In addition, prior to confirmation of a bankruptcy plan of reorganization that is no longer subject to appeal, the UPB as well as escrow and other balances, if any, relating to any such Mortgage Loan may be subject to change. Accordingly, Bidders are advised that HUD's representations and warranties, as they relate to the UPB contained on the Mortgage Loan Schedule with respect to Bankruptcy Mortgage Loans, will be qualified in their entirety by bankruptcy court orders insofar as any bankruptcy or other court orders may affect such balances. With respect to any Bankruptcy Mortgage Loan, HUD will provide Bidders with a conditional representation and warranty regarding (i) the UPB as of the later of the Petition Date or the Assignment Date and (ii) the amount received by HUD from the later of the Petition Date or the Assignment Date through the Cut-Off Date.

*Investigations:* Certain Mortgagors, healthcare operators, and their affiliates may be under investigation or subject to future investigation for violations of law, rules and regulations, or the Regulatory Agreements. Such investigations (if underway) may be at various stages, may continue (or be initiated) after the Closing Date, and may or may not lead to any formal enforcement or other action or claim for violations (including after the Closing Date).

Airamidma4-Willimansett Center East (FHA Case - 023-22105), Willimansett Center West (FHA Case - 023-22106), Airamidma4-Governor-s Center (023-22107), and Judson Care Center (FHA Case - 046-43063) are in Mortgagee in Possession (MIP) status. These properties are currently being managed by a HUD contracted property management company that will cease management on the Closing Date.

## VI. DUE DILIGENCE DATA AVAILABILITY MATRIX

| Information Availability | Basic Loan Information | Asset Review File |
|---|:---:|:---:|
| Selected Attributes | ✓ | ✓ |
| Collateral Documents Inventory | | ✓ |
| Recent Site Inspections/Appraisals | | ✓ |
| Bankruptcy Search | | ✓ |
| Correspondence - Servicing File | | ✓ |
| Payment History | | ✓ |
| UCC Information | | ✓ |
| Asset Summary Report (Narrative) | ✓ | ✓ |
| Balances as of July 20, 2024 | ✓ | ✓ |

Access to the Basic Loan Information is provided with the Bidder Information Package and the Asset Review Files are provided online at the HLS 2024-1 website.  These items are provided free of charge to all Bidders.

***Bidders should note that not all of the items listed above apply to the Mortgage Loans. Additionally, information is only provided to the extent available.***

## VI. CLOSING INSTRUCTIONS

| | |
|---|---|
| **Closing Date** | HUD will close the loan sales on September 11, 2024, as scheduled by HUD's Office of General Counsel with each Successful Bidder (the "Closing Date"). |
| **Transfer Documents** | HUD will prepare the Transfer Documents. The Transfer Documents will be substantially in the form of the Transfer Documents included in the Loan Sale Agreement with those modifications as are necessary to complete the missing information required to be inserted therein and as may be required to comply with the Transfer/Recordation Requirements. |
| **Closing Date Payment Notice** | At least one (1) Business Day prior to the Closing Date, HUD will provide the Successful Bidder(s) with a written Closing Date Payment Notice identifying the Closing Date Payment as described in the Loan Sale Agreement. |
| **Mortgage Loan Payments** | Payments received by HUD from any Mortgagor after the Cut-Off Date will be allocated according to the terms of the Loan Sale Agreement. |
| **Closing Date Payment** | The Closing Date Payment must be in the form of immediately available funds and sent in the manner designated in the Closing Date Payment Notice. In no event shall the Closing Date Payment be delivered to HUD later than 1:00 p.m. ET on the Closing Date. |
| **Mortgage Loan Documents and Transfer Documents** | Subject to limitations described in the Loan Sale Agreement, the Mortgage Loan Documents and Transfer Documents will be delivered to the Successful Bidder(s) as provided in the Loan Sale Agreement. |
| **Project Information and Servicing Files** | Within five (5) Business Days after the Closing Date, each Successful Bidder shall arrange to retrieve, at its own cost, the Servicing Files and Project Information with respect to each Mortgage Loan transferred and assigned to the Successful Bidder on the Closing Date from the HUD Due Diligence Facility as provided in the Loan Sale Agreement. |
| **Recordation of Transfer Documents** | Subject to limitations described in the Loan Sale Agreement for Bankruptcy Mortgage Loans, the Successful Bidder shall, at its own cost and expense, cause all applicable Transfer Documents with respect to each Mortgage Loan to be delivered for recording or filing in the appropriate land or other records of the appropriate county or other jurisdiction as soon as practicable after the Closing Date, and in all events no later than the thirtieth (30th) day after the Closing Date. |

**US Dept. of Housing and Urban Development**
**HLS 2024-1**                                                          <u>Bidder Information Package</u>

**Assignment**          Prior to the sale, assignment, and transfer of each Mortgage Loan
                        to the Successful Bidder, the Successful Bidder may not assign the
                        Loan Sale Agreement or any rights or obligations thereunder.

**US Dept. of Housing and Urban Development**
**HLS 2024-1** _____    <u>**Bidder Information Package**</u>

## VII. QUESTION SUBMITTAL VIA EMAIL

Questions may be submitted in writing about the specific Mortgage Loans included in HLS 2024-1.

You MUST include the FHA Case Number, Pool Number and Asset Name for each question.

Questions can be emailed to the HLS 2024-1 Sale Coordinator at the following address:

**HUDSales@falconassetsales.com**

Once questions have been answered, they will be posted on the HLS 2024-1 website at market.missioncap.com.

## VIII. HUD SERVICING PRACTICES AND POST SALE REQUIREMENTS

**Servicing**

**The Mortgage Loans will be sold and servicing released.** The Successful Bidders will be responsible for servicing the Mortgage Loans from and after the Closing Date.

The Mortgage Loans are currently being serviced for HUD by Dynaxys, LLC ("DAS") in Silver Spring, MD. HUD's Multifamily Notes Servicing Branch can be contacted for further details. HUD handles payoffs, bankruptcies, foreclosures, workout negotiations and releases of reserve for replacement funds for the Mortgage Loans.

**Service Charges**

The Mortgage Loans require the Mortgagor to pay to HUD the HUD Service Charge. The HUD Service Charge will not be chargeable by Successful Bidders for any period after the Closing Date; however, Successful Bidders may seek to collect HUD Service Charges accrued and unpaid as of the Closing Date.

**Escrow for Replacement Reserves**

Depending upon the delinquency status of the Mortgage Loans as of the Cut-Off Date, amounts in reserve for replacement accounts will, at HUD's discretion, be (i) refunded to the Mortgagor, (ii) applied against the Mortgagor's outstanding arrearage or (iii) used for other authorized purposes. HUD shall not be construed to have sold, assigned or transferred to Successful Bidder any of HUD's rights to the reserve for replacement account under the Regulatory Agreement.

**Escrow for Taxes**

Except for any Bankruptcy Mortgage Loan, amounts held in tax escrow accounts as of the Cut-Off Date will be credited against the amount due from the Successful Bidder, and the Successful Bidder will be required to establish a replacement tax escrow account in the amount of the credit plus additional amounts, if any, as specified in the Loan Sale Agreement. HUD makes no representation as to the adequacy of any tax escrow account or whether tax payments are current or have been advanced by HUD. HUD assumes no responsibility for any unpaid or overdue taxes. A detailed listing of the tax escrow account current status for each Mortgage Loan may be contained in the Asset Review File. HUD will have no liability for any interest, late fees, or penalties incurred by the Successful Bidder as a result of late or unpaid taxes or insurance premiums, regardless of when such liability may have accrued.

**Other Escrows**

Subject to any Bankruptcy Code, court orders, or other legal requirements that prohibit the application of reserve and escrow accounts as stated next: HUD usually does not require Mortgagors to escrow for hazard insurance. Additionally, HUD does not force-place insurance coverage, even if notified of a lapse in insurance. The Successful Bidder assumes all risks of a Mortgaged Property not being covered by hazard insurance. The hazard insurance escrow accounts will be treated in the same manner as the tax escrow accounts in connection with the Sale. HUD may also hold miscellaneous escrow accounts with respect to the Mortgage Loans. In connection with the Sale, miscellaneous escrows will be handled in the same manner as specified in the Loan Sale Agreement.

**Post-Sale
Regulatory
Requirements**

If applicable, HUD regulations at 24 C.F.R. §290.37, §290.39, §290.34 and the Protecting Tenants at Foreclosure Act of 2009 (codified at 12 U.S.C. 5201 note; 12 U.S.C. 5220 note; 42 U.S.C. 1437f note) (PTAF) impose post-sale requirements on the purchasers of the Mortgage Loans and their successors and assigns. Section 8.04 of the Loan Sale Agreement ("LSA") contains provisions that implement these regulations. All bidders should carefully review Section 8.04 of the LSA.

Section 8.04A of the LSA applies to delinquent Mortgage Loans that are secured by properties receiving payments under a HAP Contract. Section 8.04A requires the purchaser of such Mortgage Loans to impose covenants running with the land as part of any restructuring, final compromise, or foreclosure of the Mortgage Loan. The covenants require any subsequent purchaser of the Mortgaged Property to assume the obligations on any outstanding HAP contract and any tenant-based Section 8 housing assistance payments contract, and require that tenant leases be protected in the event of a foreclosure. The text of the covenants is set forth in Section 8.04A and Attachment H-1 of the LSA.

Section 8.04B of the LSA applies to all delinquent Mortgage Loans. Section 8.04B requires the purchaser of such a Mortgage Loan to impose covenants running with the land as part of any restructuring, final compromise, or foreclosure of the Mortgage Loan. The covenants prohibit the owner of the Mortgaged Property from discriminating against any tenant because such tenant receives tenant-based rental assistance. The text of the covenants is set forth in Section 8.04B and Attachment H-2 of the LSA.

| | |
|---|---|
| **Post-Sale Regulatory Requirements (cont.)** | Section 8.04C of the LSA applies to delinquent Mortgage Loans that are occupied by very low-income families (as defined in 24 C.F.R. § 5.603) as of the date any restructuring, final compromise, or foreclosure of the Mortgage Loan and who are not receiving housing assistance. Section 8.04C requires the purchaser of such Mortgage Loans to impose covenants running with the land as part of any restructuring, final compromise, or foreclosure of the Mortgage Loan. For a period of two (2) years beginning at the date of any restructuring, final compromise, or foreclosure, the covenants require any subsequent purchaser of the Mortgaged Property to not charge such very-low income and unsubsidized tenants rent in excess of thirty percent (30%) of the monthly adjusted income (as defined in 24 C.F.R. § 5.603) of the family. The text of the covenants is set forth in Section 8.04C and Attachment H-3 of the LSA. |

Section 8.04D of the LSA applies in the event of any foreclosure of any dwelling or residential real property under the PTAF. Section 8.04D requires the purchaser of such Mortgage Loans to impose covenants running with the land as part of any foreclosure of the Mortgage Loan. The covenants require any subsequent purchaser of the Mortgaged Property to provide any bona fide tenant, as defined in the text of the covenants, 90 days prior notice to vacate the unit. Any tenant who is under a valid lease agreement entered into before the notice of foreclosure that entitles the tenant to occupy the premises until the end of the remaining term of the lease, will continue to maintain their rights under the lease agreement. Where the owner of Mortgaged Property intends on occupying the unit as a primary residence, where the tenant is a tenant at will under state law of the Mortgaged Property, or where the tenant occupies the unit without a lease, such tenant may be required by Owner to vacate the unit provided that the tenant is given 90 days prior notice by the Owner. The text of the covenants is set forth in Section 8.04D and Attachment H-4 of the LSA.

Section 8.04F of the LSA applies to Subordinate Mortgage Loans. A Subordinate Mortgage Loan is a loan included in the Sale that is subordinate to an FHA-insured first mortgage loan that is **not** included in the Sale. Section 8.04D provides that in the event of a foreclosure of a Subordinate Mortgage Loan, the mortgagee and any other third party who takes possession or ownership of the Mortgaged Property will be required to comply with the requirements of 24 CFR part 200, subpart H, the Regulatory Agreement relating to the FHA-insured first mortgage loan and any applicable HUD Handbook requirements, and file a Previous Participation Certification in either the electronic Active Partners Performance System (APPS) or on HUD Form 2530.

HUD may, in its sole and absolute discretion, include these covenants or references to these covenants in the Assignment of Mortgage and other Transfer Documents that must be recorded by Successful Bidders pursuant to the LSA.

**HUD Regulatory Agreements**    Effective as of the Closing Date, HUD will release prospectively the Regulatory Agreements for the Mortgage Loans except the Subordinate Mortgage Loans, if any and the Bankruptcy Mortgage Loans, if any. For the Subordinate Mortgage Loans, the Regulatory Agreements will remain in effect. For any Bankruptcy Mortgage Loan subject to any Bankruptcy Code, court orders, or other lawfully required limitations and conditions, HUD's Regulatory Agreements will terminate according to the terms of the Regulatory Agreements and Mortgage Loans. Releases of Regulatory Agreements associated with Bankruptcy Mortgage Loans may be delayed by virtue of the bankruptcy proceedings.

The release of a Regulatory Agreement with respect to a Mortgage Loan shall be void if the sale of that Mortgage Loan is rescinded. Moreover, the release of a Regulatory Agreement does not affect any right that HUD may have to seek recourse for a breach of such Regulatory Agreement that occurred prior to the date of the release. After the Closing Date, HUD may pursue claims against any person or entity that violated or caused a violation of a Regulatory Agreement with respect to any Mortgage Loan. Any funds recovered in satisfaction or settlement of any claim that is or could be subject to an action under 12 U.S.C. § 1715z-4a or 1715z-19, whether such claim is brought, or satisfaction or settlement obtained, before or after the Closing Date, shall inure to the benefit of and be retained by HUD.

US Dept. of Housing and Urban Development
HLS 2024-1                                                      Bidder Information Package

## IX. KEY CONTACTS

### General

Phillip Thigpen
phillip.thigpen@44thst.com
917-834-4025

Spencer Kirsch
skirsch@missioncap.com
212-941-2270

Glenn Ervin
gervin@falconcapitaladvisors.com
703-403-4575

### Bidder Registration / Qualification

Gabrielle Mclaughlin
gmclaughlin@guidehouse.com
212-901-6956

Janice Francis
jfrancis@missioncap.com
929-575-5909

### Data Room/Mission Market (Accessing the imaged documents)

Debbie Johnston
djohnston@missioncap.com
512-789-3701

Janice Francis
jfrancis@missioncap.com
929-575-5909

### Bid Platform

John Jenkins
jjenkins@missioncap.com
908-698-7250

Janice Francis
jfrancis@missioncap.com
929-575-5909

Spencer Kirsch
skirsch@missioncap.com
212-941-2270

## X. HUD HEALTHCARE RELATED LOAN PROGRAMS

**The following describes various HUD loan programs under which the Mortgage Loans may have been originated:**

### 223(a)(7) - Refinanced Insurance Housing

Section 223(a)(7) of the National Housing Act gives FHA the authority to refinance FHA-insured loans. Under this program, the refinanced principal amount of the mortgage may be the lesser of the original amount of the existing mortgage or the remaining unpaid principal balance of the loan. Loans insured under any sections of the National Housing Act may be refinanced under 223(a)(7), including those previously refinanced under 223(a)(7).

### 223(f) – Existing Multifamily Rental Housing

Section 223(f) of the National Housing Act authorizes HUD to insure mortgages made by private lenders for the purchase or refinancing of existing apartment projects; to refinance an existing cooperative housing project; or the purchase and conversion of an existing rental project to cooperative housing. Section 207 pursuant to Section 223(f) can be used for projects originally financed with or without federal mortgage insurance that do not require substantial rehabilitation. The projects must be at least five units and must be at least three years old. Legislation establishing this program was enacted in 1974.

### Section 232 - Mortgage Insurance for Nursing Homes, Intermediate Care, Board & Care and Assisted-living Facilities

Section 232 of the National Housing Act insures mortgage loans to facilitate the construction and substantial rehabilitation of nursing homes, intermediate care facilities, board and care homes, and assisted-living facilities. Section 232/223(f) allows for the purchase or refinancing with or without repairs of existing projects not requiring substantial rehabilitation.

### Section 242 - Mortgage Insurance for Hospitals

Section 242 of the National Housing Act provides mortgage insurance for acute care hospital facilities ranging from large teaching institutions to small rural critical access hospitals. Uses may include remodeling, expansion, modernization, equipment, refinancing, and acquisition.

## XI.  PORTFOLIO INFORMATION

THE FOLLOWING INFORMATION REGARDING THE MORTGAGE LOANS IS BEING FURNISHED FOR THE CONVENIENCE OF THE BIDDERS.  THIS INFORMATION DOES NOT PURPORT TO BE ALL-INCLUSIVE, TO CONTAIN ALL OF THE INFORMATION A BIDDER SHOULD CONSIDER OR THAT MAY BE MATERIAL IN EVALUATING A PURCHASE OF ANY OR ALL OF THE MORTGAGE LOANS.  NO REPRESENTATION OR WARRANTY, WHETHER EXPRESS, IMPLIED OR CREATED BY OPERATION OF LAW, AS TO THE ACCURACY OR COMPLETENESS OF ANY OF THE INFORMATION CONTAINED IN THESE MATERIALS IS MADE BY HUD, IDEOGENICS, LLC, FALCON CAPITAL ADVISORS, OR THEIR RESPECTIVE AFFILIATES, CONTRACTORS, SUBCONTRACTORS, DIRECTORS, OFFICERS, PARTNERS, EMPLOYEES, COUNSEL, ADVISORS OR AGENTS. THIS INFORMATION SHALL NOT BE RELIED UPON AS A PROMISE OR REPRESENTATION, WHETHER AS TO THE PAST, PRESENT, OR FUTURE.  BIDDERS SHOULD CONDUCT THEIR OWN INDEPENDENT INVESTIGATION AND ANALYSIS OF THE MORTGAGE LOANS, INCLUDING WITHOUT LIMITATION, THE INFORMATION CONTAINED OR REFERRED TO HEREIN, AND SHOULD CONSULT WITH THEIR OWN ADVISORS REGARDING PURCHASE OF ANY OR ALL OF THE MORTGAGE LOANS. THESE MATERIALS HAVE BEEN COMPILED AS OF THE DATE OF THE BIDDER INFORMATION PACKAGE AND MAY CHANGE.

For bidding purposes, the Mortgage Loans have been placed into fourteen (14) individual loan pools.

All of the Mortgage Loans are defaulted obligations as further described in the Loan Sale Agreement. Certain characteristics of the Loan Pools are presented below.

- *Pool 120:*  This Pool is comprised of one (1) Hospital Mortgage Loan with an approximate UPB of $12.13 million. The property is located in La Grange, TX and the Mortgage Loan is a first lien as of the date of assignment to HUD. The property collateralizing the Mortgage Loan in this Pool is a vacant hospital that was previously licensed for 65 beds.

- *Pool 230:*  This Pool is comprised of one (1) defaulted Healthcare Mortgage Loan with an approximate UPB of $3.46 million. The property is located in Chicopee, MA and the Mortgage Loan is a first lien as of the date of assignment to HUD. The property collateralizing the Mortgage Loan in this Pool is a vacant healthcare facility that was previously licensed for 85 beds.

- *Pool 231:*  This Pool is comprised of one (1) defaulted Healthcare Mortgage Loan with an approximate UPB of $5.94 million. The property is located in Chicopee, MA and the Mortgage Loan is a first lien as of the date of assignment to HUD. The property collateralizing the Mortgage Loan in this Pool is a vacant healthcare facility that was previously licensed for 103 beds.

US Dept. of Housing and Urban Development
HLS 2024-1                                                                      Bidder Information Package

- *Pool 232:* This Pool is comprised of one (1) defaulted Healthcare Mortgage Loan with an approximate UPB of $4.54 million. The property is located in Westfield, MA and the Mortgage Loan is a first lien as of the date of assignment to HUD. The property collateralizing the Mortgage Loan in this Pool is a vacant healthcare facility that was previously licensed for 100 beds.

- *Pool 233*: This Pool is comprised of one (1) defaulted Healthcare Mortgage Loan with an approximate UPB of $6.06 million. The property is located in New Castle , PA and the Mortgage Loan is a first lien as of the date of assignment to HUD. The property collateralizing the Mortgage Loans in this Pool is a vacant healthcare facility that was previously licensed for 72 beds.

- *Pool 234*: This Pool is comprised of one (1) defaulted Healthcare Mortgage Loan with an approximate UPB of $4.44 million. The property is located in Cleveland, OH and the Mortgage Loan is a first lien as of the date of assignment to HUD. The property collateralizing the Mortgage Loans in this Pool is an operating healthcare facility with 51 units and licensed for 98 beds.

- *Pool 235*: This Pool is comprised of one (1) defaulted Healthcare Mortgage Loan with an approximate UPB of $6.20 million. The property is located in Cincinnati, OH and the Mortgage Loan is a first lien as of the date of assignment to HUD. The property collateralizing the Mortgage Loans in this Pool is a vacant healthcare facility that was previously licensed for 139 beds.

- *Pool 236:* This Pool is comprised of one (1) defaulted Healthcare Mortgage Loan with an approximate UPB of $3.09 million. The property is located in Maurertown, VA and the Mortgage Loan is a first lien as of the date of assignment to HUD. The property collateralizing the Mortgage Loan in this Pool is a vacant healthcare facility that was previously licensed for 52 beds.

- *Pool 237:* This Pool is comprised of one (1) defaulted Healthcare Mortgage Loan with an approximate UPB of $20.99 million. The property is located in Chicago, IL and the Mortgage Loan is a first lien as of the date of assignment to HUD. The property collateralizing the Mortgage Loan in this Pool is an operating healthcare facility with 203 units and 170 operating licensed beds with a maximum of 203 licensed beds.

- *Pool 238:* This Pool is comprised of one (1) defaulted Healthcare Mortgage Loan with an approximate UPB of $17.39 million. The property is located in Matteson, IL and the Mortgage Loan is a first lien as of the date of assignment to HUD. The property collateralizing the Mortgage Loan in this Pool is a vacant healthcare facility that was previously licensed for 80 beds.

- *Pool 239:* This Pool is comprised of one (1) defaulted Healthcare Mortgage Loan with an approximate UPB of $10.85 million. The property is located in Andover, KS and the Mortgage Loan is a first lien as of the date of assignment to HUD. The property collateralizing the

US Dept. of Housing and Urban Development
HLS 2024-1                                                                    Bidder Information Package

Mortgage Loan in this Pool is an operating healthcare facility with 88 units and 90 operating licensed beds with a maximum of 96 licensed beds.

- *Pool 240:* This Pool is comprised of two (2) defaulted Healthcare Mortgage Loan with an approximate combined UPB of $9.66 million. The property securing these two loans is located in Lakeside, AZ and the Mortgage Loans are a first and second lien as of the date of assignment to HUD. The property collateralizing the Mortgage Loans in this Pool is an operating healthcare facility with 60 units and 65 operating licensed beds with a maximum of 78 licensed beds.

- *Pool 241:* This Pool is comprised of one (1) defaulted Healthcare Mortgage Loan with an approximate UPB of $12.94 million. The property is located in Chandler, AZ and the Mortgage Loan is a first lien as of the date of assignment to HUD. The property collateralizing the Mortgage Loan in this Pool is an operating healthcare facility with 99 units and licensed for 110 beds.

- *Pool 242:* This Pool is comprised of one (1) defaulted Healthcare Mortgage Loan with an approximate UPB of $10.40 million. The property is located in National City, CA and the Mortgage Loan is a first lien as of the date of assignment to HUD. The property collateralizing the Mortgage Loan in this Pool is an operating healthcare facility with 57 units and licensed for 85 beds.

