## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEHIGH VALLEY 1 LLC, successor by** | : | |
| **assignment to WINDSTREAM CAPITAL** | : | |
| **LLC, successor by assignment to the** | : | **CIVIL ACTION** |
| **UNITED STATES SECRETARY OF** | : | |
| **HOUSING AND URBAN DEVELOPMENT,** | : | |
| **successor by assignment to M&T REALTY** | : | |
| **CAPITAL CORPORATION** | : | **NO.  24-2627** |
| | : | |
| **v.** | : | |
| | : | |
| **WHITEHALL FIDUCIARY LLC, as** | : | |
| **TRUSTEE OF WHITEHALL TRUST U/T/A** | : | |
| **DATED AUGUST 1, 2027** | : | |

| | | |
|---|---|---|
| **LEHIGH VALLEY 1, LLC, successor by** | : | |
| **assignment to WINDSTREAM CAPITAL** | : | |
| **LLC, successor by assignment to the** | : | **CIVIL ACTION** |
| **UNITED STATES SECRETARY OF** | : | |
| **HOUSING AND URBAN DEVELOPMENT,** | : | |
| **successor by assignment to M&T REALTY** | : | **NO.  24-2709** |
| **CAPITAL CORPORATION** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SAUCON TRUST, U/T/A DATED** | : | |
| **OCTOBER 1, 2007** | : | |

### <u>MEMORANDUM OPINION</u>

**Henry, J.** *s/CH*                                                              **May 2, 2025**

The instant matter involves two mortgage foreclosure actions brought by Plaintiff, Lehigh

Valley 1 LLC ("Lehigh"), against Defendant, Whitehall Fiduciary LLC ("Whitehall"), and

Defendant, Saucon Trust ("Saucon"). Both mortgages are virtually identical aside from the

amounts of the loans, and the action against Whitehall and the action against Saucon are virtually

identical mortgage foreclosure actions. Therefore, these matters were consolidated. In both cases,

Lehigh filed identical motions in which it sought appointment of a receiver to manage the

Properties, both of which house residential senior living facilities encumbered by the mortgages. Lehigh contends a receiver is necessary because both mortgages are in default and have been for over 4 years, the financial health of both Whitehall and Saucon is dire, and there is a concern about diminution in value of the Properties. Both Whitehall and Saucon, represented by the same law firm, have opposed the motions, arguing that Plaintiff has not met the burden for appointment of a receiver.

I.    **<u>BACKGROUND</u>**

On January 26, 2012, M&T Realty Capital Corporation ("M&T") provided a loan to Defendant Whitehall in the amount of $15,788,700 secured by a mortgage on real property located at 1177 6th Street, Whitehall PA. (Docket No. 7, Am. Compl., ¶ 15, (24-2627)). On December 1, 2012, M&T provided a loan to Defendant Saucon in the amount of $19,462,800 secured by a mortgage on real property located at 1050 Main Street, Unit #1, Hellertown, PA. (Docket No. 9, Am. Compl., ¶ 11 (24-2790)). Both the Whitehall property and the Hellertown property house senior living facilities and both loans are secured by a mortgage and a note.

Both notes and mortgages were assigned by M&T to the United States Secretary of Housing and Urban Development ("HUD") effective November 16, 2022. HUD assigned both notes and mortgages to Windstream Capital on September 20, 2023, and Windstream Capital assigned both notes and mortgages to Lehigh on May 15, 2024. (Am. Compls., Exs. D-I.)

There is no real dispute that Whitehall and Saucon are in default, as both entities have failed to make their required monthly debt payments since at least February of 2021. Due to Defendants' defaults, both Loans were accelerated, and demand was made for the immediate

payment of all amounts due and owing in full on October 5, 2023. (Docket No. 31, Am. Compl., Ex. J (24-2627)). [1]

Lehigh alleges that Whitehall and Saucon are in poor financial condition, have failed to pay taxes on the Properties, have failed to provide Lehigh with evidence of insurance on the Properties, and have failed to provide Lehigh with a current financial report. (Docket Nos. 8 (24-2627) and 12 (24-2709). In response, neither Whitehall nor Saucon argue that they are not in default. Rather, they argue that the parties must do discovery before a receiver can be appointed, that Lehigh has an adequate security interest in the Properties, that there is no allegation of Whitehall or Saucon engaging in fraudulent conduct, that Lehigh's evidence of Defendants' weak financial positions is old and outdated, and that Lehigh has not shown any danger of the Properties being diminished in value. (Docket Nos. 10 (24-2627) and 19 (24-2790)).

