**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEHIGH VALLEY 1 LLC, et al., | |
| *Plaintiff,* | |
| v. | |
| WHITEHALL FIDUCIARY LLC, et al., | CIVIL ACTION NO. 24-2627 |
| *Defendants.* | |
| WHITEHALL FIDUCIARY LLC, et al., | |
| *Third-Party Plaintiffs,* | |
| v. | |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., | |
| *Third-Party Defendants.* | |

## ORDER

AND NOW, this ___ day of_____, 2025, upon consideration of Third-Party Defendant HUD's Motion to Dismiss Third-Party Plaintiff's Amended Third-Party Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, it is hereby ORDERED that:

1.     The Motion to Dismiss is granted. All claims pled against Third-Party Defendant HUD are hereby dismissed with prejudice.

BY THE COURT:

_____
HONORABLE CATHERINE HENRY
*Judge, United States District Court*

| | |
|---|---|
| LEHIGH VALLEY 1 LLC, successor by assignment to WINDSTREAM CAPITAL LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION,<br><br>    *Plaintiff*,<br><br>    v.<br><br>WHITEHALL FIDUCIARY LLC, AS TRUSTEE OF WHITEHALL TRUST U/T/A, DATED AUGUST 1, 2007, and SAUCON TRUST, U/T/A October 1, 2007,<br><br>    *Defendants.* | CIVIL ACTION NO. 24-2627 |
| WHITEHALL FIDUCIARY LLC, AS, TRUSTEE OF WHITEHALL TRUST U/T/A, DATED AUGUST 1, 2007, and SAUCON TRUST, U/T/A October 1, 2007,<br><br>*Third-Party Plaintiffs*,<br>v.<br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,<br>-and-<br>ERIC SCOTT TURNER, in his Official Capacity as Secretary of the UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,<br><br>    *Third-Party Defendants.* | |

# HUD'S MOTION TO DISMISS

Third-Party Defendants United States Department of Housing and Urban Development, and Eric Scott Turner, in his official capacity as Secretary[1] of HUD (together, "HUD"), move to dismiss the Amended Third-Party Complaint ("ATP Compl.") filed against them. The Third-Party Plaintiffs, Whitehall Fiduciary, LLC, as Trustee of Plaintiff's Trust U/T/A Dated August 1, 2007 ("Whitehall"), and Saucon Trust, U/T/A Dated October 1, 2007 ("Saucon") (together, "Whitehall & Saucon")[2], have failed to plead: (1) a waiver of the government's sovereign immunity for their third-party complaint; (2) that they have standing to bring suit; or (3) claims upon which relief may be granted. Accordingly, HUD moves to dismiss the Amended Third-Party Complaint, ECF No. 61, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Local Rule 7.1.

In support of this motion, HUD relies upon the attached memorandum of law.

---

[1] The Secretary, as the head of an agency of the United States, cannot sue or be sued in his official capacity absent Congressional authorization. *Beneficial Consumer Disc. Co. v. Poltonowicz*, 47 F.3d 91, 94 (3d Cir. 1995).

[2] On March 17, 2025, the Court consolidated *Lehigh Valley 1, LLC, et al. v. Whitehall Fiduciary, LLC, as Trustee of Whitehall Trust U/T/A dated August 1, 2007*, No. 5:24-cv-02627 (E.D. Pa.) and *Lehigh Valley 1, LLC, et al. v. Saucon Trust, U/T/A dated October 1, 2007*, No. 5:24-cv-02709 (E.D. Pa.) under Civil Action No. 5:24-cv-02627, finding the two cases raised substantially the same issues and assigning both cases to this Court. *See* 5:24-cv-02709, ECF No. 52. This led to Whitehall's motion to amend its third-party complaint to add Saucon Trust as a third-party plaintiff. *See* ECF No. 54. That motion was granted on April 3, 2025 and the Amended Third-Party Complaint was filed on April 3, 2025. ECF Nos. 60, 61.

Dated: June 17, 2025

Respectfully submitted,

DAVID METCALF
United States Attorney

/s/ *Susan R. Becker/gbd*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ *Frank A. De Luccia*
ERIN E. LINDGREN
FRANK A. DE LUCCIA
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 861-8564 (EEL) / 8553 (FAD)
Email: Erin.Lindgren@usdoj.gov
Email: Frank.DeLuccia@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEHIGH VALLEY 1 LLC, successor by assignment to WINDSTREAM CAPITAL LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION, <br><br> *Plaintiff*, <br><br> v. <br><br> WHITEHALL FIDUCIARY LLC, AS TRUSTEE OF WHITEHALL TRUST U/T/A, DATED AUGUST 1, 2007, and SAUCON TRUST, U/T/A October 1, 2007, <br><br> *Defendants.* | CIVIL ACTION NO. 24-2627 |
| WHITEHALL FIDUCIARY LLC, AS, TRUSTEE OF WHITEHALL TRUST U/T/A, DATED AUGUST 1, 2007, and SAUCON TRUST, U/T/A October 1, 2007, <br><br> *Third-Party Plaintiffs*, <br> v. <br> UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, <br> -and- <br> ERIC SCOTT TURNER, in his Official Capacity as Secretary of the UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, <br><br> *Third-Party Defendants.* | |

**HUD'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

Whitehall & Saucon were granted two mortgage notes (the "Notes"), which were later assigned to HUD. Following their default on the Notes, HUD sold the Notes to another party. Whitehall & Saucon now challenge this sale.

Put simply, mortgagors, like Whitehall & Saucon, do not have the legal right to default on their debt obligations and then reap an unfair financial windfall by buying their debt at a significant discount at auction. Nor may they bring a lawsuit against HUD where, as here, HUD blocked them from purchasing their own debt and precluded the possibility of such a windfall to protect the general insurance fund ("GIF") and its insured debt program. Like any lender that sells its mortgage to a new mortgagee without the mortgagor reviewing or commenting on the sale terms, Congress authorized HUD unfettered discretion to sell mortgages and mortgage notes it insures without any participation by the mortgagor. *See* 12 U.S.C. § 1715z-11a(a) (the "flexibility authority" statute). Nothing changed for Whitehall & Saucon after HUD's Notes sale: they remained the owners and operators of their properties, and the terms and conditions of the Notes remained the same. In other words, their interests in their properties and the Notes were unaffected by the sale.

When the Notes sale occurred in August of 2023, Whitehall & Saucon owed more than $28.7 million in principal for the loans secured by their properties. After notifying them of its intent to sell their Notes, HUD sold the Notes through a competitive auction at a significant discount (*e.g.*, the Whitehall Note sold for $2.77 million, compared to its unpaid principal balance of about $11.49 million). ECF No.

