# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEHIGH VALLEY 1 LLC, successor by assignment to WINDSTREAM CAPITAL LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION,<br><br>*Plaintiffs*,<br><br>v.<br><br>WHITEHALL FIDUCIARY LLC, AS TRUSTEE OF WHITEHALL TRUST U/T/A, DATED AUGUST 1, 2007, and SAUCON TRUST, U/T/A October 1, 2007,<br><br>*Defendants.* | CIVIL ACTION NO. 24-2627 |
| WHITEHALL FIDUCIARY LLC, AS, TRUSTEE OF WHITEHALL TRUST U/T/A, DATED AUGUST 1, 2007, and SAUCON TRUST, U/T/A October 1, 2007,<br><br>*Third-Party Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,<br>-and-<br>ERIC SCOTT TURNER, in his Official Capacity as Secretary of the UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,<br><br>*Third-Party Defendants.* | |

# HUD'S REPLY MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION TO DISMISS

"At the time HUD sold the loans, Whitehall & Saucon were in longstanding default and foreclosure was imminent. The Amended Third-Party Complaint confirms both entities had failed to make required payments since early 2021, leading HUD to accelerate the loans and assign them to a third-party investor by September 2023." ECF No. 93-1 ("Opp."), p. 25; *see* ECF No. 61-2 ("Mortgage"), p. 7. This is Whitehall & Saucon's own admission in opposition. In the simplest of terms, Whitehall & Saucon's actions, and their actions alone, started the chain of events that led to the sale of their mortgage Notes—a sale that HUD was authorized to make, and in the manner that it made it. Whitehall & Saucon point to no controlling authority to the contrary.

Whitehall & Saucon do not genuinely dispute that Congress granted HUD unfettered discretion to sell mortgage notes HUD insures without any participation by the mortgagor. *See* 12 U.S.C. § 1715z-11a(a) (the "flexibility authority" statute). Nor could they – the law is clear. Instead, they erroneously cite to irrelevant and inapplicable statutes, regulations, handbooks, and cases in a misbegotten attempt to avoid the outcome of their malfeasance. But despite their lengthy opposition, and invocation of much inapposite authority, Whitehall & Saucon failed to identify any property interest or legal right that entitles them to default on their contractual obligations and then reap an undeserved financial windfall by buying their own defaulted debt back at a significant discount, or any basis to sue HUD for preventing them from doing so. On this basis alone, HUD's motion to dismiss must be granted in its entirety.

Whitehall & Saucon argue that Section 702 of the Administrative Procedure Act ("APA") allows their action to proceed. It does not. There is no dispute that HUD sold the Notes pursuant to 12 U.S.C. § 1715z-11a, not 12 U.S.C. §1701z-11 as Whitehall & Saucon suggest. Because HUD sold the Notes pursuant to Section 1715z-11a, HUD alone is authorized to determine the terms and conditions of the Notes sale, "notwithstanding any other provision of law." Because Section 1715z-11a does not provide a meaningful standard of review for HUD's exercise of discretion, judicial review is unavailable through the APA. *See* 5 U.S.C. § 701(a)(2). Their conclusory arguments aside, Whitehall & Saucon fail to establish the Court's jurisdiction, their standing to bring this suit, any constitutional violations, or that their preclusion from bidding at the Notes sale was arbitrary and capricious.

## ARGUMENT

### I. Whitehall & Saucon fail to show a waiver of sovereign immunity.

In their opposition, Whitehall & Saucon abandon many of their jurisdictional theories[1] and contend solely that the waiver of sovereign immunity is based on the APA in 5 U.S.C. § 702. *See* Opp., p. 13-14. But Whitehall & Saucon ignore the APA's own text in 5 U.S.C. § 701(a)(2), which negates the APA's waiver of sovereign immunity to preclude judicial review when an agency's action is committed to its discretion by law without a meaningful standard for review. ECF No. 83 ("HUD

---

[1] Whitehall & Saucon concede that 28 U.S.C. §§ 1331, 1343 and 2201, all of which they cite as a basis for jurisdiction, do not waive HUD's sovereign immunity. Opp., p. 13-14. *See Weisburg v. Piehota*, No. CV 16-4017, 2017 WL 5499387, at *4 (E.D. Pa. Nov. 16, 2017) (noting that none of these statues waive sovereign immunity).

