## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEHIGH VALLEY 1 LLC, successor by** | : | |
| **assignment to WINDSTREAM CAPITAL** | : | |
| **LLC, successor by assignment to the** | : | **CIVIL ACTION** |
| **UNITED STATES SECRETARY OF** | : | |
| **HOUSING AND URBAN DEVELOPMENT,** | : | |
| **successor by assignment to M&T REALTY** | : | |
| **CAPITAL CORPORATION** | : | **NO.  24-2627** |
| | : | |
| **v.** | : | |
| | : | |
| **WHITEHALL FIDUCIARY LLC, as** | : | |
| **TRUSTEE OF WHITEHALL TRUST U/T/A** | : | |
| **DATED AUGUST 1, 2027** | : | |

| | | |
|---|---|---|
| **LEHIGH VALLEY 1, LLC, successor by** | : | |
| **assignment to WINDSTREAM CAPITAL** | : | |
| **LLC, successor by assignment to the** | : | **CIVIL ACTION** |
| **UNITED STATES SECRETARY OF** | : | |
| **HOUSING AND URBAN DEVELOPMENT,** | : | |
| **successor by assignment to M&T REALTY** | : | **NO. 24-2709** |
| **CAPITAL CORPORATION** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SAUCON TRUST, U/T/A DATED** | : | |
| **OCTOBER 1, 2007** | : | |

## <u>MEMORANDUM OPINION</u>

**Henry, J.**                                                                **August 13, 2025**

The instant matter involves two mortgage foreclosure actions brought by Plaintiff, Lehigh

Valley 1 LLC ("Lehigh"), against Defendant, Whitehall Fiduciary LLC ("Whitehall"), and

Defendant, Saucon Trust ("Saucon"). Both mortgages are virtually identical aside from the

amounts of the loans, and the action against Whitehall and the action against Saucon are identical

mortgage foreclosure actions. Therefore, these matters were consolidated. In both cases,

Defendants filed virtually identical Answers with New Matter and Counterclaims to Lehigh's

Amended Complaint. In response to Defendants' Answers, Lehigh filed motions seeking to dismiss Defendants' counterclaims and strike Defendants' affirmative defenses. For reasons that will be discussed more fully below, Lehigh's motions to dismiss will be granted and its motions to strike will be granted in part and denied in part.

## I.   **BACKGROUND**

On January 26, 2012, M&T Realty Capital Corporation ("M&T") provided a loan to Defendant Whitehall in the amount of $15,788,700 secured by a mortgage on real property located at 1177 6th Street, Whitehall, PA. Docket No. 7, Am. Compl., ¶ 15, (24-2627). On December 1, 2012, M&T provided a loan to Defendant Saucon in the amount of $19,462,800 secured by a mortgage on real property located at 1050 Main Street, Unit #1, Hellertown, PA. Docket No. 9, Am. Compl., ¶ 11 (24-2790). Both the Whitehall property and the Hellertown property house senior living facilities and both loans are secured by a mortgage and a note.

Both notes and mortgages were assigned by M&T to the United States Secretary of Housing and Urban Development ("HUD") effective November 16, 2022. HUD then assigned both notes and mortgages to Windstream Capital on September 20, 2023, and Windstream Capital assigned both notes and mortgages to Lehigh on May 15, 2024. Am. Compls., Exs. D-I.

There is no real dispute that Whitehall and Saucon are in default, as both entities have failed to make their required monthly debt payments since at least February of 2021. On May 2, 2025, upon motion by Lehigh, I appointed a Receiver in these matters to manage Defendants' properties during the pendency of these mortgage foreclosure actions.

Defendants answered Lehigh's Amended Complaints in both cases and responded with 3 counterclaims (wrongful foreclosure, unjust enrichment, and negligent misrepresentation), as well as 34 affirmative defenses. Lehigh filed Motions to Dismiss the Counterclaims and to Strike

the Affirmative Defenses. Defendants opposed the motions, which are now fully briefed and ready for decision. As I will discuss more fully below, Lehigh's motion will be granted in part and denied in part.