The following tables provide a summary of certain characteristics of the Portfolio, the Mortgage Loans, and the Loan Pools as of July 19, 2024.  Bidders are advised that Bids will be based on the Mortgage Loan Schedule reflecting UPBs as of the July 31, 2024 Cut-Off Date. The Mortgage Loan Schedule will be provided in a Supplement to the Bidder Information Package prior to the Bid Date.

## PORTFOLIO SUMMARY AND POOLING

| HLS 2024-1 Sale Date August 21, 2024 | | | | | |
|---|---|---|---|---|---|
| FHA Case Number | Pool | Project Name | City | State | Unpaid Principal Balance |
| Hospital | | | | | |
| 115-13006 | 120 | ST. MARKS MEDICAL CENTER | La Grange | TX | $12,128,588.71 |
| | | | Total UPB Hospital Loans | | $12,128,588.71 |
| Healthcare | | | | | |
| 023-22105 | 230 | AIRAMIDMA4-WILLIMANSETT CENTER EAST | Chicopee | MA | $3,455,465.81 |
| 023-22106 | 231 | WILLIMANSETT CENTER WEST | Chicopee | MA | $5,936,033.84 |
| 023-22107 | 232 | AIRAMIDMA4-GOVERNOR-S CENTER | Westfield | MA | $4,538,682.28 |

US Dept. of Housing and Urban Development
HLS 2024-1                                                                                      Bidder Information Package

| 033-22064 | 233 | RHODES ESTATES | New Castle | PA | $6,055,973.02 |
|---|---|---|---|---|---|
| 042-22145 | 234 | FAIRFAX PLACE | Cleveland | OH | $4,439,899.68 |
| 046-43063 | 235 | JUDSON CARE CENTER | Cincinnati | OH | $6,195,470.12 |
| 051-22149 | 236 | DUTCH HAVEN ASSISTED LIVING | Maurertown | VA | $3,091,799.82 |
| 071-22137 | 237 | RAINBOW BEACH NURSING CENTER | Chicago | IL | $20,989,197.99 |
| 071-43290 | 238 | ALEXI SENIOR LIVING | Matteson | IL | $17,389,891.58 |
| 085-22097 | 239 | VICTORIA FALLS | Andover | KS | $10,850,960.43 |
| 123-43061 | 240 | SOLTERRA AT WHITE MOUNTAINS | Lakeside | AZ | $5,292,735.68 |
| 123-43061A | | | | | $4,363,172.61 |
| 123-43110 | 241 | SOLTERRA SENIOR LIVING | Chandler | AZ | $12,936,789.30 |
| 129-43033 | 242 | PLAZA VILLAGE SENIOR LIVING | National City | CA | $10,397,287.96 |
| | | | **Total UPB Healthcare Loans** | | **$115,933,360.12** |

**Total UPB**                                                                               **$128,061,948.83**

US Dept. of Housing and Urban Development
HLS 2024-1                                                                    Bidder Information Package

## XII.  SELECTED ATTRIBUTES LOAN DATABASE ("SALD")

The fields for the Selected Attribute Data Dictionary and definitions are as follows:

| Column | Selected Attribute | Definition |
|---|---|---|
| A | FHA Case Number | HUD Loan Number |
| B | Property Name | The property name |
| C | Control Number | Transaction Specialist's assigned control number, if applicable |
| D | Asset Pool Number | HLS "Name" Pool Number |
| E | Asset Pool Name | HLS "Name" Pool Name |
| F | Section of Act | The Section of the Act under which the Loan was originated |
| G | Date of Assignment | The date of the assignment of the note/mortgage to HUD |
| H | Current UPB per Servicer | The current unpaid principal balance of the Loan as of a specific date. |
| I | Current Borrower | The name of the borrowing entity |
| J | Current Borrower Address #1 | The address of the current borrowing entity |
| K | Current Borrower Address #2 | Any additional address of the current borrowing entity |
| L | Current Borrower City | The city of the current borrowing entity |
| M | Current Borrower State | The state of the current borrowing entity |
| N | Current Borrower ZIP | The zip code of the current borrowing entity |
| O | Current Borrower SSN/ Tax ID | The social security number/tax ID of the current borrowing entity |
| P | Loan Assumed (Y/N) | Has the loan been assumed? (Yes/No) |
| Q | Original Borrower | The name of the original borrowing entity |
| R | Name of Current General Partner | The name of the general partner |
| S | Related Loans (Y/N) | Does the Loan have any Related Loan(s)? (Yes/No) Related Loan(s) include Associated Mortgage Loans and mortgage loans that have a common mortgagor but are secured by different mortgaged properties |
| T | Related Loan(s) - FHA # | FHA Case Number for the Related Loan(s) |
| U | Related Loan(s) Name | The property name for the Related Loan(s) |
| V | Appraisal Date | The date of the most recent appraisal in the loan file |
| W | Appraised Value | The appraised value of the collateral, generally at the time of completion of the most recent Appraisal |
| X | Loan-to-Value Ratio | (i) The Current Unpaid Principal Balance (UPB) (including, for any subordinate mortgage loan, the |

| Column | Selected Attribute | Definition |
|---|---|---|
| | | balance of any senior mortgage loans) divided by the Appraised Value |
| Y | As Stabilized Appraisal Value | The appraised value of the collateral, generally at the time of completion of the most recent Appraisal |
| Z | Original Note Date | The date of the original note |
| AA | Original Principal Balance | The original unpaid principal balance of the Loan |
| AB | Original P&I Payment | The amount of the original Principal and Interest payment |
| AC | Original Type of Payment | Fully Amortizing, Balloon, Interest Only, etc. |
| AD | Original Interest Rate (%) | The original interest rate of the Loan |
| AE | Original Interest Rate Type (Fixed or Variable) | Defines if the interest rate on the loan will fluctuate according to a stipulated index or if the rate is fixed during the life of the loan |
| AF | Original First Interest Payment Date | The date on which the first interest payment was due |
| AG | Original First P&I Payment Date | The date on which the first Principal and Interest payment was due |
| AH | Original Term (Months) | The number of months from the Original Note Date to the Original Maturity Date |
| AI | Original Amortization Term (Months) | The number of months from the Original First Principal and Interest Payment Date to the Original Maturity Date |
| AJ | Negative Amortization Allowed (Y/N) | Does the Loan have a negative amortization provision? (Yes/No) |
| AK | Original Number of Payments/Year | The original number of scheduled Principal and Interest payments per year |
| AL | Original Maturity Date | The date on which the Loan was due and payable on the Original Note Date |
| AM | Modified Loan (Y/N) | Is there a modification to the original note/mortgage? (Yes/No) |
| AN | Note Modification Date | If a Modified Loan, the most recent modification date |
| AO | Principal Balance as Modified | If a Modified Loan, the amount principal balance was modified to |
| AP | Current Type of Payment as Modified | Fully Amortizing, Balloon, Interest Only, etc. |
| AQ | Current Interest Rate | The interest rate at which interest currently accrues |
| AR | Current Interest Rate Type (Fixed or Variable) | Defines if the interest rate on the Loan will fluctuate according to a stipulated index or if the rate is fixed during the life of the loan |

| Column | Selected Attribute | Definition |
|---|---|---|
| AS | Current First P&I Payment Date | The date on which the current first Principal and Interest payment amount was due |
| AT | Current Monthly P&I | The current scheduled Principal and Interest payment amount |
| AU | Current Number of Payments/Year | The current number of scheduled Principal and Interest payments per year |
| AV | Current Term (Months) | The number of months from the Current Note/Modification Date to the Current Maturity Date |
| AW | Current Amortization Term (Months) | The number of months from the Current Note/Modification Date to the Current Maturity Date |
| AX | Remaining Term (Months) | The number of months from and including the HLS 2024-1 sale date to the Current Maturity Date |
| AY | Current Maturity Date | The date on which the Loan is due and payable |
| AZ | Are Current Schedule Payments Based on Cash Flow | Does Promissory Note stipulate that loan payments are based on some formula of cash flow (Yes/No) |
| BA | Frequency Of Payment | How often cash payments made, if available |
| BB | Does Loan Have Stated/Minimum Payment Amount | Is there a stated minimum payment regardless of cash flow? |
| BC | Brief Description of Cash Flow Payments | A brief description of the payment formula |
| BD | Management Company/Operator Name | The name of the management company or Operator |
| BE | % of Residential Income Collected | The percentage of residential income the management company charges |
| BF | % of Commercial Income Collected | The percentage of commercial income the management company charges |
| BG | % of Miscellaneous Income Collected | The percentage of miscellaneous income the management company charges |
| BH | Property Street #1 | The street address of the property |
| BI | Property Street #2 | Additional street address of the property |
| BJ | Property City | The property city |
| BK | Property State | The property state |
| BL | Property Type | The type of facility (Multifamily, Nursing Home, Assisted Living, Other) |
| BM | Property Subtype | The subtype of facility (Garden, Townhouse, Hi-Rise, Mid-Rise) |
| BN | Property Zip Code | The property zip code |
| BO | Gross SF Buildings | The number of square feet of floor area |
| BP | Net Rentable SF Buildings | The number of square feet of rentable space |
| BQ | Year Built | The year the property was built |

US Dept. of Housing and Urban Development
HLS 2024-1

| Column | Selected Attribute | Definition |
|--------|--------------------|------------|
| BR | Year Last Renovated | The year the property was last renovated |
| BS | Number of Buildings | The number of buildings |
| BT | Covered Parking Spaces | The number of covered parking spaces |
| BU | Un-Covered Parking Spaces | The number of uncovered parking spaces |
| BV | Multifamily Occupancy Rate % | The number of occupied Multifamily units divided by the Number of Units |
| BW | Land Area (Acres) | The number of acres of land |
| BX | MF Efficiency | The number of Multifamily efficiency units |
| BY | MF 1BR/Unknown BA | The number of Multifamily 1br units with unknown # of bathrooms. |
| BZ | MF 1BR/1BA | The number of Multifamily 1br/1ba units |
| CA | MF 1BR/1-5BA | The number of Multifamily 1br/1.5ba units |
| CB | MF 2BR/Unknown BA | The number of Multifamily 2br units with unknown # of bathrooms. |
| CC | MF 2BR/1BA | The number of Multifamily 2br/1ba units |
| CD | MF 2BR/1-5BA | The number of Multifamily 2br/1.5ba units |
| CE | MF 2BR/2BA | The number of Multifamily 2br/2ba units |
| CF | MF 3BR/Unknown BA | The number of Multifamily 3br units with unknown # of bathrooms. |
| CG | MF 3BR/1-5BA | The number of Multifamily 3br/1.5ba units |
| CH | MF 3BR/2BA | The number of Multifamily 3br/2ba units |
| CI | MF Other | The number of Multifamily other units |
| CJ | No. of Units (Multifamily) | The total number of Multifamily units |
| CK | MF Total Area (SF) | The total square footage of Multifamily units |
| CL | MF Average Rent Per SF | The weighted average monthly rent per square foot of all Multifamily units |
| CM | Leased Facility | Is the facility leased? (Yes/No) - Healthcare only |
| CN | Tenant Name | The name of the entity which leases the property |
| CO | Tenant Address | The address of the entity which leases the property |
| CP | Tenant City | The city of the entity which leases the property |
| CQ | Tenant State | The state of the entity which leases the property |
| CR | Tenant Zip | The zip code of the entity which leases the property |

**US Dept. of Housing and Urban Development**
**HLS 2024-1**                                                                              <u>**Bidder Information Package**</u>

| Column | Selected Attribute | Definition |
|---|---|---|
| CS | Certification of Need Date | The date of the certificate of need for Healthcare assets where applicable |
| CT | License Expiration Date | Expiration date of Healthcare license |
| CU | NH/AL Efficiency | The number of Nursing Home/Assisted Living efficiency units |
| CV | NH/AL 1BR/1BA | The number of Nursing Home/Assisted Living 1BR/1BA units |
| CW | NH/AL 1BR/1-5BA | The number of Nursing Home/Assisted Living 1BR/1.5BA units |
| CX | NH/AL 2BR/1BA | The number of Nursing Home/Assisted Living 2BR/1BA units |
| CY | NH/AL 2BR/1-5BA | The number of Nursing Home/Assisted Living 2BR/1.5BA units |
| CZ | NH/AL 2BR/2BA | The number of Nursing Home/Assisted Living 2BR/2BA units |
| DA | NH/AL 3BR/1-5BA | The Number of Nursing Home/Assisted Living 3BR/1.5BA units |
| DB | NH/AL 3BR/2BA | The Number of Nursing Home/Assisted Living 3BR/2BA units |
| DC | NH/AL Total Units | The total number of Nursing Home/Assisted Living units |
| DD | No. of Beds - Licensed (Healthcare) | The total number of Licensed Nursing Home/Assisted Living beds |
| DE | Congregate Care Units | The total number of Congregate Care units |
| DF | Congregate Beds | The total number of Congregate Care beds |
| DG | NH/AL Total SF | The total square feet of all Nursing Home/Assisted Living units |
| DH | NH/AL Number Self Pay/Private Insurance Patients | The number of Nursing Home/Assisted Living beds occupied by self-pay/private insurance residents |
| DI | NH/AL Number Medicare Patients | The number of Nursing Home/Assisted Living beds occupied by Medicare residents |
| DJ | NH/AL Number Medicaid Patients | The number of Nursing Home/Assisted Living beds occupied by Medicaid residents |
| DK | NH/AL State Aid Patients | The number of Nursing Home/Assisted Living beds occupied by State Aid residents |
| DL | NH/AL Number VA Patients | The number of Nursing Home/Assisted Living beds occupied by VA residents |
| DM | NH/AL Number Other Patients | The number of Nursing Home/Assisted Living beds occupied by other residents |

US Dept. of Housing and Urban Development
HLS 2024-1

| Column | Selected Attribute | Definition |
|---|---|---|
| DN | NH/AL % Self Pay/Private Insurance | The number of Nursing Home/Assisted Living beds occupied by self-pay/private insurance residents divided by the NH/AL Total Beds |
| DO | NH/AL % Medicare | The number of Nursing Home/Assisted Living beds occupied by Medicare Residents divided by the NH/AL Total Beds |
| DP | NH/AL % Medicaid | The number of Nursing Home/Assisted Living beds occupied by Medicaid residents divided by the NH/AL Total Beds |
| DQ | NH/AL % State Aid | The number of Nursing Home/Assisted Living beds occupied by State Aid residents divided by the NH/AL Total Beds |
| DR | NH/AL % VA/Other | The number of Nursing Home/Assisted Living beds occupied by VA or Other residents divided by the NH/AL Total Beds |
| DS | Occupancy NH / AL | The number of total Nursing Home/Assisted Living occupied beds divided by the NH/AL Total Beds |
| DT | Lien Position | The lien position of the Loan |
| DU | Estate (Fee Simple, Joint Tenancy, Tenants in Common, Other) | Ownership Position (Fee Simple, Leased Fee, Joint Tenancy, Tenants in Common, etc.) |
| DV | Real Estate Taxes | Amount of real estate taxes |
| DW | Unpaid Taxes | Amount of unpaid taxes |
| DX | Pre-Payment Penalty | Is there a pre-payment penalty? (Yes/No) |
| DY | Years Locked | The number of years during which prepayment is prohibited |
| DZ | Pre-Payment Penalty Expiration Date | The date on which the Pre-Payment Penalty expires |
| EA | Pre-Payment Fee Schedule | The terms of the Pre-Payment Penalty |
| EB | Describe Any Other Pre-Payment Provisions | Additional pre-payment comments |
| EC | Recourse (Y/N) | Does the Borrower have liability for payment? (Yes/No) |
| ED | Evidence of Borrower in Bankruptcy (Y/N) | Is the Borrower currently in bankruptcy? (Yes/No) |
| EE | Evidence of HUD in MIP Status (Y/N) | Is HUD Mortgagee-in-Possession? (Yes/No) |

| Column | Selected Attribute | Definition |
|--------|--------------------|------------|
| EF | Is Court Appointed Receiver in Place (Y/N) | Is there a court appointed receiver? (Yes/No) |
| EG | Effective Date of MIP | If HUD is MIP, what is the effective date? |
| EH | Provisional Workout Agreement (PWA) (Y/N) | Is there a provisional workout agreement (PWA) for the Loan? (Yes/No) |
| EI | PWA Expiration Date | The date the Provisional Workout Agreement (PWA) expires |
| EJ | Delinquent Interest | The amount of delinquent interest owed by the Borrower as of a specific date |
| EK | Delinquent Principal | The amount of delinquent principal owed by the Borrower as of a specific date |
| EL | Current Deferred Interest Balance | The amount of deferred interest as of a specific date |
| EM | Tax Escrow Balance | Balance in the tax escrow account as of a specific date |
| EN | Hazard Insurance Escrow Balance | Balance in the hazard insurance escrow account as of a specific date |
| EO | Reserve for Replacement Escrow Balance | Balance in the reserve for replacement escrow account as of a specific date |
| EP | Miscellaneous Escrow Balance | Balance in the miscellaneous escrow account as of a specific date |
| EQ | P&I Collected over last 12 months | The aggregate principal and interest collected either by, or on behalf of HUD during the 12-month period from August 1, 2023 through July 20, 2024. |
| ER | P&I Collected as a % of UPB | Principal and Interest Collected over Last 12 Months, or if less then annualized, as a percentage of Current Unpaid Principal Balance (UPB) |
| ES | Number of Months Serviced | The number of months serviced by DAS for HUD |
| ET | Latest Audited Financial Statement Date | Date of last audited financial statement in the HUD FASS database |
| EU | Latest Year Number of Months Reported | Number of months included on the latest audited financial statement received from FASS database |
| EV | Latest Year Total Revenue | Total revenue reported on the latest audited financial statement received from FASS database |
| EW | Latest Year Total Expenses | Total expenses excluding mortgage or bond interest reported on the latest audited financial statement received from FASS database |
| EX | Latest Year NOI | The latest fiscal/calendar year net operating income |
| EY | Second Latest Audited Financial Statement Date | Date of second latest audited financial statement in the HUD FASS database |

US Dept. of Housing and Urban Development
HLS 2024-1                                                                   Bidder Information Package

| Column | Selected Attribute | Definition |
|---|---|---|
| EZ | Second Latest Number of Months Reported | Number of months included in the second latest audited financial statement received from FASS database |
| FA | Second Latest Year Total Revenue | Total revenue reported on the second latest audited financial statement received from FASS database |
| FB | Second Latest Year Total Expenses | Total expenses excluding mortgage or bond interest reported on the second latest audited financial statement received from FASS database |
| FC | Second Latest Year NOI | The second latest fiscal/calendar year net operating income |
| FD | Third Latest Audited Financial Statement Date | Date of third latest audited financial statement in the HUD FASS database |
| FE | Third Latest Year Number of Months Reported | Number of months included in the third latest audited financial statement received from FASS database |
| FF | Third Latest Year Total Revenue | Total revenue reported on the third latest audited financial statement received from FASS database |
| FG | Third Latest Year Total Expenses | Total expenses excluding mortgage or bond interest reported on the third latest audited financial statement received from FASS database |
| FH | Third Latest Year NOI | The third latest fiscal/calendar year net operating income |
| FI | 1Lien Lender Name | The name of the lender in first lien position |
| FJ | 1Lien Current Loan Balance | The current unpaid principal balance of the first lien loan |
| FK | 1Lien Loan Status | Is the first lien loan performing or non-performing? |
| FL | 2Lien Lender Name | The name of the lender in second lien position |
| FM | 2Lien Current Loan Balance | The current unpaid principal balance of the second lien loan |
| FN | 2Lien Loan Status | Is the second lien loan performing or non-performing? |
| FO | 3Lien Lender Name | The name of the lender in third lien position |
| FP | 3Lien Current Loan Balance | The current unpaid principal balance of the third lien loan |
| FQ | 3Lien Loan Status | Is the third lien loan performing or non-performing? |
| FR | 4Lien Lender Name | The name of the lender in fourth lien position |
| FS | 4Lien Current Loan Balance | The current unpaid principal balance of the fourth lien loan |
| FT | 4Lien Loan Status | Is the fourth lien loan performing or non-performing? |

US Dept. of Housing and Urban Development
HLS 2024-1

| Column | Selected Attribute | Definition |
|---|---|---|
| FU | 5Lien Lender Name | The name of the lender in fifth lien position |
| FV | 5Lien Current Loan Balance | The current unpaid principal balance of the fifth lien loan |
| FW | 5Lien Loan Status | Is the fifth lien loan performing or non-performing? |
| FX | Lien Comments | Comments regarding liens |
| FY | Evidence of Current Insurance Policy | Is there a current insurance policy? (Yes/No) |
| FZ | Number of Section 8 Contracts | The number of Section 8 contracts for the subject property |
| GA | Total Number of Project Based Section 8 Units | The total number of project-based Section 8 units in the subject property |
| GB | Number Occupied | Total number of occupied Section 8 units in the subject property |
| GC | Number of Units Assisted | The number of units that receive Section 8 subsidy payments |
| GD | Expiration Date - Section 8 | The date that the project-based Section 8 contract expires |
| GE | LIHTC Tax Credits | Was the project financed using Low Income Housing Tax Credits "LIHTC" (Yes or No) |

## XIII.  LOAN SALE AGREEMENT

An update to the Loan Sale Agreement, Attachment F, will be posted in a Supplement to this Bidder Information Package. The Bidder Information Package Supplement will be accessible on the Transaction Specialist's website at market.missioncap.com. The document will only be accessible to the individuals who sign the Confidentiality Agreement and Qualification Statement Documents. Two (2) completed cover pages and two (2) completed and executed signature pages from the Loan Sale Agreement must be completed, electronically signed, and submitted to the Transaction Specialist no later than 5:00 p.m. ET, Monday, August 19, 2024. A provisional Loan Sale Agreement has been attached below for review.

*Note - Please do not complete and submit the version attached. The updated Loan Sale Agreement will be posted in a Supplement in the Mission Market Bidding System at market.missioncap.com.*

**HEALTHCARE LOAN SALE 2024-1**

**LOAN SALE AGREEMENT**

**BY AND BETWEEN**

**UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT ("HUD")**

**AND**

PURCHASER INFORMATION:

NAME:          _____,
a _____ organized under the laws of the State of _____ ("**Purchaser**").