## II.    <u>ANALYSIS</u>

It is true that receivership is an extraordinary equitable remedy that is not routinely granted. *Morgan Stanley Smith Barney LLC v. Johnson*, 952 F.3d 978, 980 (8th Cir. 2020); see also *Maxwell v. Enterprise Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3d Cir. 1942). However, a district court is given "broad discretion" in the decision to appoint a receiver. *Wilmington Tr. N.A. v. Pavilion Apts. PENN LLC*, No. 22-3985, 2023 WL 187568, at *3 (E.D. Pa. Jan. 13, 2023). There is "no exhaustive or dispositive list of factors" to be used by a court in determining whether to appoint a receiver. *Deutsche Bank Tr. Co. Americas v. Greenfield of Perkiomen Valley, LLC*, No. 23-1439, 2024 WL 38040, at *2 (E.D. Pa. Jan. 3, 2024), citing *Wells Fargo*

---

[1] Both Lehigh's Complaint and Amended Complaint in Case no. 24-2709 against Saucon are identical to the Complaint and Amended Complaint in case no. 24-2627 against Whitehall. However, in 24-2709, Lehigh's Complaint and Amended Complaint reference a demand letter being sent to Saucon and state that a copy of the letter is attached to the pleadings as Exhibit J. However, there is no Exhibit J attached to the Complaint or Amended Complaint in 24-2709. Although the document is missing, it can be assumed that it is identical to Exhibit J attached to the Amended Complaint in 24-2627, as every other document in these two cases is identical. However, for the purposes of the instant motion, whether an October 5, 2023, demand letter was sent to Saucon or not is immaterial.

*Bank, N.A. v. CCC Atl., LLC*, 905 F.Supp.2d 604, 614 (D.N.J. 2012). District courts in this Circuit commonly use the factors set forth in *Wells Fargo Bank v. CCC Atlantic*, but no one factor is dispositive, nor is the list of factors exhaustive. *CCC Atlantic*, 905 F.Supp.2d at 614. In the mortgage foreclosure context, the Court will consider whether "the property is inadequate security for the loan; the mortgage contract contains a clause granting the mortgagee the right to a receiver; the continued default of the mortgagor; and the misuse of project funds by the mortgagor." *CCC Atl.*, 905 F.Supp.2d at 614. (quotation omitted) (cleaned up). In addition, when the receiver will manage the property as well as collect rent, the Court will assess "the danger of waste; ... the defendant's fraudulent conduct; imminent danger that property will be lost, concealed, injured, diminished in value, or squandered; the inadequacy of available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and the plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property." *Id*. at 614–15 (quotation omitted); see also *Deutsche Bank Trust Co. v. Greenfield*, 2004 WL 38040, at *2. In addition, "[n]o hearing is necessary where the facts support the appointment of a receiver." *MSCI 2006-IQ11 Logan Blvd. Ltd. Partnership v. Greater Lewistown Shopping Plaza, L.P.*, No. 16-2090, 2017 WL 485958, *1 (M.D. Pa. Feb. 6, 2017), citing *United States v. Berk & Berk*, 767 F.Supp. 593, 597 (D.N.J. 1991). Upon reviewing the above factors and applying them to the facts of this matter, I find that no evidentiary hearing is necessary, and the balance of factors weighs in favor of appointing a receiver.

### A.    Contractual Provision

First and foremost, the strongest factor weighing in favor of appointing a receiver is the fact that the Mortgages for both Properties contemplate such a remedy. Specifically, they state:

4

"[T]he holder of this mortgage, in any action to foreclose, shall be entitled to the appointment of a Receiver of the rents and profits of the mortgaged premises as a matter of right and without notice, with power to collect the rents, issues, and profits of said mortgaged premises." (Docket No. 7, Ex. B, p. 6 (24-2627); Docket No. 9, Ex. B, p. 20 (24-2709)). It continues: "The Mortgagor for itself and any subsequent owner hereby waives any and all defenses to the application for a Receiver and hereby specifically consents to such appointment …" *Id.*

Provisions granting a right to the appointment of a receiver weigh heavily in favor of appointing one, though they do not eliminate the Court's discretion. *Wilmington Tr., N.A. as Tr. of $29,615,000 Philadelphia Auth. for Indus. Dev. Senior Hous. Revenue Bonds v. Pavilion Apartments PENN LLC*, No. 22-3985, 2023 WL 187568, at *3 (E.D. Pa. Jan. 13, 2023); *see also Wilmington Tr., N.A., as Tr. for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2019-C50, Commercial Mortgage Pass-Through Certificates, Series 2019-C50 v. M.P. Mgmt. LLC*, No. 21-5498, 2021 WL 4786117, at *7 (D.N.J. Oct. 14, 2021) (provisions which merely permit mortgagee to apply for appointment are "relevant but not dispositive," whereas a "full, self-executing consent to appointment of a receiver for any and all purposes upon default" is given "considerable weight"). "The importance of these contractual provisions" in the Court's decision to appoint a receiver "cannot be underestimated because they set apart this commercial foreclosure case from the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist." *CCC Atl.*, 905 F. Supp.2d at 615. "[W]here the parties have agreed *ex ante* that, in the event of a default, the lender has the right to all rent payments and to the appointment of a receiver.... appointment of a receiver is not such a drastic remedy." *Id*. at 616.