1

61-7, p 2; 61-8, p 6.[3] As only the Notes were sold, any future foreclosure remained subject to Whitehall & Saucon satisfying their legal obligations under the Notes.

Notwithstanding that they were in default on their debts for more than two years, Whitehall & Saucon claim the right to: (1) challenge, or seek the ability to comment on, the terms and conditions by which HUD auctioned and sold the Notes, and (2) purchase the delinquent Notes at a significant discount from their original obligations. No such rights exist as a matter of law. Whitehall & Saucon fail to adequately plead a waiver of HUD's sovereign immunity, their standing to bring suit, or a claim upon which relief may be granted. Accordingly, the Court should dismiss the Amended Third-Party Complaint in its entirety with prejudice.

## STATEMENT OF FACTS

### 1. Whitehall & Saucon's Default on the Notes.

Whitehall & Saucon are Pennsylvania trusts that own properties, which they operate as nursing facilities for the elderly at market rents (unsubsidized by HUD). ECF No. 61, ATP Compl., ¶¶ 3, 4, 13, 16, 42, 103, 111; ECF No. 10-1, p. 16; ECF No. 37, ¶ 4; ECF No. 46-2, p. 2. In 2012, Whitehall & Saucon obtained loans, Whitehall for $15,788,700.00 and Saucon for $19,462,800.00, from M&T Realty Capital Corporation ("M&T") secured by their respective properties. ATP Compl., ¶¶ 11, 40; ECF No. 61-2, 61-11 (together, "Notes"); ECF No. 46-2, p. 2. The loans were issued under Section 232 of the National Housing Act ("NHA") which authorizes HUD to

_____

[3] *See* https://www.falconassetsales.com/images/sales/MHLS_2023-2/MHLS_2023-2_Results_Report.pdf. (last visited June 17, 2025).

2

insure loans at lower than market interest rates and for terms of up to forty years to encourage the construction and rehabilitation of facilities for elderly people who require medical or other long-term care. 12 U.S.C. § 1715w; ATP Compl., ¶¶ 14, 43; ECF Nos. 61-1, 61-9. Whitehall & Saucon entered into Regulatory Agreements that further obligated them, without any benefit in return, to, *inter alia*, make timely payments on the Notes. *Id*; ECF No. 61-1, Regulatory Agreement ("RA"), p. 1 ¶ 1.

Beginning in August of 2021, Whitehall & Saucon defaulted on the Notes when they stopped making required payments. ATP Compl., ¶¶ 26, 55, 57; Notes, ¶¶ 8, 9. As an operation of their default, their total debts became due. Notes, p. 3. As the defaults continued, on November 16, 2022, M&T assigned the Notes to HUD. ATP Compl., ¶¶ 34, 63; ECF No. 61-4, 61-12. In June of 2023, after their defaults continued for nearly two years, HUD notified Whitehall & Saucon of its intent to sell the Notes. ATP Compl., ¶¶ 68, 69; ECF No. 61-5.

## 2. Notice and Sale of Whitehall & Saucon's Notes.

On July 28, 2023, HUD published notice in the Federal Register of its intent to sell the Notes as part of a Multifamily and Healthcare Loan Sale ("MHLS") 2023-2. ECF No. 61, ATP Compl., ¶¶ 74, 75; ECF No. 61-6 ("FR Notice"). The sale was conducted pursuant to 12 U.S.C. § 1715z-11a(a). FR Notice, p. 3. The sale was by a competitive, sealed bid "on or about August 30, 2023." ATP Compl., ¶ 75; FR Notice, p. 2. All mortgagors whose notes were being sold were ineligible to bid. ATP Compl., ¶¶ 71, 77; FR Notice, p. 3. By selling the Notes, HUD no longer insured them, as

they were sold "without Federal Housing Administration (FHA) insurance." ATP Compl., ¶ 71; FR Notice, p. 2.

Windstream Capital, LLC ("Windstream") won the competitive bid and closed on the purchase of the Notes on September 20, 2023. FR Notice, p. 2; ECF No. 61-7, p. 5. On October 5, 2023, Windstream informed Whitehall & Saucon that it was the new mortgagee, all future payments were to be paid to it, and Whitehall & Saucon had until October 16, 2023 to pay the Notes in full. ATP Compl., ¶ 80; ECF No. 61-7, p. 1. Following the Notes sale, Whitehall & Saucon owned and operated their properties, and their legal obligations under the Notes remained the same.[4] ATP Compl., ¶¶ 3, 4; ECF No. 37, ¶ 4; ECF No. 46-2, p. 2.

### 3. Whitehall & Saucon's Claims

Whitehall & Saucon assert the following claims:

1. HUD violated the notice-and-comment requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, by not providing adequate notice of the Notes sale and prohibiting them from commenting in any rulemaking process for the Notes sale (ATP Compl., Count I);

2. HUD violated the NHA, 12 U.S.C. §§ 1701z-11, by excluding Whitehall & Saucon from the bid process, thereby failing to consider the government's financial interests and choose the least costly alternative for disposing of the Notes (ATP Compl., Count II);[5]

---

[4] Whitehall & Saucon reference subsequent assignments by Windstream to Lehigh Valley I, LLC (*see* ECF No. 61-8), but any such assignments are irrelevant. Once HUD assigned the Notes to Windstream, HUD no longer had any interest in them.

[5] Counts I and II fail as a matter of law. As to Count I, Congress determined that "publication in the Federal Register is sufficient to give notice of the contents of the document to a person subject to or affected by it." *Air India v. Brien*, 261 F. Supp. 2d 134, 138 (E.D.N.Y. 2003) (citing 44 U.S.C. § 1507, *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947)). As to Count II, Whitehall & Saucon speculate

3. HUD violated 24 C.F.R. § 290 by selling the Notes, claiming foreclosure on the Notes was unavoidable by such sale (ATP Compl., Count III);

4. HUD violated Whitehall & Saucon's Fifth Amendment procedural due process rights by not providing them an opportunity to participate in the bid process (ATP Compl., Count IV);

5. HUD violated Whitehall & Saucon's Fifth Amendment substantive due process rights excluding them from the bid process, which exclusion was not rational, depriving them of their property interest in the Notes and their properties (ATP Compl., Count V);

6. HUD violated Whitehall & Saucon's Fifth Amendment rights to equal protection by treating them differently from similarly situated individuals or entities (ATP Compl., Count VI).