2

Mem."), p. 8-10; *Heckler v. Chaney*, 470 U.S. 821, 828-30 (1985); *Gentile v. SEC*, 974 F.3d 311, 317 (3d Cir. 2020). Section 1715z-11a(a) grants HUD unfettered discretion to sell the Notes at issue. This grant of discretion forecloses APA relief.

Whitehall & Saucon dismiss this statute and its "notwithstanding any other provision of law" clause as overstated, though it is anything but. First, they inexplicably cite to 12 U.S.C. § 1701z-11, *see* Opp., p. 10., which does not negate or supersede the flexible authority statute. In fact, the opposite is true: the flexibility statute supersedes 12 U.S.C. § 1701z-11 and its implementing regulation, which Whitehall & Saucon do not dispute. *See* HUD Mem., p. 9-10; Opp., p. 10-12. Without any relevant legal citation, they declare that 12 U.S.C. § 1715z-11a is part of the NHA. It is not.[2] Indeed, the note to the flexibility statute in 12 U.S.C. § 1715z-11a(a) reads: "Section was enacted as part of the Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1997, *and not as part of the National Housing Act which comprises this chapter*." (emphasis added). Consequently, any waiver of sovereign immunity that exists in 12 U.S.C. § 1702 of the NHA[3] is inapplicable here. *See* HUD Mem., p. 7-8.

---

[2] *See Ku v. United States*, 2012 WL 2864509, at *4 (S.D.N.Y. May 4, 2012) (plaintiff misreads statute in suggesting § 1715z-11a(a) is part of the NHA), *aff'd on other grounds*, 508 F. App'x 14 (2d Cir. 2013); *Jewish Ctr. for the Aged v. HUD*, 2007 WL 2121691, at *5 (E.D. Mo. July 24, 2007) (noting § 1715z-11(a) is not part of the NHA).

[3] Whitehall & Saucon's general reliance on the NHA is unavailing. Opp., p. 7-12. The NHA benefits people living in inadequate housing, not defaulting mortgagors or commercial developers. *See* NHA § 102 (12 U.S.C. § 1716, *et seq.*); *United States v. Winthrop Towers*, 628 F.2d 1028, 1036 (7th Cir. 1980) ("because the [NHA] was primarily intended to benefit individuals who live in inadequate housing…").

3

Whitehall & Saucon attempt to evade the flexibility statute's "notwithstanding" clause by erroneously arguing that HUD's reliance on the clause does not nullify all legal accountability or override the APA. *See* Opp., p. 10-11. But their primary citation, *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670–73 (1986), does not support their position. *Bowen* is not an APA case, addressed statutes not relevant here, and does not address the impact of a "notwithstanding" clause. Whitehall & Saucon then pivot to an argument that courts have "rejected" HUD's expansive reading of the flexibility statute. Opp., p. 10. But their cited cases are unhelpful because none of them address the APA in 5 U.S.C. § 701(a)(2), the flexibility statute in 12 U.S.C. § 1715z-11a(a) and its legislative history, or the interplay between the two statutes. *See* Opp., p. 10.[4]

Next, Whitehall & Saucon assert that 12 U.S.C. § 1701z-11 and/or 24 C.F.R. § 290.35 provide "law to apply" for judicial review of HUD's exercise of its discretion under 12 U.S.C. § 1715z-11a(a). *See* Opp., p. 7-10. This is incorrect.[5] Section 1715z-11a(a) states that no other law applies through the "notwithstanding any other

---

[4] *See Auburn Hous. Auth. v. Martinez*, 277 F.3d 138 (2d Cir. 2002) (addressing statutory construction of a statute advanced in an appropriations bill); *Medina v. United States*, 92 F. Supp. 2d 545 (E.D. Va. 2000) (finding immigration statute did not bar FTCA waiver for tort actions apart from the removal proceedings because repeal by implication is disfavored); *Nw. Forest Res. Council v. Glickman*, 97 F.3d 1161, 1166–67 (9th Cir. 1996) (addressing statutory construction and implied repeal, and finding no conflict between a statute and agency's regulations).