## II.    LEGAL STANDARD

Motions to dismiss are governed by Federal Rule of Civil Procedure 12(b)(6).  If a plaintiff fails to state a claim upon which relief can be granted, the court may dismiss the action. Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss . . . Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice."  *Id.* at 678-79.  A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

In *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016), the Third Circuit instructed district courts to apply a three-step analysis to 12(b)(6) motions: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 675, 679). *See Burch*, 662 F.3d at 221;

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

Rule 12(f) permits the Court to strike "insufficient defense[s]" that fail to meet the pleading requirements of Rules 8 and 9. An affirmative defense must be pled with enough specificity to give the plaintiff fair notice of the defense that is being advanced. *Klaus v. Jonestown Bank & Tr. Co.*, 2014 WL 1024591, *1 (M.D. Pa. Mar. 14, 2014).

## III.    <u>ANALYSIS</u>

Lehigh sets forth multiple reasons why it believes Defendants' counterclaims and affirmative defenses must fail as a matter of law. Specifically, Lehigh claims that (1) Defendants lack standing to challenge the loan assignments; (2) Pennsylvania does not recognize a cause of action for wrongful foreclosure; (3) the existence of contracts bars Defendants' unjust enrichment claim; (4) the gist of the action doctrine precludes Defendants' negligent misrepresentation claim; and (5) Defendants' affirmative defenses fail to meet basic pleading requirements. I will discuss each argument below.

### A.    <u>Standing</u>

In their opposition to Lehigh's Motion to Dismiss, Defendants first argue that Lehigh has no standing to assert a claim in this matter because it lacks valid assignments. Specifically, Defendants argue that the "assignments from HUD to Windstream and, subsequently from Windstream to [Lehigh] are both invalid," as the assignment from HUD to Windstream allegedly failed to meet bidder qualification requirements and the assignment from Windstream to Lehigh allegedly failed to meet the necessary licensure requirements. Defs' Memo of Law in Opp. to Plaintiff's Motion, Docket No. 46, pp. 9-10. Defendants argue that Lehigh's "entire claim rests on an invalid foundation and should be dismissed outright" because of the alleged problems with

the assignments. *Id*. at p. 11. In response, Lehigh argues that it is Defendants who lack standing to challenge the validity of the loan assignments, and therefore, their challenges to Lehigh's standing based upon the alleged invalidity of the assignments cannot be maintained.

Constitutional standing requires a party to show an injury-in-fact by alleging the "invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Finkelman v. NFL*, 877 F.3d 504, 510 (3d Cir. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016)). Lehigh argues that "Pennsylvania courts have consistently held that borrowers lack standing to challenge loan assignments between loan lenders, unless the borrower demonstrates the assignment was void at its inception <u>and</u> that borrower will suffer injury in fact." (Pl's MOL, p. 8) (emphasis in original). Accordingly, I will examine whether the assignments in question are alleged to be void and whether Defendants will suffer an injury in fact.

### 1. Are the Assignments Allegedly Void?

As multiple courts have recognized, a property owner may challenge the validity of a mortgage assignment if it claims that the alleged assignment was void (rather than voidable) and thus the assignee never took title. *U.S. Bank Nat'l Ass'n as Tr. to Bank of Am., Nat'l Ass'n v. Gerber*, 2019 WL 1299464, at *6 (M.D. Pa. Mar. 21, 2019) (citing *Reinagel v. Deutsche Bank Nat'l Tr. Co.*, 735 F.3d 220, 224-25 & n.8 (5th Cir. 2013)); *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 361 (6th Cir. 2013); *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 290-91 (1st Cir. 2013); *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 255-56 (6th Cir. 2014). Defendants argue that since Lehigh allegedly failed to meet specific HUD requirements regarding the assignments, the assignments are void, and Defendants therefore have standing to challenge them. However, Defendants have failed to allege any issue with the

assignments that would render them void and not merely voidable. If Defendants had pled that the assignments were made under duress or coercion, or if they were given without full knowledge of their contents, they may have alleged that the assignments were void. See *Glazer v. Dept. of Hospitals of City of N.Y.*, 155 N.Y.S.2d 414, 417 (N.Y.Sup.Ct. 1956). However, as Defendants have not argued or alleged that any of the assignments were entered into with duress, coercion or without full knowledge of the contents, there is no basis for the assignments to be void. Mere technical deficiencies in the assignments, which is what Defendants are alleging, would result in voidable assignments, not void assignments.