ADDRESS:    _____
_____
_____
Attention: _____

TELEPHONE NO.  (   ) _____

TELECOPY NO.  (   ) _____

EMAIL        _____

TAX I.D./S.S. NO.  _____

Non-Executable

**TABLE OF CONTENTS**

PAGE

**LOAN SALE AGREEMENT** ................................................................................................................ **5**

**HEALTHCARE LOAN SALE 2024-1** ............................................................................................... **5**

**ARTICLE I** ................................................................................................................................................ **5**

**DEFINITIONS.** ......................................................................................................................................... **5**

Section 1.01  Defined Terms. .................................................................................................... 5

**ARTICLE II** .............................................................................................................................................. **11**

**PURCHASE AND SALE; CLOSING.** ........................................................................................... **11**

Section 2.01  Purchase and Sale of the Mortgage Loans; Release and Satisfaction ... 11
Section 2.02  No Interest on Deposit. ..................................................................................... 12
Section 2.03  Delivery of Closing Date Payment Notice ..................................................... 12
Section 2.04  Closing Date Payment ...................................................................................... 12
Section 2.05  Closing Date ....................................................................................................... 12
Section 2.06  Failure To Purchase All Mortgage Loans ...................................................... 12

**ARTICLE III** ........................................................................................................................................... **13**

PAYMENTS RECEIVED; ESCROW ACCOUNTS; ADJUSTMENTS ............................... 13
Section 3.01  Payments Received by HUD After the Cut-Off Date ................................... 13
Section 3.02  Clearing of Payments. ...................................................................................... 13
Section 3.03  Escrow Accounts and Reserve for Replacement Accounts. ...................... 13
Section 3.04  Post-Closing Date Adjustments and Remittances. ..................................... 14
Section 3.05  Payment of Real Estate Taxes After the Cut-Off Date. .............................. 14

**ARTICLE IV** ............................................................................................................................................ **15**

PREPARATION OF TRANSFER DOCUMENTS ..................................................................... 15
Section 4.01  Preparation of Transfer Documents. ............................................................. 15

**ARTICLE V** .............................................................................................................................................. **15**

HUD'S DELIVERY OF DOCUMENTS TO PURCHASER; RECORDATION ................ 15
Section 5.01  Delivery of Mortgage Loan Documents and Transfer Documents. ........... 15
Section 5.03  Missing Documents. .......................................................................................... 16
Section 5.04  Risk of Loss of Documents; Transportation and Delivery Expenses ........ 16
Section 5.05  Recording of Transfer Documents. ................................................................. 17
Section 5.06  Preparation of UCC Assignments. .................................................................. 17
Section 5.07  Notifications. ....................................................................................................... 17

**ARTICLE VI** ............................................................................................................................................ **17**

**LITIGATION; FEES** ............................................................................................................................ **17**

Section 6.01  Pending Legal Proceedings. ............................................................................ 17
Section 6.02  Mortgage Loan Documents in Possession of Counsel. .............................. 18

**ARTICLE VII** .......................................................................................................................................... **18**

**REPRESENTATIONS AND WARRANTIES; REMEDIES; INDEMNIFICATION; CONDITIONS** .............. **18**

Section 7.01   HUD's Representations and Warranties. ...........................................................................................18
Section 7.02   HUD's Representations and Warranties Regarding the Mortgage Loan Schedule, Closing Date
                Payment Notice and Mortgage Loans. .........................................................................................19
Section 7.03   Disclaimer of HUD's Representations and Warranties....................................................................20
Section 7.04   Survival of Representations and Warranties of HUD. ....................................................................20
Section 7.05   Remedies for Breach of Certain Representations and Warranties by HUD......................................20
Section 7.06   The Rescission Remedy...............................................................................................................21
Section 7.07   The Adjustment Payment.............................................................................................................22

**ARTICLE VIII.**............................................................................................................................................**22**

**REPRESENTATIONS, WARRANTIES AND COVENANTS OF PURCHASER**.....**22**

Section 8.01   Purchaser's Representations and Warranties. ...............................................................................22
Section 8.03   Remedies for the Breach of Purchaser's Representations or Warranties..........................................23

**ARTICLE IX** ................................................................................................................................................ **26**

**PURCHASER'S EVALUATION AND ACCEPTANCE OF RISK**.................................................... **26**

Section 9.01   Due Diligence; Independent Investigation.....................................................................................26

**ARTICLE X** ................................................................................................................................................. **26**

**PURCHASER'S INDEMNIFICATION; WAIVER AND RELEASE; REMEDIES** ........................... **26**

**FOR PURCHASER'S DEFAULT; REMEDIES FOR HUD'S DEFAULT** ......................................... **26**

Section 10.01  Purchaser's Indemnification of HUD. .........................................................................................26
Section 10.03  Remedies for Purchaser's Default; Liquidated Damages. .............................................................27
Section 10.04  Remedies for HUD's Default.......................................................................................................27

**ARTICLE XI** ............................................................................................................................................... **28**

**CASUALTY LOSS; CONDEMNATION; PREPAYMENT; LITIGATION**.......................................... **28**

Section 11.01  Rights in the Event of Casualty Loss and/or Condemnation. ........................................................28
Section 11.02  Rights in the Event of Prepayment or HUD's Acquisition of Mortgaged Property..........................28
Section 11.03  Rights in the Event of Litigation in Connection with the Sale of a Mortgage Loan..........................28

**ARTICLE XII**.............................................................................................................................................. **30**

**MISCELLANEOUS** .................................................................................................................................... **30**

Section 12.01  No Delivery of Mortgage Loan Documents, Servicing Files and Project Information Prior to
                Closing..................................................................................................................................30
Section 12.02  Drafting Presumption.................................................................................................................30
Section 12.03  Post-Closing Servicing of the Mortgage Loans. ...........................................................................30
Section 12.04  Termination of FHA Mortgage Insurance, FHA Mortgage Insurance Premium, Monthly HUD
                Service Charge and HUD Regulatory Agreement...........................................................................30
Section 12.05  Notices......................................................................................................................................30
Section 12.06  Expenses...................................................................................................................................31
Section 12.07  No Assignment. .........................................................................................................................31
Section 12.08  Governing Law; Waiver of Jury Trial; Venue. ..............................................................................32
Section 12.09  Entire Agreement.......................................................................................................................32
Section 12.10  Headings...................................................................................................................................32
Section 12.11  Time of Essence; Time. ..............................................................................................................32
Section 12.12  No Third Party Beneficiaries. ......................................................................................................33
Section 12.13  No Limitation on HUD's Ability to Administer and Enforce Laws. .................................................33
Section 12.14  Further Assurances. ...................................................................................................................33

Section 12.15   Counterparts...................................................................................................................33
Section 12.16   Informational Tax Reporting. ..........................................................................................33
Section 12.17   HUD's Reservation of Certain Rights. .............................................................................33
Section 12.18   HUD Authorized To Complete Agreement. .....................................................................34
Section 12.19   Digital Signatures. ...........................................................................................................34



## ATTACHMENTS

Attachment A          Award Letter
Attachment B          Note Endorsement
Attachment C          Assignment and Lost Note Affidavit
Attachment D          Assignment of Mortgage and Loan Documents
Attachment E-1        Release of Regulatory Agreement
Attachment E-2        Release of Regulatory Agreements (Healthcare Projects)
Attachment F          Mortgage Loan Schedule
Attachment G-1        Listing of Delinquent Mortgage Loans with HAP Contracts
Attachment G-2        Listing of Delinquent Mortgage Loans
Attachment G-3        Listing of Delinquent Mortgage Loans – Occupied & Unsubsidized Projects
Attachment G-4        Listing of Delinquent Mortgage Loans – Occupied Projects
Attachment H-1        Declaration of Covenants - Continuing HAP Contracts
Attachment H-2        Declaration of Covenants – Nondiscrimination
Attachment H-3        Declaration of Covenants – Rent Protections for Occupied & Unsubsidized Projects
Attachment H-4        Declaration of Covenants – Tenant Protections for Occupied Projects
Attachment I          Limited Power of Attorney
Attachment J          Listing of Subordinate Mortgage Loans
Attachment K          Listing of Associated Mortgage Loans

**LOAN SALE AGREEMENT**
**HEALTHCARE LOAN SALE 2024-1**


**THIS LOAN SALE AGREEMENT**, effective as of _____, between HUD and Purchaser for the sale of one or more Mortgage Loans, which are being disposed of by HUD pursuant to Section 204(a) of the Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1997, as amended from time to time (12 U.S.C. 1715z-11a(a)).


**WITNESSETH THAT:**


**WHEREAS**, on August 21, 2024, HUD offered for sale at the Healthcare Loan Sale 2024-1 ("Sale") all of its right, title and interest in the Mortgage Loans identified on the Mortgage Loan Schedule, all of which were offered without FHA Mortgage Insurance; and

**WHEREAS**, Purchaser is a sophisticated Person experienced in, or in the business of, buying and selling mortgage loans similar to those in the Sale; and

**WHEREAS**, Purchaser submitted one or more bids to purchase one or more of the Mortgage Loans; and

**WHEREAS**, pursuant to the terms and conditions set forth in this Agreement, HUD desires to sell, assign and transfer to Purchaser, and Purchaser wishes to purchase and acquire from HUD, all of HUD's right, title and interest as mortgagee in and to the Mortgage Loans.

**NOW, THEREFORE**, in consideration of the mutual agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**ARTICLE I**
**DEFINITIONS**


**Section 1.01   Defined Terms.**

Whenever used in this Agreement, the following terms shall have the meanings set forth in this Article I and shall include the plural as well as the singular, unless the context otherwise requires.

**Adjustment Payment:** As defined in Section 7.07.

**Advances:** The sum of all unreimbursed advances made by HUD after the Cut-Off Date through the Closing Date with respect to a Mortgaged Property, including, without limitation, advances for real estate taxes, special assessments, insurance, security costs, mortgagee-in-possession expenses (if applicable), or any other expenses for the protection or preservation of a Mortgaged Property.

**Aggregate Unpaid Principal Balance:** An amount equal to the sum of the Unpaid Principal Balances of the Mortgage Loans in a Mortgage Loan Pool as of the date specified herein.

**Agreement:**  This Loan Sale Agreement including all attachments, riders, amendments and supplements hereto.

**Asset Review File:**  The documents, files, data and other written information relating to a Mortgage Loan that have been imaged on to a database which Purchaser had the opportunity to review via the internet.

**Assigned Bid Percentage:**  The percentage (carried to five (5) decimal places) that Purchaser has ascribed to a Mortgage Loan in connection with its Bid.  If the Bid with respect to a Mortgage Loan is an Individual Bid, then the Assigned Bid Percentage for the Mortgage Loan is the Bid Percentage for the Mortgage Loan.  If the Bid with respect to a Mortgage Loan is a Pool Bid, then the Assigned Bid Percentage for the Mortgage Loan is the percentage (carried to five (5) decimal places) allocated to the Mortgage Loan on the Bid Confirmation Form, as accepted and confirmed by HUD in the Award Letter. HUD reserves the right, at its sole and absolute discretion, to review and approve Assigned Bid Percentages.

**Assignment and Lost Note Affidavit:**  An assignment and lost note affidavit substantially in the form of Attachment C.

**Assignment Date:**  For any Mortgage Loan, the date on which the Mortgage Loan was assigned to HUD by the former lender in connection with an FHA Mortgage Insurance claim.

**Assignment of Mortgage and Loan Documents:**  An assignment of mortgage and other collateral loan documents substantially in the form of Attachment D.

**Assisted Lease:**  As defined in Section 8.04.A.

**Associated Mortgage Loan:**  Two or more Mortgage Loans that relate to the same Mortgaged Property and are listed on Attachment K which shall be sold, transferred and assigned only in conjunction with one another.  Any Bid on Associated Mortgage Loans shall apply to the collective Unpaid Principal Balances of the Associated Mortgage Loans for purposes of determining the Bid Price. Except as otherwise expressly provided herein, in each such case, all Associated Mortgage Loans shall be treated as a single Mortgage Loan for purposes of any rescission pursuant to Subsection 7.05.D and Section 7.06 and the rights set forth in Sections 11.02 and 11.03.

**Award Date:**  The date of the Award Letter.

**Bankruptcy Mortgage Loan:**  Any Mortgage Loan that is identified on the Mortgage Loan Schedule as being or having been involved in a bankruptcy proceeding, or where the Purchaser is required pursuant to Section 6.01 herein below to be substituted for HUD in the bankruptcy.

**Bid:**  Each of Purchaser's bids that HUD has accepted as identified in the Award Letter.

**Bid Confirmation Form:**  That document submitted by Purchaser to HUD on which Purchaser identified its bids for some or all of the Mortgage Loans.

**Award Letter:**  A letter dated as of the Award Date from HUD confirming HUD's acceptance of one or more of Purchaser's bids with respect to the Mortgage Loans, in the form of Attachment A.

**Bid Date:**  August 21, 2024.

**Bidder Information Package:**  The information package, entitled "Bidder Information Package" (including all amendments, revisions and supplements thereto), which was made available to potential bidders by or on behalf of HUD in connection with the Sale.

**Bid Information:**  Any and all information made available to potential bidders by or on behalf of HUD in connection with the Sale.

**Bid Percentage:**  The percentage (carried to five (5) decimal places) bid by Purchaser on each Mortgage Loan or Mortgage Loan Pool, as identified in the Award Letter.

**Bid Price:**  For each Mortgage Loan or Mortgage Loan Pool, an amount equal to the product of the applicable Bid Percentage and (i) the Unpaid Principal Balance of the Mortgage Loan as of the Cut-Off Date, if the Bid is on a single Mortgage Loan; or (ii) the Aggregate Unpaid Principal Balance of the Mortgage Loan Pool as of the Cut-Off Date, if the Bid is on a Mortgage Loan Pool.  For example, if Purchaser's Bid Percentage on a Mortgage Loan Pool is 99.55555%, and the Aggregate Unpaid Principal Balance of the Mortgage Loan Pool (as of the Cut-Off Date) is $10,000,000.00, the Bid Price is $9,955,555.00.

**Breach Notice:**  Written notice from Purchaser to HUD in which Purchaser asserts a breach exists of one or more of HUD's representations and/or warranties contained in Sections 7.01 or 7.02 hereof.

**Business Day:**  Any day other than a Saturday, a Sunday, a federal holiday or other day on which the federal government by law or executive order is closed, or a day on which banking institutions in New York, New York are authorized or obligated by law or executive order to remain closed.

**Closing Date:**  The date designated as such by HUD in the Closing Date Payment Notice.  If, for any reason, the date designated by HUD as the Closing Date is not a Business Day, the Closing Date shall be the next Business Day following the date designated by HUD.

**Closing Date Payment:**  The payment due to HUD on the Closing Date, which shall be computed by HUD in accordance with Section 2.04 hereof.

**Closing Date Payment Notice:**  The written notice provided to Purchaser by HUD pursuant to Section 2.03 hereof, which identifies (a) HUD's computation of the Closing Date Payment; (b) the Closing Date and (c) the instructions for wire transferring the Closing Date Payment to HUD.

**Closing Escrow Account Balance:**  The balances of any Escrow Accounts relating to each Mortgage Loan as of the Closing Date which are set forth on the Closing Date Payment Notice.

**Contract Administrator:**  The administrator of a HAP Contract.

**Cut-Off Date:**  July 31, 2024.

**Deposit:**  The amount submitted to HUD by Purchaser in connection with its Bid(s) and held by HUD as a deposit.

**Documents Delivery Date:**  That date, on or after the Closing Date, upon which HUD confirms receipt of the full amount of the Closing Date Payment from Purchaser.

**Environmental Report:**  Any environmental report relating to a Mortgaged Property prepared for or at the request of HUD in contemplation of the Sale.

**Escrow Accounts:**  With respect to each Mortgage Loan, the tax escrow accounts, hazard escrow accounts, and miscellaneous escrow accounts held by HUD, as mortgagee.  Escrow Accounts shall not include any replacement reserve accounts held by HUD.

**Escrow Payments:**  With respect to each Mortgage Loan, any payment made by a Mortgagor to HUD, as mortgagee, for real estate taxes, hazard insurance premiums, if any, assessments and other similar items.

**FHA:**  The Federal Housing Administration, an organizational unit within HUD.

**FHA Mortgage Insurance:**  All rights, benefits, entitlements and obligations of a mortgagee under a mortgage insurance contract issued in connection with a note (or other evidence of indebtedness) and mortgage insured or co-insured by FHA in accordance with the relevant sections of the National Housing Act, and the applicable regulations promulgated thereunder.

**HAP Contract:**  Any housing assistance payment contract authorizing the payment of Federal rental assistance by the Contract Administrator to any Mortgagor on behalf of eligible lower-income tenants where such assistance is tied to a unit of the Mortgaged Property.

**HUD:**  The United States Secretary of Housing and Urban Development or the Department of Housing and Urban Development, as applicable.

**HUD Service Charge:**  A monthly service charge payable by the Mortgagor to HUD on some or all of the Mortgage Loans in lieu of mortgage insurance premiums.

**Individual Bid:**  A Bid that applies to only one (1) individual Mortgage Loan.

**Individual Loan Price:**  For any Mortgage Loan, an amount equal to the product of the applicable Assigned Bid Percentage and the Unpaid Principal Balance of such Mortgage Loan as of the Cut-Off Date.

**Investment Rate:**  An interest rate, calculated on a 360-day basis, equal to the offered Federal Funds Rate, as published in The Wall Street Journal on the Bid Date.

**Limited Power of Attorney:**  The authorization for Purchaser to execute certain documents as attorney-in-fact for HUD, in the form of Attachment I.

**Loan Information:**  The data, included as part of the Bidder Information Package, which contains certain information with respect to the Mortgage Loans.

**Mortgage:**  With respect to each Mortgage Loan, the original mortgage, deed of trust or other instrument creating and evidencing a lien on the related Mortgaged Property and securing the related Mortgage Note, including all assignments thereof and all addenda, amendments, riders and modifications thereto.

**Mortgage Loan:**  Each mortgage loan identified as having been awarded to Purchaser in the Award Letter.

**Mortgage Loan Documents:**  To the extent in HUD's possession, the following documents and items with respect to each Mortgage Loan:  (1) the Mortgage Note and the Mortgage Note Endorsement; (2) the original or a copy of the Mortgage (including any assignments thereto); (3) the original or a copy of any mortgage modification and any provisional workout agreement relating to such Mortgage Loan; (4) the original or a copy of the UCC financing statements and/or other chattel security documents  (including any assignments thereto and modifications thereof); (5) the original or a copy of the Security Agreement (including any assignments thereto and modifications thereof); (6) the original or a copy of the mortgagee title insurance policy; (7) the original or a copy of the hazard insurance policy, together with any endorsements thereof; (8) the original or a copy of any indemnity agreements; and (9) the original or a copy of the Form HUD 289(s), and (10) for healthcare loans any Master Lease, Intercreditor Agreement, Deposit Account Control Agreement ("DACA"), Deposit Account Instruction Service Agreements ("DAISA") and Collection Account Agreement ("CAA").

**Mortgage Loan Pool:**  Each group of Mortgage Loans awarded to Purchaser, as identified in the Award Letter.

**Mortgage Loan Schedule:**  The schedule attached as Attachment E, which sets forth the following information for each Mortgage Loan:  (a) the FHA Number; (b) the Unpaid Principal Balance as of the Cut-Off Date, (c) the lien position of the Mortgage; (d) the existence of any modification, provisional workout agreement or other workout arrangement that altered the financial terms of the Mortgage Loan since the Assignment Date; and (e) for any Bankruptcy Mortgage Loan, (i) the Petition Date, (ii) the Unpaid Principal Balance as of the Petition Date or the Assignment Date, whichever is later, and (iii) the amount HUD received from and including the Petition Date or the Assignment Date, whichever is later, through the Cut-Off Date.

**Mortgage Note:**  With respect to each Mortgage Loan, the original note or other evidence of indebtedness of the Mortgagor, including all endorsements thereto and modifications thereof.

**Mortgage Note Endorsement:**  An endorsement to the Mortgage Note substantially in the form of Attachment B pursuant to which the Mortgage Note shall be deemed to have been marked with an "X" across the panel evidencing FHA Mortgage Insurance and marked with the words "FHA Insurance Terminated. Note Endorsement From HUD Hereby Made A Part Hereof."

**Mortgaged Property:**  The fee simple estate or leasehold estate in real property and the improvements thereon that are subject to the Mortgage relating to each Mortgage Loan, and that constitute security for the repayment of the related Mortgage Note.

**Mortgagor:**  The original obligor, including its successors and assigns, on the Mortgage Note for the Mortgage Loan.

**Mortgagor Notification Letter:**  A letter, substantially in the form of Exhibit 3 to Attachment I, from HUD to the Mortgagor notifying the Mortgagor of the sale of its Mortgage Loan to Purchaser.

**Person:**  Any individual, corporation, partnership, joint venture, association, joint-stock- company, trust, limited liability company, unincorporated organization or other entity recognized as a legal person under the jurisdiction in which it was created and does business or any government entity (or any agency or political subdivision thereof).

**Petition Date:**  For any Bankruptcy Mortgage Loan, the date set forth on the Mortgage Loan Schedule as the date on which the petition in bankruptcy was filed in the related bankruptcy proceeding.

**Pool Bid:**  A Bid that applies to a Mortgage Loan Pool.

**Project Information:**  If in HUD's possession, the following documents and items with respect to each Mortgage Loan: (1) a summary of the underlying project's most recent financial statement; (2) the most recent management review; (3) the most recent physical inspection report; (4) the Title Update, if any; and (5) the Environmental Report, if any.

**Proposed Adjustment Notice:**  A written notice pursuant to Section 3.04.A that the Closing Date Payment was computed incorrectly.

**Purchaser:**  The person or entity identified on the cover page of this Agreement.

**Real Estate Tax Bill:**  Any bill for real estate taxes or special assessments with respect to a Mortgaged Property.

**Regulatory Agreement:**  With respect to each Mortgage Loan, any HUD regulatory agreement executed by HUD relating solely to such Mortgage Loan.

**Release of Regulatory Agreement:**  A release or partial release of a Regulatory Agreement substantially in the form of Attachment E-1 or Attachment E-2, as appropriate.

**Rescission Date:**  The date upon which HUD pays Purchaser the Rescission Payment pursuant to Subsection 7.05.D(2) hereof.

**Rescission Payment:**  With respect to any rescission of a sale, assignment and transfer of a Mortgage Loan pursuant to Section 7.06 of this Agreement, an amount equal to (a) the Individual Loan Price of the subject Mortgage Loan; plus (b) simple interest thereon calculated at the Investment Rate for the period from the Closing Date to (but not including) the Rescission Date; plus (c) the sum of all reasonable, unreimbursed advances (as determined by HUD) made by Purchaser to preserve and/or protect the Mortgaged Property between the Closing Date and the Rescission Date; and minus (d) any and all payments received by Purchaser (including without limitation payments of principal, interest, escrow payments, prepayments and payments pursuant to Section 3.01 hereof) on account of such Mortgage Loan from the Closing Date to (but not including) the Rescission Date.

**Section 8:**  Section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f) or any successor federally-funded direct project rent subsidy program.

**Security Agreement:**  The security agreement, if any, related to a Mortgage Loan.

**Servicing Files:**  To the extent in HUD's possession, copies of correspondence, memoranda and other documents and items with respect to each Mortgage Loan, including: (a) the amortization schedule; (b) the twelve (12) most recent HUD monthly billing statements (HUD-2771); (c) the most recent real estate tax bill(s), and proof of payment thereof; and (d) any correspondence with taxing authorities relating to the one (1) year period preceding the Closing Date.

**Subordinate Mortgage Loan:**  A subordinate lien Mortgage Loan, identified on Attachment J, that is subordinate to an FHA-insured first mortgage loan that is not included in the Sale.

**Substitution Document:**  Any documentation that HUD is required, under applicable law, to execute in order to effectuate the provisions of Section 6.01.

**Terminated Mortgage Loan:**  As defined in Subsection 11.02.A hereof.

**Title Update:**  The title update, if any, relating to the subject Mortgaged Property prepared for or at the request of HUD in contemplation of the Sale.

**Transfer Documents:**  The following documents and items for each Mortgage Loan (or such other documents as HUD may deem to be appropriate): (1) an original Mortgage Note Endorsement in the form of Attachment B or, if HUD cannot deliver the original Mortgage Note, an original Assignment and Lost Note Affidavit relating to the Mortgage Note in the form of Attachment C; (2) an original Assignment of Mortgage and Loan Documents in the form of Attachment D; (3) an original Release of Regulatory Agreement in the form of Attachment E-1 and Attachment E-2, as appropriate; and (4) an original Limited Power of Attorney in the form of Attachment I.