There is no dispute that neither Whitehall nor Saucon have made a mortgage payment in years; accordingly, both Defendants are in default. These defaults triggered Lehigh's right to move for appointment of a receiver as set forth in the Mortgages. Both Defendants oppose the appointment of a receiver, despite agreeing to one in the event of default in their respective Mortgages. In the instant matter, "[i]t is evident . . . that by the plain language of the mortgage contract[s], the parties have agreed to a receivership of the subject property." *MSCI 2006-IQ11 Logan Boulevard Ltd. P'ship v. Greater Lewistown Shopping Plaza, L.P.*, No. 16-2090, 2017 WL 485958, at *4 (M.D. Pa. Feb. 6, 2017). The "terms of a mortgage agreement are binding on the parties," *Metropolitan Life Ins. Co. v. Liberty Center Venture*, 650 A.2d 887, 891 (Pa. Super. Ct. 1994), and the parties in the instant matter are no different. Based upon the clear language of the Mortgages, as well as Defendants' unquestionable defaults, I conclude that this factor weighs very strongly in favor of appointment of a receiver. However, this factor is not dispositive, and I must analyze the remaining factors in determining whether to appoint a receiver.[2]

### B.    Likelihood of Success

The continuing failure of both Whitehall and Saucon to make monthly mortgage payments shows that Lehigh is likely to succeed on its mortgage foreclosure claims. In Pennsylvania, "[i]n an action regarding a note secured by a mortgage, the lender 'presents a prima facie case by showing the execution and delivery of the note and its nonpayment.'" *Wilmington Trust v. Pavilion Apartments PENN LLC*, 2023 WL 187568, *6, citing *Wells Fargo Bank, N.A. v. Chun Chin Yung*, 317 F. Supp.3d 879, 885 (E.D. Pa. 2018) (citations omitted). The Notes as to both Whitehall and Saucon were attached to the respective complaints, and neither

---

[2] Unsurprisingly, Defendants very much try to downplay the importance of the contractual provisions that they consented to that permit the appointment of a receiver. However, they do admit, as they must, that contractual consent to the appointment of a receiver is a factor that I may consider. (Docket No. 10-1, p. 4 (24-2627), Docket No. 19-3, pp. 4-5 (24-2709)).

Defendant has suggested that their required mortgage payments were made in a timely fashion. Lehigh alleges that Whitehall and Saucon have not made a monthly mortgage payment since February of 2021. Because of Defendants' defaults, Lehigh accelerated both Loans and demanded the immediate payment of all amounts due in full; Defendants continued to refuse to make a single monthly payment. Because of Defendants' long-term, ongoing failures to pay the monthly amounts due on the Loans, secured by the Mortgages, Lehigh is likely to succeed in its mortgage foreclosure action.

Defendants argue that this factor does not support appointment of a receiver, because Lehigh has not yet obtained a judgment in the foreclosure action. This argument is unpersuasive, because the factor examines Lehigh's **likelihood** of success on the merits, not whether it **has** succeeded on the merits. Accordingly, I find that this factor weighs in favor of appointing a receiver.

### C.    Defendants' Financial Health/Status

As discussed above, Defendants have failed to make payments when due for over four years. A borrower's inability to make payments when due reveals its poor financial condition, suggesting a need to preserve the property. *Deutsche Bank Tr. Co. Americas v. Greenfield of Perkiomen Valley, LLC,* 2024 WL 38040, at *3; *Federal Nat'l Mortgage Ass'n v. Maple Creek Gardens*, *LLC*, 09-14703, 2010 WL 374033, *3 (E.D. Mich. Jan. 25, 2010); see e.g., *CCC Atlantic*, 905 F. Supp. 2d at 616.

Further, Lehigh produced 2021 audited financial statements for both Whitehall and Saucon. Both statements note that "At (sic) December 31, 2021, the Trust was in default with its mortgage note. In addition, [the operating entities for Defendants] continue to report operating losses. These conditions raise substantial doubt about the Trust's ability to continue as a going

concern within one year after the issuance date of the financial statements…" Whitehall and Saucon 2021 Audited Financial Statements, p. 8.[3]

Lehigh further notes that both Properties, until recently, were subject to significant tax and municipal liens which created the risk that the Properties could be lost at tax sale. Also, neither Whitehall nor Saucon have provided financial reporting to Lehigh in numerous years, despite said disclosure being required by the Loan Documents. These updated financial statements would allow Lehigh to determine the condition of its collateral; without them, Lehigh has no way to determine the financial status of Defendants and the safety of its collateral.