Whitehall & Saucon ask this Court to enter a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and the APA, 5 U.S.C. §§ 702 and 706 (ATP Compl., Count VII), vacating the Notes sale, and declaring that HUD may not sell the Notes without Whitehall & Saucon's participation in the bid process. They further seek monetary contribution from HUD for any liability due from them to current mortgage holder Lehigh Valley 1 LLC ("Lehigh Valley") (ATP Compl., Count VIII), and indemnification for any liability assessed against them by Lehigh Valley (ATP Compl., Count IX).

---

that their exclusion as bidders in the Notes sale resulted "in a loss to the public that otherwise could have been avoided," as HUD allegedly disposed of the Notes without considering the "financial interests of the Federal Government," and *may have* effectuated a choice that is not the "least costly" among alternatives. ECF No. 61, ATP Compl., ¶¶ 99, 102 (emphasis added). This is the "generally available grievance about government" that "seeks relief that no more directly and tangibly benefits [them] that it does the public at large." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). The Supreme Court has long found such generally available grievances about government insufficient to create standing. *See* Section I(B), *infra*.

<u>**ARGUMENT**</u>

**I.     The Court Lacks Subject Matter Jurisdiction.**

The Amended Third-Party Complaint fails to plead a waiver of HUD's

sovereign immunity or standing to bring suit. As a result, Whitehall & Saucon fail

to establish this Court's subject matter jurisdiction to hear this case.

A.     <u>Failure to plead a waiver of sovereign immunity</u>

Subject matter jurisdiction underlies a court's power to hear a case. *United

States v. Cotton*, 535 U.S. 625, 630 (2002). If a court determines at any time that it

lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

A challenge to subject matter jurisdiction under Federal Rule of Civil Procedure

12(b)(1) may take the form of either a facial or factual attack. *Davis v. Wells Fargo*,

824 F.3d 333, 348 (3d Cir. 2016). Here, HUD presents a facial challenge.

"A facial attack ... is an argument that considers a claim on its face and

asserts that it is insufficient to invoke the subject matter jurisdiction of the court."

*Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). "In

reviewing a facial challenge, which contests the sufficiency of the pleadings, 'the

court must only consider the allegations of the complaint and documents referenced

therein and attached thereto, in the light most favorable to the plaintiff.'" *Id.*

(quoting *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). The

Court therefore must review "whether the allegations on the face of the complaint,

taken as true, allege facts sufficient to invoke the jurisdiction of the district court."

*Common Cause v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citation omitted).

The principles of sovereign immunity are well settled. "It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal quotations and citations omitted). "A waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *Id.* As a result, without an express and clearly established waiver of immunity, federal courts lack subject matter jurisdiction to hear *any* suits against the federal government or its agencies. *Id.*; *United States v. Shaw*, 309 U.S. 495, 500-01 (1940).

The Amended Third-Party Complaint fails to identify an express waiver of sovereign immunity for any of its claims. Although Whitehall & Saucon cite to 28 U.S.C. §§ 1331, 1343 and 2201, and the APA (ECF No. 61, ATP Compl., ¶ 7), they do not cite to an unequivocal waiver of sovereign immunity for the specific claims they assert against HUD. *United States v. Sherwood,* 312 U.S. 584, 586 (1941); *Clinton Cnty. Comm'rs v. U.S. E.P.A.*, 116 F.3d 1018, 1021 (3d Cir. 1997). Without this express waiver for each of their claims, their claims must all be dismissed.

> 1. *There is no waiver under the NHA because §1715z-11a(a) is not a part of the NHA.*

To begin, Whitehall & Saucon invoke the NHA, alleging that HUD violated the NHA by excluding them from the auction bid process at the Notes sale.

But the flexibility statute controls HUD's disposition of multifamily mortgages, and that statute is not a part of the NHA. Section 1715z-11a(a) states

that HUD shall "manage and dispose of . . . multifamily mortgages held by the Secretary on such terms and conditions as the Secretary may determine, *notwithstanding any other provision of law*." (emphasis added). Courts have found that § 1715z-11a(a) is not part of the NHA, and therefore, any waiver of sovereign immunity expressed in the NHA does not extend to § 1715z-11a(a). *See Ku v. United States*, No. 11 CV 6858 (VB), 2012 WL 2864509 at *4 (S.D.N.Y. May 4, 2012) (finding § 1715z-11a(a) is not part of the NHA, is excluded from the NHA's waiver of sovereign immunity, and the court may not review HUD's actions under the NHA) (citing *Jewish Ctr. for Aged v. HUD*, No. 04-CV-750, 2007 WL 2121691, at *5 (E.D. Mo. July 24, 2007) (same)), *aff'd on other grounds*, 508 F. App'x 14 (2d Cir. 2013).

Invoking the NHA is, therefore, not enough to establish a waiver of sovereign immunity sufficient to establish jurisdiction. Whitehall & Saucon must identify a specific waiver of sovereign immunity that encompasses § 1715z-11a(a), not just the NHA. Whitehall & Saucon cannot do so, because no such waiver exists.

> 2. *There is no waiver under the APA because § 1715z-11a(a) provides HUD with discretion and precludes judicial review.*

Whitehall & Saucon's reliance on the APA as a waiver of sovereign immunity is also misplaced. It ignores that "[r]eview under the APA is available, . . . 'to the extent that … the 'agency action is [not] committed to agency discretion by law.' 5 U.S.C. § 701(a)(2)." *Specter v. Garrett*, 971 F.2d 936, 943 (3d Cir. 1992).

In addressing 5 U.S.C. § 701(a)(2), a court considers three factors:

(1) the action involves broad discretion, not just the limited discretion inherent in every agency action;

(2) the action is the product of political, military, economic, or managerial choices that are not readily subject to judicial review; and,

(3) the action does not involve charges that the agency lacked jurisdiction, that the decision was motivated by impermissible influences such as bribery or fraud, or that the decision violates a constitutional, statutory, or regulatory command.

*Davis Enterprises v. United States*, 877 F.2d 1181, 1185 (3d Cir. 1989). Applying the three *Davis* factors to § 1715z-11a(a) reveals that actions taken by HUD under this statutory authority do not fall within the scope of APA review.

### i. First *Davis* Factor

Section 1715z-11a(a)'s authorization for HUD to manage and dispose of mortgages "on such terms and conditions as the Secretary may determine, notwithstanding any other provision of law," indicates that Congress granted HUD broad discretion in § 1715z-11a(a). By its express terms, namely the language "notwithstanding any other provision of law," § 1715z-11a(a) overrides any specified, contrary provision of law, including the APA. *Shomberg v. United States*, 348 U.S. 540, 547–48 (1955); *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993) (noting use of a "notwithstanding clause" shows drafter's intention that the section override conflicting provisions of any other section); *Ku*, 2012 WL 2864509, at \*4 (citing *Cisneros*, analyzing § 1715z-11a(a), and finding, "the 'notwithstanding clause' indicates that Section 1715z–1 1a(a) supersedes any other law that could hinder its objectives"); *Guity v. Martinez*, No. 03 Civ. 6266, 2004 WL 1145832, at \*4 (S.D.N.Y. May 20, 2004) (finding § 1715z-11a(a) "confirms the Secretary's broad discretion in determining the manner in which HUD disposes of properties").