[5] The Notes sale was indisputably conducted pursuant to 12 U.S.C. § 1715z-11a(a). *See* ECF No. 61-6 ("FR Notice"), p. 2 ("This is a sale of unsubsidized mortgage loans, pursuant to … 12 U.S.C. 1715z-11a(a)."). Nevertheless, Whitehall & Saucon continuously cite to, and quote from, 12 U.S.C. § 1701z-11 instead of 12 U.S.C. § 1715z-11a(a). *See* Opp., p. 10.

provision of law" clause. Ample Third Circuit and Supreme Court precedent, which Whitehall & Saucon ignore, routinely holds that a "notwithstanding" clause sweeps aside all potentially conflicting laws. *See* HUD Mem., p. 9-10 (discussing cases). This certainly includes 12 U.S.C. § 1701z-11 and 24 C.F.R. § 290.35, to the extent they may be deemed applicable. In fact, Whitehall & Saucon concede, correctly, that "Section 290.35(b), . . . does not bar HUD's sale." Opp., p. 27.

Whitehall & Saucon's analogous contention that judicial review was consistently upheld in cases involving HUD's asset disposition programs is also incorrect. They cite to *Shannon v. HUD*, 436 F.2d 809 (3d Cir. 1970), *see* Opp., p. 11, but *Shannon* lends them no reprieve. There, HUD failed to hold hearings as required by statute and failed to consider the impact of the concentration of low-income residents in a neighborhood as part of an urban renewal plan. *Id.* at 818. But *Shannon* is not an asset disposition case and did not involve Section 1715z-11a or the APA. Their reliance on *Philadelphia v. Page*, 363 F. Supp. 148, 151 (E.D. Pa. 1973) is similarly misplaced. *See* Opp., p. 29. *Page* was also not an asset disposition case and did not involve the sale of mortgage notes, Section 1715z-11a, or the APA.[6] Consequently, neither case has any place in this analysis.[7]

---

[6] The court in *Page* found an implied warranty in an express contract for the sale of a house. *Page*, 363 F. Supp. at 151. The case does not stand for the proposition of "implied obligations related to the administration of [HUD's] programs." Opp., p. 29.

[7] To avoid a jurisdictional dismissal of their indemnification and contribution claims under the FTCA, Whitehall & Saucon say they do not raise "traditional tort claims," but rather, a new claim of "equitable indemnification." Opp., p. 12. But "equitable indemnification" has been summarily rejected as a basis for liability by the Third Circuit. *See Sovereign Bank v. B.J.'s Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir.

5

As for the Regulatory Agreements, Whitehall & Saucon repeatedly make the specific claim that HUD affirmatively represented and "promised" to them that they would have an opportunity to bid during the Notes auction but then excluded them from doing so arbitrarily and without justification. Opp., p. 7, 8, 10. Whitehall & Saucon cite to nothing in the Regulatory Agreements that even plausibly supports this allegation. Nor could they— a simple review of the Regulatory Agreements shows no such representation or promise. Opp., p. 16-19, 24; ECF No. 61-1, Regulatory Agreement ("RA"). The Regulatory Agreements only impose *obligations* on Whitehall & Saucon, not *benefits*, much less the benefits they suggest. *See EGAE, LLC v. Fudge*, 2023 WL 5957144, \*7 (D. Alaska Sept. 13, 2023) ("[T]he Regulatory Agreement contains only obligations that provide burdens to [the mortgagor]; the Court is unaware of any benefit that that agreement confers to [the mortgator]."). Plus, beyond failing to plead anything to support this claim, s*ee* ECF No. 61, Am. 3d Pary Compl., ¶¶ 29, 58, the exhibits Whitehall & Saucon attached to their Amended Third-Party Complaint show that they were notified at the outset that "[n]either you, nor any of your principals, affiliates, and assigns can purchase the loan or qualify to bid in the loan sale." *Id.* at p. 92.