### 2.    Will Defendants Suffer an Injury-in-Fact?

Next, I will examine whether Defendants can show an injury-in-fact that would result in standing to challenge the validity of the assignments. As discussed previously, M&T was the holder of the original note and mortgage for both of Defendants' properties, and M&T assigned all notes and mortgages to HUD.[1] HUD assigned both notes and mortgages to Windstream Capital and Windstream Capital assigned both notes and mortgages to Lehigh. Defendants were not parties to nor involved in these assignments in any way and the assignments had no effect on them, other than changing the entity to whom Defendants' mortgage payments were owed. Therefore, I must determine whether, as a third party to the assignments, Defendants have the requisite injury-in-fact to assert that Lehigh cannot enforce the mortgages due to alleged improprieties with the assignments.

The case of *In re Walker* is illustrative of how courts have addressed a borrower's standing to challenge an assignment to which the borrower is not a party. In *Walker*, the Bankruptcy Court in this District analyzed the right of a mortgagee to assert a bankruptcy claim

---

[1] Defendants make no argument as to the validity of the assignment from M&T to HUD.

against a debtor when the debtor asserted a defect in the mortgagee's right to enforce a note that was secured by the mortgage. 466 B.R. 271, 279 (Bankr. E.D. Pa. 2012). The loan in *Walker* was transferred into a trust pursuant to a pooling and servicing agreement ("PSA"), and an assignment of the mortgage was executed transferring the mortgage to the trustee for the trust. *Id*. at 276. The debtor in *Walker* argued that she was not obligated to make payments to the trust under the note due to violations of the PSA, and the Court found that the debtor lacked standing to assert that the trustee could not enforce the note due to an alleged failure to comply with the PSA. *Id*. at 278, 285. Specifically, the Court stated "[i]f a borrower cannot demonstrate potential injury from the enforcement of the note and mortgage by a party acting under a defective assignment, the borrower lacks standing to raise the issue." *Id*. at 285-86 (citing *Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 717 F.Supp.2d 724, 737 (E.D. Mich. 2010)). Although *Walker* dealt with alleged issues in complying with a PSA rather than an assignment, it did establish a broad principle regarding a borrower's lack of standing to challenge an agreement to which he or she was not a party. Thereafter, other courts found that a borrower does not have standing to sue for an alleged illegal or defective assignment of their mortgage. *Purpura v. JP Morgan Chase*, 2018 WL 1837952, at *6 (D.N.J. Apr. 28, 2018); *Souders v. Bank of America*, 2012 WL 7009007, at *11 (M.D. Pa. Dec. 6, 2012), *report and recommendation adopted*, 2013 WL 451863 (M.D. Pa. Feb. 6, 2013).

Similarly, in the instant matter, Defendants lack standing to challenge the validity of the assignments from HUD to Windstream and Windstream to Lehigh because Defendants are not parties to the assignment and therefore cannot demonstrate potential injury. A borrower has no standing to challenge the validity of assignments, because "the only interest or right which an obligor or a claim has in the instrument of assignment is to insure him or herself that he or she

will not have to pay the same claim twice." *Souders*, 2012 WL 7009007 at *11, citing 6A C.J.S. Assignments § 132; see also *Livonia Property Holdings,* 717 F.Supp.2d at 735-37 (holding that a "[b]orrower may not challenge the validity of assignments to which it was not a party or third-party beneficiary, where it has not been prejudiced, and the parties to the assignment do not dispute (and in fact affirm) their validity."); *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (finding that borrowers have no standing to allege a defect in the assignment of their mortgage); *Perez v. JP Morgan Chase Bank, N.A.*, 2016 WL 816752, at *3 (D.N.J. Feb. 29, 2016) ("[C]ourts in the Third Circuit have repeatedly held mortgagors lack standing to contest the assignment of their mortgages."); *Bauer v. Mortgage Electronic Registration Systems, Inc., et al*, 618 Fed. Appx. 147, 149 (3d Cir. July 17, 2015) (finding that a borrower did not suffer a "concrete injury" when there was no allegation that he was required to pay his loan twice).