**Transfer/Recordation Requirements:**  Document recordation requirements imposed by state and local law.

**UCC Assignment:**  As defined in Subsection 5.06 hereof.

**UCC Termination:**  As defined in Subsection 5.06 hereof.

**Unpaid Principal Balance:**  An amount equal to the unpaid principal balance of a specific Mortgage Loan as set forth on the Mortgage Loan Schedule.

**Warranty Period:**  The period beginning on the Closing Date and ending at 5:00 p.m. ET on the day that is 180 calendar days following the Closing Date.

## ARTICLE II
## PURCHASE AND SALE; CLOSING

**Section 2.01  Purchase and Sale of the Mortgage Loans; Release and Satisfaction.**

A.      Subject to the terms and conditions set forth in this Agreement, on the Closing Date, HUD shall sell, assign and transfer to Purchaser, and Purchaser shall purchase, assume and acquire from HUD, all of HUD's right, title and interest, as mortgagee, in and to the Mortgage Loan(s), on a servicing released basis and without FHA Mortgage Insurance; provided, however, that (i) notwithstanding anything to the contrary in this Agreement, HUD shall not assign to Purchaser any rights HUD may have to collect mortgage insurance premiums; and (ii) releases of regulatory agreements associated with Bankruptcy Mortgage Loans may be delayed by virtue of the bankruptcy proceedings.

B.      On the Closing Date, Purchaser shall assume any and all responsibilities and obligations as mortgagee and as servicer of each Mortgage Loan transferred to Purchaser arising on or after the Closing Date, including, but not limited to, substituting itself for HUD as a party in any ongoing legal proceedings.

On and after the Closing Date, HUD shall have no further responsibilities or obligations with respect to any Mortgage Loan, except as expressly set forth in this Agreement.

C.    Purchaser acknowledges and agrees that any and all defaults by the Mortgagor under any of the Mortgage Loans (including without limitation any monetary default) may (but need not) be cured at any time on or before the Closing Date, and that Purchaser shall remain bound by all terms and conditions of this Agreement, including its obligation to acquire the Mortgage Loans on the Closing Date, regardless of whether any or all such defaults have been cured on or before the Closing Date.

**Section 2.02    No Interest on Deposit.**

No interest shall be paid on the Deposit that Purchaser has delivered to HUD. 

**Section 2.03    Delivery of Closing Date Payment Notice**

At least one (1) Business Day prior to the Closing Date, HUD shall send the Closing Date Payment Notice to Purchaser by telecopier or electronic mail transmission (including PDF).

**Section 2.04    Closing Date Payment**

The Closing Date Payment shall be an amount calculated as follows:

A.    First, for each Mortgage Loan to be acquired by Purchaser, calculate the Individual Loan Price for such Mortgage Loan, then add the amount of all Advances for such Mortgage Loan (with the exception of the Mortgagee-in-Possession loan), and then subtract the amount of the Closing Escrow Account Balance for such Mortgage Loan to determine the net amount payable by the Purchaser for such Mortgage Loan (the "Adjusted Loan Payment Amount").

B.    Second, add together the Adjusted Loan Payment Amounts for all the Mortgage Loans to be acquired by Purchaser.

C.    Third, subtract the amount of the Deposit from the amount calculated in Section 2.04.B.

**Section 2.05    Closing Date**

Purchaser shall deliver to HUD the Closing Date Payment in accordance with the instructions for wire transferring funds contained in the Closing Date Payment Notice.  In no event shall Purchaser deliver the Closing Date Payment to HUD later than 1:00p.m. ET on the Closing Date.

**Section 2.06    Failure To Purchase All Mortgage Loans**

The transactions contemplated by this Agreement shall be completed simultaneously as to all Mortgage Loans and/or Mortgage Loan Pools.  The failure by Purchaser to complete the purchase of any Mortgage Loan or Mortgage Loan Pool on the Closing Date shall constitute a non-curable default with respect to all other Mortgage Loans and Mortgage Loan Pools.  The occurrence of such a default shall, in addition to any remedies provided to HUD pursuant to Section 10.03, be deemed to constitute a cross-default and HUD shall have no further obligation of any kind under this Agreement with respect to any Mortgage Loan on which Purchaser may have closed including, but not limited to, the obligation, as provided in Section 7.05, to

rescind the sale, assignment and transfer of a Mortgage Loan or the obligation, pursuant to Section 3.01, to transfer to Purchaser payments received after the Cut-Off Date.

## ARTICLE III
## PAYMENTS RECEIVED; ESCROW ACCOUNTS; ADJUSTMENTS

### Section 3.01   Payments Received by HUD After the Cut-Off Date

A.       If HUD receives any credits, payments or other consideration distributed or paid by or on behalf of a Mortgagor prior to or on the Cut-Off Date (including, without limitation, any unapplied funds, or any credits to the Unpaid Principal Balance of a Mortgage Loan due to the collection of insurance or condemnation proceeds, or pursuant to court order), HUD shall be entitled to accept and retain such payments or other consideration and Purchaser shall not be entitled to any payment or credit.  Notwithstanding the foregoing, if HUD receives insurance proceeds after the Cut-off Date, but before the Closing Date, HUD, in its sole discretion, shall be entitled to accept, retain, and apply such payment to the indebtedness, including operational advances made while HUD is mortgagee.

B.       Subject to Sections 3.01A, 3.02 and 11.02 hereof, if HUD receives any payments by or on behalf of any Mortgagor with respect to the Mortgage Loans after the Cut-Off Date (including, without limitation, any unapplied funds, or any credits to the Unpaid Principal Balance of a Mortgage Loan due to the collection of condemnation proceeds, or pursuant to court order), HUD shall remit to Purchaser the amounts received, without interest thereon, reduced by the amount of HUD's reasonable expenses related thereto on a regular basis, after receipt and clearance of such payments by HUD (but in no event prior to the Closing Date).  HUD's payments to Purchaser shall be made by check, wire transfer or such other reasonable means selected by HUD including, but not limited to, by endorsement of payments tendered to HUD in the form as follows:  "Pay to the order of **[name of Purchaser]** without recourse and without representations or warranties of any type, kind, character or nature, whether express, implied or created by operation of law."  HUD's obligations under this Section shall be subject to Purchaser having fully performed its obligations under this Agreement and HUD will be entitled to offset against any amounts to be paid to Purchaser any amounts Purchaser is obligated to pay to HUD, including, but not limited to, any advances HUD may make with respect to the Mortgage Loans after the Cut-Off Date.

### Section 3.02   Clearing of Payments.

If HUD has deposited payments received from any Mortgagor after the Cut-Off Date and issues a check or payment therefor to Purchaser pursuant to Section 3.01 of this Agreement, Purchaser shall bear the risk that any such payment so deposited by HUD may be returned due to insufficient funds or any other failure of collection.  HUD shall have a period of thirty (30) days after the date HUD delivers to Purchaser payments made by or on behalf of any Mortgagor to notify Purchaser in writing that any such payments were returned due to insufficient funds or any other failure of collection and specifying the amount thereof, whereupon HUD may elect either (i) to have Purchaser promptly pay, not later than ten (10) Business Days following receipt of such notice, to HUD the amount of such payment by certified check (or by wire transfer if so directed by HUD) and identify for HUD, either on the check or by any other reasonable means, the Mortgage Loan ; or (ii) to deduct the amount of the returned check from any funds to be remitted to Purchaser pursuant to Section 3.01.

### Section 3.03   Escrow Accounts and Reserve for Replacement Accounts.

Certain Mortgage Loans offered for Sale may require Mortgagors to escrow for taxes. Amounts held in tax escrow accounts as of the Cut-Off Date will be credited against the amount due from the Purchaser and the Purchaser will be required to establish a replacement tax escrow account in the amount of the credit. HUD makes no representation as to the adequacy of any tax escrow account or whether tax payments are current or have been advanced by HUD.

Depending upon the delinquency status of the Mortgage Loans as of the Cut-Off Date, amounts in reserve for replacement accounts will, at HUD's discretion, be (i) refunded to the Mortgagor, (ii) applied against the Mortgagor's outstanding arrearage or (iii) used for other authorized purposes.

HUD also holds miscellaneous escrow accounts with respect to certain Mortgage Loans. In connection with the Sale, miscellaneous escrows will, at HUD's discretion, be (i) refunded to the Mortgagor, (ii) applied against the Mortgagor's outstanding arrearage or (iii) credited against the amounts due from the Purchaser.

Pursuant to Section 2.01 hereof, HUD shall not be construed to have sold, assigned or transferred to Purchaser any of HUD's rights to the reserve for replacement account under the Regulatory Agreement. As provided in the Mortgage Loan Documents, within ten (10) Business Days following the Closing Date, Purchaser shall establish and fund Escrow Accounts in an amount equal to the Closing Escrow Account Balances on the Closing Date Payment Notice relating to each Mortgage Loan, plus any additional amounts relating to the Escrow Accounts that have been transferred to Purchaser pursuant to Section 3.01 hereof.

### Section 3.04   Post Closing- Date Adjustments and Remittances.

A.      Except as set forth in Section 7.05, within ninety (90) calendar days after the Closing Date, if either HUD or Purchaser determines that the Closing Date Payment was computed incorrectly, the party making such determination shall, within the same ninety (90) calendar day period, deliver a Proposed Adjustment Notice to the other party. The Proposed Adjustment Notice shall include a reasonably detailed description of the purported error in the computation of the Closing Date Payment. Any alleged error in the Closing Date Payment that is the result of an incorrect Unpaid Principal Balance shall be governed by the provisions of Section 7.05.

B.      If the parties agree upon any proposed adjustment, HUD shall promptly remit to Purchaser any overpayment of the Closing Date Payment, or Purchaser shall promptly remit to HUD any underpayment of the Closing Date Payment, as applicable.

C.      If neither HUD nor Purchaser provides a Proposed Adjustment Notice within the above-referenced ninety (90) calendar day period, the parties shall be deemed to have waived their rights to contest the amount of the Closing Date Payment.

### Section 3.05   Payment of Real Estate Taxes After the Cut-Off Date.

A.      HUD shall use reasonable efforts to forward to Purchaser any Real Estate Tax Bills received by HUD that are due on or after the Closing Date. Notwithstanding the foregoing, HUD may, at its election, pay any Real Estate Tax Bill that it receives prior to the Closing Date regardless of the date by which payment is due.

B.    To the extent that HUD pays any Real Estate Tax Bill pursuant to Subsection 3.05.A of this Agreement, HUD may elect either (i) to have Purchaser reimburse HUD within ten (10) Business Days after Purchaser receives a billing statement from HUD; (ii) to deduct the amount paid by HUD from any funds to be remitted to Purchaser pursuant to Section 3.01; or (iii) to include the amount paid by HUD in the amount of Advances in calculating the Closing Date Payment.

C.    Notwithstanding Subsection 3.05.A, nothing in this Agreement shall constitute or be construed as a representation or warranty that real estate taxes or special assessments with respect to any Mortgaged Property are current or that the outstanding Real Estate Tax Bills with respect to any Mortgaged Property have been paid or that HUD will forward Real Estate Tax Bill related information to purchaser . HUD has no responsibility for any unpaid or overdue taxes or for any interest, late fees, penalties or other charges that may be imposed in connection therewith.

## ARTICLE IV
## PREPARATION OF TRANSFER DOCUMENTS

### Section 4.01  Preparation of Transfer Documents.

A.    HUD shall prepare, with respect to each Mortgage Loan, the Transfer Documents.

B.    The Transfer Documents prepared by HUD shall be substantially in the form of the applicable form Transfer Documents attached hereto as Attachments B through E-2 and I, with those modifications as are necessary to complete the missing information required to be inserted therein and as may be required to comply with the Transfer/Recordation Requirements.

## ARTICLE V
## HUD'S DELIVERY OF DOCUMENTS TO PURCHASER; RECORDATION

### Section 5.01  Delivery of Mortgage Loan Documents and Transfer Documents.

Within ten (10) Business Days after the Documents Delivery Date, HUD shall send the Mortgage Loan Documents and the Transfer Documents to Purchaser by courier.  Notwithstanding the foregoing, for any Bankruptcy Mortgage Loan, the Release of Regulatory Agreement may be delayed. The Mortgage Loan Documents and the Transfer Documents may be delayed due to other unforeseen circumstances not otherwise detailed in the Mortgage Loan Documents or Transfer Documents. Prior to sending the Mortgage Loan Documents, HUD will mark any Mortgage Notes with an "X" across the panel evidencing FHA Mortgage Insurance and the Mortgage Note shall be deemed to have been marked with the words "FHA Insurance Terminated. Mortgage Note Endorsement From HUD Hereby Made A Part Hereof."

**Section 5.02  Delivery of Servicing Files and Project Information.**

Within five (5) Business Days after the Documents Delivery Date, Purchaser shall make arrangements for the retrieval of the Servicing Files and the Project Information from offices of the transaction specialist, Falcon Capitol Advisors.

**Section 5.03  Missing Documents.**

A.      HUD shall have no obligation to deliver to Purchaser any Mortgage Loan Documents, Servicing Files or Project Information other than those that are sent to or retrieved by Purchaser pursuant to Section 5.01 and 5.02. Without restricting or limiting the generality of the foregoing, Purchaser acknowledges and agrees that HUD shall have no obligation to secure or obtain any assignment that predates the assignment of any Mortgage Loan to HUD that is not contained in the Mortgage Loan Documents. Purchaser shall have the sole responsibility and expense of securing any intervening Mortgage assignment that may be missing from the Mortgage Loan Documents from the appropriate source. HUD's failure to deliver any Mortgage Loan Documents (including, without limitation, any intervening assignments) or Servicing Files, shall not affect Purchaser's obligations under this Agreement.

B.      In the event that any Mortgage Note is lost, missing or otherwise not in HUD's possession, HUD shall provide to Purchaser an executed Assignment and Lost Note Affidavit in the form of Attachment C.

C.      Purchaser shall have the sole responsibility to obtain any of the Mortgage Loan Documents in the possession of any attorneys, collection agencies, foreclosing trustees or foreclosure commissioners as set forth in Section 6.02 of this Agreement.

D.      Purchaser acknowledges that HUD may not have access to information from prior servicers of a Mortgage Loan and that HUD has not requested any information not in HUD's possession from any prior servicer of a Mortgage Loan. Purchaser agrees that HUD shall not be required under the terms of this Agreement to request any information not in HUD's possession from any prior servicer of a Mortgage Loan.

**Section 5.04  Risk of Loss of Documents; Transportation and Delivery Expenses.**

A.      The risk of loss with respect to the Mortgage Loan Documents, the Transfer Documents, the Servicing Files and the Project Information relating to each Mortgage Loan shall rest with Purchaser from and after the following, whichever is applicable: (i) the time that such documents are delivered by HUD to the overnight courier service for which Purchaser has provided an account number; or (ii) the time that such documents are retrieved by, or on behalf of, Purchaser in accordance with Section 5.02 hereof.

B.      Purchaser hereby releases HUD from any and all liability for any loss, claim, damage, cost or expense (including, without limitation, attorneys' fees and costs) that may be incurred by Purchaser, or any other Person, as a result of, or in connection with, HUD allowing the Mortgage Loan Documents, the Transfer Documents, the Servicing Files and the Project Information to be retrieved in accordance with Section 5.02 of this Agreement.

C.      All expenses in connection with transportation and delivery of the Mortgage Loan Documents, the Transfer Documents, the Servicing Files and the Project Information shall be the sole responsibility of Purchaser.

**Section 5.05  Recording of Transfer Documents.**

A.    Purchaser shall, at Purchaser's cost and expense, use its best efforts immediately following the Documents Delivery Date to cause all applicable Transfer Documents and the UCC Assignments described in Section 5.06 below with respect to each Mortgage Loan to be delivered for recordation or filing among the appropriate land records or other records of the appropriate county or other jurisdiction. Purchaser agrees that it shall submit all Transfer Documents for recording or filing among the appropriate land records or other records not later than thirty (30) calendar days after the Documents Delivery Date.  Notwithstanding the foregoing, for any Bankruptcy Mortgage Loan, Purchaser agrees that the requirements of this Section 5.05.A. regarding the Release of Regulatory Agreement shall be met not later than thirty (30) calendar days after HUD delivers the Release of Regulatory Agreement to Purchaser.

B.    In the event that any judicial or administrative actions are required in lieu of or in conjunction with the recording of a Transfer Document in order to effect transfer of title to a Mortgage Loan, Purchaser shall deliver to HUD a letter through electronic mail, with the original sent within seventy-two (72) hours of such facsimile or electronic mail transmission by overnight courier, describing in reasonable detail the applicable requirements which necessitate such action and copies of any pleadings to be filed in such action. Purchaser shall be responsible for all costs, fees and expenses of any such action.

**Section 5.06  Preparation of UCC Assignments.**

Pursuant to the Limited Power of Attorney in the form of Attachment I, Purchaser shall, at Purchaser's cost and expense, prepare and file with respect to each Mortgage Loan a UCC assignment ("UCC Assignment") for each effective financing statement that has been provided to Purchaser. If any Mortgage Loan is to be released and satisfied, pursuant to the Limited Power of Attorney in the form of Attachment I, Purchaser shall, at Purchaser's cost and expense, prepare and file with respect to each Mortgage Loan, a UCC termination ("UCC Termination") for each effective financing statement that has been provided to Purchaser.

**Section 5.07  Notifications.**

Promptly after the Closing Date and pursuant to the Limited Power of Attorney in the form of Attachment I, Purchaser shall, at Purchaser's cost and expense, prepare and mail by first class mail with respect to each Mortgage Loan (a) the joint notification letter dated as of the Closing Date to the taxing authority for the Mortgaged Property in the form of Exhibit 1 to Attachment I; (b) the joint notification letter dated as of the Closing Date to any insurance company providing insurance for the Mortgaged Property in the form of Exhibit 2 to Attachment I and (c) the Mortgagor Notification Letter dated as of the Closing Date in the form of Exhibit 3 to Attachment I.  Within two (2) weeks after the Closing Date, Purchaser shall provide any written notice to Bank (as defined in the DACA, DAISA, or CAA, as applicable) of Purchaser's agreement to assume all of HUD's and, if applicable, Second Lien Agent's (as defined therein) obligations under the DACA, DAISA, or CAA.

**ARTICLE VI**
**LITIGATION; FEES**

**Section 6.01  Pending Legal Proceedings.**

With respect to any Mortgage Loan that, as of the Closing Date, is the subject of litigation, bankruptcy, foreclosure or other legal proceeding (as opposed to any legal challenge to the Sale which shall

be governed by the provisions of Section 11.03), Purchaser agrees that it shall, at its sole cost and expense, as soon as reasonably possible after the Closing Date, (a) notify the presiding court, any foreclosing trustee, all counsel of record, and any other relevant parties in each such proceeding of the transfer of the Mortgage Loan from HUD to Purchaser, (b) file pleadings to relieve HUD's counsel of record from further responsibility in such litigation (unless such counsel has agreed, with HUD's written consent, to represent Purchaser in the proceedings at Purchaser's expense), and (c) remove HUD as a party in such action and substitute Purchaser as the real party-in-interest, and change the caption thereof accordingly. If, under applicable law, HUD is required to execute any Substitution Documents, Purchaser shall prepare the Substitution Documents and submit them to HUD for its review and approval. If the Substitution Documents are required by law in order to accomplish the purposes of this Section and are in form and substance acceptable to HUD, HUD shall execute the Substitution Documents and return them to Purchaser. The cost of mailing, preparing and filing the Substitution Documents, as well as HUD's attorneys' fees in connection with the review of the Substitution Documents, and all other costs incurred in connection with the Substitution Documents shall be the sole responsibility of Purchaser. In the event that HUD in its sole and absolute discretion determines that Purchaser has failed to effect the substitution and removal of counsel required by this Section 6.01 as soon as reasonably possible after the Closing Date, then (a) HUD will have the right, but not the obligation, to withdraw from or terminate all such litigation, and (b) Purchaser agrees to reimburse HUD, upon demand, for any continued legal expenses in such litigation. Purchaser will reimburse HUD immediately upon demand for all legal fees and expenses reasonably incurred by HUD with respect to any such proceeding subsequent to the Closing Date. Purchaser releases HUD from any claim, demand, suit, or cause of action Purchaser may have as a result of the failure of HUD to file any proofs of claims.

### Section 6.02   Mortgage Loan Documents in Possession of Counsel.

With respect to any Mortgage Loan that, as of the Closing Date, is the subject of litigation, bankruptcy, foreclosure, or other legal proceeding, Purchaser shall have the sole responsibility, after the Closing Date, to obtain all Mortgage Loan Documents then in the possession of any counsel, collection agency, foreclosing trustee or foreclosure commissioner including, but not limited to determining the appropriate direction and strategy for such litigation or other legal proceeding. Purchaser acknowledges that its failure to comply with the provisions of this Section may affect Purchaser's rights in any such litigation or other legal proceeding including, without limitation, any dismissal with prejudice or the running of any statute of limitations if any such action or other legal proceeding is dismissed. In no event shall HUD have any liability as a result of Purchaser's inability to obtain any Mortgage Loan Document in the possession of any counsel or foreclosing trustee.

### ARTICLE VII
### REPRESENTATIONS AND WARRANTIES; REMEDIES; INDEMNIFICATION; CONDITIONS

### Section 7.01   HUD's Representations and Warranties.

HUD hereby represents and warrants to Purchaser, as of the Closing Date, as follows:

A.       HUD has the power and authority to execute, deliver and perform this Agreement and all of the transactions contemplated hereby. HUD has taken all actions necessary to authorize it to perform its obligations under this Agreement and to consummate the transactions contemplated to be performed by it hereunder. This Agreement and all of the other instruments and agreements executed and delivered by HUD

in connection with the transactions contemplated hereby have been or will be duly executed and delivered by HUD and (assuming due execution and delivery by Purchaser) constitute or will constitute legal, valid and binding obligations of HUD, enforceable against HUD in accordance with the terms hereof and thereof, except as enforcement may be limited by general principles of equity (whether considered in a proceeding at law or in equity). The execution, delivery and performance of this Agreement by HUD does not violate any provisions of any existing federal law or regulation applicable to HUD, or violate or contravene any judgment, injunction or decree binding upon HUD, or violate, contravene or constitute a default under any provision of any agreement, contract or other instrument binding upon HUD.

B.    Immediately prior to the closing of each Mortgage Loan pursuant to this Agreement, HUD had title to, and was the sole owner of, such Mortgage Loan free and clear of any ownership, security or participation interest in such Mortgage Loan in favor of any other Person, and had the full right and authority to sell, assign and transfer such Mortgage Loan to Purchaser pursuant to this Agreement.

**Section 7.02    HUD's Representations and Warranties Regarding the Mortgage Loan Schedule, Closing Date Payment Notice and Mortgage Loans.**

With respect to each Mortgage Loan, HUD hereby represents and warrants to Purchaser as follows:

A.    Except for any Bankruptcy Mortgage Loan and subject to the qualifications in any footnotes to the Mortgage Loan Schedule, the Unpaid Principal Balance as of the Cut-Off Date set forth on the Mortgage Loan Schedule is true and correct in all material respects. As of the Closing Date, no mortgage modification that was entered into after the Assignment Date and that altered the financial terms of the Mortgage Loan remains in effect with respect to the Mortgage Loan other than: (i) as identified on the Mortgage Loan Schedule; (ii) as consented to in writing by Purchaser on or after the Award Date; or (iii) as disclosed in the Asset Review File. As of the Closing Date, no provisional workout agreement or other workout arrangement that was entered into after the Assignment Date and that altered the financial terms of the Mortgage Loan remains in effect with respect to the Mortgage Loan other than: (i) as identified on the Mortgage Loan Schedule; (ii) as consented to in writing by Purchaser on or after the Award Date; or (iii) as disclosed in the Asset Review File.