Further, neither Whitehall nor Saucon make any argument regarding what either entity will do to resolve their defaults, nor do they offer any proof of their financial stability. Further, neither entity makes any representation that they will begin making payments any time soon.

Defendants argue that their financial positions cannot be considered until discovery is completed into these matters. However, that argument ignores the reality that evidence of Defendants' financial positions from 2021 is available in the form of the audited financial statements that show significant losses. Further, Defendants continued failure to make monthly payments on the Mortgages is further evidence of their financial positions. If Defendants were concerned about discovery into their current financial status, they could have produced an updated financial statement in response to Lehigh's demand in July of 2024. But they did not. Accordingly, this factor demonstrates both entities' poor financial health and weighs in favor of appointing a receiver.

---

[3] Due to their confidential nature, Lehigh emailed Defendants' 2021 financial statements directly to the Court for my review. Lehigh also emailed a redacted insurance policy received from Whitehall, a Statement of Multi-Family Mortgage Account sent by HUD to Whitehall, a Certificate of Compliance of Whitehall demonstrating how many occupants the property may have, and the Payment History for Whitehall received from HUD. I have reviewed all these documents prior to authoring this opinion.

### D.    Diminution of Value

There is no question that Lehigh has grounds to be concerned about a possible diminution in the value of its collateral. Despite Lehigh's request prior to filing the instant suits, (Docket No. 8, Ex. J (24-2627) and Docket No. 12, Ex. J (24-2709)), Whitehall and Saucon continue to refuse to provide updated financial statements to Lehigh. Accordingly, Lehigh has no information as to the status of any leases that the entities have entered, how much rent is being collected, if the taxes are paid and up to date, if there are unpaid bills, if the Properties are insured or if there are liens entered against the Properties. Any one of these issues could potentially diminish the value of the Properties, thereby diminishing the value of Lehigh's collateral. Therefore, this factor also weighs in favor of appointing a receiver.

### E.    Inadequate Legal Remedy

As stated by Judge Savage in *Deutsche Bank Trust Co. v. Greenfield*, where there is no danger of the property being devalued and legal remedies are adequate, there is no need for the appointment of a receiver. 2024 WL 38040, *5, citing *Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 826 (3d Cir. 1959). However, when normal remedies are frustrated, appointment of a receiver may be more appropriate. *Id.* In this matter, Lehigh has shown that the defaults of Whitehall and Saucon may be decreasing the value of Lehigh's collateral. Further, neither Whitehall nor Saucon will provide Lehigh with recent financial statements or any proof that the taxes on the Properties have been paid or that the Properties are properly insured. There is a high risk that the value of the collateral will decrease. Foreclosure will not serve to prevent the damage that may be done to the Properties while the case is running its course through the legal system. Accordingly, the legal remedy of foreclosure is inadequate, and this factor weighs in favor of appointing a receiver.

### F.    Balance of the Interests

In situations where appointing a receiver could cause more harm than good, the balance of the interests should be found to weigh against the appointment of a receiver. In the instant matter, Lehigh argues that a receiver is necessary to manage the Properties. A receiver would assure that the Properties will have bills paid on time and be properly insured, and that the physical structures located on the Properties will be maintained. Clearly, that is a benefit to both Lehigh and Defendants. However, Defendants both argue that appointing a receiver would do more harm than good because it "unquestionably interferes" with their right to control their property. (Docket No. 10, pp. 15-16 (24-2627) and Docket No. 19-3, p. 15 (24-2709), citing *Mintzer*, 263 F.2d at 825.) Although the benefits of appointing a receiver are obviously great, Defendants are correct that such an appointment would impair their ability to control the Properties. Accordingly, I find that this factor is neutral, as the potential harm is approximately equal to the possible benefits.

### G.    Other Factors

There are other factors that courts may consider, none of which are relevant to the instant matter. As stated previously, the list of factors that courts can consider is not exhaustive, nor is it dispositive. Using my discretion, as I am permitted to do in this matter, I find there is no evidence of misuse of project funds by the mortgagor, inadequacy of security for the loan, nor fraudulent conduct on behalf of Defendants.

### H.    Identity of Receiver

Lehigh requests the appointment of Ryan Stumphauzer of Stumphauzer Kolaya Nadler & Sloman, PLLC as the receiver in this matter. Although I find that the appointment of a receiver is indeed necessary, I would prefer to appoint a more local individual as the receiver, as Mr.

Stumphauzer is located in Florida. Accordingly, I appoint Duane Morris LLP through Erin Duffy, Esq. as the Receiver for both Whitehall and Saucon, and she will proceed pursuant to the terms set forth in the attached Order.

**III.    <u>CONCLUSION</u>**

For all the reasons set forth above, I find that the appointment of a receiver in these matters is warranted. An appropriate order follows.