In *Massie v. U.S. Dep't of Hous. & Urb. Dev.*, the court summarized the concept as follows:

> the 'notwithstanding any other provision of law' language is a clear intent by Congress to preempt all other statutes and regulations. [Case citations omitted.] . . .
>
> The flexible authority statute does not provide any guidance on how to review decisions made by the Secretary pursuant to it. 12 U.S.C. § 1715z-11a. . . .
>
> Under the flexible authority statute, there is no meaningful way for this court to evaluate HUD's decision regarding TEHP. *See, Chicago Acorn,* at 14; *see also, Mays,* at 11. Consequently, I find that this Court lacks jurisdiction to review Plaintiffs' claims brought pursuant to the Fair Housing Act, the Relocation Act, Plaintiffs' due process claims stemming from the Multifamily Mortgage Foreclosure Act and its regulations, and Plaintiffs' breach of contract claim.

No. 06-1004, 2007 WL 184827, at *3-5 (W.D. Pa. Jan. 19, 2007), *order vacated in part on other grounds on reconsideration sub nom,* No. CIV A 06-1004, 2007 WL 674597 (W.D. Pa. Mar. 1, 2007).

Because Congress granted such broad discretion on the face of the statute, there is "'no law to apply' in determining if [HUD's] decision is correct." *Local 2855, AFGE (AFL-CIO) v. United States,* 602 F.2d 574, 581 (3d Cir. 1979). Not only are HUD's decisions pursuant to § 1715z-11a(a) committed to HUD's discretion and outside the scope of APA review, but a district court recently found that the specific decision at issue here—prohibiting "a defaulting mortgagor from bidding on its own mortgage was a 'term or condition' imposed pursuant to this discretion." *EGAE, LLC v. Fudge*, No. 23-cv-00003, 2023 WL 5957144, at *4, 5 (D. Ala. Sept. 13, 2023);

10

*see also Ku*, 2012 WL 2864509, at *4 ("Because the bidding restrictions at the auction were a 'term or condition' pursuant to this discretion, there is 'no law to apply' for APA review"); *Jewish Ctr. for Aged*, 2007 WL 2121691, at *6 (finding § 1715z-11a(a) left HUD immune from APA review, as "APA's waiver would run afoul of the 'notwithstanding' clause found in § 1715z-11a(a)(1) [sic] that supersedes any other statute that hinders or impedes its objectives").

Whitehall & Saucon suggest that 12 U.S.C. § 1701z-11 and 24 C.F.R. § 290.35 provide meaningful standards to evaluate HUD's actions under § 1715z-11z(a). *See* ECF No. 61, ATP Compl., Counts II-III. Not so. Numerous courts have rejected this very argument, finding § 1715z-11a(a) supersedes § 1701z-11, its regulations, 24 C.F.R. Part 290, and any other statutes enacted prior to § 1715z-11a(a). *See Ku*, 2012 WL 2864509, at *4 (finding HUD disposed of property pursuant to § 1715z–11a(a), which supersedes § 1701z–11); *Massie,* 2007 WL 184827, at *3-4 ("the flexible authority statute must be read to override any conflicting provision of law in existence at the time that the flexible authority statute was enacted"); *Acorn v. United States Dep't of Hous. & Urb. Dev.*, No. 05 C 3049, 2005 WL 8179274, at *5 (N.D. Ill. Oct. 5, 2005) (finding § 1715z-11a(a) "wipes out 'any law' that would interfere with HUD's discretion to manage and dispose of multifamily properties").

### ii. Second and Third *Davis* Factors

As to the second factor, whether and on what terms to sell mortgages is an

economic choice that is "not readily subject to judicial review."[6] *Davis Enterprises*, 877 F.2d at 1185. Finally, as to the third factor, Whitehall & Saucon do not allege that the Notes sale was motivated by any impermissible influence or violated a constitutional, statutory, or regulatory command. *Id.*

Because § 1715z-11a(a) validates that the Notes sale and any terms thereof are not reviewable by this Court under the APA or any other law, Whitehall & Saucon cannot establish a waiver of sovereign immunity through the APA sufficient to establish this Court's subject matter jurisdiction.

3. *There is no waiver for monetary damages under the Federal Tort Claims Act because no administrative claim was presented and, in any event, the discretionary function exception may apply.*

Whitehall & Saucon seek relief from the Court in the form of indemnification and contribution for any monetary damages or obligations owed by them to Lehigh Valley flowing from the Notes sale. *See* ECF No. 61, ATP Compl., Counts VIII-IX. Intrinsically, these are claims for monetary damages against HUD. Claims for monetary damages against the federal government arising from a wrongful or negligent act or omission of a federal employee acting within the scope of their office or employment are traditionally available through the Federal Tort Claims Act

---

[6] Beyond their clear statutory discretion to do so, HUD's terms and conditions prohibiting Whitehall & Saucon from bidding in the Notes sale auction were needed to preclude them from gaining an unfair economic windfall and were necessarily also a product of economic and managerial choices not readily subject to a court's review. *Davis Enterprises*, 877 F.2d at 1185.

("FTCA").[7] *See* 28 U.S.C. §§ 1346(b), 2671 *et seq*. Though Whitehall & Saucon do not specifically invoke the FTCA, should the Court reach these counts and consider them as independent claims, Whitehall & Saucon cannot establish any waiver of sovereign immunity for any monetary damages claim.

The FTCA is the exclusive means provided by statute for the recovery against the United States for certain claims sounding in tort. Because the United States is immune from suit absent a specific waiver, the FTCA must be strictly construed. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA authorizes actions against the United States itself only under the specific conditions and parameters codified in the FTCA. 28 U.S.C. § 2675(a). A critical requirement to invoke jurisdiction under the FTCA is that a plaintiff must present the agency with an administrative claim within two years after the claims accrue. *Id.*; 28 U.S.C. § 2401(b). The administrative claim itself must also satisfy specific requirements to be deemed sufficient to invoke the FCTA. *See* 28 C.F.R. § 14.2(a). The timely presentment of an administrative claim is jurisdictional. A plaintiff must "exhaust his administrative remedies prior to filing suit" and may not file a lawsuit and then later attempt to cure his failure to exhaust his administrative remedies by belatedly submitting his administrative claim. *McNeil v. United States*, 508 U.S. 106, 107-13 (1993).