---

2008) ("Sovereign can point to no authority to support its attempt to forge an equitable indemnification claim from the provisions of the TILA, and we have found none."). They then argue that not all claims for monetary consequences are subject to the FTCA's limitations, citing *Trans-Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370, 376 (D.C. Cir. 1976). Their reliance on this case is misguided, as it was not an FTCA case. Without more, if monetary damages are sought but no traditional tort claims are alleged, there is no waiver of sovereign immunity and the claims for indemnification and contribution must be dismissed. *See* HUD Mem., p. 29-30.

At various points, Whitehall & Saucon cite to Section 5.5(A)(2) of the Section 232 Handbook. *See* Opp., p. 3, 10. But this Handbook does not provide independent authority for their claims insofar as it merely restates 24 C.F.R. § 207.258(a)(2) and deals solely with a *lender* and making an insurance claim. *See* HUD Mem., p. 22. Whitehall & Saucon argue that HUD "ignored" this Handbook. Opp., p. 10. On its face, this section is not relevant to mortgagors and does not impart any obligations on HUD, much less provide Whitehall & Saucon with the right to bid on their own defaulted Notes.[8] No matter their efforts, Whitehall & Saucon cannot show a waiver of sovereign immunity for this action. Their claims should not proceed any further.

## II. Whitehall & Saucon do not have standing to bring this action.

Whitehall & Saucon fail to identify any statute, regulation, or other legally enforceable agreement that establishes a cognizable injury or property interest they have in who holds the Notes, or in HUD's sale and assignment of the Notes. *See* HUD Mem., p. 7-12. Instead, Whitehall & Saucon rely on speculative and conclusory theories that are insufficient to show standing. For example, they allege some undefined loss of statutory and contractual rights secured by the Regulatory Agreements. Opp., p. 16. But they do not identify any "contractual rights secured by the Regulatory Agreements," failing to cite any provisions of the Regulatory Agreements themselves. *Id*. Indeed, no such provisions exist. *See* ECF No. 61-1, RA.

---

[8] Nor does HUD Handbook 4350.1, REV-1, Ch. 8, § 8-3 (1996) support this premise. *See* Opp., p. 26. This chapter has nothing to do with HUD and deals with enforcement of mortgagor requirements.

7

Next, they claim injury arising from unquantified loss of equity caused by HUD's sale of the Notes without their opportunity to bid, resulting in a new mortgagee that seeks to collect on the delinquent Notes it purchased. Opp., p. 16. But their equity was already diminished by virtue of their admitted default on their Notes since 2021. *Id.* The sale of the Notes did not confer any loss of equity *to Whitehall & Saucon*—they owe the same money to Windstream that was owed to HUD.

Finally, Whitehall & Saucon argue injury in the form of imminent foreclosure and clouded title. Opp., p. 16. But a "clouded title" existed from the moment the loan encumbrances were obtained against the properties, dating back to 2012, well before the Notes sale. The same applies to Whitehall & Saucon's alleged imminent risk of foreclosure, which has existed since the moment they first defaulted on their Notes, in 2021. Opp., p. 25-26; RA, p. 5, ¶ 22; ECF No. 61-3, p. 3, 6. There was no greater risk of foreclosure after the Notes sale than before it. *Id.* The transfer of the defaulted Notes from HUD to another mortgagee did nothing to change or affect this.[9] HUD Mem., p. 23, 26; Opp., p. 26-27.