There is no dispute that Defendants are neither parties to nor third-party beneficiaries to any of the relevant assignments. As a non-party to the assignments, Defendants have no injury-in-fact and therefore lack standing to attack them. Defendants cannot "raise a challenge to a contract in which it was not a party and out of which it retained no rights, even if the challenge is based on a right that a party to the contract *could* raise." *Ifert v. Miller*, 138 B.R. 159, 165-66 (Bankr. E.D. Pa. Apr. 27, 1992) (applying Texas law). In addition, as further evidence of Defendants' lack of injury, Defendants do not allege that they paid any more money on their loans than the amounts due, that they are in danger of having to make duplicate loan payments, or that any entity other than Lehigh has demanded loan payments from Defendants. Only the parties to the actual assignments (HUD, Windstream, or Plaintiff herein) have the contractual right to enforce the provisions of the assignments that Defendants claim have been violated. As

8

the only interest Defendants have in the assignments is to be certain that they "will not have to pay the same claim twice," *Souders*, 2012 WL 7009007 at *11, Defendants suffer no injury-in-fact and have no standing to contest the validity of the assignments. Accordingly, Defendants' argument that the assignments are invalid must fail, and with it, Defendants' argument that Lehigh has no standing, as that claim is based upon the alleged invalidity of the assignments, which Defendants cannot contest.

### B.    Wrongful Foreclosure

Next, Plaintiff argues that Pennsylvania does not recognize a claim for wrongful foreclosure and therefore, this counterclaim must be dismissed. Defendants counter that Pennsylvania courts have recognized the validity of wrongful foreclosure as a cause of action. In support of its argument that Pennsylvania does **not** recognize a cause of action for wrongful foreclosure, Lehigh cites to *Kelly v. Wells Fargo Bank, N.A.*, 2014 WL 3394737, *6 n. 7 (M.D. Pa. May 21, 2014). However, in *Kelly*, the Court found that Plaintiff's wrongful foreclosure claim was barred by the gist of the action doctrine and did "not address the merits of any such claim including whether Pennsylvania even recognizes such a claim." *Id.* So although *Kelly* did dismiss Plaintiff's wrongful foreclosure claim, the Court did not do so because no such cause of action exists in Pennsylvania. The Court questioned the existence of such a cause of action, but did not explicitly answer that ultimate question. *Id.* Lehigh also cites to *Vassallo v. Bank of N.Y.*, 2016 WL 1394436, *5, which expressly states that "[i]n New Jersey, 'wrongful foreclosure' is not a recognized cause of action.'" (D.N.J. Apr. 8, 2016). Although *Vassallo* is persuasive, it is certainly not binding precedent to prove the validity of wrongful foreclosure in Pennsylvania, as it is not a Pennsylvania case.

In support of their argument that wrongful foreclosure **is** a valid cause of action in Pennsylvania, Defendants cite to *Lewis v. CitiMortgage, Inc.*, 2018 WL 10847497, *1 n.1 (E.D. Pa. Jan. 17, 2018). In *Lewis*, the Honorable Gerald J. Pappert of this Court granted a motion to dismiss filed by Defendant CitiMortgage in a case brought by the Lewises, *pro se*, that "seem[ed] to be asserting claims for fraud and wrongful foreclosure." *Lewis*, 2018 WL 10847497, at *1 n.1. However, upon reading *Lewis* in its entirety, it is clear that Judge Pappert dismissed the case because Plaintiffs' claims were barred by *res judicata*; he did not reach the merits of their wrongful foreclosure claim. *Id.* Defendants here rely upon Judge Pappert's statement that plaintiffs' "claims for wrongful foreclosure and fraud could have been litigated in the foreclosure action," as support for their argument that Pennsylvania permits such a cause of action to proceed. However, that statement was merely an observation and did not analyze or endorse a wrongful foreclosure claim. Defendants also rely upon *Mancine v. Concord-Liberty Sav. & Loan Ass'n,* 445 A.2d 744 (Pa. Super. Ct. 1982) in support of its argument in favor of wrongful foreclosure, but their reliance on this case is misplaced. *Mancine* dealt with a judgment confessed against a deceased person and stated "[t]his was, therefore, a wrongful foreclosure." 445 A.2d at 749. *Mancine* did not analyze or endorse a claim for wrongful foreclosure, it merely used the phrase "wrongful foreclosure" descriptively, not as a cause of action.