B.    For any Bankruptcy Mortgage Loan, (i) the Unpaid Principal Balance as of the later of the Petition Date or the Assignment Date and (ii) the amount received by HUD from the later of the Petition Date or the Assignment Date through the Cut-Off Date, each as set forth on the Mortgage Loan Schedule, are true and correct in all material respects.

C.    Subject to the qualifications in any footnotes to the Mortgage Loan Schedule and subject to and as may be limited by any applicable bankruptcy, insolvency, reorganization and other laws affecting creditors' rights generally and general principles of equity (whether applied at law or in equity), with respect to each Mortgage Loan, as of the Assignment Date or the date of the partial payment of claim, the related Mortgage is a valid and enforceable lien on the related Mortgaged Property having the lien priority indicated on the Mortgage Loan Schedule, except for: (1) liens for real estate taxes, municipal sewer or water charges, and special assessments, if any; (2) violations of codes, regulations, ordinances and statutes, if any; (3) mechanics liens; (4) liens on personal property or chattels located on the Mortgaged Property which are not deemed affixed to the real property, if any; (5) covenants, conditions and restrictions, rights of way, easements and other matters of public record; (6) encroachments, if any; (7) all exceptions, requirements and other matters set forth in any mortgagee title insurance policy included in the Asset Review File (but not including items that are expressly indicated to be subordinate); and (8) other matters to which like properties are

commonly subject which do not, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by such Mortgage.

Section 7.03  **Disclaimer of HUD's Representations and Warranties.**

EXCEPT AS EXPRESSLY PROVIDED IN SECTIONS 7.01 AND 7.02 HEREOF, NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, WHETHER EXPRESS, IMPLIED OR BY OPERATION OF LAW, ARE MADE BY HUD OR BY ANY OTHER PERSON ACTING ON HUD'S BEHALF WITH RESPECT TO ANY MORTGAGE LOAN. WITHOUT IN ANY WAY LIMITING THE GENERALITY OF THE FOREGOING, NO REPRESENTATIONS OR WARRANTIES HAVE BEEN MADE WITH RESPECT TO (1) THE CONDITION, ENVIRONMENTAL OR OTHERWISE, OF ANY MORTGAGED PROPERTY; (2) THE VALUE OF ANY MORTGAGED PROPERTY; (3) THE COLLECTIBILITY OF ANY MORTGAGE LOAN; (4) THE CREDITWORTHINESS OF ANY MORTGAGOR; (5) THE EXISTENCE OR STATUS OF ANY HAZARD INSURANCE COVERAGE OR TITLE INSURANCE COVERAGE RELATING TO ANY MORTGAGED PROPERTY; (6) THE ACCURACY OR COMPLETENESS OF THE BID INFORMATION, THE BIDDER INFORMATION PACKAGE, THE LOAN INFORMATION, OR ANY ASSET REVIEW FILE; (7) THE ACCURACY OR COMPLETENESS OF ANY ENVIRONMENTAL REPORT, ANY TITLE UPDATE, OR ANY OTHER DESCRIPTION OR REPORT RELATING TO ANY MORTGAGED PROPERTY; OR (8) THE CONTINUATION AFTER THE CLOSING DATE OF PAYMENTS UNDER ANY HAP CONTRACT. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT AND THE TRANSFER DOCUMENTS, EACH MORTGAGE LOAN IS SOLD, ASSIGNED AND TRANSFERRED TO PURCHASER "AS IS, WHERE IS" AND WITHOUT RECOURSE.

Section 7.04  **Survival of Representations and Warranties of HUD.**

The representations and warranties of HUD contained in Subsections 7.01 and 7.02 shall survive the Closing Date and shall expire at the end of the Warranty Period or the payment in full or the release and/or satisfaction of the related Mortgage Loan, whichever shall occur first.

Section 7.05  **Remedies for Breach of Certain Representations and Warranties by HUD.**

A.      The obligations and liabilities of HUD for breach of any representation or warranty set forth in Section 7.01 or 7.02 hereof and Purchaser's sole remedy for any such breach shall be the remedies provided for in this Section 7.05. In no event shall a breach of any representation or warranty set forth in Section 7.01 or 7.02 be used as evidence of, or deemed to constitute, bad faith, misconduct or fraud or give rise to any remedy other than as specifically provided herein even in the event that it is shown that HUD, or any of its employees, officers or agents, knew or should have known of the existence of information which was inconsistent with any of the representations and warranties provided in Section 7.01 or 7.02.

B.      If Purchaser claims that there exists a material and substantial breach of a representation or warranty made by HUD in Section 7.01 or 7.02 hereof, Purchaser shall deliver to HUD, after the Closing Date, a Breach Notice. A Breach Notice shall be effective only if delivered to HUD prior to the expiration of the Warranty Period or the payment in full or satisfaction or release of the related Mortgage Loan, whichever shall occur first.

C.    No Breach Notice shall be effective unless the closing on the Mortgage Loan that is the subject of the Breach Notice has occurred.

D.    Within one hundred twenty calendar (120) days after receipt of a Breach Notice, HUD shall either (i) notify Purchaser that HUD has accepted such Breach Notice, or (ii) notify Purchaser that HUD does not accept the Breach Notice as giving sufficient evidence of the existence of the asserted breach and request additional information or documentation evidencing the asserted breach. With respect to any Breach Notice that HUD does not accept due to lack of adequate substantiation or evidence, if Purchaser delivers the required information or documentation within ten (10) Business Days after its receipt of notification from HUD of the denial of the claim, then HUD may reconsider its denial of the claim. The submission of any such additional substantiation or evidence, however, shall not alter the denial of the claim unless and until Purchaser is notified otherwise by HUD and HUD shall be deemed conclusively to have satisfied its one hundred twenty calendar (120) day response obligation as a result of the initial denial of Purchaser's Breach Notice. If the Breach Notice, as accepted by HUD, states a material and substantial breach of one or more of the warranties specified in Section 7.01 or 7.02 hereof, HUD shall, within ninety (90) days after such acceptance, take one or more of the following actions, at HUD's sole and exclusive option:

(1)    undertake diligently to cure the asserted breach of representation or warranty within a reasonable period of time;

(2)    rescind the sale, assignment and transfer with respect to the subject Mortgage Loan, which shall include HUD remitting to Purchaser an amount equal to the Rescission Payment; or

(3)    pay the Adjustment Payment to Purchaser, in the event of a breach of the warranty set forth in Subsection 7.02.A or 7.02.B by reason of the Unpaid Principal Balance of a Mortgage Loan being less than that which is set forth in the Mortgage Loan Schedule.

**Section 7.06    The Rescission Remedy.**

A.    Notwithstanding HUD's notification to Purchaser that HUD intends to rescind the sale, assignment or transfer of a Mortgage Loan pursuant to Section 7.05, HUD shall not be required to rescind the sale, assignment or transfer of any Mortgage Loan or make a Rescission Payment unless and until Purchaser has delivered to HUD evidence satisfactory to HUD that: (i) there have been no changes to the title to the Mortgaged Property (other than those changes beyond the reasonable control of Purchaser), which, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the related Mortgage and to evidence the foregoing Purchaser shall, at its sole cost and expense, provide to HUD a title policy or title update with respect to the Mortgaged Property; (ii) there have been no material changes to the terms or conditions of the related Mortgage Loan Documents since the Closing Date; (iii) the Mortgage Loan is not subject to any lien or encumbrance and Purchaser can deliver to HUD the same right, title and interest in and to the Mortgage Loan as was sold, assigned and transferred to Purchaser by HUD; (iv) Purchaser is the sole owner of the Mortgage Loan and has the full right and authority to sell, assign and transfer such Mortgage Loan; and (v) Purchaser agrees to remit to HUD any and all amounts received by Purchaser on account of the Mortgage Loan after the Rescission Date. Evidence of the foregoing shall be provided to HUD within thirty (30) Business Days of Purchaser's receipt of HUD's notice of rescission. If Purchaser fails to provide evidence satisfactory to HUD of all of the foregoing items within such thirty (30) Business Days, interest for purposes of determining the Rescission Payment shall be calculated from the Closing Date to (but not including) the last day of the thirty (30) Business Days and HUD shall have the option of canceling its notice of rescission.

B.       In addition to the foregoing and as a prerequisite to any obligation of HUD to rescind the sale, assignment and transfer of the subject Mortgage Loan or make the Rescission Payment, Purchaser shall: (i) provide to HUD the total amount received by Purchaser on account of the Mortgage Loan following the Closing Date to (but not including) the Rescission Date and shall provide documentation acceptable to HUD detailing the dates and amounts received and the manner in which such amounts were allocated; (ii) reassign to HUD all of Purchaser's right, title and interest in and to such Mortgage Loan including all real estate tax, insurance and other escrows held or controlled by Purchaser as mortgagee; (iii) deliver to HUD the related Transfer Documents, Mortgage Loan Documents, Servicing Files, Project Information, and such other documents, instruments, books, records and information as are requested by HUD; (iv) terminate, at Purchaser's sole cost, any servicing agreement regarding such Mortgage Loan; and (v) pay (or provide for the payment prior to the Rescission Date of) any and all taxes and assessments associated with the Mortgaged Property that become due and payable within ten (10) Business Days after the Rescission Date (unless Purchaser is otherwise reimbursed for any such payments made or provided for, such payments shall be treated as an advance for purposes of calculating the Rescission Payment). Purchaser shall, at its sole cost and expense, deliver to HUD an opinion of counsel acceptable to HUD that all of the foregoing requirements have been fully complied with. In providing the foregoing opinion, counsel shall be permitted to rely on the title policy or title update required by this Section 7.06 as well as certificates of authorized officers of Purchaser.

C.       HUD's election to rescind the sale, assignment and transfer of a Mortgage Loan pursuant to this Section shall not affect the sale, assignment and transfer of any other Mortgage Loans.

**Section 7.07   The Adjustment Payment.**

As set forth in Section 7.05 of this Agreement, by paying the Adjustment Payment, HUD may cure a breach of the warranty set forth in Subsection 7.02.A or 7.02.B, if such breach is due to the Unpaid Principal Balance of a Mortgage Loan being less than that which is set forth in the Mortgage Loan Schedule. The Adjustment Payment shall equal the difference between the Individual Loan Price for such Mortgage Loan paid by Purchaser and the corrected Individual Loan Price for such Mortgage Loan, calculated on the basis of the corrected Unpaid Principal Balance of such Mortgage Loan.

**ARTICLE VIII**
**REPRESENTATIONS, WARRANTIES AND COVENANTS OF PURCHASER**

**Section 8.01   Purchaser's Representations and Warranties.**

Purchaser hereby represents and warrants to HUD, as of the date of this Agreement and the Closing Date, as follows:

A.       If other than a natural person, Purchaser is validly existing and in good standing under the laws of the jurisdiction in which Purchaser was organized.

B.       Purchaser has the power and authority to execute, deliver and perform this Agreement and all of the transactions contemplated hereby.  Purchaser has taken all actions necessary to authorize it to perform its obligations under this Agreement and to consummate the transactions contemplated to be performed by it hereunder.  This Agreement and all of the other instruments and agreements executed and delivered by Purchaser in connection with the transactions contemplated hereunder on or prior to the Closing Date have been or will be duly executed and delivered by Purchaser and (assuming due execution and delivery

by HUD) constitute or will constitute legal, valid and binding obligations of Purchaser, enforceable against Purchaser in accordance with the terms hereof and thereof, except as such enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (whether considered in a proceeding at law or in equity). The execution, delivery and performance of this Agreement by Purchaser does not violate any provisions of any existing federal, state or local law or regulation applicable to Purchaser, or violate or contravene any judgment, injunction or decree binding upon Purchaser, or violate, contravene or constitute a default under any provision of the organizational documents, if any, governing Purchaser, or of any agreement, contract or other instrument binding upon Purchaser.

C.    The certifications, representations and warranties made by Purchaser in the qualification statement submitted by Purchaser for purposes of qualifying as a "qualified bidder" in connection with the Sale are true, accurate and correct in all respects.

D.    Purchaser is in full compliance with its obligations under the terms of the confidentiality agreement executed by Purchaser in favor of HUD in connection with the Sale.

E.    Purchaser either is licensed to own and service the Mortgage Loans or, as of the Closing Date, has hired an entity that is licensed to service the Mortgage Loans.

### Section 8.02   Survival of Purchaser's Representations and Warranties.

The representations and warranties of Purchaser set forth in this Agreement shall survive the Closing and the expiration of the Warranty Period.

### Section 8.03   Remedies for the Breach of Purchaser's Representations or Warranties.

In the event of a breach by Purchaser of any representation or warranty hereunder, HUD shall have the right, at its election, to terminate this Agreement and all further obligations of HUD hereunder and, in the event of such termination, the provisions of Section 10.03 of this Agreement shall be applicable. If any representation or warranty set forth in Section 8.01 of this Agreement is not true and accurate as of the Closing Date, Purchaser shall so advise HUD.

### Section 8.04   Post-Sale Covenants of Purchaser.

A.    In order to comply with the regulations regarding requirements for continuing Federal rental subsidy contracts (as set forth at 24 C.F.R. § 290.37), with respect to any Mortgage Loan that is listed on Attachment G-1, Purchaser and its successors and assigns shall require the recordation of a declaration of covenants running with the land as part of any amendment, modification, supplemental agreement or extension of the Mortgage Loan, foreclosure, or final compromise of the Mortgage Loan, including acceptance of a deed in lieu of foreclosure ("Triggering Event"). Purchaser and its successors and assigns shall include such covenants in any foreclosure deed executed in connection with the Mortgage. The required covenants shall remain in effect until the last federal project-based rental assistance contract related to the Property expires by its own terms or the date that is the same as the maturity date of the Mortgage Note in effect on the Closing Date, whichever is later.   The declaration of covenants shall be in the form of Attachment H-1 (or such other document as may from time to time be approved by HUD), with such changes as may be required to comply with the Transfer/Recordation Requirements. The text of the covenants shall provide that (i) unless otherwise approved by HUD, any subsequent purchaser of the Mortgaged Property shall agree to assume the obligations of any outstanding HAP Contract and any tenant-based Section 8 housing assistance payments contract with

a public housing agency and the related leases, and (ii) in the event of a foreclosure of the Mortgage Loan, Purchaser and its successors and assigns shall foreclose in a manner that does not interfere with any lease related to a HAP Contract or any lease related to tenant-based Section 8 housing assistance payments (collectively, an "Assisted Lease"), and shall foreclose in a manner that ensures that the right of possession of the purchaser at the foreclosure sale shall be subject to the terms of any residential lease which is not an Assisted Lease for the remaining term of the lease or for one (1) year, whichever period is shorter. Purchaser and its successors and assigns shall provide written notice to HUD within thirty calendar (30) days of executing any documents in connection with any Triggering Event or sale of a Mortgage Loan listed on Attachment G-1, shall promptly notify HUD of the identity and address of the owner of the Mortgaged Property, shall promptly record the declaration of covenants or foreclosure deed, and shall provide to HUD a copy of the declaration of covenants or foreclosure deed within thirty calendar (30) days after such instrument has been recorded. These notices shall be addressed to the Director, Office of Asset Sales. Purchaser and its successors and assigns shall also provide an annual written report to HUD certifying whether any of the Mortgage Loans listed on Attachment G-1 have been subject to a restructuring, final compromise, or foreclosure at any time since the Closing Date. The annual report shall be addressed to the Director, Office of Asset Sales, and shall be delivered to HUD not later than December 1st each year.

   B.    In order to comply with the regulations regarding nondiscrimination in admitting voucher holders (as set forth at 24 C.F.R. § 290.39), with respect to any Mortgage Loan that is listed on Attachment G-2, Purchaser and its successors and assigns shall require the recordation of a declaration of covenants running with the land as part of any Triggering Event (as defined in Section 8.04A above). Purchaser and its successors and assigns shall also include such covenants in any foreclosure deed executed in connection with the Mortgage. The required covenants shall remain in effect until the date that is the same as the maturity date of the Mortgage Note in effect on the Closing Date. The declaration of covenants shall be in the form of Attachment H-2 (or such other document as may from time to time be approved by HUD), with such changes as may be required to comply with the Transfer/Recordation Requirements. The text of the covenants shall provide that the owner of the Mortgaged Property shall not unreasonably refuse to lease a dwelling unit offered for rent or otherwise discriminate in the terms of tenancy because any tenant receives tenant-based assistance under the Section 8 program. Purchaser and its successors and assigns shall provide written notice to HUD within thirty calendar (30) days of executing any documents in connection with any Triggering Event or sale of a Mortgage Loan listed on Attachment G-2, shall promptly notify HUD of the identity and address of the owner of the Mortgaged Property, shall promptly record the declaration of covenants or foreclosure deed, and shall provide to HUD a copy of the declaration of covenants or foreclosure deed within thirty calendar (30) days after such instrument has been recorded. These notices shall be addressed to the Director, Office of Asset Sales.

   C.    In order to comply with the regulations as set forth at 24 C.F.R. § 290.35, with respect to any Mortgage Loan that is listed on Attachment G-3, Purchaser and its successors and assigns shall require the recordation of a declaration of covenants running with the land as part of any Triggering Event. Purchaser and its successors and assigns shall also include such covenants in any foreclosure deed executed in connection with the Mortgage. The required covenants shall remain in effect for a period of two (2) years beginning at the date of any Triggering Event (as defined in Section 8.04A above). The declaration of covenants shall be in the form of Attachment H-3 (or such other document as may from time to time be approved by HUD), with such changes as may be required to comply with the Transfer/Recordation Requirements. The text of the covenants shall provide that for any very low-income family (as defined in 24 C.F.R. § 5.603) that is an existing tenant of the Mortgaged Property on the date of the Triggering Event and who is not receiving housing assistance ("Unsubsidized Tenant"), owner of the Mortgaged Property shall not, for a period of two (2) years beginning at the date of any Triggering Event, charge the Unsubsidized Tenant in excess of thirty percent (30%) of the monthly adjusted income (as defined in 24 C.F.R. § 5.603) of the

family. Purchaser and its successors and assigns shall provide written notice to HUD within thirty calendar (30) days of executing any documents in connection with any Triggering Event of a Mortgage Loan listed on Attachment G-3, shall promptly notify HUD of the identity and address of owner of the Mortgaged Property, shall promptly record the declaration of covenants or foreclosure deed , and shall provide to HUD a copy of the declaration of covenants or foreclosure deed within thirty (30) calendar days after such instrument has been recorded. These notices shall be addressed to the Director, Office of Asset Sales.

D.    In order to comply with the provisions of the Protecting Tenants at Foreclosure Act of 2009 (codified at 12 U.S.C. 5201 note; 12 U.S.C. 5220 note; 42 U.S.C. 1437f note), with respect to any Mortgage Loan that is listed on Attachment G-4 Purchaser and its successors and assigns shall require the recordation of a declaration of covenants running with the land as part of any foreclosure of a dwelling, or residential real property. Purchaser and its successors and assigns shall also include such covenants in any foreclosure deed executed in connection with the Mortgage. The required covenants shall remain in effect until the date that is the same as the maturity date of the Mortgage Note in effect on the Closing Date. The declaration of covenants shall be in the form of Attachment H-4 (or such other document as may from time to time be approved by HUD), with such changes as may be required to comply with the Transfer/Recordation Requirements. The text of the covenants shall provide that the owner of the Mortgaged Property must provide any bona fide tenant, as defined in the declaration of covenants, 90 days prior notice to vacate the unit. Any tenant who is under a valid lease agreement entered into before the notice of foreclosure that entitles the tenant to occupy the premises until the end of the remaining term of the lease, will continue to maintain their rights under the lease agreement. Where the owner of Mortgaged Property intends on occupying the unit as a primary residence, where the tenant is a tenant at will under state law of the Mortgaged Property, or where the tenant occupies the unit without a lease, such tenant may be required by Owner to vacate the unit provided that the tenant is given 90 days prior notice by the Owner. Purchaser and its successors and assigns shall provide written notice to HUD within thirty calendar (30) days of executing any documents in connection with any foreclosure of a Mortgage Loan listed on Attachment G-4, shall promptly notify HUD of the identity and address of the owner of the Mortgaged Property, shall promptly record the declaration of covenants or foreclosure deed, and shall provide to HUD a copy of the declaration of covenants or foreclosure deed within thirty calendar (30) days after such instrument has been recorded. These notices shall be addressed to the Director, Office of Asset Sales.

E.    Purchaser and its successors and assigns agree to subordinate claims under the Mortgage Loans to the covenants running with the land set forth in Sections 8.04.A, 8.04.B, 8.04.C, and 8.04,D above.

F.    In the event of a foreclosure on a Subordinate Mortgage Loan, the mortgagee and any other third party who takes possession or ownership of the Mortgaged Property will be required to comply with the requirements of 24 CFR part 200, subpart H, the Regulatory Agreement relating to the FHA-insured senior lien loan and any applicable HUD Handbook requirements and file a Previous Participation Certification in either the electronic Active Partners Performance System (APPS) or on HUD Form 2530.

G.    With respect to any Mortgage loan secured by a healthcare facility, the Purchaser and its successors and assigns agree not to transfer or otherwise displace residents of the facility without adequate relocation of the residents to an appropriate facility or other settings in terms of quality and services, taking into consideration the needs and choice expressed by each resident and/or the resident's Attorney-in-Fact or Health Care Agent or proxy. The Purchaser and its successors and assigns agree resident transfers or relocations will comply with applicable federal, state, and local law, regulations and guidelines. The Purchaser and its successors and assigns further agree to make this restriction regarding transfers,

displacement and relocation a condition of any foreclosure sale or subsequent loan sale. The Purchaser and its successors and assigns shall require the Mortgagor to agree to this restriction as part of any Triggering Event.

H.    In the event of a breach by Purchaser or Purchaser's successors and assigns of any of the post-sale covenants set forth in this Section 8.04, HUD may take any action it deems necessary to enforce such covenants, and Purchaser agrees to indemnify HUD for any loss, damage, cost or expense (including reasonable attorneys' fees and costs) that may be incurred by HUD on or after the Closing Date as a result of such breach by Purchaser or Purchaser's successors or assigns.

## ARTICLE IX
## PURCHASER'S EVALUATION AND ACCEPTANCE OF RISK

### Section 9.01    Due Diligence: Independent Investigation.

A.    Purchaser acknowledges that it has been afforded an opportunity and invited and directed to conduct such due diligence review and analyses of the Mortgage Loans, including, but not limited to, the Asset Review Files and related information together with such records as are generally available to the public from local, county, state and federal authorities, record-keeping offices and courts (including, without limitation, any bankruptcy courts in which any Mortgagor may be subject to any pending bankruptcy proceedings), as Purchaser deemed necessary, proper or appropriate in order to make a complete informed decision with respect to the purchase and acquisition of the Mortgage Loans.

B.    Purchaser has reviewed the Bidder Information Package and the Loan Information and has reviewed, or has elected not to review, the Asset Review Files, and has made its Bids and decision to purchase the Mortgage Loans based upon its own independent evaluation of the Mortgage Loans and the terms and conditions of this Agreement. Purchaser acknowledges and agrees that, while some information concerning the Mortgage Loans was made available to Purchaser for review prior to the Bid Date, such information may have been inaccurate or incomplete. HUD shall have no liability by reason of any inaccuracy or the lack of complete information. Purchaser has relied solely on its own investigation, and acknowledges that no employee, representative or agent of HUD has been authorized to make, and that Purchaser has not relied upon, any oral or written statements or representations by any such employee, representative or agent other than those set forth in Sections 7.01 and 7.02 of this Agreement.