Whitehall & Saucon do not plead that they have presented an administrative claim in any form to HUD related to this matter or for the forms of monetary

---

[7] The APA does not allow for recovery of monetary damages, regardless of their form. 5 U.S.C. § 702; *Forbes v. Reno*, 893 F. Supp. 476, 481 (W.D. Pa. 1995).

damages they seek through indemnification and contribution. This failure alone strips this Court of any subject matter jurisdiction it may have had under the FTCA. *Livera v. First Nat'l State Bank of N.J.*, 879 F.2d 1186, 1194 (3d Cir. 1989).

But even if Whitehall & Saucon had done so, claims against the United States cannot lie where the claim "is subject to one of the FTCA's express exclusions." *Alexander v. Keystone Credit Union*, No. CIV. 94-463, 1994 WL 314319, at *2, 3 (E.D. Pa. June 28, 1994). Indeed, the FTCA contains several explicit exceptions "which serve to block the waiver of sovereign immunity that would otherwise occur under the FTCA." *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015) (citation omitted). "These exceptions 'must be strictly construed in favor of the United States,' and when an exception applies to neutralize what would otherwise be a waiver of immunity, a court will lack subject matter jurisdiction over the action." *Id.* (citation omitted).

Here, even if Whitehall & Saucon had timely submitted an administrative claim, their FTCA claims may very well be barred by the discretionary function exception. The discretionary function exception precludes government liability for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of HUD, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). To determine if the discretionary function exception applies, courts apply a two-part test. First, courts "consider the nature of the conduct and determine

whether it involves an element of judgment or choice." *United States v. Gaubert*, 499

U.S. 315, 322 (1991); *Rinaldi v. United States*, 904 F.2d 257, 273 (3d Cir. 2018).

If "a federal statute, regulation, or policy specifically prescribes a course of

action for an employee to follow," the exception is unavailable. *Gaubert*, 499 U.S. at

322. Second, "if the conduct at issue involves the exercise of judgment, [the court]

must determine whether that judgment is grounded in considerations of public

policy." *Id.* Courts presume actions are grounded in public policy where a statute or

regulation allows the government to exercise discretion. *Id.* at 324-25.

Section 1715z-11a explicitly grants HUD permission to exercise discretion to

"manage and dispose of . . . multifamily mortgages held by the Secretary *on such

terms and conditions as the Secretary may determine...*" (emphasis added). On the

plain meaning of this language, there is no prescribed course of action for HUD to

take in its Notes sales. Plus, maintaining the fiscal integrity of HUD's general

insurance fund ("GIF") to fund its mortgage insurance program is a matter

particularly left for HUD's discretion. 12 U.S.C. §1735c; *State Street Bank and

Trust Co. v. United States*, 657 F.2d 1199, 1204 (Fed. Cir. 1981) (finding HUD has

responsibility to protect its GIF). The discretionary function exception may well

apply on these facts, and no waiver of sovereign immunity can attach if it does.

4. *There is no waiver of sovereign immunity in any general
jurisdictional statutes or constitutional provisions.*

Whitehall & Saucon cite to 28 U.S.C. §§ 1331, 1343, and 2201 as the

jurisdictional bases for this action. ECF No. 61, ATP Compl., ¶ 7. But none of these

statutes contain a waiver of sovereign immunity for any action against HUD, much less the instant one. *Sherwood*, 312 U.S. at 586; *Clinton Cnty. Comm'rs*, 116 F.3d at 1021-22 (noting § 1331 is not a waiver of sovereign immunity for suit against the United States); *Salazar v. Heckler*, 787 F.2d 527, 528-29 (10th Cir. 1986) (noting § 1343 is not a waiver of sovereign immunity for suit against the United States); *Beale v. Blount*, 461 F.2d 1133, 1138 (5th Cir. 1972) (same); *Wigton v. Berry*, 949 F. Supp. 2d. 616, 626 (W.D. Pa. 2013) (noting § 2201 is not a waiver of sovereign immunity for suit against the United States).

Nor do the Fifth Amendment's due process and equal protection clauses constitute an independent waiver of sovereign immunity sufficient to salvage Whitehall & Saucon's constitutional claims. *Jaffee v. United States*, 592 F.2d 712, 717-18 (3d Cir. 1979) (finding sovereign immunity precludes suit for monetary and equitable relief against the United States for constitutional violations), *cert. denied*, 441 U.S. 961 (1979); *Campbell v. Soc. Sec. Admin.*, 446 F. App'x 477, 482 (3d Cir. 2011) (citing *Jaffee* and writing, "as the District Court noted with respect to his procedural due process claim, a suit for damages against the United States without its consent is barred by the doctrine of sovereign immunity."); *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. 1982), *cert. denied*, 459 U.S. 832 (1982) (citing *Jaffee* and writing, "The Constitution does not waive the Government's sovereign immunity in a suit for damages."); *Forbes*, 893 F. Supp. at 482 (citing *Jaffee* and finding, where there is no waiver of sovereign immunity, asserting constitutional violations directly against the United States fails for lack of jurisdiction).

Because Whitehall & Saucon cannot bring any claims in the absence of a specific waiver of sovereign immunity, their claims must all be dismissed.

B.    Failure to establish standing

Not only have Whitehall & Saucon failed to plead a waiver of HUD's sovereign immunity, but they also lack standing to bring their claims.

Article III of the Constitution limits federal court jurisdiction to adjudication of "cases" or "controversies," making standing a threshold question. U.S. Const., art. III, § 2; *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, Whitehall & Saucon must satisfy three elements:

> [1] "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical";
>
> [2] "a causal connection between the injury and the conduct complained of— the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and,
>
> [3] "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Lujan,* 504 U.S. at 560–61 (cleaned up; internal citations and quotations omitted). When a plaintiff brings multiple claims, he "must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

1.    *Whitehall & Saucon lack an injury-in-fact.*

"The injury-in-fact element is often determinative," as it is here. *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009). "[T]he 'injury in fact'

test requires more than an injury to a cognizable interest. It requires the party seeking review be himself among the injured." *Lujan,* 504 U.S. at 563. Whitehall & Saucon fail to plead a legally protected interest in the terms of the Notes sale, or any actual or imminent harm caused by the sale or its terms. Indeed, the Amended Third-Party Complaint does not, and could not, allege any fact showing an injury-in-fact or purported injury to Whitehall & Saucon directly traceable to the sale.