"[A] plaintiff may not establish injury for standing purposes based on a 'self-inflicted' injury." *NRDC v. U.S. FDA*, 710 F.3d 71, 85 (2d Cir. 2013). Here, the alleged threat of foreclosure or financial stress "is self-inflicted so as to defeat the causation necessary to establish standing." *Id.* Whitehall & Saucon freely entered a contractual relationship that obligated them to make payments in a timely manner

---

[9] Whitehall & Saucon's citations to foreclosure cases are unavailing because HUD did not foreclose on the properties. *See* Opp., p. 16-17.

8

as consideration for their loans. RA, p. 1; ECF No. 61-2, 61-3. Any risk of foreclosure is solely attributable to their default on their contractual obligations, a risk that is made clear in the Notes. *Cf. Howe v. U.S. Bank Nat'l Assoc.,* 440 F. Supp. 3d 99, 104 (D. Mass. 2020) ("[A]lthough a foreclosure sale will no doubt represent a serious disruption to [Mortgagor], he has failed to make any payments on his mortgage … rendering disingenuous any claims of harm or appeals to public policy.").

Because Whitehall & Saucon have failed to allege a concrete injury from the sale of their Notes or the termination of the Regulatory Agreements, *see* HUD Mem., p. 3, 18, 19, 23, 27, 28, Whitehall & Saucon lack standing[10] and their claims should be dismissed on this basis.

**III. Whitehall & Saucon fail to state a viable claim for relief.**

In addressing HUD's motion pursuant to Rule 12(b)(6), the Court should not assume that Whitehall & Saucon "can prove facts which [they have] not alleged, or that the defendants have violated … laws in ways that have not been alleged." *Assoc. Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters,* 459 U.S. 519, 526 (1983). Fundamentally, Whitehall & Saucon's arguments are based on facts they have not alleged or legal theories that are incorrect.

A. *HUD's actions were not arbitrary or capricious.*

As discussed above, through the "notwithstanding" clause of Section 1715z-

---

[10] No standing exists if the alleged injury is lack of notice and comment rulemaking. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right in vacuo—is insufficient to create Article III standing.").

9

11a, Congress granted HUD unfettered authority to determine the terms and conditions under which it may dispose of multifamily mortgages like the Notes. HUD Mem., p. 9-12; *Cisneros v. Alpine Ridge,* 508 U.S. 10, 18 (1993) ("[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section."). Whitehall & Saucon cite no authority to the contrary. Indeed, the citations they rely upon have nothing to do with HUD's discretion to dispose of multifamily mortgages under the statute. Opp., p. 7-10, 16-18. To allow Whitehall & Saucon to proceed in this action requires the Court to ignore the "notwithstanding" clause. There is no basis for the Court to do so.

But even if the Court determines that this clause does not preclude judicial review, Whitehall & Saucon have failed to plausibly plead that HUD acted arbitrarily and capriciously under deferential APA review. Agency action is only "arbitrary and capricious if the agency has ... offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983). Nothing in their opposition meets this exacting standard.

To begin, Whitehall & Saucon state that HUD's exclusion of them from the Notes sale was done without "any consistent rule." Opp., p. 21. But the rule is stated in Section 5.6(B) of Part III of the Section 232 Handbook: "[a]mong other things, it is noted that to become a Qualified Bidder, a party *must not be in default*

10

*on any FHA-insured or HUD-held loans and must not be in violation of any regulatory or business agreements on any projects insured by HUD*. Borrowers with a performing loan(s) may bid on other loan(s) provided they are a Qualified Bidder but they cannot bid on their own loans in a sale." (emphasis added). *Available at* https://www.hud.gov/sites/documents/42321s3c5hsgh.pdf (last accessed August 4, 2025). Thus, there can be no dispute that HUD precludes *all* similarly situated defaulting mortgagors from participating in the auction sales of their delinquent mortgage notes. 66 Fed. Reg. 35846 (July 9, 2001); HUD Mem., p. 23-24.