Neither Lehigh nor Defendants have provided the Court with a case that definitively states whether Pennsylvania recognizes a cause of action for wrongful foreclosure, nor could I locate any such case. However, the existence of such a claim has been questioned by Pennsylvania courts several times, and the complete lack of cases recognizing and/or analyzing wrongful foreclosure as a cause of action in Pennsylvania cannot be ignored. However, I do not need to reach a conclusion as to the validity of that cause of action in Pennsylvania, as

Defendants' counterclaim for wrongful foreclosure must fail for another reason: it goes well beyond the limited scope of a mortgage foreclosure proceeding as discussed below.

"Counterclaims in a mortgage foreclosure action are only permissible if they arise from the same transaction from which the plaintiff's cause of action arose." *Green Tree Consumer Disc. Co. v. Newton,* 909 A.2d 811, 814 (Pa. Super. Ct. 2006); Pa R.C.P. 1148. An action in mortgage foreclosure is strictly an *in rem* proceeding, and the purpose of a mortgage foreclosure is solely to affect a judicial sale of the mortgaged property. *US Bank Nat'l Ass'n v. Applegate*, 2016 WL 5417949, at *9 (Pa. Super. Ct. Aug. 10, 2016). In a mortgage foreclosure action, "only those counterclaims are permitted that are part of or incident to the creation of the mortgage relationship itself." *Cunningham v. McWilliams*, 714 A.2d 1054, 1057 (Pa.Super.Ct.1998). Counterclaims or defenses which seek to rescind the mortgage agreement may be raised as part of the mortgage foreclosure action. *Green Tree,* 909 A.2d at 812; *Rauso v. Fein*, 2015 WL 2217411, at *8 (E.D. Pa. May 12, 2015), aff'd (3d Cir. 15-3261) (Feb. 29, 2016). As such, the Pennsylvania Superior Court has held that a wide variety of setoffs and counterclaims are consequently impermissible in a mortgage foreclosure proceeding. See *Overly v. Kass*, 554 A.2d 970, 973-74 (1989) (precluding defendants from seeking a set-off for misrepresentations about the condition of the property); *Chrysler First Business Credit Corp. v. Gourniak*, 601 A.2d 338, 342 (1992) (precluding defenses relating to misrepresentation in the inducement to purchase the property); *Gottchalk v. DeAngelis*, 23 Pa. D. & C.3d 334 (Monroe Cty. 1982) (precluding a mortgagor from asserting as a defense or counterclaim in a foreclosure action that the mortgagee had encroached on his property, where he had failed to show that such encroachment was related to the creation of the mortgage or its renegotiation). "Any defense must go to the existence and

validity of the mortgage." *First Federal Savings & Loan Association of Erie v. McAfee*, 15 Pa. D. & C.3d 287, 288 (Erie Cty. 1980).

A review of Defendants' counterclaim for wrongful foreclosure in this matter shows that it goes well beyond the scope of the mortgage foreclosure action. Defendants challenge the validity of the assignments from HUD to Windstream and Windstream to Lehigh. Specifically, Defendants claim that the "assignments were made in violation of HUD regulations . . ." and that Lehigh "failed to comply with HUD guidelines." Defs' Counterclaim, Docket No. 37, ¶¶ 5-6. Defendants' counterclaims for wrongful foreclosure relate solely to the sale and assignment of the mortgages. There are no allegations in Defendants' counterclaim that question the existence or validity of the underlying mortgage, which is the only issue that can be raised as a counterclaim in a mortgage foreclosure action. Accordingly, Lehigh's motion to dismiss the counterclaim for wrongful foreclosure will be granted.[2]

### C.    Unjust Enrichment

Next, Lehigh seeks to dismiss Defendants' counterclaim for unjust enrichment. It is well settled that unjust enrichment is "inapplicable when the relationship between the parties is founded on a written agreement or express contract," and "[w]here an express contract governs the relationship of the parties, a party's recovery is limited to the measure provided in the express contract." *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987). The parties' relationship here is clearly founded on contract, as the notes and the mortgages for the properties are all valid and unquestionably set forth the terms by which the parties are to be governed. See *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F.Supp.2d 504, 516 (E.D. Pa. July 17, 2012). Therefore, this counterclaim must also be dismissed.