## ARTICLE X
## PURCHASER'S INDEMNIFICATION; WAIVER AND RELEASE; REMEDIES
## FOR PURCHASER'S DEFAULT; REMEDIES FOR HUD'S DEFAULT

### Section 10.01    Purchaser's Indemnification of HUD.

Purchaser agrees to and hereby does indemnify HUD and hold HUD harmless from and against any loss, damage, cost or expense (including reasonable attorneys' fees and costs) that may be incurred by HUD as a result of:

A.    Purchaser's breach of any representation, warranty or covenant set forth in Section 8.01 hereof; and/or

HLS 2024-1 Loan Sale Agreement                                                                      26

B.      Purchaser's failure to perform any of the obligations of Purchaser set forth in this Agreement; and/or

C.      HUD being the mortgagee of record on any Mortgage Loan after the Closing Date.

**Section 10.02   Purchaser's Waiver and Release of HUD.**

Purchaser, its affiliates, officers, directors, successors or assigns, and all subsequent purchasers and transferees of any Mortgage Loan, and all others claiming by or through Purchaser or subsequent purchasers and transferees, hereby disclaim and waive any right or cause of action they may now or in the future have against HUD, or any Person acting on HUD's behalf, arising out of or relating to the Sale and/or the sale, assignment and transfer of any Mortgage Loan, if applicable; provided, however, that this waiver and release shall not extend to any liability of HUD arising from HUD's failure to perform its obligations in accordance with the terms of this Agreement.  In addition, Purchaser, its affiliates, officers, directors, successors or assigns, and all subsequent purchasers and transferees of the Mortgage Loan, and all others claiming by or through Purchaser or subsequent purchasers and transferees, hereby release HUD, and any Person acting on HUD's behalf, from any claim, demand, cause of action, judgment, loss, damage, liability, cost and expense (including attorneys' fees, whether suit is instituted or not), whether known or unknown, liquidated or contingent, arising from or related to any Mortgage Loan, any Mortgage Loan Documents, the sale, assignment or transfer of any Mortgage Loan, the termination or abatement by HUD of any HAP Contract related to a Mortgage Loan, or arising out of the violation of any applicable laws (including, without limitation, state and federal securities laws and/or environmental laws); provided, however, that this release shall not extend to any liability of HUD arising from HUD's failure to perform its obligations in accordance with the terms of this Agreement.  In the event HUD fails to comply with any of its obligations under this Agreement, the sole remedy available to Purchaser prior to the Closing Date shall be the return of its Deposit.

**Section 10.03   Remedies for Purchaser's Default; Liquidated Damages.**

In the event that Purchaser shall fail to perform any of its obligations under this Agreement to be performed by it on or prior to the Closing Date, including without limitation the payment of the Closing Date Payment to HUD, this Agreement shall automatically terminate as to any and all further obligations of HUD hereunder and, upon such termination, HUD shall immediately be entitled to retain the Deposit as fixed, agreed and liquidated damages.  HUD and Purchaser acknowledge and agree that the foregoing amount shall be liquidated damages and not a penalty, that actual damages resulting to HUD from Purchaser's breach of this Agreement will be difficult or impossible to measure because of, among other things, the uncertainties of the market and fluctuations in the value of the Mortgage Loan(s), and that an amount equal to the Deposit is a reasonable estimate of what those damages would be.  Upon the automatic termination of HUD's obligations under this Agreement, (a) Purchaser shall be relieved of any and all further obligations under this Agreement and (b) HUD shall be entitled to resell the Mortgage Loan(s) in any manner that HUD deems appropriate, free and clear of any and all claims of Purchaser.

**Section 10.04   Remedies for HUD's Default.**

In the event that HUD shall fail to complete the sale of the Mortgage Loan(s), Purchaser's sole remedy shall be the return of any amounts paid by Purchaser pursuant to this Agreement.  Without limiting the generality of the foregoing, Purchaser hereby waives any claim for damages (other than amounts paid by Purchaser pursuant to this Agreement) and any right to seek specific performance or other equitable relief.

HLS 2024-1 Loan Sale Agreement                                                                           27

## ARTICLE XI
## CASUALTY LOSS; CONDEMNATION; PREPAYMENT; LITIGATION

**Section 11.01  Rights in the Event of Casualty Loss and/or Condemnation.**

If, prior to the Closing Date, the Mortgaged Property, or any part thereof, is damaged as the result of fire or other casualty, or is taken by eminent domain, both HUD and Purchaser shall proceed with the sale of the Mortgage Loan and the transfer and assignment of the Mortgage Loan Documents. Following the Closing Date, HUD shall assign to Purchaser all of the insurance or condemnation proceeds, if any, paid to HUD after the Cut-Off Date to the Closing Date with respect to the Mortgage Loan, to the extent such proceeds were not already applied in accordance with the terms of the Mortgage and applicable law, as well as all of HUD's rights, if any, with respect to any insurance or condemnation proceeds that may be paid or become due after the Closing Date. Upon receipt thereof, Purchaser shall be required to apply such proceeds in accordance with the terms of the Mortgage and applicable law.

**Section 11.02  Rights in the Event of Prepayment or HUD's Acquisition of Mortgaged Property.**

A.       If, prior to the Closing Date, HUD receives a payment from a Mortgagor which, when applied in accordance with the terms of the related Mortgage Note, results in a prepayment of the then entire Unpaid Principal Balance of such Mortgage Loan (a "Terminated Mortgage Loan"); then:

(1)       if a single Mortgage Loan is the subject of this Agreement, this Agreement shall terminate upon HUD's return to Purchaser of the Deposit; or

(2)       if more than one Mortgage Loan is the subject of this Agreement, this Agreement shall terminate solely as it relates to the Terminated Mortgage Loan, in which event (i) the Closing Date Payment shall be reduced to reflect the deletion of the Terminated Mortgage Loan from the Mortgage Loan Pool in accordance with Section 2.04, (ii) except as otherwise provided herein, neither party shall have any further liability to the other with respect to the Terminated Mortgage Loan, and (iii) both parties shall remain bound by all terms and conditions of this Agreement with respect to each other Mortgage Loan that is the subject of this Agreement.

B.       If, prior to the Closing Date, HUD determines, in HUD's sole discretion, that it is necessary to acquire title to the Mortgaged Property relating to any Mortgage Loan, upon such determination and HUD's removal of such Mortgage Loan from the Sale, this Agreement shall terminate, as if such Mortgage Loan were a Terminated Mortgage Loan.  In such circumstance, the return by HUD of the Deposit as provided in Subsection 11.02.A(1) or the reduction of the Closing Date Payment as provided in Subsection 11.02.A(2), as applicable, shall be Purchaser's sole remedy and in no event shall Purchaser be entitled to seek consequential, punitive, exemplary, or any other type of damages, including, without limitation, damages for lost profits.

**Section 11.03  Rights in the Event of Litigation in Connection with the Sale of a Mortgage Loan.**

A.       In the event there exists on the Closing Date litigation pending against HUD which challenges or relates to the sale by HUD of a Mortgage Loan ("Litigation"), Purchaser shall purchase such Mortgage Loan on the Closing Date, except as follows:

(1)    If HUD is prohibited by a temporary restraining order or other emergency court order from selling such Mortgage Loan on the Closing Date, the Closing Date shall be extended until the fifth (5th) Business Day following the day on which Purchaser receives notice from HUD that such temporary restraining order or other emergency court order expires or is dissolved, provided, however, that if HUD consents to the extension of any such order for a period that ends forty (40) calendar days or more beyond the date initially established as the Closing Date for such Mortgage Loan, Purchaser may terminate this Agreement as it relates to such Mortgage Loan.  In order to exercise the option to terminate this Agreement pursuant to this Subsection 11.03.A(1), Purchaser must notify HUD in writing, within five (5) Business Days after receiving notice from HUD of such extension of the order, of Purchaser's election to terminate this Agreement as it relates to such Mortgage Loan.

(2)    If HUD is prohibited by a preliminary injunction or other court order from selling the Mortgage Loan on the Closing Date, Purchaser may terminate this Agreement as it relates to such Mortgage Loan.

(a)    In order to exercise the option to terminate this Agreement pursuant to Subsection 11.03.A(2), Purchaser must notify HUD in writing, within five (5) Business Days after receiving notice from HUD of the preliminary injunction or other court order, that it elects to do so.

(b)    If Purchaser does not elect to exercise its option to terminate this Agreement in the manner set forth above, then the Closing Date shall be extended until the fifth (5th) Business Day following the day on which such preliminary injunction is lifted/dissolved or other court order expires.

(3)    If HUD is permanently enjoined from selling a Mortgage Loan, this Agreement, as it relates to such Mortgage Loan, shall terminate five (5) Business Days after the issuance of the order granting such permanent injunction.

B.    With respect to any Mortgage Loan that is the subject of any Litigation, in the event the Litigation is not finally adjudicated on or prior to the date that is ten (10) Business Days prior to the end of the Warranty Period for such Mortgage Loan, and if the terms of any final, non-appealable order or settlement issued in connection with the adjudication of the Litigation is or forms the sole basis for a claim of breach of HUD's representations and warranties by Purchaser, the Warranty Period with respect to such claim shall be deemed to be extended through the tenth (10) Business Day after Purchaser receives notice from HUD of the issuance of such final non-appealable order or settlement disposing of such Litigation.  Except as set forth herein, such claim is subject to the provisions of Section 7.05.

C.    In the event that Purchaser foregoes its option to terminate this Agreement under Subsection 11.03.A(1) or 11.03.A(2), and if HUD rescinds the sale of a Mortgage Loan as a result of a breach allegation based solely upon the terms of a final, non-appealable order or settlement resulting in the disposition of the Litigation, the rate of interest on the Individual Loan Price used to calculate the Rescission Payment for such Mortgage Loan shall be the Investment Rate.

**ARTICLE XII**
**MISCELLANEOUS**

**Section 12.01    No Delivery of Mortgage Loan Documents, Servicing Files and Project Information Prior to Closing.**

Prior to Purchaser closing on the Mortgage Loans, HUD shall not deliver to Purchaser the Mortgage Loan Documents, the Servicing Files and the Project Information or copies thereof.

**Section 12.02    Drafting Presumption.**

This Agreement shall be construed fairly as to all parties regardless of which party prepared this Agreement.

**Section 12.03    Post-Closing Servicing of the Mortgage Loans.**

A.    From and after the Closing Date, Purchaser shall be fully bound by the Mortgage Loan Documents relating to each Mortgage Loan, including without limitation any mortgage modification relating to such Mortgage Loan.

B.    From and after the Closing Date, Purchaser, and not HUD, shall be responsible for servicing the Mortgage Loans in accordance with the provisions hereof and applicable federal, state and local law and regulations, including, without limitation, sending the Mortgagor all bills relating to each Mortgage Loan.

**Section 12.04    Termination of FHA Mortgage Insurance, FHA Mortgage Insurance Premium, Monthly HUD Service Charge and HUD Regulatory Agreement.**

A.    From and after the Closing Date, no FHA Mortgage Insurance shall be in effect with respect to any Mortgage Loan and no FHA mortgage insurance premium or monthly HUD service charge shall be payable by the related Mortgagor.

B.    From and after the Closing Date, the Regulatory Agreement relating to each Mortgage Loan shall be released and terminated, as provided in the Release of Regulatory Agreement; provided, however, that, for any Subordinate Mortgage Loan, HUD will release only the Regulatory Agreement that specifically relates to such Subordinate Mortgage Loan. Notwithstanding the foregoing, for any Bankruptcy Mortgage Loan, the Release of Regulatory Agreement may be delayed. Purchaser acknowledges and agrees that there might be regulatory agreements that relate to another loan secured by the Mortgaged Property securing the Subordinate Mortgage Loan and that Purchaser shall not be entitled to receive the benefit of any such regulatory agreement nor shall HUD be required to release any such regulatory agreement in connection with this Sale.

**Section 12.05    Notices.**

Except as otherwise indicated in this Agreement, all notices, requests, demands and other communications which are required or permitted to be given under this Agreement shall be in writing and shall be sent (except as otherwise expressly provided herein) in duplicate by overnight courier and electronic mail transmission (including PDF), with the original sent within seventy-two (72) hours of such electronic mail transmission by hand-delivery, overnight courier or by registered or certified mail, return receipt requested, postage prepaid:

If to HUD, to:

Attention:    John Lucey
                 Director
                 Office of Asset Sales
                 United States Department of Housing and Urban Development
                 451 7th Street, SW
                 Room 9216
                 Washington, D.C.  20410
                 Phone Number: (202) 402-3927
                 Email Address: John.W.Lucey@hud.gov

with a copy to:

                 Laura M. Scott, Esq.
                 Deputy Assistant General Counsel
                 Office of General Counsel
                 Multifamily Mortgage Division
                 United States Department of Housing and Urban Development
                 451 7th Street, SW
                 Room 10172
                 Washington, D.C.  20410
                 Phone Number (202) 402-6582
                 Email Address: Laura.M.Scott@hud.gov

If to Purchaser, to the address and email address indicated on the front cover of this Agreement.

All such notices, requests, demands and other communications shall be effective upon the actual delivery thereof to the address identified pursuant to this Section (or the refusal thereof by the addressee at the address identified pursuant to this Section).  Either party to this Agreement may change such party's address for purposes of this Section by sending to the other party to this Agreement written notice of the new address in the manner specified in this Section.

Section 12.06  **Expenses.**

Purchaser shall pay any and all costs incurred by Purchaser in connection with the sale, assignment and transfer of the Mortgage Loans, including, but not limited to, any city, county and/or state taxes, any recordation, mailing or filing fees, any fees associated with mobile notaries or remote notarization, the costs of any title commitment or title insurance policy, any transfer fees payable to any governmental agency, and any other costs or fees relating to or arising from the sale, assignment and transfer of the Mortgage Loans.

Section 12.07  **No Assignment.**

A.     Purchaser shall not assign this Agreement, in whole or in part, prior to the sale, assignment and transfer of the Mortgage Loan(s) to Purchaser.  Any assignment or attempted assignment in violation of the foregoing shall be void and of no effect.

HLS 2024-1 Loan Sale Agreement                 31

B.      After the sale, assignment and transfer of the Mortgage Loan(s) to Purchaser, Purchaser may assign this Agreement, in whole or in part (including the rights under this Section), provided that such assignment is in writing, and such assignment expressly states that: (1) the assignee(s) assumes any and all of Purchaser's liabilities and obligations under this Agreement that arise or are to be performed after the Closing Date; and (2) both Purchaser and the assignee(s) shall each remain jointly and severally liable to HUD for the failure of either Purchaser or the assignee(s) to fully comply with any such liabilities and obligations. Any assignment or attempted assignment in violation of the foregoing shall be void and of no effect. Upon execution, Purchaser and the assignee(s) shall promptly provide HUD with a copy of any such assignment.

Section 12.08   **Governing Law; Waiver of Jury Trial; Venue**.

A.      This Agreement shall be governed by and construed in accordance with the federal laws of the United States of America and, to the extent there is no applicable federal law, the laws of the District of Columbia, without giving effect to any choice of law principles.

B.      HUD and Purchaser each hereby waives any right to have a jury participate in resolving any dispute, whether sounding in contract, tort, or otherwise arising out of, related to, or in connection with this agreement. Instead, any dispute resolved in court will be resolved in a bench trial without a jury.

C.      In any suit brought against the United States or any agency thereof or any suit in which the United States or any agency thereof is interpleaded, impleaded, cross-claimed or is a third-party defendant, each party hereby irrevocably and unconditionally agrees to be subject to the exclusive jurisdiction of the courts sitting in the District of Columbia. To the fullest extent permitted by law, Purchaser irrevocably waives any objection it may now or hereafter have to such venue and any claim that such proceeding has been brought in an inconvenient forum. Purchaser hereby consents to the jurisdiction of the courts sitting in the District of Columbia in connection with any action or proceeding initiated concerning this Agreement. The parties agree to service of process by mail to the addresses specified in Section 12.05 of this Agreement.

Section 12.09   **Entire Agreement**.

This Agreement, the attachments hereto, and the documents and instruments to be executed and delivered pursuant to this Agreement, constitute the entire agreement between the parties hereto with respect to the subject of the transactions contemplated hereby and supersede all prior agreements and understandings with respect thereto, if any.

Section 12.10   **Headings**.

The headings of the several articles and sections of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

Section 12.11   **Time of Essence; Time**.

Time is of the essence with respect to all of HUD's and Purchaser's obligations under this Agreement. All references in this Agreement to a specific time of day shall be deemed to refer to Eastern Standard Time or Daylight Savings Time, whichever is then applicable in the District of Columbia.

**Section 12.12   No Third Party Beneficiaries.**

Except with respect to each Mortgagor's rights against Purchaser to require the restoration of the Closing Escrow Account Balances in accordance with Section 3.03 hereof, this Agreement does not create, and shall not be deemed to create, a relationship between either or both of the parties hereto and any third party in the nature of a third party beneficiary relationship. The Mortgagor's exercise of such rights as a third party beneficiary shall constitute a waiver of any and all rights that the Mortgagor may otherwise have had against HUD, whether under the Mortgage Loan Documents or otherwise, in connection with the Closing Escrow Account Balances.

**Section 12.13   No Limitation on HUD's Ability to Administer and Enforce Laws.**

Except as otherwise expressly set forth in the Agreement, nothing in this Agreement shall in any way be construed to affect HUD's ability to administer or enforce the laws, regulations and policies pertaining to any Mortgage Loan, or otherwise.

**Section 12.14   Further Assurances.**

During the period from the Award Date through and after the Closing Date, upon the reasonable request of Purchaser or HUD, and without payment of further consideration from one party to the other (other than reimbursement of out-of-pocket expenses incurred by the party receiving the request), Purchaser and/or HUD will do, execute, acknowledge and deliver, and will cause to be done, executed, acknowledged and delivered, all such further acts, instruments, documents and assurances as may be required in order to complete the transactions contemplated by this Agreement.

**Section 12.15   Counterparts.**

This Agreement may be executed and delivered in any number of counterparts and such counterparts taken together shall constitute one and the same agreement.

**Section 12.16   Informational Tax Reporting.**

Purchaser shall be responsible for all obligations with respect to federal and/or state tax reporting relating to or arising out of any Mortgage Loan and/or Mortgage Loan Documents including, without limitation, the obligations with respect to Forms 1098 and 1099 and backup withholding with respect to the same, if required, commencing with the tax year 2024.

**Section 12.17   HUD's Reservation of Certain Rights.**

A.      In the event that bonds relating to a Mortgaged Property were issued and retired and HUD has any claim to excess bond proceeds received by a trustee, an underwriter or an affiliate or any holder of an interest in the Mortgagor (but not the Mortgagor itself), or any affiliate thereof, nothing contained in this Agreement shall affect, impair or limit such claim and all rights to make such claim and to receive the proceeds of such claim are hereby reserved to HUD.

B.      As of the Closing Date, the Regulatory Agreement with respect to each Mortgage Loan shall terminate, but HUD hereby reserves all rights to pursue violations thereof that occurred prior to the Closing Date. After the Closing Date, HUD may pursue claims against any person that caused a pre-Closing Date

violation of a Regulatory Agreement or that received a benefit therefrom. Any funds recovered in satisfaction or settlement of any claim that is or could be subject to an action under 12 U.S.C. Sections 1715z-4a or 1715z-19 shall be retained by HUD.

### Section 12.18    HUD Authorized To Complete Agreement.

Purchaser expressly authorizes HUD to complete any missing or incomplete dates, transaction related information and attachments in order to complete this Agreement.

### Section 12.19    Digital Signatures.

HUD and the Purchaser agree that this Agreement may be electronically signed pursuant to applicable laws governing electronic transactions, including, without limitation, the Electronic Signatures in Global and National Commerce Act (E-SIGN) (15 U.S.C. 7001 et seq.), and the Uniform Electronic Transactions Act (UETA). Purchaser acknowledges and agrees that the electronic signature appearing on this Agreement is equivalent to a handwritten signature for purposes of validity and enforceability. If Purchaser executes this Agreement via electronic signature, such party represents and warrants that:

A.    Purchaser has controls in place to ensure compliance with applicable laws governing electronic transactions, including, without limitation, the E-SIGN Act and UETA, and electronic records, retained by Purchaser will be stored to prevent unauthorized access to or unauthorized alteration of the electronic signature and associated records;

B.    Purchaser's creation and maintenance of its electronic signature, and storage of its copy of the fully executed Agreement, will be in compliance with applicable laws governing electronic transactions to ensure admissibility of such electronic signature and related electronic records in a legal proceeding;

C.    Purchaser has controls and systems in place to provide necessary information, including, but not limited to, Purchaser's business practices and methods, for record keeping and audit trails, including audit trails regarding such party's electronic signature to this Agreement.

[*THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK. SIGNATURES APPEAR ON THE FOLLOWING PAGE*]

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed and delivered in their names as of the date first above written.

**UNITED STATES SECRETARY OF
HOUSING AND URBAN DEVELOPMENT**

By: _____
　　　Authorized Agent

**PURCHASER:**

_____

By: _____
Name: _____
Title: _____

I, the undersigned, certify under penalty of perjury that the information provided above is true, correct, and accurate. WARNING: Anyone who knowingly submits a false claim or makes a false statement is subject to criminal and/or civil penalties, including confinement for up to 5 years, fines, and civil and administrative penalties. (18 U.S.C. §§ 287, 1001, 1010, 1012, 1014; 31 U.S.C. §§ 3729, 3802).

**ATTACHMENT A**

**AWARD LETTER**

Date

Successful Bidder
Address

Email:

Re:    Healthcare Loan Sale 2024-1

Dear _____:

This Award Letter confirms that the U.S. Department of Housing and Urban Development ("HUD") has accepted your bid (the "Bid") for Mortgage Loan FHA Project Number [FHA Case Number], [Property Name(s)] (the "Asset(s)"). Your Bid Confirmation Form for the awarded Asset(s) is attached hereto and incorporated herein by reference.

HUD has received your Deposit in the amount of $_____. Your Bid is irrevocable. Any failure on your part to complete the transaction on the terms and conditions set forth in the Loan Sale Agreement will entitle HUD to terminate any and all obligations it might have to sell to you the Asset(s) awarded to you and to retain the Deposit as liquidated damages.

The final payment due will be specified in the Closing Date Payment Notice for your Bid on the Asset(s) awarded to you will be calculated pursuant to the terms of Section 2.04 of the Loan Sale Agreement by and between HUD and you dated effective as of _____, (the "Loan Sale Agreement").

Once the final payment has been received for the awarded Asset(s), HUD will send you an electronic copy of the complete and fully executed Loan Sale Agreement. HUD will retain another complete and fully executed copy of the Loan Sale Agreement for its records.

If you have any questions, please call John Lucey, Director, Asset Sales Office, at (202) 402-3927. HUD congratulates you on your winning bid and is looking forward to working with you to close the transaction successfully.

Sincerely,

Assistant Secretary for Housing –
Federal Housing Commissioner

HLS 2024-1 Loan Sale Agreement

**ATTACHMENT B**

**NOTE ENDORSEMENT**

FHA Project No.: _____
Project Name: _____
City, County, State: _____

ENDORSEMENT OF _____ **[insert MORTGAGE NOTE, DEED OF TRUST NOTE OR OTHER INSTRUMENT]** dated _____ **[insert date of Note]**, in the original amount of $_____ from [borrower] to [original lender] including any assignments thereto and modifications thereof (the "Note")

FROM: UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT ("HUD")

Pay to the order of _____ **[insert name of Purchaser]** ("Assignee"), without recourse.