There is no dispute that, after the Notes sale, Whitehall & Saucon still owned and operated the subject properties, had the same legal obligations under the Notes, and no longer had any obligations at all under the Regulatory Agreements because of their termination. Simply put, Whitehall & Saucon's "interests" in their Notes were fundamentally unaffected by the sale. ECF No. 61, ATP Compl., ¶¶ 3, 4; ECF No. 37, ¶ 4; ECF No. 46-2, p. 2; ECF No. 61-5. No injury exists on these facts.

The Supreme Court recently reaffirmed that, for an alleged injury to be legally and judicially cognizable, it "'requires, among other things,' that the 'dispute is traditionally thought to be capable of resolution through the judicial process'—in other words, that the asserted injury is traditionally redressable in federal court." *United States v. Texas*, 599 U.S. 670, 676 (2023) (citations omitted). As examined at length in Section I(A), *supra*, there is no redressability in federal court for a mortgagor challenging HUD's sale of its mortgage note at all. It is no surprise, then, that mortgagors are frequently found to lack standing in actions analogous to this one. *EGAE, LLC*, 2023 WL 5957144, at *7-8.

Whitehall & Saucon allege that their "interest" in their properties and Notes may be negatively affected by a future foreclosure. ATP Compl., ¶¶ 105, 112, 130, 132. This is quintessential speculation, especially where they continued to own and operate their properties after the sale and the terms of their Notes remain the same.[8] *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013) (finding the plaintiff lacked standing "because they cannot demonstrate that the future injury they purportedly fear is certainly impending."). Plus, conceptually, Whitehall & Saucon may avoid foreclosure altogether by satisfying their obligations under the Notes, obligations that did not change in any way following the Notes sale.

Whitehall & Saucon additionally allege "injury" through the termination of their Regulatory Agreements. But these agreements only contained additional obligations that Whitehall & Saucon alone must meet, without any corresponding benefit to them. ATP Compl., ¶¶ 3, 4; ECF No. 37, ¶ 4; ECF No. 46-2, p. 2; ECF No. 61-5. Thus, termination of the Regulatory Agreements actually *reduced* Whitehall & Saucon's legal obligations. It is hard to imagine how reducing legal burdens equates to the imposition of an injury. *See EGAE, LLC*, 2023 WL 5957144, at *7 ("As for the Regulatory Agreement, EGAE fails to explain how HUD's cancellation of that

---

[8] Though the Court recently appointed a receiver, the appointment occurred well after the Notes sale, and Whitehall & Saucon's key interests in the ownership of their properties and the Notes has not changed. Plus, the appointment was largely due to their ongoing default, not HUD's sale of the Notes. ECF No. 64, p. 6 ("There is no dispute that neither Whitehall nor Saucon have made a mortgage payment in years; accordingly, both Defendants are in default. These defaults triggered Lehigh's right to move for appointment of a receiver as set forth in the Mortgages.").

agreement, which imposed obligations on EGAE in addition to those imposed through the Mortgage and deed of trust, harms it in any way.").

      2.    *Whitehall & Saucon cannot establish a constitutionally required procedure, or inadequate procedure, for the Notes sale.*

Whitehall & Saucon bring a Fifth Amendment claim for procedural due process violations. A "deprivation of a procedural right without some concrete interest that is affected by that deprivation . . . is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

To adequately allege a procedural due process violation, Whitehall & Saucon must have a legitimate claim of entitlement to specific benefits that they have already acquired. *Board of Regents v. Roth,* 408 U.S. 564, 576–77 (1972). The interests must be created and defined by "existing rules and understandings that stem from an independent source such as state law." *Id* at 577. "A constitutionally cognizable property interest in a benefit requires more than 'an abstract need or desire' or a 'unilateral expectation of it'—rather, there must be 'a legitimate claim of entitlement.'" *United States v. Guillen-Cervantes*, 748 F.3d 870, 872 (9th Cir. 2014) (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)). To assert such an interest, a plaintiff must "demonstrate that an existing law, rule, or understanding makes the conferral of a benefit 'mandatory.'" *Id.* "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock*, 545 U.S. at 756.

In the contractual realm for items such as the Notes[9], the Second Circuit has explained, "the Due Process Clause [was] invoked to protect something more than an ordinary contractual right. Rather, procedural protection [was] sought in connection with a state's revocation of a *status*, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure." *S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 966 (2d Cir. 1988). This logic does not extend to "contractual interests that are not associated with any cognizable status of the claimant." *Id.* at 967.

Whitehall & Saucon cannot adequately plead a due process violation. Nowhere in the Amended Third-Party Complaint do Whitehall & Saucon identify any statute, regulation, rule, authority, or mutually explicit understanding with HUD that entitles them to bid or comment on the terms and conditions of HUD's sale of their specific Notes. Nowhere do they identify any statute, regulation, rule, authority, or mutually explicit understanding with HUD that entitles them to

---

[9] The Supreme Court has identified a very narrow set of government benefits that are protected under the Due Process Clause. *Perry v. Sindermann,* 408 U.S. 593 (1972) (tenured teaching position); *Goldberg v. Kelly,* 397 U.S. 254 (1970) (welfare benefits); *Roth*, 408 U.S. at 564 (collected cases). The Due Process protections afforded to these entitlement-like benefits have not been extended to "'ordinary' or 'routine' government contracts." *Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374, 385 (S.D.N.Y. 2014); *Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 10 (1st Cir. 2005) ("We have held with a regularity bordering on the echolalic that a simple breach of contract does not amount to an unconstitutional deprivation of property."); *New Vision Photography Program, Inc. v. Dist. of Columbia*, 54 F. Supp. 3d 12, 29 (D.D.C. 2014) ("The Supreme Court has never held that government contracts for goods and services create property interests protected by due process." (citation omitted)).

participate in the bid process for the sale of their own Notes and potentially purchase their own Notes at a significant discount. *See EGAE, LLC*, 2023 WL 5957144, at *8 ("EGAE identifies no provision in the Constitution or any federal law that requires HUD to include a defaulted mortgagor in the auction for the sale of a defaulted loan or to treat a defaulted mortgagor as it would any other prospective loan bidder."). At most, Whitehall & Saucon claim, erroneously, that NHA § 232 required HUD to give them notice of the sale, work with them to resolve their defaults, or apply reserve funds (only mandated under the Regulatory Agreement for repairs) to pay their defaulted mortgages. ECF No. 61, ATP Compl., ¶¶ 25, 26, 37, 55, 66. NHA § 232 contains no such requirements. *See* 12 U.S.C. § 1715w.