By doing so, HUD prevents defaulting mortgagors from enjoying a financial coup by purchasing their delinquent debt at a discount. 66 Fed. Reg. 35846 (July 9, 2001) (addressing comment that rule deprives mortgagors of a constitutional property interest and responding, "A mortgagor is obligated for the amount of the debt and can pay off the outstanding debt prior to a foreclosure sale. The rule simply prevents a defaulting mortgagor from deriving an unfair benefit by acquiring the underlying property for less than the debt amount or with less restrictive loan conditions."). But Whitehall & Saucon suggest that they should be allowed to reap a benefit from their own defaulted obligations by buying them back at a discount. If anything, their position only further demonstrates the reasonableness of HUD's actions to preclude them from doing so.

In a final effort, Whitehall & Saucon submit that HUD was obligated to allow them to bid in order to "maximize financial recovery" on the defaulted Notes. Opp., 7, 10. In other words, Whitehall & Saucon suggest that, despite not having the funds to

11

pay their debts to begin with, they should have been allowed to participate in the Notes sale because they had an interest in bidding, and therefore paying, more money to buy their Notes back than Windstream paid to win the auction. Beyond the absurdity of this self-serving speculation, HUD has no obligation to "maximize financial recovery" for a mortgage disposition. *See* 12 U.S.C. § 1715z-11a. This is especially true where HUD has other considerations it must balance—such as protecting a defaulting debtor from receiving an unfair financial windfall. *See Russell v. Landrieu*, 621 F.2d 1037, 1041-42 (9th Cir. 1980).

B. *Whitehall & Saucon are not entitled to notice and comment.*

Whitehall & Saucon do not meaningfully dispute that 12 U.S.C. § 1715z-11a(a) supersedes the APA's notice and comment provision. Opp., p. 7-10. Therefore, even if they were entitled to notice and comment, which they were not, no judicial review is possible under this provision. *See* HUD Mem., p. 4 n. 5, 8-12; *Jewish Ctr. for Aged v. HUD*, No. 04-CV-750, 2007 WL 2121691, at *5 (E.D. Mo. July 24, 2007) (finding § 1715z-11a(a) left HUD immune from APA review, as "APA's waiver would run afoul of the 'notwithstanding' clause found in § 1715z-11a(a)(1) [sic] that supersedes any other statute that hinders or impedes its objectives").

C. *Whitehall & Saucon have no constitutional claim or injury.*

Whitehall & Saucon have no equal protection claim. The only group similarly situated to Whitehall & Saucon are other defaulting mortgagors, who they acknowledge are uniformly precluded from bidding on their defaulted mortgage notes. Opp., p. 26; Notice, p. 2, 3. Whitehall & Saucon cannot demonstrate that they

were not "treated alike, under like circumstances and conditions" as their fellow defaulting mortgagors. *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 602 (2008); *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

Nevertheless, Whitehall & Saucon assert, for the very first time, that they are a "class of one" that were "treated differently than other similarly situated mortgagors, including certain favored entities that HUD allowed to participate in bidding." Opp., p. 20, 27. This is the exact type of bare "labels and conclusions" and such "a formulaic recitation of the elements of a cause of action" that cannot suffice to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nothing in the Amended Third-Party Complaint specifically identifies *any* "favored entities that HUD allowed to participate in bidding." Opp., p. 20. And, in *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006), the Third Circuit upheld dismissal of an equal protection claim that failed to sufficiently allege the existence of similarly situated entities that were treated differently. This Court should do the same.

Nor do Whitehall & Saucon have a due process claim. Whitehall & Saucon have failed to identify a legally cognizable right or property interest in the Notes sale, the bid process, or the Regulatory Agreements that they were specifically deprived of, let alone any procedure that was itself constitutionally inadequate. Opp., p. 17, 20, 27-29; *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976); HUD Mem., p. 20-24, 28, 29.