---

[2] Defendants' counterclaims for unjust enrichment and negligent misrepresentation go well beyond the issue of the formation of the mortgage contract and could also be dismissed on this basis as well.

### D.    Negligent Misrepresentation

Lehigh also seeks dismissal of Defendants' negligent misrepresentation counterclaim. However, the gist of the action doctrine bars tort claims (such as negligent misrepresentation) that are essentially duplicate breach of contract claims. *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014). "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. 1992) (citing *Iron Mountain Sec. Storage Corp. v. American Specialty Foods, Inc.*, 457 F.Supp. 1158, 1165 (E.D. Pa., 1978)).

In the instant matter, Defendants argue that their negligent misrepresentation counterclaim is "not rooted in a breach of contract," and therefore, the gist of the action theory does not apply. Defs' Memo of Law in Opp. to Pl's Mtn, Docket No. 46, p. 14. Defendants' counterclaim for negligent misrepresentation is based on alleged misrepresentations regarding Lehigh's "qualification in securing the mortgage and note at a shockingly low value," *id.,* and Lehigh's alleged misrepresentations regarding its "compliance with HUD regulations." Defs' Counterclaim, Docket No. 37, ¶ 16. Despite Defendants' insistence to the contrary, this is precisely the type of claim that is barred by the gist of the action doctrine, as it arises from the parties' contractual relationship and not some independent social duty. Accordingly, Lehigh's motion to dismiss Defendants' negligent misrepresentation counterclaim will be granted.

### F.    Motion to Strike Affirmative Defenses

Lastly, Lehigh seeks to strike all of Defendants' 34 affirmative defenses under Federal Rule of Civil Procedure 12(f), which allows me to "strike from a pleading an insufficient defense of any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). An

affirmative defense must only alert the opposing party that "the issue exists, not precisely how the issue is implicated under the facts of a given case ...." *All. Indus. Ltd. v. A-1 Specialized Servs. & Supplies, Inc.*, 2014 WL 4548474, at *2 (E.D. Pa. Sept. 11, 2014) (citing *Tyco Fire Products LP v. Victaulic Co.*, 777 F.Supp.2d 893, 901 (E.D. Pa., Apr. 12, 2011)). I may strike allegations that are "nothing but bare bones, conclusory allegations that do not include a short and plain statement of the facts." *Klaus v. Jonestown Bank and Trust Co.*, 2014 WL 1024591, *1 (M.D. Pa. Mar. 14, 2014).

Upon review of Defendants' 34 Affirmative Defenses, I will grant Lehigh's motion to strike in part and deny it in part. Lehigh's motion is granted as to affirmative defenses 7 and 8, as well as 10 through 16 [3], as those affirmative defenses merely state, "Plaintiff's claim is barred in whole or in part by…" and then set forth various legal theories (e.g., the doctrine of unclean hands, the doctrine of fraud, etc.) These affirmative defenses amount to conclusory statements that provide no factual basis whatsoever for asserting them and fail to articulate any of the legal elements that support them, which is insufficient. Therefore, affirmative defenses 7, 8, 10, 11, 12, 13, 14, 15 and 16 are stricken with leave to amend. In addition, affirmative defenses 31, 32 and 34 are also stricken with leave to amend, as they too are impermissibly vague (e.g., "the alleged default was caused wholly by an Act of God.")

Further, as discussed above, Defendants lack standing to challenge the assignments in this matter from HUD to Windstream and Windstream to Lehigh. Accordingly, any affirmative defense challenging the propriety of the assignments must be stricken. As such, affirmative defenses 2, 19 and 20 are stricken from Defendants' pleading without leave to amend, as amendment would be futile.

---

[3] Defendants' pleading omitted a Ninth Affirmative Defense.

As to the remaining affirmative defenses, Lehigh's motion to strike is denied. Affirmative defenses 1, 3, 4, 5, 6, 17, 18, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 and 33 adequately put Lehigh on notice of the defenses that are being pled.

### III.  <u>**CONCLUSION**</u>

For all the reasons set forth above, I will grant Lehigh's Motion to Dismiss Defendants' Counterclaims and grant in part and deny in part Lehigh's Motion to Strike. An appropriate order follows.