HUD and Assignee expressly acknowledge and agree that from and after the date of this Endorsement, no FHA Mortgage Insurance is in effect with respect to the Note, that the panel evidencing FHA Mortgage Insurance on the Note has been or shall be deemed to be marked with an "X" across it and that the Note (including any assignments thereto and modifications thereof) has been or shall be deemed to be marked with the words "FHA Mortgage Insurance Terminated. Note Endorsement From HUD Hereby Made A Part Hereof."

**IN WITNESS WHEREOF**, HUD has caused this Endorsement to be executed and delivered under seal by its duly authorized agent as of the _____ day of _____.

UNITED STATES SECRETARY OF
HOUSING AND URBAN DEVELOPMENT


By: _____
           Authorized Agent

HLS 2024-1 Loan Sale Agreement

**ATTACHMENT C**

**ASSIGNMENT AND LOST NOTE AFFIDAVIT**


DISTRICT OF COLUMBIA, ss:

FHA Project No.: _____
Project Name: _____
City, County, State: _____


      I, _____, of the United States Department of Housing and Urban Development ("HUD"), on oath depose and state the following:

      1.    That on _____, _____, a certain **[indicate Mortgage Note or Deed of Trust Note or other instrument]** (the "Note") in the face amount of $_____ **[insert face amount of Note]** was endorsed by an authorized agent of HUD, under the applicable section of the National Housing Act. (A copy of the Note is attached herewith, if available.)

      2.    That _____ **[insert name of original maker of Note]** was the maker of the Note and _____ **[insert name of original payee]** was the payee of the Note.

      3.    That the Note was secured by a **[indicate Mortgage or Deed of Trust or other document]** recorded in Book _____, Page _____, of the land records of _____ City/County, _____ **[insert applicable recording information]**, as assigned, amended or modified from time to time.

      4.    That the Note was believed to be kept in a fire-proof safe in the care, custody and control of HUD.

      5.    That the Note was not where it was assumed to be, and a diligent search to locate the Note was undertaken, without results.

      6.    That pursuant to the terms and conditions of a certain Loan Sale Agreement between HUD and _____ **[insert Purchaser's name]** ("Assignee"), dated effective as of _____, (the "Loan Sale Agreement"), the Note (including, without limitation, any and all rights HUD may have to enforce payment and performance of the Note, including any rights under Section 3-309 of the Uniform Commercial Code) is hereby assigned, without recourse, to Assignee, without FHA Mortgage Insurance (as defined in the Loan Sale Agreement).

      7.    That HUD is the sole owner and holder of the Note and has not transferred, assigned or conveyed the Note to any person or entity other than Assignee. In the event that HUD subsequently locates the Note, HUD shall provide written notice thereof to Assignee and shall deliver and endorse the Note to Assignee in accordance with written instructions received from Assignee (or such other party designated in writing by Assignee).

**IN WITNESS WHEREOF**, HUD has caused this Assignment and Lost Note Affidavit to be executed and delivered under seal by its duly authorized agent as of the _____ day of _____.

WITNESS:                                    UNITED STATES SECRETARY OF
                                            HOUSING AND URBAN DEVELOPMENT


_____           By:_____
                                               Authorized Agent


_____


**ACKNOWLEDGEMENT**

DISTRICT OF COLUMBIA, ss:

    The foregoing instrument was acknowledged before me on _____, by _____, as Authorized Agent of the United States Secretary of Housing and Urban Development.


                                            _____
                                            Notary Public

[SEAL]                                      My commission expires _____


HLS 2024-1 Loan Sale Agreement

## ATTACHMENT D

**After recording, please**
**return to:**

**This instrument**
**prepared by:**

_____

_____

_____

_____

_____

_____

_____, Esq.
U.S. Department of Housing
and Urban Development
Office of General Counsel
451 7th Street SW, Room 10172
Washington, DC 20410

### ASSIGNMENT OF MORTGAGE AND LOAN DOCUMENTS

FHA Project No.: _____
Project Name: _____
City, County, State: _____

    THE UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT ("HUD"), in consideration of Ten Dollars ($10.00) and other good and valuable consideration, hereby assigns, transfers, sets over and conveys to _____ **[insert name of Purchaser]** ("Assignee"), without recourse, the following:

1.    that certain _____ **[indicate Deed of Trust or Mortgage or other instrument]** dated _____, and recorded in Book _____, Page _____, of the land records of _____ City/County, _____ **[insert applicable recording information]**, as assigned, amended or modified from time to time (the "Mortgage"), which Mortgage secures that certain _____ **[indicate Deed of Trust Note or Mortgage Note or other instrument]** dated _____, _____, (the "Note") **[insert applicable date]**;

2.    that certain _____ **[indicate any other recorded loan document]** dated _____, _____, and recorded in Book _____, Page _____, of the land records of _____ City/County **[insert applicable recording information]**, which instrument secures the Note; and

3.    such other documents, agreements, instruments and other collateral (excluding the Regulatory Agreement referenced in the Mortgage) which evidence, secure or otherwise relate to HUD's right, title or interest in and to the Mortgage and/or the Note, including without limitation the security agreement, if any, and the title insurance policies and hazard insurance policies that may presently be in effect.

**[INSERT THE FOLLOWING PARAGRAPH FOR ANY MORTGAGE LOAN LISTED ON ATTACHMENT G-1]**

Pursuant to the Loan Sale Agreement dated effective as of _____, between HUD and Assignee, Assignee is obligated in connection with any restructuring, final compromise, or foreclosure of the mortgage loan evidenced by the Mortgage Note and Mortgage to record, together with the mortgagor thereunder, certain covenants with respect to the assumption of any outstanding project-based federal rental subsidy contract, the assumption of any tenant-based housing assistance payments contract and the related leases, and the effect of foreclosure on leases of tenants in the property secured by the Mortgage.

**IN WITNESS WHEREOF**, HUD has caused this Assignment to be executed and delivered under seal by its duly authorized agent as of the _____ day of _____.

WITNESS:                                       UNITED STATES SECRETARY OF
                                               HOUSING AND URBAN DEVELOPMENT


_____       By: _____
                                               Authorized Agent


_____


Name and Address of Assignee:


**ACKNOWLEDGEMENT**

DISTRICT OF COLUMBIA, ss:

The foregoing instrument was acknowledged before me on _____, by _____, as Authorized Agent of the United States Secretary of Housing and Urban Development.


                                       _____
                                       Notary Public

[SEAL]                                 My commission expires _____


HLS 2024-1 Loan Sale Agreement

**ATTACHMENT E-1**

**After recording, please
return to:**

**This instrument
prepared by:**

_____
_____
_____
_____
_____
_____

_____, Esq.
U.S. Department of Housing
and Urban Development
Office of General Counsel
451 7th Street SW, Room 10172
Washington, DC 20410

**RELEASE OF REGULATORY AGREEMENT**

FHA Project No.: _____
Project Name: _____
City, County, State: _____

  **THIS RELEASE** is made by the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT ("HUD").

**WITNESSETH:**

  **WHEREAS**, HUD insured or coinsured a mortgage loan (the "Mortgage Loan") evidenced by a _____ **[indicate Deed of Trust Note or Mortgage Note or other instrument]** dated _____, \_\_\_\_\_, in the original amount of $_____ **[insert original amount of Note]** (the "Mortgage Note"), and secured by a _____**[indicate Deed of Trust or Mortgage or other instrument]** dated _____, \_\_\_\_\_, as assigned, amended or modified from time to time (the "Mortgage"), on Project No. \_\_\_\_\_ **[insert Project No.]**, located in _____ City/County, _____ **[insert applicable county and state]** (the "Project");

  **WHEREAS**, in consideration of the Mortgage Loan, the original mortgagor, _____ **[insert name of original Mortgagor]** (the "Mortgagor"), executed a Regulatory Agreement, which was recorded in Book \_\_\_\_\_, Page _____, of the land records of _____ City/County, _____ **[insert applicable recording information]** (including any and all amendments thereto, the "Regulatory Agreement"); and

  **WHEREAS**, HUD has entered into a certain Loan Sale Agreement with _____ (the "Purchaser"), dated as of _____ **[insert date]**, (the "Loan Sale Agreement"), pursuant to which HUD is selling, assigning and transferring the Mortgage Loan to the Purchaser; and

  **WHEREAS**, pursuant to the Loan Sale Agreement, HUD has agreed to release the Regulatory Agreement as provided below.

**NOW, THEREFORE**, for and in consideration of the sale, assignment and transfer of the Mortgage Loan, and other good and valuable consideration, the adequacy and receipt of which are hereby acknowledged, HUD does hereby release and terminate, but on a prospective basis only, the Regulatory Agreement in effect with respect to the Project and does hereby agree that the Mortgagor and its successors and assigns are released, on a prospective basis only, from all obligations set forth in the Regulatory Agreement (including, without limitation, obligations relating to the maintenance of any reserve fund for replacements referenced in the Regulatory Agreement); provided, however, that (i) this Release shall be of no further force or effect and the Regulatory Agreement shall not be released if HUD rescinds the sale, assignment and transfer of the Mortgage Loan pursuant to the Loan Sale Agreement; and (ii) nothing in this Release shall waive, compromise, impair or prejudice any right that HUD might have to seek judicial, administrative or other recourse for any breach of the Regulatory Agreement that might have occurred or accrued prior to the date of this Release.



[INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, HUD has caused this Release to be executed and delivered under seal by its duly authorized agent as of the _____ day of _____.

WITNESS:

UNITED STATES SECRETARY OF
HOUSING AND URBAN DEVELOPMENT

_____

By: _____
      Authorized Agent

_____

**ACKNOWLEDGEMENT**

DISTRICT OF COLUMBIA, ss:

The foregoing instrument was acknowledged before me on _____, by ____-
_____, as Authorized Agent of the United States Secretary of Housing and Urban Development.

_____
Notary Public

[SEAL]

My commission expires _____

<u>ATTACHMENT E-2</u>

**After recording, please
return to:**

**This instrument
prepared by:**

_____

_____

_____

_____

_____

_____

_____, Esq.
U.S. Department of Housing
and Urban Development
Office of General Counsel
451 7th Street SW, Room 10172
Washington, DC 20410

**RELEASE OF REGULATORY AGREEMENTS
(HEALTHCARE PROJECTS)**

FHA Project No.: _____
Project Name: _____
City, State: _____

     **THIS RELEASE** is made by the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT ("HUD").

     **WITNESSETH:**

     **WHEREAS**, HUD insured or coinsured a mortgage loan (the "Mortgage Loan") evidenced by a _____ **[indicate Deed of Trust Note or Mortgage Note or other instrument]** dated _____, _____, in the original amount of $_____ **[insert original amount of Note]** (the "Mortgage Note"), and secured by a _____ **[indicate Deed of Trust or Mortgage or other instrument]** dated _____, _____, as assigned, amended or modified from time to time (the "Mortgage"), on Project No. _____ **[insert Project No.]**, located in _____ City/County, _____ **[insert applicable county and state]** (the "Project");

     **WHEREAS**, in consideration of the Mortgage Loan, the original mortgagor, _____ **[insert name of original Mortgagor]** (the "Mortgagor"), executed a Regulatory Agreement dated _____, _____, which was recorded on _____ in Book _____, Page _____, of the land records of _____ City/County, _____ **[insert applicable recording information]** (including any and all amendments thereto, the "Regulatory Agreement - Borrower"); and

     **WHEREAS**, _____ **[insert name of Operator]**, as Operator, executed that certain Regulatory Agreement for Nursing Homes, dated _____, _____,which was recorded on _____ in Book _____, Page _____, of the land records of _____ City/County, _____ **[insert applicable recording information]** (including any and all amendments thereto, the "Regulatory Agreement – Operator," and together with the Regulatory Agreement – Borrower, the "Regulatory Agreements"); and

**WHEREAS**, HUD has entered into a certain Loan Sale Agreement with _____ (the "Purchaser"), dated as of _____ **[insert date]**, (the "Loan Sale Agreement"), pursuant to which HUD is selling, assigning and transferring the Mortgage Loan to the Purchaser; and

**WHEREAS**, pursuant to the Loan Sale Agreement, HUD has agreed to release the Regulatory Agreements as provided below.

**NOW, THEREFORE**, for and in consideration of the sale, assignment and transfer of the Mortgage Loan, and other good and valuable consideration, the adequacy and receipt of which are hereby acknowledged, HUD does hereby release and terminate, but on a prospective basis only, the Regulatory Agreements in effect with respect to the Project and does hereby agree that the Mortgagor and its successors and assigns are released, on a prospective basis only, from all obligations set forth in the Regulatory Agreements (including, without limitation, obligations relating to the maintenance of any reserve fund for replacements referenced in the Regulatory Agreements); provided, however, that (i) this Release shall be of no further force or effect and the Regulatory Agreements shall not be released if HUD rescinds the sale, assignment and transfer of the Mortgage Loan pursuant to the Loan Sale Agreement; and (ii) nothing in this Release shall waive, compromise, impair or prejudice any right that HUD might have to seek judicial, administrative or other recourse for any breach of the Regulatory Agreements that might have occurred or accrued prior to the date of this Release.

[INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, HUD has caused this Release to be executed and delivered under seal by its duly authorized agent as of the _____ day of _____.

WITNESS:                                          UNITED STATES SECRETARY
                                                  OF HOUSING AND URBAN DEVELOPMENT


_____    By: _____
                                            Authorized Agent


_____



**ACKNOWLEDGEMENT**


DISTRICT OF COLUMBIA, ss:


    The foregoing instrument was acknowledged before me on _____, by
_____, as Authorized Agent of the United States Secretary
of Housing and Urban Development.



                                   _____
                                   Notary Public

[SEAL]                                    My commission expires _____

**ATTACHMENT F**

**MORTGAGE LOAN SCHEDULE**

(To be included in the Bidder Information Package or a
Bidder Information Package Supplement prior to the Bid Date)

Non-Executable

<u>**ATTACHMENT G-1**</u>

**LISTING OF DELINQUENT MORTGAGE LOANS**
**(AS SET FORTH AT 24 C.F.R. § 290.37)**
**AS OF JULY 31, 2024**
**WITH HAP CONTRACTS**

# NONE



ATTACHMENT G-2

**LISTING OF DELINQUENT MORTGAGE LOANS**
**(AS SET FORTH AT 24 C.F.R. § 290.39)**
**AS OF JULY 31, 2024**

| Pool # | FHA | Property Name | City, State | Property Type |
|---|---|---|---|---|
| 230 | 023-22105 | AIRAMIDMA4-WILLIMANSETT CENTER EAST | CHICOPEE, MA | Healthcare |
| 231 | 023-22106 | WILLIMANSETT CENTER WEST | CHICOPEE, MA | Healthcare |
| 232 | 023-22107 | AIRAMIDMA4-GOVERNOR-S CENTER | WESTFIELD, MA | Healthcare |
| 233 | 033-22064 | RHODES ESTATES | NEW CASTLE, PA | Healthcare |
| 234 | 042-22145 | FAIRFAX PLACE | CLEVELAND, OH | Healthcare |
| 236 | 051-22149 | DUTCH HAVEN ASSISTED LIVING | MAURERTOWN, VA | Healthcare |
| 237 | 071-22137 | RAINBOW BEACH NURSING CENTER | CHICAGO, IL | Healthcare |
| 238 | 071-43290 | ALEXI SENIOR LIVING | MATTESON, IL | Healthcare |
| 120 | 115-13006 | ST. MARKS MEDICAL CENTER | LA GRANGE, TX | Hospital |
| 240 | 123-43061 | SOLTERRA AT WHITE MOUNTAINS | LAKESIDE, AZ | Healthcare |
| 241 | 123-43110 | SOLTERRA SENIOR LIVING | CHANDLER, AZ | Healthcare |
| 242 | 129-43033 | PLAZA VILLAGE SENIOR LIVING | NATIONAL CITY, CA | Healthcare |

Non-Exclusive

ATTACHMENT G-3

**LISTING OF DELINQUENT MORTGAGE LOANS
– OCCUPIED & UNSUBSIDIZED PROJECTS
(AS SET FORTH AT 24 C.F.R. § 290.35)
AS OF JULY 31, 2024**

| Pool # | FHA | Property Name | City, State | Property Type |
|--------|-----|---------------|-------------|---------------|
| 234 | 042-22145 | FAIRFAX PLACE | CLEVELAND, OH | Healthcare |
| 237 | 071-22137 | RAINBOW BEACH NURSING CENTER | CHICAGO, IL | Healthcare |
| 240 | 123-43061 | SOLTERRA AT WHITE MOUNTAINS | LAKESIDE, AZ | Healthcare |
| 241 | 123-43110 | SOLTERRA SENIOR LIVING | CHANDLER, AZ | Healthcare |
| 242 | 129-43033 | PLAZA VILLAGE SENIOR LIVING | NATIONAL CITY, CA | Healthcare |

**ATTACHMENT G-4**

**LISTING OF DELINQUENT MORTGAGE LOANS**
**– OCCUPIED PROJECTS**
**(As set forth in Protecting Tenants at Foreclosure Act of 2009)**
**AS OF JULY 31, 2024**

| Pool # | FHA | Property Name | City, State | Property Type |
|--------|-----|---------------|-------------|---------------|
| 234 | 042-22145 | FAIRFAX PLACE | CLEVELAND, OH | Healthcare |
| 237 | 071-22137 | RAINBOW BEACH NURSING CENTER | CHICAGO, IL | Healthcare |
| 240 | 123-43061 | SOLTERRA AT WHITE MOUNTAINS | LAKESIDE, AZ | Healthcare |
| 241 | 123-43110 | SOLTERRA SENIOR LIVING | CHANDLER, AZ | Healthcare |
| 242 | 129-43033 | PLAZA VILLAGE SENIOR LIVING | NATIONAL CITY, CA | Healthcare |

HLS 2024-1 Loan Sale Agreement

## ATTACHMENT H-1

[For delinquent Mortgage Loans receiving payments under a HAP Contract]

**[to be recorded as part of any Triggering Event, as defined in the Loan Sale Agreement and below]**

### DECLARATION OF COVENANTS

THIS DECLARATION OF COVENANTS ("Declaration"), is made and entered into by _____ ("Declarant") and _____ ("Mortgagee").

### R E C I T A L S:

Declarant, a _____ organized and existing under the laws of _____, whose address _____ is the owner of certain property ("Property") located at _____ **[Insert Street Location]** in_____ **[Insert County]**, **[Insert City]**, _____**[Insert State]**. The Property is more particularly described in the legal description attached hereto as Exhibit A.

On or about _____, the United States Department of Housing and Urban Development ("HUD") sold the mortgage ("Mortgage") secured by the Property and the related mortgage note ("Note") in the Healthcare Loan Sale 2024-1 of HUD-held, unsubsidized healthcare mortgages. At the time HUD offered the Mortgage for sale, the Mortgage was delinquent and the Property was receiving project-based federal rental assistance. Accordingly, the sale of the Mortgage was subject to the provisions of 24 C.F.R. § 290.37 ("Regulations") regarding requirements for continuing federal rental subsidy contracts.

Pursuant to Section 8.04.A of the Loan Sale Agreement dated effective as of_____, governing the sale, assignment and transfer of the Mortgage from HUD to the Mortgagee, the Mortgagee agreed that it would comply with the requirements of the Regulations, including the requirement that a covenant be recorded that in the event of any amendment, modification, supplemental agreement or extension of the loan, foreclosure, or final compromise of the debt evidenced by the Mortgage, including acceptance of a deed in lieu of foreclosure (the "Triggering Event"), a covenant would be recorded in the land records of _____.

As part of the Triggering Event, which occurred on or about _____ **[Insert Date of Triggering Event]**, Declarant has agreed to record the following covenants.

NOW, THEREFORE, in consideration of the above Recitals, which are made a part hereof, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Declarant hereby declares, covenants and agrees as follows:

1.    Declarant, its successors and assigns, and any transferee of title to the Property, its successors and assigns, unless otherwise approved by HUD, shall assume the obligations of any outstanding project-based federal rental subsidy contract and any tenant-based housing assistance payments contract with a public housing agency and the related leases.

2.      Mortgagee, its successors and assigns, and any transferee of title to the Property, its successors and assigns, in the event of a foreclosure of the Mortgage, shall foreclose in a manner that does not interfere with any lease related to federal project-based assistance or any lease related to tenant-based, Section 8 housing assistance payments (an "Assisted Lease"), and shall foreclose in a manner that ensures that the right of possession of the purchaser at a foreclosure sale shall be subject to the terms of any residential lease which is not an Assisted Lease for the remaining term of the lease or for one (1) year, whichever period is shorter.

3.      Mortgagee and its successors or assigns hereby acknowledge that the Mortgage is subordinate to this Declaration.

4.      The provisions of this Declaration are severable and the invalidity of one or more of the provisions shall not affect the validity or enforceability of any other provisions.

5.      The terms, conditions and provisions of this Declaration shall be deemed covenants running with the land and any transferee of title to the Property, its successors and assigns and its heirs, personal representatives, successors and assigns shall be bound jointly and severally hereby.

6.      This Declaration of Covenants shall expire on the date on which the last federal project-based rental assistance contract related to the Property expires by its own terms or the date that is the same as the maturity date of the Note in effect on the date HUD sold the Mortgage to the Mortgagee, whichever is later.

IN WITNESS WHEREOF, the Declarant and the Mortgagee have set their hands and seals as of the _____ day of _____, _____.

WITNESS:                                        DECLARANT

_____                 _____
                                                Name:
                                                Title:
                                                Address:

WITNESS:                                        MORTGAGEE

_____                 _____
                                                Name:
                                                Title:

**[DECLARANT]**

STATE OF _____

COUNTY OF _____

     I HEREBY CERTIFY that on the ____ day of _____, before the subscriber, a Notary Public in the and for the above jurisdiction, personally appeared _____, who has been satisfactorily proven to be the person whose signature is subscribed to this written instrument and has executed the foregoing instrument for the purposes therein contained.

     GIVEN under my hand and seal this ____ day of _____.


                         _____
                         Notary Public

                         My Commission expires:

**[MORTGAGEE]**

STATE OF _____

COUNTY OF _____

     I HEREBY CERTIFY that on the ____ day of _____, before the subscriber, a Notary Public in the and for the above jurisdiction, personally appeared _____, who has been satisfactorily proven to be the person whose signature is subscribed to this written instrument and has executed the foregoing instrument for the purposes therein contained.

     GIVEN under my hand and seal this ____ day of _____.


                         _____
                         Notary Public

                         My Commission expires:

**ATTACHMENT H-2**

[For delinquent Mortgage Loans]

**[to be recorded as part of any Triggering Event, as defined in the Loan Sale Agreement and below]**

**DECLARATION OF COVENANTS**

THIS DECLARATION OF COVENANTS ("Declaration"), is made and entered into by _____("Declarant") and _____ ("Mortgagee").

R E C I T A L S:

Declarant, a _____ organized and existing under the laws of _____, whose address _____ is the owner of certain property ("Property") located at _____ **[Insert Street Location]** in _____ **[Insert County]**, **[Insert City]**, _____ **[Insert State]**. The Property is more particularly described in the legal description attached hereto as Exhibit A.

On or about _____, the United States Department of Housing and Urban Development ("HUD") sold the mortgage ("Mortgage") secured by the Property and the related mortgage note ("Note") in the Healthcare Loan Sale 2024-1 of HUD-held, unsubsidized healthcare mortgages. At the time HUD offered the Mortgage for sale, the Mortgage was delinquent. Accordingly, the sale of the Mortgage was subject to the provisions of 24 C.F.R. §290.39 ("Regulations") regarding nondiscrimination in admitting voucher holder.