Whitehall & Saucon's reliance on Section 5.5 of the NHA § 232 Handbook is also misplaced. ATP Compl., ¶¶ 25, 26, 66. The Handbook merely recites the requirements of 24 C.F.R. § 207.258(a)(2) for a lender to avoid an insurance claim. Nowhere is there a stated benefit to a mortgagor to be rescued from its own default nor a mandate that HUD seek to resolve a default. Similarly, their citation to 15 U.S.C. § 9056 is inapplicable, as § 9056 does not apply to § 232 loans. ATP Compl., ¶¶ 20, 49; 15 U.S.C. § 9056(a)(2) (defining "Federally backed mortgage loan" and not including loans guaranteed or insured by HUD or issued through NHA § 232). Finally, their reliance on the APA fails because, to the extent the APA applies at all, § 1715z-11a(a) supersedes the APA, leaving Whitehall & Saucon with no right to notice and comment. *See* Section I(A), *supra*.

Without more, Whitehall & Saucon cannot establish any legally protected interest in the sale of the Notes. Because no "deprivation" existed that "created a demonstrable risk or caused a demonstrable increase in an existing risk of injury" to their "interests" in their properties, Notes, or Regulatory Agreements, Whitehall & Saucon fail to establish a due process violation.

3. *Whitehall & Saucon cannot establish a personal injury-in-fact to establish a viable Equal Protection claim.*

Whitehall & Saucon allege that they were treated "differently from similarly situated individuals or entities", and as a result, HUD violated their Equal Protection rights under the Fifth Amendment. ATP Compl., ¶¶ 133, 134. Whitehall & Saucon fare no better with this claim.

As a threshold matter, Whitehall & Saucon fail to identify any classification in the Notes sale that "affect some groups of citizens differently than others." *McGowan v. Maryland*, 366 U.S. 420, 425 (1961). They also fail to allege that their exclusion as bidders was different from any other mortgagor similarly excluded from bidding in MHLS 2023-2 (*i.e.*, not "treated alike, under like circumstances and conditions"). *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 602 (2008); *EGAE, LLC*, 2023 WL 5957144, at *8. HUD's exclusion of Whitehall & Saucon was rational from a commonsense standpoint, as it prevented them, as it would any other similarly situated mortgagor, from defaulting on their loan and then reaping an unfair financial windfall by purchasing their own debt at a massive discount. *See* 66

Fed. Reg. 35846 (July 9, 2001)[10]. Whitehall & Saucon cannot establish any violation of constitutional due process or equal protection rights on these facts.

## II.    Whitehall & Saucon Fail to State a Claim Upon Which Relief Can Be Granted Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Assuming, *arguendo*, that the Court finds subject matter jurisdiction sufficient to reach this depth of analysis, none of Whitehall & Saucon's claims state a claim upon which relief can be granted.

"To survive a motion to dismiss for failure to state a claim [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to

---

[10] The notice regarding this Rule specifically states, "For example, there have been occasions where mortgagors intentionally allowed a property to go into foreclosure and subsequently repurchased the property for less than the debt amount or at more lenient terms than contained in the original Note. Permitting a current or prior mortgagor who is or was in such serious default as to lead to foreclosure or HUD acquisition to make an 'end-run' around its loan agreement is antithetical to HUD's objective of promoting efficient and equitable administration of housing resources. Furthermore, it permits borrowers that are unwilling to comply with Note requirements, including permissible loan modifications, to reap an unfair benefit at the expense of the public." The notice further explained that, "[w]hile this limitation may decrease competition by one, it supports HUD's asset management responsibilities by preventing a defaulting mortgagor from deriving an unfair benefit at the public expense. . . prohibiting the mortgagor from bidding is more important than the minimal loss of competition that may result."

The Court may rely upon this notice in ruling on this motion because it is capable of accurate and ready determination. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279-80 (11th Cir. 1999). This includes information posted on official public websites of government agencies. *See Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.") (citing *Cannon v. Dist. of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of document posted on D.C. public website)).

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations and internal quotation marks omitted). The plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. Allegations of fact "must be enough to raise a right to relief above the speculative level …." *Twombly*, 550 U.S. at 555.

In deciding a motion to dismiss, a court begins by identifying pleadings that are no more than legal conclusions, and therefore "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (courts are not "bound to accept as true a legal conclusion couched as a factual allegation."). In fact, "courts may infer from factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather that the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682)). Courts do not assume that a plaintiff "can prove facts which [they have] not alleged, or that the defendants have violated … laws in ways that have not been alleged." *Assoc. Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters,* 459 U.S. 519, 526 (1983). Additionally, "the pleading standards set forth in

[*Twombly*] and *Iqbal* apply with equal force to ... third-party complaints." *SEPTA v. AECOM USA, Inc.*, No. 10-117, 2010 WL 4703533, at *3 (E.D. Pa. Nov. 19, 2010).

A.     <u>The Amended Third-Party Complaint is not grounded within the claim brought by Lehigh Valley against Whitehall & Saucon.</u>

In the third-party context, a "third-party claim must be grounded specifically within the 'claim' originally brought against the defendant." *Kroger Co. v. New Enters. Stone & Lime Co.*, No. 17-cv-01541, 2018 WL 4615955, at *3 (E.D. Pa. Sept. 25, 2018). Here, Whitehall & Saucon are the original defendants in the original action brought by Lehigh Valley. Consequently, Whitehall & Saucon must cabin their claims specifically within the claims brought by Lehigh Valley against Whitehall & Saucon. *Id.* Instead, Whitehall & Saucon bring claims against HUD grounded in the Constitution, the APA, and even tort law. These claims clearly do not mirror the foreclosure claims brought by Lehigh Valley. On this basis alone, the Amended Third-Party Complaint should be dismissed in its entirety. *Id.*

B.     <u>Whitehall & Saucon failed to plead that foreclosure is unavoidable or that they house very low-income tenants at risk of rent greater than 30% of income.</u>

Whitehall & Saucon claim that their exclusion from the bid process deprived them of an interest in their properties *upon a foreclosure action* by a third-party purchaser. ECF No. 61, ATP Compl., ¶¶ 105, 112, 130, 132. At best, this claim is entirely speculative as to the risk of foreclosure at the time of the Notes sale. There is nothing in the pleadings to suggest that foreclosure was unavoidable at that time. *See* 61 Fed. Reg. 4580 (February 6, 1996) (setting forth factors for "unavoidable

foreclosure"). But more fundamentally, any foreclosure would result from Whitehall & Saucon's continued default under the Notes, not HUD's sale of the Notes. Whatever "interest" Whitehall & Saucon have in the Notes was unchanged by the sale. The Notes and Regulatory Agreements authorized HUD to act on any default under the Notes without notice. ECF No. 61-11, p. 9; ECF No. 61-1, ¶ 11. There is nothing to substantiate a legitimate "interest" in *who* holds the Notes or *who* acts upon a default. Whitehall & Saucon have not pointed to anything to the contrary.