Whitehall & Saucon's overarching theme on this point is that the Regulatory Agreements "impose ongoing obligations that are enforceable *and not left to HUD's*

13

*complete discretion.*" Opp., p. 18 (emphasis added). Whitehall & Saucon cite no provision of the Regulatory Agreements or any statute, regulation, or case to support their assertion that the Regulatory Agreements impose nondiscretionary obligations onto HUD. While they suggest that HUD was obligated to maintain the Notes so they could benefit from HUD's "forbearance, partial payment of claims, or use of reserve funds," Opp., p. 18, they do not contend that HUD was mandated to take any of these steps. They also hint at an undefined right to access "reserve funds, mortgage servicing, and default resolution," while ultimately conceding that use of reserve funds[11] was solely in HUD's discretion. Opp., p. 3; RA, p. 1, ¶ 2. HUD's exercise of its discretion does not create a property interest for Whitehall & Saucon or *in* Whitehall & Saucon, despite their insinuations to the contrary. *Id.* There is nothing to support these positions. If there had been, Whitehall & Saucon certainly should have cited it.[12]

### IV. There is no basis for indemnification or contribution.

Whitehall & Saucon point to Fed. R. Civ. P. 14 as a basis to avoid dismissal of their claims for indemnity and contribution. Opp., p. 28. In doing so, they reference *In re One Meridian Plaza Fire Litig.*, 820 F. Supp. 1492, 1496 (E.D. Pa. 1993). But this

---

[11] Reserve funds are intended for capital improvements. RA, p. 1, ¶ 2. Any cessation of their application, especially after Whitehall & Saucon's continued failure to make payments, was at HUD's discretion to avoid the complete depletion of reserve funds. *Id.* There is no basis for judicial review of this decision, whether through the APA or any other authority.

[12] Whitehall & Saucon's reliance on 24 C.F.R. § 207.258 is futile on this point. *See* Opp., p. 26. This section addresses insurance claims filed by Lenders.

case supports HUD's arguments. There, the Court recognized that "indemnity is available from those who are primarily liable to those who are merely secondarily or vicariously liable." *Id.* at 1495. To determine who is primarily liable and who is secondarily liable, courts focus on which party is active, and "indemnity is not available if the indemnitee is actively negligent." *Id.* at 1496. Here, Whitehall & Saucon concede that their long-standing default started the sequence of events that they now lament. Opp., p. 26-27. They have not made any legitimate efforts to repay their delinquent debts for years, despite purporting to have funds to bid on their Notes at auction. This is quintessential active negligence by the indemnitees.

Lastly, Whitehall & Saucon contend that Pennsylvania contribution law is not limited to negligence claims and does not depend on a contractual relationship, citing *Svetz v. Land Tool Co.*, 513 A.2d 403, 407–08 (Pa. Super. Ct. 1986). Opp., p. 30. *Svetz* does nothing to sidestep the FTCA or otherwise waive HUD's sovereign immunity for claims of monetary damages. Plus, if Whitehall & Saucon have not presented a tort claim like they say they have not, then *Svetz* is of little use at all. *Svetz* devotes much of its analysis to contribution among "joint tortfeasors", *i.e.* "two or more persons jointly or severally liable *in tort* for the same injury to persons or property…" *Id.* at 238-39 (emphasis added). If there is no tort, there can be no joint tortfeasors.

## CONCLUSION

For the foregoing reasons and those stated in HUD's Motion to Dismiss, HUD respectively requests that the Court grant HUD's motion and dismiss this action as pled against HUD in its entirety.

15

Dated: August 4, 2025                    Respectfully submitted,

DAVID METCALF
United States Attorney

/s/ *Susan R. Becker/gbd*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

*/s/ Frank A. DeLuccia*
ERIN E. LINDGREN
FRANK A. DE LUCCIA
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 861-8564 (EEL) / 8553 (FAD)
Email: Erin.Lindgren@usdoj.gov
Email: Frank.DeLuccia@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that, on this date, I filed HUD's foregoing Reply Memorandum through the Court's Case Management/Electronic Case Filing System, thereby making it available for download by all counsel of record.

                                                                      */s/ Frank A. DeLuccia*
                                                                       FRANK A. DE LUCCIA
                                                                       Assistant United States Attorney

Date: August 4, 2025