Pursuant to Section 8.04.B of the Loan Sale Agreement dated effective as of _____, governing the sale, assignment and transfer of the Mortgage from HUD to the Mortgagee, the Mortgagee agreed that it would comply with the requirements of the Regulations, including the requirement that a covenant be recorded in the event of any amendment, modification, supplemental agreement or extension of the loan, foreclosure, or final compromise of the debt evidenced by the Mortgage, including acceptance of a deed in lieu of foreclosure (the "Triggering Event"), a covenant would be recorded in the land records of _____.

As part of the Triggering Event, which occurred on or about _____ **[Insert Date of Triggering Event]**, Declarant has agreed to record the following covenants.

NOW, THEREFORE, in consideration of the above Recitals, which are made a part hereof, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Declarant hereby declares, covenants and agrees as follows:

1.      Declarant, its successors and assigns, and any transferee of title to the Property, its successors and assigns, shall not unreasonably refuse to lease a dwelling unit offered for rent, offer to sell cooperative stock, or otherwise discriminate in the terms of tenancy or cooperative purchase and sale because any existing or prospective tenant or purchaser is a voucher holder, as defined in part 982 of Title 24 of the Code of Federal Regulations, and successor regulations. Any voucher holder or a public housing authority on behalf of voucher holders shall have the right to seek judicial enforcement of this non-discrimination covenant in state or federal court.

2.      Declarant, its successors and assigns, and any transferee of title to the Property, its successors and assigns, will, each at their own cost and expense, do, execute, acknowledge and deliver all and

every such further acts and assurances as may be necessary at such time and from time to time in order to better assure or confirm the obligations and agreements under this Declaration.

3.    Mortgagee and its successors or assigns hereby acknowledge that the Mortgage is subordinate to this Declaration.

4.    The provisions of this Declaration are severable and the invalidity of one or more of the provisions shall not affect the validity or enforceability of any other provisions.

5.    The terms, conditions and provisions of this Declaration shall be deemed covenants running with the land and any transferee of title to the Property, its successors and assigns and its heirs, personal representatives, successors and assigns shall be bound jointly and severally hereby.

6.    This Declaration of Covenants shall expire on the date that is the same as the maturity date of the Note in effect on the date HUD sold the Mortgage to the Mortgagee.

IN WITNESS WHEREOF, the Declarant and the Mortgagee have set their hands and seals as of the _____ day of _____, _____.

WITNESS:                                    DECLARANT

_____                     _____
                                            Name:
                                            Title:
                                            Address:

WITNESS:                                    MORTGAGEE

_____                     _____
                                            Name:
                                            Title:

**[DECLARANT]**

STATE OF _____

COUNTY OF _____

    I HEREBY CERTIFY that on the ____ day of _____, before the subscriber, a Notary Public in the and for the above jurisdiction, personally appeared _____, who has been satisfactorily proven to be the person whose signature is subscribed to this written instrument and has executed the foregoing instrument for the purposes therein contained.

        GIVEN under my hand and seal this ____ day of _____.

                _____
                Notary Public

                My Commission expires:

**[MORTGAGEE]**

STATE OF _____

COUNTY OF _____

    I HEREBY CERTIFY that on the ____ day of _____, _____, before the subscriber, a Notary Public in the and for the above jurisdiction, personally appeared _____, who has been satisfactorily proven to be the person whose signature is subscribed to this written instrument and has executed the foregoing instrument for the purposes therein contained.

        GIVEN under my hand and seal this ____ day of _____, _____.

                _____
                Notary Public

                My Commission expires:

Non-Executable

**ATTACHMENT H-3**

[For delinquent Mortgage Loans on Unsubsidized, Occupied Projects]

**[to be recorded as part of any Triggering Event, as defined in the Loan Sale Agreement and below]**

**DECLARATION OF COVENANTS**

THIS DECLARATION OF COVENANTS ("Declaration"), is made and entered into by _____ ("Declarant") and _____ ("Mortgagee").

R E C I T A L S:

Declarant, a _____ organized and existing under the laws of _____, whose address _____ is the owner of certain property ("Property") located at _____ **[Insert Street Location]** in _____ **[Insert County]**, **[Insert City]**, _____ **[Insert State]**. The Property is more particularly described in the legal description attached hereto as Exhibit A.

On or about _____, the United States Department of Housing and Urban Development ("HUD") sold the mortgage ("Mortgage") secured by the Property and the related mortgage note ("Note") in the Healthcare Loan Sale 2024-1 of HUD-held, unsubsidized healthcare mortgages. At the time HUD offered the Mortgage for sale, the Mortgage was delinquent and the project was occupied by unsubsidized tenants. Accordingly, the sale of the Mortgage was subject to the provisions of 24 C.F.R. §290.35 ("Regulations") which provides that delinquent mortgages securing unsubsidized projects will not be sold if: (1) HUD believes that foreclosure is unavoidable; and (2) the project securing the mortgage is occupied by very low-income tenants who are not receiving housing assistance and would be likely to pay rent in excess of 30 percent of their adjusted monthly income if HUD sold the mortgage.

Pursuant to Section 8.04.C of the Loan Sale Agreement dated effective as of _____, governing the sale, assignment and transfer of the Mortgage from HUD to the Mortgagee, the Mortgagee agreed that it would comply with the requirements of the Loan Sale Agreement, and agreed that in the event of any amendment, modification, supplemental agreement or extension of the loan, foreclosure, or final compromise of the debt evidenced by the Mortgage, including acceptance of a deed in lieu of foreclosure (the "Triggering Event"), a covenant would be recorded in the land records of _____.

As part of the Triggering Event, which occurred on or about _____ **[Insert Date of Triggering Event]**, Declarant has agreed to record the following covenants.

NOW, THEREFORE, in consideration of the above Recitals, which are made a part hereof, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Declarant hereby declares, covenants and agrees as follows:

1. Declarant, its successors and assigns, and any transferee of title to the Property, its successors and assigns, agree that, for any very low-income family (as defined in 24 CFR § 5.603) that is an existing tenant of the Property on the date of the Triggering Event, and who is not receiving housing assistance ("Unsubsidized Tenant"), the Declarant shall not, after the date of the Triggering Event, charge the Unsubsidized Tenant rent in excess of thirty percent (30%) of the monthly adjusted income (as defined in 24 C.F.R. § 5.603) of the family. ("Rent Protection"). Rent Protection will be enforceable for a period of two (2) years beginning at the date of the Triggering Event.

2. Declarant, its successors and assigns, and any transferee of title to the Property, its successors and assigns, at the date of the Triggering Event, must provide notice to all Unsubsidized Tenants that they may qualify for the Rent Protection.

3. Declarant, its successors and assigns, and any transferee of title to the Property, its successors and assigns, shall conduct an initial income certification of all Unsubsidized Tenants within thirty (30) calendar days of the date of the Triggering Event.

4. Declarant, its successors and assigns, and any transferee of title to the Property, its successors and assigns, for all Unsubsidized Tenants, must include in the lease(s) the terms and conditions of the Rent Protection including a provision for an initial tenant income certification and not more than one (1) tenant income certification a year. Any Unsubsidized Tenant covered by these provisions shall have the right to seek judicial enforcement of the covenant in state or federal court.

5. Declarant, its successors and assigns, and any transferee of title to the Property, its successors and assigns, shall compile a list of all Unsubsidized Tenants who are covered by this Declaration within (60) calendar days of the date of the Triggering Event. This list shall be maintained on file for a period of not less than two (2) years after the date of the Triggering Event. The list should include the name of the lease holder, unit type, number of family members residing in the unit, and the amount of rent paid by the Unsubsidized Tenant. If the income certification is not complete within the sixty (60) calendar days of the date of this Declaration, Declarant, its successors and assigns, and any transferee of title to the Property, its successors and assigns must record in its file the progress of the certifications and the completion date of the certifications.

Declarant, its successors and assigns, and any transferee of title to the Property, its successors and assigns, must provide to HUD a certification of its compliance with the terms of this Declaration within (60) calendar days of the date of the Triggering Event and then on a semi-annual basis, for a period of two (2) years from the date of the Triggering Event. The Declarant, its successors and assigns, and any transferee of title to the Property, its successors and assigns, shall provide to HUD, promptly following receipt of a written request from HUD, information as may be reasonably required to evaluate compliance with the terms of this Declaration. HUD may request for any information required to be maintained on file under this Section. Certifications and any information requested under this Section shall be submitted to:

Office of Asset Sales
United States Department of Housing and Urban Development
451 7th Street, SW
Room 9216
Washington, D.C. 20410

6. Declarant, its successors and assigns, and any transferee of title to the Property, its successors and assigns, will, each at their own cost and expense, do, execute, acknowledge and deliver all and every such further acts and assurances as may be necessary at such time and from time to time in order to better assure or confirm the obligations and agreements under this Declaration.

7. Mortgagee and its successors or assigns hereby acknowledge and agree that the Mortgage is subordinate to this Declaration.

8. The provisions of this Declaration are severable and the invalidity of one or more of the provisions shall not affect the validity or enforceability of any other provisions.

HLS 2024-1 Loan Sale Agreement

9.   Upon any violation of any provision of this Declaration by the Declarant, its successors and assigns, and any transferee of title to the Property, its successors and assigns, HUD may give written notice thereof to the Declarant, its successors and assigns, and any transferee of title to the Property, its successors and assigns by electronic mail transmission and overnight courier, with delivery confirmation, to the address, as provided to HUD in accordance with the Loan Sale Agreement, or such other such address as subsequently designated by Declarant, its successors and assigns, and any transferee of title to the Property, its successors and assigns as its legal business address. If such violation is not corrected to HUD's satisfaction within thirty (30) calendar days after the date such notice is mailed or within such further time as HUD reasonably determines is necessary to correct the violation, without further notice, HUD may declare a default under this Declaration and may apply to any court, state or federal, for specific performance of this Declaration, for an injunction against any violation of this Declaration,  and /or such other relief as may be appropriate, including attorney's fees, since the injury to HUD arising from a default of the terms of the Declaration would be irreparable and the amount of damage would be difficult to ascertain. The availability of any remedy under the Declaration shall not preclude the exercise of any other remedy available under any provision of the law, nor shall any action taken in exercise of any remedy be considered a waiver of any other rights or remedies. Failure to exercise and right or remedy shall not be construed as a waiver of the right to exercise that or any other right or remedy at any time.

10. The terms, conditions and provisions of this Declaration shall be deemed covenants running with the land and any transferee of title to the Property, its successors and assigns and its heirs, personal representatives, successors and assigns shall be bound jointly and severally hereby.

11. This Declaration of Covenants shall expire two (2) years after the date of the Triggering Event.

IN WITNESS WHEREOF, the Declarant and the Mortgagee have set their hands and seals as of the _____ day of _____, _____.

WITNESS:                                                    DECLARANT

_____                     _____
                                                                    Name:
                                                                    Title:
                                                                    Address:

WITNESS:                                                    MORTGAGEE

_____                     _____
                                                                    Name:
                                                                    Title:

**[DECLARANT]**

STATE OF _____

COUNTY OF _____

      I HEREBY CERTIFY that on the ____ day of _____, before the subscriber, a Notary Public in the and for the above jurisdiction, personally appeared _____, who has been satisfactorily proven to be the person whose signature is subscribed to this written instrument and has executed the foregoing instrument for the purposes therein contained.

      GIVEN under my hand and seal this ____ day of _____.

                               _____

                               Notary Public

                               My Commission expires:

**[MORTGAGEE]**

STATE OF _____

COUNTY OF _____

      I HEREBY CERTIFY that on the ____ day of _____, before the subscriber, a Notary Public in the and for the above jurisdiction, personally appeared _____, who has been satisfactorily proven to be the person whose signature is subscribed to this written instrument and has executed the foregoing instrument for the purposes therein contained.

      GIVEN under my hand and seal this ____ day of _____, _____.

                               _____

                               Notary Public

                               My Commission expires:

**ATTACHMENT H-4**

[For delinquent Mortgage Loans on Occupied Projects]

**[to be recorded as part of any Foreclosure]**

**DECLARATION OF COVENANTS**

THIS DECLARATION OF COVENANTS ("Declaration"), is made and entered into by _____("Declarant") and _____ ("Mortgagee").

R E C I T A L S:

Declarant, a _____ organized and existing under the laws of _____, whose address _____ is the owner of certain property ("Property") located at _____ **[Insert Street Location]** in _____ **[Insert County]**, **[Insert City]**, _____ **[Insert State]**. The Property is more particularly described in the legal description attached hereto as Exhibit A.

On or about _____, the United States Department of Housing and Urban Development ("HUD") sold the mortgage ("Mortgage") secured by the Property and the related mortgage note ("Note") in the Healthcare Loan Sale 2024-1 of HUD-held, unsubsidized healthcare mortgages. At the time HUD offered the Mortgage for sale, the Mortgage was delinquent and the project was occupied by tenants. Accordingly, the sale of the Mortgage was subject to the provisions of the Protecting Tenants at Foreclosure Act of 2009 (codified at 12 U.S.C. 5201 note; 12 U.S.C. 5220 note; 42 U.S.C. 1437f note) ("the PFTA") which provides for certain tenant protections in the event of any foreclosures taking place between May 21, 2009 to December 31, 2014, and after June 23, 2018 on any dwelling or residential property.

Pursuant to Section 8.04.D of the Loan Sale Agreement dated effective as of _____, governing the sale, assignment and transfer of the Mortgage from HUD to the Mortgagee, the Mortgagee agreed that it would comply with the requirements of the Loan Sale Agreement, and agreed that in the event of any foreclosure on the Property, a covenant would be recorded in the land records of _____.

As part of the foreclosure, which occurred on or about _____ **[Insert Date of Foreclosure]**, Declarant has agreed to record the following covenants.

NOW, THEREFORE, in consideration of the above Recitals, which are made a part hereof, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Declarant hereby declares, covenants and agrees as follows:

1.   Any bona fide tenant must be given 90 days prior notice to vacate the unit; and

2.   Any tenant retains all of its rights as of the date of the notice of foreclosure, which is the date of this Declaration. These rights include:

    (A) Any tenant who is under a valid lease agreement entered into before the notice of foreclosure that entitles the tenant to occupy the premises until the end of the remaining term of the lease, will continue to maintain their rights under the lease agreement, except that the Declarant who

will occupy a unit as a primary residence may terminate a tenant's lease for that unit, effective on the date of the foreclosure, by issuing notice of the termination of tenancy to the tenant at least 90 days prior to the effective date of the notice.

(B) Any tenant who is a tenant at will under state law of the Property or occupies the unit without a lease retains all of its rights regarding occupancy of the unit, except such tenant may be required by Declarant to vacate the unit provided that the tenant is given 90 days prior notice by the Declarant.

3.   If the tenant holds a Section 8 voucher and has a lease agreement, the Declarant may terminate the tenancy effective as of the date of this Declaration if (1) the Declarant will occupy the unit as a primary residence and (2) provides the tenant with a notice to vacate at least 90 days before the effective date of the notice.

4.   The Declarant will assume its interest in the Property subject to: (1) the existing leases between the prior owner and the current bona-fide tenants; and, if applicable, (2) the existing Housing Assistance Payments contract between the prior owner and the public housing agency for any occupied unit.

5.   Nothing contained in herein shall affect the requirements for termination of any Federal or State subsidized tenancy or of any State or local law that provides longer time periods or additional protections for tenants.

6.   For purposes of this section, a "bona fide tenant" means a tenant as of the date of this instrument where (1) the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant; (2) the lease or tenancy was the result of an arms-length transaction; and (3) the lease or tenancy requires the receipt of rent that is not substantially less than fair market rent for the property or the unit's rent is reduced or subsidized due to a Federal, State, or local subsidy.

7.   Mortgagee and its successors or assigns hereby acknowledge and agree that the Mortgage is subordinate to this Declaration.

8.   The provisions of this Declaration are severable and the invalidity of one or more of the provisions shall not affect the validity or enforceability of any other provisions.

9.   The terms, conditions and provisions of this Declaration shall be deemed covenants running with the land and any transferee of title to the Property, its successors and assigns and its heirs, personal representatives, successors and assigns shall be bound jointly and severally hereby.

10.  This Declaration of Covenants shall expire on the date that is the same as the maturity date of the Note in effect on the date HUD sold the Mortgage to the Mortgagee.

IN WITNESS WHEREOF, the Declarant and the Mortgagee have set their hands and seals as of the _____day of _____, _____.

WITNESS:                                         DECLARANT

_____                          _____
                                                 Name:
                                                 Title:
                                                 Address:

WITNESS:                                         MORTGAGEE

_____                          _____
                                                 Name:
                                                 Title:

**[DECLARANT]**

STATE OF _____

COUNTY OF _____

     I HEREBY CERTIFY that on the ____ day of _____, before the subscriber, a Notary Public in the and for the above jurisdiction, personally appeared _____, who has been satisfactorily proven to be the person whose signature is subscribed to this written instrument and has executed the foregoing instrument for the purposes therein contained.

     GIVEN under my hand and seal this ____ day of _____.

                        _____

                        Notary Public

                        My Commission expires:

**[MORTGAGEE]**

STATE OF _____

COUNTY OF _____

     I HEREBY CERTIFY that on the ____ day of _____, _____, before the subscriber, a Notary Public in the and for the above jurisdiction, personally appeared _____, who has been satisfactorily proven to be the person whose signature is subscribed to this written instrument and has executed the foregoing instrument for the purposes therein contained.

     GIVEN under my hand and seal this _____ day of _____, _____.

                        _____

                        Notary Public

                        My Commission expires:

**ATTACHMENT I**

**LIMITED POWER OF ATTORNEY**

FHA Project No.: _____

Project Name: _____

City, County, State: _____

THE UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT ("HUD"), having an address of 451 7th Street, S.W., Washington, D.C. 20410, hereby appoints _____ _____ **[INSERT PURCHASER]**, as its true and lawful attorney-in-fact to act in the name, place and stead of HUD for the purposes set forth below. This limited power of attorney is for the mortgage loan secured by that certain **[MORTGAGE/DEED OF TRUST]** recorded on _____ **[DATE]** in Book _____ Page _____ **[BOOK AND PAGE]** of the land records of _____ _____ **[CITY/ COUNTY]** City/County, _____ **[STATE]** together with any assignments, amendments and/or modifications thereto (the "Mortgage Loan") only. The said attorney-in-fact is hereby authorized and empowered, as follows:

      1.    To execute, acknowledge, seal, deliver and record any Uniform Commercial Code ("U.C.C.") Amendments or Assignments, on behalf of HUD, with respect to the Mortgage Loan.

      2.    To execute, acknowledge, seal, deliver and record any necessary U.C.C. financing statements with respect to the Mortgage Loan.

      3.    To execute and mail any joint letters to taxing authorities, in the form attached hereto as Exhibit "1", any joint letters to insurance companies, in the form attached hereto as Exhibit "2" and the Mortgagor Notification Letter in the form attached hereto as Exhibit "3", appropriately completed.

      This instrument is to be construed and interpreted as a limited power of attorney and does not empower or authorize the said attorney-in-fact to do any act or execute any document on behalf of HUD not specifically described herein.

      The rights, powers, and authority of the attorney-in-fact granted in this instrument shall commence and be in full force and effect on the date hereof and such rights, powers and authority shall remain in full force and effect until 11:59 p.m., Washington, D.C. time, on _____.

**IN WITNESS WHEREOF**, HUD has caused this Limited Power of Attorney to be executed and delivered under seal by its duly authorized agent as of the _____ day of _____.

UNITED STATES SECRETARY OF
HOUSING AND URBAN DEVELOPMENT

By: _____
Authorized Agent

**ACKNOWLEDGEMENT**

**DISTRICT OF COLUMBIA, ss:**

The foregoing instrument was acknowledged before me on _____, by _____, as Authorized Agent of the United States Secretary of Housing and Urban Development.

_____
Notary Public

[SEAL]                                                    My commission expires_____

**EXHIBIT 1**

**JOINT NOTICE TO TAX AUTHORITY**

**[Insert Closing Date]**

[Name of Taxing Authority]
[Address of Taxing Authority]

      Re: [Tax Identification Number(s)]

Dear Sir or Madam:

      The United States Secretary of Housing and Urban Development ("HUD") has sold, transferred and assigned to _____ **[insert name of Purchaser]** ("Purchaser") a mortgage loan ("Mortgage Loan") that is secured by certain real property ("Mortgage Property") located at _____**[insert address]**, for which you are the responsible taxing authority. Please be advised that, effective as of this date, HUD no longer has any interest in the Mortgage Loan and Purchaser is responsible for the servicing of the Mortgage Loan. You therefore are hereby irrevocably and unconditionally authorized and directed to forward any tax bills relating to the Mortgaged Property to Purchaser, at the address indicated below.

      If you have any questions regarding this matter, please contact _____
**[insert name, address, and telephone numbers of Purchaser's contact person]**

      Thank you for your cooperation.

                           **[Name of Purchaser]**

                           By: _____
                           Name:
                           Title:

HLS 2024-1 Loan Sale Agreement

## EXHIBIT 2

### JOINT NOTICE TO INSURER

**[Closing Date]**

**[Name of Insurer]**
**[Address of Insurer]**

Re:    **[Policy No.]**

Dear Sir or Madam:

The United States Secretary of Housing and Urban Development ("HUD") has sold, transferred and assigned to **[insert Name of Purchaser]** ("Purchaser") a mortgage loan (the "Mortgage Loan") that is secured by certain real property in connection with which you have issued the above-referenced insurance policy. Please be advised that, effective as of this date, HUD no longer has any interest in the Mortgage Loan and Purchaser is responsible for the servicing of the Mortgage Loan. You therefore are hereby irrevocably and unconditionally authorized and directed to forward any policy statements relating to the Mortgaged Property to Purchaser at the address indicated below.

If you have any questions regarding this matter, please contact **[insert Purchaser's contact name, telephone number and address, if applicable]**.

Thank you for your cooperation.

**[Name of Purchaser]**

By: _____
Name:
Title:

HLS 2024-1 Loan Sale Agreement

## EXHIBIT 3

**MORTGAGOR NOTIFICATION LETTER**

**[Closing Date]**

**[Mortgagor]**
**[Address of Mortgagor]**

FHA Project No.:
Project Name:
County, State:

To Whom It May Concern:

This is to inform you that effective _____, the referenced mortgage loan has been sold, transferred and assigned by the United States Secretary of Housing and Urban Development ("HUD") to **[Name of Purchaser]**.

All future payments should be made payable to **[Name of Purchaser]** and sent to the following location:

**[Address of Servicer]**

All other correspondence should be sent to:

**[Address of Purchaser]**

If you have any questions regarding this matter, please contact your HUD Project Manager or **[insert Purchaser contact name and telephone]**.

Sincerely,

**[Name of Purchaser]**

By:    _____
Name:
Title:

## ATTACHMENT J

### LISTING OF SUBORDINATE MORTGAGE LOANS

**NONE**



# ATTACHMENT K

## LISTING OF ASSOCIATED MORTGAGE LOANS

| Pool # | FHA | Property Name | City, State | Property Type |
|--------|-----|---------------|-------------|---------------|
| | | | | |
| 240 | 123-43061 | SOLTERRA AT WHITE MOUNTAINS | LAKESIDE, AZ | Healthcare |
| 240 | 123-43061A | SOLTERRA AT WHITE MOUNTAINS | LAKESIDE, AZ | Healthcare |

Non-Executable