Nevertheless, Whitehall & Saucon claim that HUD violated 24 C.F.R. § 290.35. ECF No. 61, ATP Compl., ¶¶ 109, 112. Even if § 290.35 applied, which it does not, *see* Section I(A)(2)(i), *supra*, § 290.35 provides that HUD may not sell delinquent mortgages if: (1) HUD believes that foreclosure is unavoidable, *and* (2) the project securing the mortgage is occupied by very low-income tenants who are not receiving housing assistance and would be likely to pay rent in excess of 30% of their adjusted monthly income if HUD sold the mortgage. 24 C.F.R. § 290.35(b). Whitehall & Saucon have not, and cannot, allege any facts to plausibly establish either factor. Nowhere do they plead that foreclosure was unavoidable prior to the Notes sales or that HUD believed it to be so at that time. Nowhere do they plead that their properties were occupied by very low-income tenants who do not receive federal rental housing assistance but who might become rent burdened *as a result of the Notes sale*. In fact, the opposite is true, since the nursing facilities were provided at market rents, unsubsidized by HUD. ECF No. 61-6, FR Notice, p. 3. Whitehall & Saucon fail to state a viable claim on this basis as a result.

C.    Whitehall & Saucon fail to plead a constitutional violation.

The Fifth Amendment imposes due process constraints only upon governmental decisions that deprive individuals of life, liberty, or property interests. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Although the words "equal protection" do not appear anywhere in the Fifth Amendment's text, "the Fifth Amendment's Due Process Clause prohibits the Federal Government from engaging in discrimination that is 'so unjustifiable as to be violative of due process.'" *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 316 (3d Cir. 2001) (citations omitted). Fifth Amendment equal protection claims are examined under the same principles that apply to such claims under the Fourteenth Amendment. *Id.* at 317 (citation omitted). The first step in this analysis is to determine whether Whitehall & Saucon are members of a suspect class or whether a fundamental right is implicated. *Id.*

Whitehall & Saucon fail to plead any facts or viable legal bases that: (i) a suspect class is made up of mortgagors forbidden from participating as bidders at a Note sale to purchase their own delinquent debts, (ii) they had a fundamental right to comment on the terms and conditions of their Notes sale, (iii) they had a fundamental right to be a bidder at their Notes sale, (iv) they held a property interest in the Notes (or Regulatory Agreements), (v) their "interests" in the Notes were adversely affected by the assignment of the Notes to Windstream or Lehigh Valley, or (vi) the Notes sales procedure itself was constitutionally inadequate.

Section 1715z-11a(a) gives HUD sole discretion to sell HUD-held multifamily mortgages on "terms and conditions as [HUD] may determine." *See* Section

I(A)(2)(i), *supra.* HUD exercised its right to sell the Notes as authorized by law.

Whitehall & Saucon owned and operated their properties after the Notes sale. The

terms under the Notes are the same. They received notices of the Notes sale. And

all mortgagors, not just Whitehall & Saucon, were excluded from participation. In

the absence of this minimum required pleading, Whitehall & Saucon fail to state a

viable Fifth Amendment constitutional claim of any kind. *Bd. of Regents*, 408 U.S.

at 577; *Eldridge*, 424 U.S. at 334; *Guity,* 2004 WL 1145832, at *7.

> D.  <u>Whitehall & Saucon failed to plead a claim for indemnification
> or contribution pursuant to Rule 14.</u>

Whitehall & Saucon rely upon Rule 14 of the Federal Rules of Civil Procedure

as the basis for this action. Rule 14(a)(1) provides that a "defending party may, as

third-party plaintiff, serve a summons and complaint on a nonparty who is or may

be liable to it for all or part of the claim against it."

Rule 14 does not create a right to indemnity or contribution, which must

come from the applicable substantive law. *Foulke v. Dugan*, 212 F.R.D. 265, 269

(E.D. Pa. 2002). Here, the applicable substantive law, especially for any monetary

damages claims against HUD under the FTCA, is Pennsylvania law. *See LaLoup v.

United States*, 92 F. Supp. 3d 340, 347 (E.D. Pa. 2015) ("Because the statute looks to

'the law of the place where the act or omission occurred,' we must apply state

substantive law to determine liability under the FTCA."); *Floyd v. Wayne Mem'l

Hosp.*, No. 24-CV-01046, 2024 WL 5248145, at *3 (M.D. Pa. Dec. 30, 2024) ("The

substantive law involved in this matter, including the indemnity and contribution

claims against the United States, is grounded in state law."). Under Pennsylvania law, "the right to indemnity is contractual or arises when a person not actively at fault has been compelled by a legal obligation to pay damages that have been caused by the tortious conduct of another." *Foulke*, 212 F.R.D. at 270 (quoting *Builders Supply Co. v. McCabe*, 366 Pa. 322, 325 (1951)). Likewise, a right to contribution arises only among joint tortfeasors. *Id.* However, claims for contribution exclude breach of contract claims. *Kroger Co. v. New Enters. Stone & Lime Co.*, No. 17-cv-01541, 2018 WL 4615955, at *3 (E.D. Pa. Sept. 25, 2018).

Whitehall & Saucon did not, and cannot, plead that the Notes themselves or any other document included any contractual right to indemnity following a sale of the Notes. Accordingly, they must demonstrate, then, that HUD, Windstream, and/or Lehigh Valley are joint tortfeasors. *Kohn*, 2012 WL 1598096, at *3. To be joint tortfeasors, "the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury." *Id.* (citing *Lasprogata v. Qualls*, 397 A.2d 803, 805 n.4 (Pa. Super. Ct. 1979)). Whitehall & Saucon have not plead any facts to show that HUD is a tortfeasor, much less a joint tortfeasor with Windstream or Lehigh Valley. Nor could they. HUD's unfettered discretion to sell the Notes is beyond dispute, and once sold, HUD had no interest or involvement in any subsequent actions.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss the Amended Third-Party Complaint in its entirety with prejudice.

Dated: June 17, 2025

Respectfully submitted,

DAVID METCALF
United States Attorney

/s/ *Susan R. Becker/gbd*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

*/s/ Frank A. De Luccia*
ERIN E. LINDGREN
FRANK A. DE LUCCIA
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 861-8564 (EEL) / 8553 (FAD)
Email: Erin.Lindgren@usdoj.gov
Email: Frank.DeLuccia@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I filed HUD's foregoing Motion to Dismiss Third-Party Plaintiff's Amended Third-Party Complaint through the Court's Case Management/Electronic Case Filing System, thereby making it available for download by all counsel of record.

/s/ Frank A. DeLuccia
FRANK A. DE LUCCIA
Assistant United States Attorney

Date: June 17, 2025