**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LEHIGH VALLEY 1 LLC, successor by** | : | |
| **assignment to WINDSTREAM CAPITAL** | : | |
| **LLC, successor by assignment to the** | : | **CIVIL ACTION** |
| **UNITED STATES SECRETARY OF** | : | |
| **HOUSING AND URBAN DEVELOPMENT,** | : | |
| **successor by assignment to M&T REALTY** | : | |
| **CAPITAL CORPORATION** | : | **NO.  24-2627** |
| | : | |
| **v.** | : | |
| | : | |
| **WHITEHALL FIDUCIARY LLC, as** | : | |
| **TRUSTEE OF WHITEHALL TRUST U/T/A** | : | |
| **DATED AUGUST 1, 2007** | : | |

| | | |
|---|---|---|
| **LEHIGH VALLEY 1, LLC, successor by** | : | |
| **assignment to WINDSTREAM CAPITAL** | : | |
| **LLC, successor by assignment to the** | : | **CIVIL ACTION** |
| **UNITED STATES SECRETARY OF** | : | |
| **HOUSING AND URBAN DEVELOPMENT,** | : | |
| **successor by assignment to M&T REALTY** | : | **NO. 24-2709** |
| **CAPITAL CORPORATION** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SAUCON TRUST, U/T/A DATED** | : | |
| **OCTOBER 1, 2007** | : | |

<u>**RECEIVER'S FOURTH REPORT AND SUMMARY OF INVENTORY**</u>

COMES NOW Duane Morris LLP through Erin Duffy, Esq., Receiver ("Receiver") in the

above styled and numbered cause and, pursuant to the Order Appointing Receiver entered by the

Court on May 2, 2025 ("Receivership Order"), files this Fourth Report and Summary of Inventory.

**I.        RECEIVER'S FOURTH REPORT**

1.        Pursuant to the Receivership Order, Receiver submits to the Court this Fourth Report

for the senior living facilities owned by Whitehall Fiduciary LLC, as Trustee of Whitehall Trust

U/T/A Dated August 1, 2007 ("Whitehall") at 1177 6th Street, Whitehall, PA and Saucon Trust

U/T/A Dated October 1, 2007 ("Saucon") at 1050 Main Street, Unit # 1, Hellertown, PA

(collectively the "Properties"). This Fourth Report pertains to the Properties comprising the receivership as of October 2, 2025, and is more fully set forth on the attached **Exhibit "A"**, which is incorporated herein by reference.

2. I hereby declare that the information contained in this Fourth Report is true, accurate and complete, to the best of my knowledge and belief.

## II. SUMMARY OF INVENTORY

3. Pursuant to paragraph 6(t) of the Receivership Order, Receiver also files this Summary of Inventory for the Property, as set forth in **Exhibit A**. This Summary of Inventory reflects that Receiver has not, as of October 2, 2025, taken inventory of property. Receiver has interviewed and is in the process of engaging a more local representative, Mr. Gregory Harris with Harlyn Consulting, located in Allentown, Pennsylvania. Mr. Harris will serve as property manager and address inventory. Gregory Harris will provide these services at a reasonable rate of $295/hour. Receiver is having ongoing discussions on the appointment.

4. Receiver will supplement this Summary of Inventory once Receiver has taken a full inventory.

Dated:  October 2, 2025

Respectfully submitted,

By:  */s/ Erin Duffy*
Erin M. Duffy (PA 93924)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
Tel.: (215) 979-1000
Fax: (215) 979-1020
emduffy@duanemorris.com


*Receiver, Duane Morris LLP*

## EXHIBIT "A"

## RECEIVER'S FOURTH REPORT AND SUMMARY OF INVENTORY

### INTRODUCTION

Duane Morris through Erin Duffy, Esq. ("**Receiver**") was appointed as Receiver of two senior living facilities located at 1177 6th Street, Whitehall, PA ("**Whitehall Manor**") and 1050 Main Street, Unit # 1, Hellertown, PA ("**Saucon Manor**") ("**Properties**") following the entry of the Order Appointing Receiver entered on May 2, 2025. The following is a summary as of October 2, 2025.

### STATUS OF THE PROPERTIES

***Overview:*** The Whitehall facility is a personal care home and memory care facility. Saucon Manor is a personal care home and memory care facility. Receivers' attorneys physically inspected both properties on May 21, 2025, and on September 30, 2025. On September 30, 2025, both Properties were functional, though the Whitehall facility appeared to require additional maintenance. A representative for the Receiver accompanied counsel for the Plaintiffs, counsel for Defendants, and Plaintiff's inspectors at the September 30, 2025 inspection. Receiver's representative and accompanying parties were able to view all requested areas in the Whitehall facility. However, at the Saucon facility, all parties were initially denied entrance to several offices while the representative for the Receiver was present, and the remaining parties were subsequently granted access to certain offices after the representative for the Receiver's departure. Per inspection of the Whitehall facility, Pennsylvania Venture Capital, Inc. (property management for Defendants) has an office space at the Whitehall facility and has available to it employee and patient records, and records relating to Saucon Manor. This was evidenced by a room which, upon information and belief, is the office of Pennsylvania Venture Capital, Inc. and contained boxes labeled Saucon Valley Manor, labeled with patient records information, and labeled with employee information. At Whitehall, there was also an office identified as the office for Brookside Commercial Construction Company, Inc., though the parties did not enter that office.

***Appointment:*** Since the last report post-appointment ("**Appointment**") as Receiver, Receiver has issued nonparty subpoenas to tenants and operators, Whitehall Manor, Inc. and Saucon Valley Manor, Inc. ("Tenants"), made demands for rental payment, and received and reviewed documents from Defendants. Receiver has developed the impression from its review that the properties are neither generating income nor in possession of meaningful income, as they have not collected rent from Tenants since March 2021, and do not appear to have a stream of income otherwise. That said, Receiver is making efforts to obtain rental payments from occupants of the properties, including Tenants, per the Receivership Order. Receiver has thus far been unable to obtain any requested documents from Tenants and has not received any rental payments from Tenants.

***Rent Collection & Occupancy:*** Receiver has not collected any rents. In addition, Defendants have not turned over any rents collected prior to Appointment, or any rents collected

following Appointment. Defendants sent Receiver documents that reflect that Tenants have not paid rent since March of 2021, attached as **Exhibit 1**. Receiver on September 9, 2025, sent rental demand letters to Tenants and Defendants, attached as **Exhibit 2**. Tenants have not to date responded to Receiver's request for rent, despite Receiver sending a request for a response on September 18, 2025.

Receiver filed a Motion to Compel production of records to request the Court's intervention as to the lack of operating and property management documents. Per the Court's Order granting Receiver's Motion to Compel (ECF nos. 124 and 98), Defendants for the most part provided requested documentation, but stated that they were not in possession of documents relating to occupants (aside from Tenants) and Tenants' operations of the Properties. Defendants directed the Receiver to obtain such documents from Tenants. Receiver served upon Tenants a subpoena, requesting documents such as rent rolls for their sublessees/occupants and received solely objections, attached as **Exhibit 3**, and an offer to provide documents related to Tenants' rental payment history and a copy of the leases (neither of which Tenants have produced to date). Receiver met with counsel for Tenants on September 24, 2025 to meet and confer regarding subpoena objections, but was not able to come to a resolution regarding additional document production. It was clear that counsel for Tenants was stonewalling any efforts to receive the records sought.

*Make Ready Status/Marketing:* Receiver lacks information about vacancy, occupancy, and number of move-ins and move-outs during all months since Appointment, and is thus unable to determine what, if any, prescribed plan may be necessary. However, counsel for Defendants indicated during inspections at the Whitehall and Saucon facilities that there are 31 vacancies at Whitehall Manor and only 1 full-room vacancy at Saucon Valley Manor. Receiver is unable to determine from this limited information whether Whitehall is anticipating additional occupants.

*Staff & Management:* Defendants state that they have no employees, and Tenants refuse to produce documents related to employees. Thus Receiver is not aware of how many, or which, employees are at the Properties, or the sufficiency of staffing to meet the needs of the residents.

*Licensing:* Since the time of Appointment, upon information and belief, both Properties, remain in compliance with licensure requirements.

*Records & IT:* Following Appointment, Tenants have not yet provided Receiver with certain information needed for the operation of either Property, including a rent roll report, income statement or balance sheet, as noted above. Defendants have stated that they do not own or maintain an information technology system.

*Maintenance:* Following Appointment, Receiver has not identified outstanding maintenance issues and will re-assess upon further information.

*Insurance:* Receiver requested additional insurance documentation and Receiver's Real Estate Department has reviewed the existing documentation and determined that it is compliant with the requirements in the leases.

*Utilities and Contracts:* Receiver is unaware of any delinquency in utilities due to lack of records from Tenants.

Pursuant to the Court's Order, Receiver obtained a no longer effective property management agreement, attached as **Exhibit 4,** which Defendants state is replaced by an oral agreement, the terms of with Receiver is not aware of and has not reviewed. Receiver is aware of debts due to a property management company, Pennsylvania Venture Capital, Inc., and of a labor company that offers renovation repair "not handled by other service providers" and paid on a per-service basis, Brookside Commercial Construction Company, Inc. Receiver is otherwise unaware of contracts that Tenants may have, including with vendors who operate or maintain the property. Receiver attaches an outline of vendors for Defendant, as **Exhibit 5**.

*Litigation:* Upon information and belief, there was a pending Sheriff's sale of 1050 Main Street, Hellertown, PA, scheduled for August 8, 2025, which has since been resolved by payment plan. Receiver will monitor compliance with the payment plan, in which tenants will make monthly payments towards owed tax amounts. Tenants have as of September 2, 2025, made all required payments. Confirmation has been requested regarding payments due under the terms of the agreement for the month of October. Receiver was made aware of a tax assessment appeal related to Whitehall Manor, which was scheduled to occur on September 16, 2025. Receiver on September 29, 2025, requested information as to the status of the appeal and any evidence submitted in furtherance of the appeal, and is awaiting production of this information.

*Inspection of the Property:* Receiver re-assessed the properties alongside representatives for the Plaintiff and counsel for Defendants on September 30, 2025. The Whitehall facility had multiple holes in the ceilings, in particular, holes in the lower floor ceilings, and evidence of water damage. Upon information and belief, Tenants' maintenance is in the process of addressing these issues. Receiver possesses notes regarding other observations and may, if needed, inquire into the status of repairs.

*Bank Account & Operations Overview:* Receiver provided Tenants and Defendants with bank account information to direct any rental payments to as of September 9, 2025.

*Receiver's Compensation:* Pursuant to paragraph 17 of the Order Appointing Receiver, Receiver is entitled to an hourly Receivership Fee of $975, and reimbursement of reasonable costs and expenses associated with the Receivership. Since inception, Receiver has incurred to date $ 167,723.65 in legal fees and business expenses associated with the Appointment of the Property. However, Receiver has not requested payment of any fees.

## SUMMARY OF INVENTORY

As noted, Receiver is in the process of engaging a local representative to assist with taking inventory and managing operations.

**CERTIFICATE OF SERVICE**

Erin M. Duffy certified that on this 2nd day of October, 2025, a true and correct copy of the foregoing Receiver's Fourth Report and Summary of Inventory was electronically filed and made available to the Clerk of Court.

DUANE MORRIS LLP

*/s/ Erin M. Duffy*
Erin M. Duffy

# EXHIBIT 1

**Saucon Trust**
**Rent Roll**

**Property Address: 1050 Main Street, Hellertown**
**Tenant: Saucon Valley Manor**
**2020, 2021, 2022, 2023, 2024, and 2025 Rent Roll**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2020 | 142,118.42 | 142,118.42 | 142,118.42 | 142,118.42 | 142,118.42 | 142,118.42 | 142,118.42 | 142,118.42 | 142,118.42 | 142,118.42 | 142,118.42 | 142,118.42 | $ 1,705,421 |
| 2021 | 142,118.42 | 142,118.42 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $ 284,237 |
| 2022 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $ - |
| 2023 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $ - |
| 2024 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $ - |
| 2025 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 22,090.40 | 22,090.40 | 22,090.40 | 0.00 | 0.00 | 0.00 | $ 66,271 |
| | | | | | | | | | | | | | |
| Total Rent | $284,237 | $284,237 | $142,118 | $142,118 | $142,118 | $142,118 | $164,209 | $164,209 | $164,209 | $142,118 | $142,118 | $142,118 | $2,055,929 |

Key: ▢ Payment to Saucon Trust
▢ Payment to Portnoff

# Whitehall Trust
## Rent Roll

**Property Address: 1177 6th Street, Whitehall**

**Tenant: Whitehall Manor**

**2020, 2021, 2022, 2023, 2024, and 2025 Rent Roll**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2020 | 139,000.00 | 139,000.00 | 139,000.00 | 139,000.00 | 139,000.00 | 139,000.00 | 139,000.00 | 139,000.00 | 139,000.00 | 139,000.00 | 139,000.00 | 139,000.00 | $ | 1,668,000 |
| 2021 | 139,000.00 | 139,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $ | 278,000 |
| 2022 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $ | - |
| 2023 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $ | - |
| 2024 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $ | - |
| 2025 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 22,679.69 | 22,679.69 | 22,679.69 | 0.00 | 0.00 | 0.00 | $ | 68,039 |
| | | | | | | | | | | | | | | |
| Total Rent | $278,000 | $278,000 | $139,000 | $139,000 | $139,000 | $139,000 | $161,680 | $161,680 | $161,680 | $139,000 | $139,000 | $139,000 | | $2,014,039 |

Key: Payment to Whitehall Trust

Payment to Portnoff

# EXHIBIT 2


NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN

HANOI
HO CHI MINH CITY
SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NORTH JERSEY
LAS VEGAS
SOUTH JERSEY
SYDNEY
MYANMAR

ALLIANCES IN MEXICO

BRETT L. MESSINGER
PARTNER
DIRECT DIAL: +1 215 979 1508
PERSONAL FAX: +1 215 689 4903
*E-MAIL:* BLMessinger@duanemorris.com

*www.duanemorris.com*

September 9, 2025

VIA EMAIL

Nimita Kapoor Atiyeh
President
c/o Joel Wiener, Esquire
Whitehall Manor, Inc.
1177 6th Street,
Whitehall, PA 18052
joel.wiener@stevenslee.com

**Re:** ***Lehigh Valley 1, LLC v. Whitehall Fiduciary LLC*, and *Lehigh Valley 1, LLC v. Saucon Trust***

Dear Ms. Atiyeh:

I act as attorney for the Receiver in the above-mentioned matter. I am writing to obtain information relating to past and ongoing rents and demand turnover of ongoing rents associated with Whitehall Manor, Inc.'s tenancy at the property located at 1177 6th Street, Whitehall, PA 18052, since the date of the Order of appointment, May 2, 2025. In this regard, you are directed to kindly provide an accounting of all rents paid since May 2, 2025, and on a go-forward basis, make payments due under the Lease directly to Receiver utilizing the following payment information. Payment shall also be remitted for any month not yet paid.

**If by check**, funds are to be payable to Duane Morris LLP IOLTA, and forwarded by overnight courier to the following

Duane Morris LLP
ATTN: Brett Messinger
30 S 17th St,
Philadelphia, PA 19103



**If by electronic payment:**

> Duane Morris LLP PA Iolta Trust Account
> 30 South 17th St.; Philadelphia, PA  19103
> Account Number: ▮▮▮▮▮▮▮▮▮▮
> Incoming Wire ABA Number: ▮▮▮▮▮▮▮▮
> Incoming ACH ABA Number: ▮▮▮▮▮▮▮▮
> Swift Code: ▮▮▮▮▮▮▮

We will expect an immediate response to this letter, but in no event later than September 12, 2025.

The Receiver under Section 6(a) of the Court's order appointing a receiver has the authority to collect rent directly from tenants, and Whitehall Manor, Inc. is hereby notified that Whitehall Fiduciary LLC is prohibited from collecting rent for the Property, as per Section 6(j). If you remit any payment to Whitehall Fiduciary LLC, it will not be deemed a rent payment.

Please feel free to reach out with any questions.

Sincerely,

Brett L. Messinger

BLM



NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN

HANOI
HO CHI MINH CITY
SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NORTH JERSEY
LAS VEGAS
SOUTH JERSEY
SYDNEY
MYANMAR

ALLIANCES IN MEXICO

*FIRM and AFFILIATE OFFICES*

BRETT L. MESSINGER
PARTNER
DIRECT DIAL: +1 215 979 1508
PERSONAL FAX: +1 215 689 4903
*E-MAIL:* BLMessinger@duanemorris.com

*www.duanemorris.com*

September 9, 2025

VIA EMAIL

Nimita Kapoor Atiyeh
President
c/o Joel Wiener, Esquire
Saucon Valley Manor, Inc.
1177 N. 6th Street,
Whitehall, PA 18052
joel.wiener@stevenslee.com

**Re: *Lehigh Valley 1, LLC v. Whitehall Fiduciary LLC*, and *Lehigh Valley 1, LLC v. Saucon Trust***

Dear Ms. Atiyeh:

I act as attorney for the Receiver in the above-mentioned matter. I am writing to obtain information relating to past and ongoing rents and demand turnover of ongoing rents associated with Saucon Valley Manor, Inc.'s tenancy at the property located at 1050 Main Street, Unit # 1, Hellertown, PA, since the date of the Order of appointment, May 2, 2025. In this regard, you are directed to kindly provide an accounting of all rents paid since May 2, 2025, and on a go-forward basis, make payments due under the Lease directly to Receiver utilizing the following payment information. Payment shall also be remitted for any month not yet paid.

**If by check**, funds are to be payable to Duane Morris LLP IOLTA, and forwarded by overnight courier to the following

Duane Morris LLP
ATTN: Brett Messinger
30 S 17th St,
Philadelphia, PA 19103



**If by electronic payment:**

> Duane Morris LLP PA Iolta Trust Account
> 30 South 17th St.; Philadelphia, PA 19103
> Account Number: ▮▮▮▮▮▮▮▮▮▮
> Incoming Wire ABA Number: ▮▮▮▮▮▮▮
> Incoming ACH ABA Number: ▮▮▮▮▮▮
> Swift Code: ▮▮▮▮▮

We will expect an immediate response to this letter, but in no event later than September 12, 2025.

The Receiver under Section 6(a) of the Court's order appointing a receiver has the authority to collect rent directly from tenants, and Saucon Valley Manor, Inc. is hereby notified that Saucon Trust is prohibited from collecting rent for the Property, as per Section 6(j). If you remit any payment to Saucon Trust, it will not be deemed a rent payment.

Please feel free to reach out with any questions.

Sincerely,

Brett L. Messinger

BLM



NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN

*FIRM and AFFILIATE OFFICES*

BRETT L. MESSINGER
PARTNER
DIRECT DIAL: +1 215 979 1508
PERSONAL FAX: +1 215 689 4903
*E-MAIL:* BLMessinger@duanemorris.com

*www.duanemorris.com*

HANOI
HO CHI MINH CITY
SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NORTH JERSEY
LAS VEGAS
SOUTH JERSEY
SYDNEY
MYANMAR

ALLIANCES IN MEXICO

September 9, 2025

VIA EMAIL

Mr. Abraham Atiyeh
President
c/o Raymond Lahoud, Esquire
Whitehall Fiduciary LLC, as Trustee of Whitehall Trust
1177 6th Street,
Whitehall, PA 18052
rgl@raylahoud.com

**Re:** *Lehigh Valley 1, LLC v. Whitehall Fiduciary LLC*, **and** *Lehigh Valley 1, LLC v. Saucon Trust*

Dear Mr. Atiyeh:

I act as attorney for the Receiver in the above-mentioned matter. I am writing to obtain information relating to and to demand a turnover of any rents received by Whitehall Fiduciary LLC or its managing company/agent since the date of the Order of appointment, May 2, 2025. In this regard, you are directed to kindly provide an accounting of all rents received since May 2, 2025, and to remit to the Receiver all lease payments previously made by tenants of Whitehall Manor and to turn over all other moneys held for the operation of the property.

All funds requested must be remitted to the Receiver directly, and can be forwarded to the Receiver as follows:

**If by check**, funds are to be payable to Duane Morris LLP IOLTA, and forwarded by overnight courier to the following:

Duane Morris LLP
ATTN: Brett Messinger
30 S 17th St.
Philadelphia, PA 19103



**If by electronic payment:**

Duane Morris LLP PA Iolta Trust Account
30 South 17th St.; Philadelphia, PA 19103
Account Number: ███████████
Incoming Wire ABA Number: ██████████
Incoming ACH ABA Number: █████████
Swift Code: ██████████

     We expect full compliance with this request by September 12, 2025, alongside either a) a letter explaining why there has been no rental payments or b) a financial statement detailing which account the payments have been made to and the amount of such payments.

     The Receiver under Section 6(a) of the Court's order appointing a receiver has the authority to collect rent directly from tenants, and Whitehall Fiduciary LLC is reminded that it is prohibited from collecting rental payments for the Property, as per Section 6(j).

     Please feel free to reach out with any questions.

Sincerely,

Brett L. Messinger

BLM

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN

HANOI
HO CHI MINH CITY
SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NORTH JERSEY
LAS VEGAS
SOUTH JERSEY
SYDNEY
MYANMAR

ALLIANCES IN MEXICO



*FIRM and AFFILIATE OFFICES*

BRETT L. MESSINGER
PARTNER
DIRECT DIAL: +1 215 979 1508
PERSONAL FAX: +1 215 689 4903
*E-MAIL:* BLMessinger@duanemorris.com

*www.duanemorris.com*

September 9, 2025

VIA EMAIL AND FEDEX

Mr. Abraham Atiyeh
Grantor and Trustee
c/o Raymond Lahoud, Esquire
Saucon Trust, U/T/A Dated October 1, 2007
1177 N. 6th Street,
Whitehall, PA 18052

**Re:** *Lehigh Valley 1, LLC v. Whitehall Fiduciary LLC*, **and** *Lehigh Valley 1, LLC v. Saucon Trust*

Dear Mr. Atiyeh:

I act as attorney for the Receiver in the above-mentioned matter. I am writing to obtain information relating to and to demand a turnover of any rents received by Saucon Trust or its managing company/agent since the date of the Order of appointment, May 2, 2025. In this regard, you are directed to kindly provide an accounting of all rents received since May 2, 2025, and to remit to the Receiver all lease payments previously made by tenants of Saucon Valley Manor and to turn over all other moneys held for the operation of the property.

All funds requested must be remitted to the Receiver directly, and can be forwarded to the Receiver as follows:

**If by check**, funds are to be payable to Duane Morris LLP IOLTA, and forwarded by overnight courier to the following:

Duane Morris LLP
ATTN: Brett Messinger
30 S 17th St.
Philadelphia, PA 19103

**If by electronic payment:**

Duane Morris LLP PA Iolta Trust Account
30 South 17th St.; Philadelphia, PA 19103
Account Number: ▮▮▮▮▮▮▮▮▮▮
Incoming Wire ABA Number: ▮▮▮▮▮▮▮
Incoming ACH ABA Number: ▮▮▮▮▮▮
Swift Code: ▮▮▮▮▮

We expect full compliance with this request by September 12, 2025, alongside either a) a letter explaining why there has been no rental payments or b) a financial statement detailing which account the payments have been made to and the amount of such payments.

The Receiver under Section 6(a) of the Court's order appointing a receiver has the authority to collect rent directly from tenants, and Saucon Trust is reminded that it is prohibited from collecting rental payments for the Property, as per Section 6(j).

Please feel free to reach out with any questions.

Sincerely,

Brett L. Messinger

BLM

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEHIGH VALLEY 1, LLC, successor by assignment to WINDSTREAM CAPITAL, LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION, | : : : : : : : : | CIVIL ACTION NO. 24-2627 |
| Plaintiff | : | |
| v. | : | |
| WHITEHALL FIDUCIARY LLC, as TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007 | : : : | |
| Defendant | : | |

## WHITEHALL MANOR, INC.'S RESPONSES AND OBJECTIONS TO SUBPOENA

Pursuant to Federal Rule of Civil Procedure 45, non-party Whitehall Manor, Inc. ("Whitehall Manor") asserts the following responses and objections to the Subpoena issued by Receiver, Duane Morris, LLP.

### Preliminary Statement and Objections

1. Whitehall Manor objects to the Subpoena to the extent it assumes Whitehall Manor is a "property manager" for Whitehall Fiduciary LLC, as Trustee of Whitehall Trust U/T/A dated August 1, 2007 ("Whitehall Trust"). Whitehall Manor is a tenant of Whitehall Trust pursuant to the terms of a written lease. Whitehall Manor is not a "property manager" for Whitehall Trust.

2. Whitehall Manor objects to the Subpoena to the extent it seeks information beyond the scope of discovery permitted under the Federal Rule of Civil Procedure, the Local Rules, or this Court's Orders.

3. Whitehall Manor objects to the Subpoena to the extent it seeks information not relevant to the claims or defenses at issue in this action.

4. Whitehall Manor objects to the Subpoena to the extent it seeks discovery of any documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery. Nothing in this Response, and no documents or information produced by Whitehall Manor, is intended to be, or shall be construed as, a waiver of any privilege or immunity from discovery. Inadvertent disclosure(s) of any information that is privileged, protected from disclosure, or otherwise immune from discovery will not constitute a waiver of any privilege or protection or any other ground for objecting to discovery with respect to such information. Any failure by Whitehall Manor to assert a privilege shall not be deemed to constitute a waiver of the privilege as to any document, information, or communication so protected.

5. Whitehall Manor objects to the Subpoena to the extent it is vague, ambiguous, confusing, susceptible to more than one interpretation, or fails to adequately define specific terms necessary to comprehend the document requests set forth in the Attachment to the Subpoena.

6. Whitehall Manor objects to the Subpoena to the extent it seeks information or documents that are not in his possession, custody, or control.

7. Whitehall Manor objects to the Subpoena to the extent that it seeks confidential, sensitive, and/or proprietary or trade secret information.

SL1 3764256v1 118398.00001

8. Whitehall Manor objects to the Subpoena to the extent it seeks protected health information.

9. Whitehall Manor objects to the terms "any" and "all" as used throughout the Subpoena Schedule A as overbroad, unduly burdensome, and not proportional to the needs of the case.

10. Whitehall Manor reserves the right to revise, correct, supplement, or clarify any of the responses or objections provided herein at any time.

### Responses and Objections to Document Requests

To avoid the necessity of restating in full each of the foregoing Objections, such Objections are hereby adopted and incorporated, to the extent they may apply, into the following responses to the document requests. The assertion of additional Specific Objections to these requests shall not be construed as waiving any applicable Objections. Any responses subsequently served by Whitehall Manor are subject to both the Objections and Specific Objections. Subject to and without waiving the foregoing, Whitehall Manor responds to the numbered items in the Subpoena's Attachment as follows:

1. Any and all documents that relate to the management of the property, so that Receiver can understand who is managing the day to day activities of the properties. This includes but is not limited to any and all management agreements.

**RESPONSE:** Whitehall Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "any and all documents" relating to the management of the property. The Request is also overly broad, unduly burdensome, and not proportional to the needs of the case because it fails to include a time period and because it seeks documents unrelated to the claims and defenses in this action. Whitehall Manor, a separate legal entity from Whitehall Trust, is a tenant of the property located at 1177 6th Street, Whitehall, Pennsylvania 18052 pursuant to the terms of a written lease.

3

Documents relating to Whitehall Manor's management of the property are unrelated to this mortgage foreclosure proceeding against Whitehall Manor's landlord, Whitehall Trust. Whitehall Manor further objects to this Request because it seeks protected health information. Whitehall Manor further objects to this Request to the extent it is seeks documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery. Whitehall Manor objects to this Request to the extent it assumes Whitehall Manor is a "property manager" for Whitehall Trust. Whitehall Manor is not a "property manager" for Whitehall Trust.

Subject to and without waiving these objections, Whitehall Manor will produce a copy of its lease agreement with Whitehall Trust.

2.      Any and all contracts that were or are in effect as of the date of the Receiver's appointment. This not only includes the management agreements, but every single contract with vendors that provide services to the properties.

**RESPONSE:** Whitehall Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "any and all contracts" and because it fails to include a time period. The Request is also overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to the claims and defenses in this action. Whitehall Manor, a separate legal entity from Whitehall Trust, is a tenant of the property located at 1177 6th Street, Whitehall, Pennsylvania 18052 pursuant to the terms of a written lease. Contracts entered into by Whitehall Manor related to its business are unrelated to this mortgage foreclosure proceeding against Whitehall Manor's landlord, Whitehall Trust. Whitehall Manor further objects to this Request because it seeks protected health information. Whitehall Manor further objects to this Request to the extent it is seeks documents and/or information protected by the attorney-client privilege, the work

4

product doctrine, or any other applicable privileges or immunities against discovery. Whitehall Manor objects to this Request to the extent it assumes Whitehall Manor is a "property manager" for Whitehall Trust. Whitehall Manor is not a "property manager" for Whitehall Trust.

Subject to and without waiving these objections, Whitehall Manor will produce a copy of its lease agreement with Whitehall Trust.

3.      Employee documents and payroll related to persons employed by the property managers, or any of their affiliates.

**RESPONSE:** Whitehall Manor specifically objects to this Request as vague and ambiguous to the extent it seeks "Employee documents" because such term is undefined and Whitehall Manor is unable to determine the documents this Request seeks. White Hall Manor further objects to this Request as overly broad, unduly burdensome, and not proportional to the to the needs of the case because it fails to include a time period. The Request is also overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to the claims and defenses in this action. Whitehall Manor, a separate legal entity from Whitehall Trust, is a tenant of the property located at 1177 6th Street, Whitehall, Pennsylvania 18052 pursuant to the terms of a written lease. Documents relating to Whitehall Manor's employees and payroll are unrelated to this mortgage foreclosure proceeding against Whitehall Manor's landlord, Whitehall Trust. Whitehall Manor further objects to this Request to the extent it is seeks documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery. Whitehall Manor objects to this Request to the extent it assumes Whitehall Manor is a "property manager" for Whitehall Trust. Whitehall Manor is not a "property manager" for Whitehall Trust.

Subject to and without waiving these objections, Whitehall Manor will produce a copy of its lease agreement with Whitehall Trust.

SL1 3764256v1 118398.00001

4. Rent rolls for all occupants of the property. This shall include not only tenants under any leases, but every single person or entity that occupies the property under a lease, license agreement, occupancy agreement, care agreement or any other similar arrangement by which a person can occupy the property as a resident or otherwise.

**RESPONSE:** Whitehall Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case because it fails to include a time period. The Request is also overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to the claims and defenses in this action. Whitehall Manor, a separate legal entity from Whitehall Trust, is a tenant of the property located at 1177 6th Street, Whitehall, Pennsylvania 18052 pursuant to the terms of a written lease. Documents relating to Whitehall Manor's funds from the clients it serves are unrelated to this mortgage foreclosure proceeding against Whitehall Manor's landlord, Whitehall Trust. Whitehall Manor further objects to this Request because it seeks protected health information. Whitehall Manor further objects to this Request to the extent it is seeks documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery. Whitehall Manor objects to this Request to the extent it assumes Whitehall Manor is a "property manager" for Whitehall Trust. Whitehall Manor is not a "property manager" for Whitehall Trust.

Subject to and without waiving these objections, Whitehall Manor will produce a copy of its lease agreement with Whitehall Trust and documents sufficient to demonstrate the rent Whitehall Manor paid to Whitehall Trust over the last two years.

5. Any and all documents which reflect for each occupant of the property either rent or a fee paid for such occupancy relationship or agreement.

**RESPONSE:** Whitehall Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "any and all

documents" and because it fails to include a time period.  The Request is also overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to the claims and defenses in this action.  Whitehall Manor, a separate legal entity from Whitehall Trust, is a tenant of the property located at 1177 6th Street, Whitehall, Pennsylvania 18052 pursuant to the terms of a written lease.  Documents relating to Whitehall Manor's funds from the clients it serves are unrelated to this mortgage foreclosure proceeding against Whitehall Manor's landlord, Whitehall Trust.  Whitehall Manor further objects to this Request because it seeks protected health information.  Whitehall Manor further objects to this Request to the extent it is seeks documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery.  Whitehall Manor objects to this Request to the extent it assumes Whitehall Manor is a "property manager" for Whitehall Trust.  Whitehall Manor is not a "property manager" for Whitehall Trust.

Subject to and without waiving these objections, Whitehall Manor will produce a copy of its lease agreement with Whitehall Trust and documents sufficient to demonstrate the rent Whitehall Manor paid to Whitehall Trust over the last two years.

6.      Any and all financial statements.

**RESPONSE:**  Whitehall Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "any and all" financial statements and because it fails to include a time period.  Whitehall Manor further objects to this Request as overly broad, unduly burdensome, seeking documents and information not relevant to the claims or defenses in the case, and not proportional to the needs of the case. Whitehall Manor's financial statements are entirely unrelated to the mortgage foreclosure action against Whitehall Manor's landlord.  Whitehall Manor further objects to this Request to the

extent it is seeks documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery. Whitehall Manor objects to this Request to the extent it assumes Whitehall Manor is a "property manager" for Whitehall Trust. Whitehall Manor is not a "property manager" for Whitehall Trust.

7. Current bank account information (including bank statements from the time the Receiver's Order was entered, through the present).

**RESPONSE:** Whitehall Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case because it fails to include a time period. Whitehall Manor further objects to this Request as overly broad, unduly burdensome, seeking documents and information not relevant to the claims or defenses in the case, and not proportional to the needs of the case. Whitehall Manor's bank account information is entirely unrelated to the mortgage foreclosure action against Whitehall Manor's landlord. Whitehall Manor further objects to this Request to the extent it is seeks documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery. Whitehall Manor objects to this Request to the extent it assumes Whitehall Manor is a "property manager" for Whitehall Trust. Whitehall Manor is not a "property manager" for Whitehall Trust.

8. Unredacted copies of the Columbia Casualty Company – General Liability (which will be held by Duane Morris and not disclosed to Plaintiff except upon order from the Court.

**RESPONSE:** Whitehall Manor specifically objects to this Request because it imposes undue burden and expense upon Whitehall Manor, a non-party. Specifically, Defendant Whitehall Fiduciary LLC, as Trustee of Whitehall Trust U/T/A Dated August 1, 2007 was directed by the

Court to produce this document on September 2, 2025. Accordingly, Receiver is already in possession of the documents requested.

9. Redacted copies of any other insurance policy covering the premises, that has not been previously produced.

**RESPONSE:** Whitehall Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case because it fails to include a time period. Whitehall Manor specifically objects to this Request as vague and ambiguous because the "the premises" is an undefined term. Whitehall Manor specifically objects to this Request because it imposes undue burden and expense upon Whitehall Manor, a non-party. Specifically, Defendant Whitehall Fiduciary LLC, as Trustee of Whitehall Trust U/T/A Dated August 1, 2007 was directed by the Court to produce the requested documents on September 2, 2025. Accordingly, Receiver is already in possession of the documents requested.

10. All communications relating to any amendment to lease agreements, including all drafts of same.

**RESPONSE:** Whitehall Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" communications and because it fails to include a time period. Whitehall Manor specifically objects to this Request as vague and ambiguous because it fails to describe or identify the amendments and the lease agreements at issue. Whitehall Manor further objects to this Request as overly broad, unduly burdensome, seeking documents and information not relevant to the claims or defenses in the case, and not proportional to the needs of the case. Whitehall Manor, a separate legal entity from Whitehall Trust, is a tenant of the property located at 1177 6th Street, Whitehall, Pennsylvania 18052 pursuant to the terms of a written lease. Communications relating to relating to any amendments to lease agreements and drafts of the same are unrelated

9

to this mortgage foreclosure proceeding against Whitehall Manor's landlord, Whitehall Trust. Whitehall Manor further objects to this Request because it seeks protected health information. Whitehall Manor further objects to this Request to the extent it is seeks documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery.  Whitehall Manor objects to this Request to the extent it assumes Whitehall Manor is a "property manager" for Whitehall Trust.  Whitehall Manor is not a "property manager" for Whitehall Trust.

Subject to and without waiving these objections, Whitehall Manor will produce a copy of its lease agreement with Whitehall Trust.


Date:  September 17, 2025

By:   *s/Elizabeth Ware*
Elizabeth A. Ware, Esq.
Attorney I.D. No. 312046
111 North Sixth Street
Reading, PA 19601
(610) 478-2210
Elizabeth.Ware@stevenslee.com

*Counsel for Whitehall Manor, Inc.*

10

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEHIGH VALLEY 1, LLC, successor by assignment to WINDSTREAM CAPITAL, LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION, | : : : : : : : : | CIVIL ACTION NO. 24-2709 |
| Plaintiff | : : | |
| v. | : : : | |
| SAUCON TRUST U/T/A DATED OCTOBER 1, 2007 | : : : | |
| Defendant | : | |

**<u>SAUCON VALLEY MANOR, INC.'S RESPONSES AND OBJECTIONS TO SUBPOENA</u>**

Pursuant to Federal Rule of Civil Procedure 45, non-party Saucon Valley Manor, Inc.

("Saucon Valley Manor") asserts the following responses and objections to the Subpoena issued

by Receiver, Duane Morris, LLP.

**<u>Preliminary Statement and Objections</u>**

1.      Saucon Valley Manor objects to the Subpoena to the extent it assumes Saucon

Valley Manor is a "property manager" for Saucon Trust U/T/A dated October 1, 2007 ("Saucon

Trust").  Saucon Valley Manor is a tenant of Saucon Trust pursuant to the terms of a written

lease.  Saucon Valley Manor is not a "property manager" for Saucon Trust.

2.      Saucon Valley Manor objects to the Subpoena to the extent it seeks information

beyond the scope of discovery permitted under the Federal Rule of Civil Procedure, the Local

Rules, or this Court's Orders.

3. Saucon Valley Manor objects to the Subpoena to the extent it seeks information not relevant to the claims or defenses at issue in this action.

4. Saucon Valley Manor objects to the Subpoena to the extent it seeks discovery of any documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery. Nothing in this Response, and no documents or information produced by Saucon Valley Manor, is intended to be, or shall be construed as, a waiver of any privilege or immunity from discovery. Inadvertent disclosure(s) of any information that is privileged, protected from disclosure, or otherwise immune from discovery will not constitute a waiver of any privilege or protection or any other ground for objecting to discovery with respect to such information. Any failure by Saucon Valley Manor to assert a privilege shall not be deemed to constitute a waiver of the privilege as to any document, information, or communication so protected.

5. Saucon Valley Manor objects to the Subpoena to the extent it is vague, ambiguous, confusing, susceptible to more than one interpretation, or fails to adequately define specific terms necessary to comprehend the document requests set forth in the Attachment to the Subpoena.

6. Saucon Valley Manor objects to the Subpoena to the extent it seeks information or documents that are not in his possession, custody, or control.

7. Saucon Valley Manor objects to the Subpoena to the extent that it seeks confidential, sensitive, and/or proprietary or trade secret information.

8. Saucon Valley Manor objects to the Subpoena to the extent it seeks protected health information.

2

9. Saucon Valley Manor objects to the terms "any" and "all" as used throughout the Subpoena Schedule A as overbroad, unduly burdensome, and not proportional to the needs of the case.

10. Saucon Valley Manor reserves the right to revise, correct, supplement, or clarify any of the responses or objections provided herein at any time.

## Responses and Objections to Document Requests

To avoid the necessity of restating in full each of the foregoing Objections, such Objections are hereby adopted and incorporated, to the extent they may apply, into the following responses to the document requests. The assertion of additional Specific Objections to these requests shall not be construed as waiving any applicable Objections. Any responses subsequently served by Saucon Valley Manor are subject to both the Objections and Specific Objections. Subject to and without waiving the foregoing, Saucon Valley Manor responds to the numbered items in the Subpoena's Attachment as follows:

1. Any and all documents that relate to the management of the property, so that Receiver can understand who is managing the day to day activities of the properties. This includes but is not limited to any and all management agreements.

**RESPONSE:** Saucon Valley Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "any and all documents" relating to the management of the property. The Request is also overly broad, unduly burdensome, and not proportional to the needs of the case because it fails to include a time period and because it seeks documents unrelated to the claims and defenses in this action. Saucon Valley Manor, a separate legal entity from Saucon Trust, is a tenant of the property located at 1050 Main Street, Hellertown, PA 18055 pursuant to the terms of a written lease. Documents relating to Saucon Valley Manor's management of the property are unrelated to this mortgage foreclosure proceeding against Saucon Valley Manor's landlord, Saucon Trust.

3

Saucon Valley Manor further objects to this Request because it seeks protected health information.  Saucon Valley Manor further objects to this Request to the extent it is seeks documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery.  Saucon Valley Manor objects to this Request to the extent it assumes Saucon Valley Manor is a "property manager" for Saucon Trust.  Saucon Valley Manor is not a "property manager" for Saucon Trust.

Subject to and without waiving these objections, Saucon Valley Manor will produce a copy of its lease agreement with Saucon Trust.

2.      Any and all contracts that were or are in effect as of the date of the Receiver's appointment. This not only includes the management agreements, but every single contract with vendors that provide services to the properties.

**RESPONSE:** Saucon Valley Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "any and all contracts" and because it fails to include a time period.  The Request is also overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to the claims and defenses in this action.  Saucon Valley Manor, a separate legal entity from Saucon Trust, is a tenant of the property located at 1050 Main Street, Hellertown, PA 18055 pursuant to the terms of a written lease.  Contracts entered into by Saucon Valley Manor related to its business are unrelated to this mortgage foreclosure proceeding against Saucon Valley Manor's landlord, Saucon Trust.  Saucon Valley Manor further objects to this Request because it seeks protected health information.  Saucon Valley Manor further objects to this Request to the extent it is seeks documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery. Saucon Valley Manor objects to this Request to the extent it assumes Saucon Valley Manor is a

SL1 3766210v1 118398.00001

"property manager" for Saucon Trust.  Saucon Valley Manor is not a "property manager" for Saucon Trust.

Subject to and without waiving these objections, Saucon Valley Manor will produce a copy of its lease agreement with Saucon Trust.


3.      Employee documents and payroll related to persons employed by the property managers, or any of their affiliates.

**RESPONSE:**  Saucon Valley Manor specifically objects to this Request as vague and ambiguous to the extent it seeks "Employee documents" because such term is undefined and Saucon Valley Manor is unable to determine the documents this Request seeks.  White Hall Manor further objects to this Request as overly broad, unduly burdensome, and not proportional to the to the needs of the case because it fails to include a time period.  The Request is also overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to the claims and defenses in this action.  Saucon Valley Manor, a separate legal entity from Saucon Trust, is a tenant of the property located at 1050 Main Street, Hellertown, PA 18055 pursuant to the terms of a written lease.  Documents relating to Saucon Valley Manor's employees and payroll are unrelated to this mortgage foreclosure proceeding against Saucon Valley Manor's landlord, Saucon Trust.  Saucon Valley Manor further objects to this Request to the extent it is seeks documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery.  Saucon Valley Manor objects to this Request to the extent it assumes Saucon Valley Manor is a "property manager" for Saucon Trust.  Saucon Valley Manor is not a "property manager" for Saucon Trust.

Subject to and without waiving these objections, Saucon Valley Manor will produce a copy of its lease agreement with Saucon Trust.

SL1 3766210v1 118398.00001

4.    Rent rolls for all occupants of the property. This shall include not only tenants under any leases, but every single person or entity that occupies the property under a lease, license agreement, occupancy agreement, care agreement or any other similar arrangement by which a person can occupy the property as a resident or otherwise.

**RESPONSE:**   Saucon Valley Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case because it fails to include a time period.  The Request is also overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to the claims and defenses in this action. Saucon Valley Manor, a separate legal entity from Saucon Trust, is a tenant of the property located at 1050 Main Street, Hellertown, PA 18055 pursuant to the terms of a written lease. Documents relating to Saucon Valley Manor's funds from the clients it serves are unrelated to this mortgage foreclosure proceeding against Saucon Valley Manor's landlord, Saucon Trust. Saucon Valley Manor further objects to this Request because it seeks protected health information.  Saucon Valley Manor further objects to this Request to the extent it is seeks documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery.  Saucon Valley Manor objects to this Request to the extent it assumes Saucon Valley Manor is a "property manager" for Saucon Trust.  Saucon Valley Manor is not a "property manager" for Saucon Trust.

Subject to and without waiving these objections, Saucon Valley Manor will produce a copy of its lease agreement with Saucon Trust and documents sufficient to demonstrate the rent Saucon Valley Manor paid to Saucon Trust over the last two years.

5.    Any and all documents which reflect for each occupant of the property either rent or a fee paid for such occupancy relationship or agreement.

**RESPONSE:** Saucon Valley Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "any and all

documents" and because it fails to include a time period.  The Request is also overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to the claims and defenses in this action.  Saucon Valley Manor, a separate legal entity from Saucon Trust, is a tenant of the property located at 1050 Main Street, Hellertown, PA 18055 pursuant to the terms of a written lease.  Documents relating to Saucon Valley Manor's funds from the clients it serves are unrelated to this mortgage foreclosure proceeding against Saucon Valley Manor's landlord, Saucon Trust.  Saucon Valley Manor further objects to this Request because it seeks protected health information.  Saucon Valley Manor further objects to this Request to the extent it is seeks documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery.  Saucon Valley Manor objects to this Request to the extent it assumes Saucon Valley Manor is a "property manager" for Saucon Trust.  Saucon Valley Manor is not a "property manager" for Saucon Trust.

Subject to and without waiving these objections, Saucon Valley Manor will produce a copy of its lease agreement with Saucon Trust and documents sufficient to demonstrate the rent Saucon Valley Manor paid to Saucon Trust over the last two years.

6.      Any and all financial statements.

**RESPONSE:** Saucon Valley Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "any and all" financial statements and because it fails to include a time period.  Saucon Valley Manor further objects to this Request as overly broad, unduly burdensome, seeking documents and information not relevant to the claims or defenses in the case, and not proportional to the needs of the case. Saucon Valley Manor's financial statements are entirely unrelated to the mortgage foreclosure

SL1 3766210v1 118398.00001

action against Saucon Valley Manor's landlord. Saucon Valley Manor further objects to this Request to the extent it is seeks documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery. Saucon Valley Manor objects to this Request to the extent it assumes Saucon Valley Manor is a "property manager" for Saucon Trust. Saucon Valley Manor is not a "property manager" for Saucon Trust.

7.     Current bank account information (including bank statements from the time the Receiver's Order was entered, through the present).

**RESPONSE:** Saucon Valley Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case because it fails to include a time period. Saucon Valley Manor further objects to this Request as overly broad, unduly burdensome, seeking documents and information not relevant to the claims or defenses in the case, and not proportional to the needs of the case. Saucon Valley Manor's bank account information is entirely unrelated to the mortgage foreclosure action against Saucon Valley Manor's landlord. Saucon Valley Manor further objects to this Request to the extent it is seeks documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery. Saucon Valley Manor objects to this Request to the extent it assumes Saucon Valley Manor is a "property manager" for Saucon Trust. Saucon Valley Manor is not a "property manager" for Saucon Trust.

8.     Unredacted copies of the Columbia Casualty Company – General Liability (which will be held by Duane Morris and not disclosed to Plaintiff except upon order from the Court.

**RESPONSE:** Saucon Valley Manor specifically objects to this Request because it imposes undue burden and expense upon Saucon Valley Manor, a non-party. Specifically, Defendant Saucon Valley Fiduciary LLC, as Trustee of Saucon Trust U/T/A Dated August 1, 2027 was

8

directed by the Court to produce this document on September 2, 2025. Accordingly, Receiver is already in possession of the documents requested.

9. Redacted copies of any other insurance policy covering the premises, that has not been previously produced.

**RESPONSE:** Saucon Valley Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case because it fails to include a time period. Saucon Valley Manor specifically objects to this Request as vague and ambiguous because the "the premises" is an undefined term. Saucon Valley Manor specifically objects to this Request because it imposes undue burden and expense upon Saucon Valley Manor, a non-party. Specifically, Defendant Saucon Valley Fiduciary LLC, as Trustee of Saucon Trust U/T/A Dated August 1, 2027 was directed by the Court to produce the requested documents on September 2, 2025. Accordingly, Receiver is already in possession of the documents requested.

10. All communications relating to any amendment to lease agreements, including all drafts of same.

**RESPONSE:** Saucon Valley Manor specifically objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" communications and because it fails to include a time period. Saucon Valley Manor specifically objects to this Request as vague and ambiguous because it fails to describe or identify the amendments and the lease agreements at issue. Saucon Valley Manor further objects to this Request as overly broad, unduly burdensome, seeking documents and information not relevant to the claims or defenses in the case, and not proportional to the needs of the case. Saucon Valley Manor, a separate legal entity from Saucon Trust, is a tenant of the property located at 1050 Main Street, Hellertown, PA 18055 pursuant to the terms of a written lease. Communications relating to relating to any amendments to lease agreements and drafts of the same are unrelated

9

to this mortgage foreclosure proceeding against Saucon Valley Manor's landlord, Saucon Trust. Saucon Valley Manor further objects to this Request because it seeks protected health information. Saucon Valley Manor further objects to this Request to the extent it is seeks documents and/or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities against discovery. Saucon Valley Manor objects to this Request to the extent it assumes Saucon Valley Manor is a "property manager" for Saucon Trust. Saucon Valley Manor is not a "property manager" for Saucon Trust.

Subject to and without waiving these objections, Saucon Valley Manor will produce a copy of its lease agreement with Saucon Trust.

Date: September 17, 2025      By:    *s/Elizabeth Ware*
Elizabeth A. Ware, Esq.
Attorney I.D. No. 312046
111 North Sixth Street
Reading, PA 19601
(610) 478-2210
Elizabeth.Ware@stevenslee.com

*Counsel for Saucon Valley Manor, Inc.*

SL1 3766210v1 118398.00001

# EXHIBIT 4

<u>MANAGEMENT AND SERVICES AGREEMENT</u>

Effective as of January 1, 2014 by and between PENNSYLVANIA VENTURE CAPITAL, INC., herein called PVC, and SAUCON MANAGEMENT LLC, as Trustee of the SAUCON TRUST herein called Trust.

### *W i t n e s s e t h:*

*Whereas,* Trust is the owner of real property in the Borough of Hellertown, Northampton County, Pennsylvania, which is known as Unit 1 of Saucon Valley Manor Condominium and has the address of 1050 Main Street, Hellertown, Pennsylvania (the "Premises"); and

*Whereas,* the Premises is leased by Trust to Saucon Valley Manor, Inc. ("Operator"); and

*Whereas,* Operator leases the Premises for its licensed operation of a Personal Care Home and sublets for other ancillary or affiliated purposes; and

*Whereas,* the said Personal Care Home at the Premises as operated by Saucon Valley Manor, Inc. is known as Saucon Valley Manor; and

*Whereas,* under the loan documents for the Premises, certain obligations exist relating to the continuing maintenance, repair and condition of the Premises; and

*Whereas,* PVC employs professional and other skilled staff to provide facilities management and other support services, excluding matters specific to resident care, services or other aspects within the purview of licensing operation and management of personal care facilities and the financial operation of personal care homes; and

*Whereas,* under and subject to the terms hereof, PVC is willing to provide such services and assistance for Trust in areas other than matters specific to resident care, services or other aspects within the purview of licensing operation and management of personal care facilities and the financial and other management and direction of personal care facilities; and

Whereas, the Trustee of Trust believes it to be in the best interests of Trust and Operator that Trust obtains such services and assistance from PVC as more fully set forth herein.

NOW, THEREFORE, the parties hereto, intending to be legally bound, and for other good and valuable consideration, do hereby agree as follows:

1. *Recitals:* The above Recitals form a part of this Agreement and are incorporated herein as if fully set forth at length.

2. *Independent Parties:* At all times, PVC shall be an independent party and no employee or contractor of PVC shall be an employee or claim direct contractor status with Trust or Operator. PVC shall assure that its employees and contractors are clearly informed that they are solely employed by PVC and look only to PVC for payment, unless otherwise specifically hereafter agreed to be a special circumstance and set fees, terms and other relevant matters relating to such special circumstance and fees are agreed at the time of such later special engagement. As of the date hereof, no special arrangements exist.

3. *Services:* PVC shall provide managerial and financial assistance, support and services, as well as professional services relating to facilities operation and management and design, including engineering, construction and building management and assistance with such other matters as requested by or for Trust, which shall include supervisory services for maintenance and other facilities management and assistance with commercial tenants and other matters not part of personal care services. Services may also include coordination of service providers in the event of a Casualty and assistance for leasehold improvements, but not including the services of contractors for such matters or actual personnel making interim repairs, service or performing such improvements. Such services shall be provided on an "as requested" basis and shall be performed or provided by PVC through its staff or contracted persons.
    a. The Services shall be for the primary benefit of Trust.
    b. Operator shall be a third party beneficiary of the services to be provided, but the parties agree that the benefit to Operator is solely as to physical plant maintenance and management assistance and services, and does not replace the maintenance personnel, security and other staff of Operator.
    c. Such third party benefit is solely relating to the physical structure and lands comprising the Premises, but does not deal with resident care, resident services or any employment or procedures of Operator.
    d. None of the Services shall be for the provision of any service which is required by law, regulation or insurance to be performed either by Operator as a licensed Personal Care Home or by a licensed manager or operator.

4. *Fees/Payment:* The services of PVC to Trust shall be compensated at the rate of Eight (8%) Percent of Collected Rents of Trust. Such fee is due in quarterly installments, in arrears, due on the last date of the calendar quarter and calculated upon the Rents collected by Trust during the calendar quarter.
    a. The parties acknowledge that the calculation shall be made on or about the 15th day of the last month of each quarter and may be subject to additional charge to be computed and invoiced as applicable; and any later charge determined shortage in calculation is due 30 days after invoicing.
    b. Rent as used in this Section means the gross rental for use and occupancy of the Premises as paid by Operator to Trust.

c. In the event that PVC has not invoiced for services prior to the end of the calendar year for services, then it shall be deemed to waive any fees not invoiced as of the end of February of the following year. The parties acknowledge that this arrangement is made to assure that Trust can timely and accurately file its calendar year financial statements, and PVC bears sole risk of potential loss from its own delay.

d. Payments not made by the due date shall incur a late fee of 5% of the amount due, unless specifically waived by PVC. Unpaid amounts over 30 days past due shall bear interest at 1.5% per month, retroactive to the due date, until paid in full, which interest shall accrue.

e. Trust shall promptly advise PVC of all payments received.

5. *Insurance:* Trust and/or Operator shall name PVC as an additional insured party for liability insurance coverages and relating to loss payment for materials of PVC upon the Premises or as allowed to be extended coverage.

6. *Confidentiality:* PVC acknowledges that information of Operator and residents and operations at the Premises are confidential and shall instruct its personnel and contractors to abide by confidentiality, nondisclosure and other applicable policies and protocols. PVC agrees that it will use its best efforts to maintain information and identity of persons as confidential and to educate and compel its staff regarding such obligations. Upon request, PVC will provide background information concerning personnel working at the Premises under this Agreement to Trust, which agrees to hold such information as confidential and not to make disclosure of such information without the express consent of PVC. The terms of the Lease for the Premises and of the Rents are confidential and shall not be disclosed by PVC without the express consent of Trust.

7. Term: The term of this Agreement shall be from January 1, 2014 to December 31, 2014, and shall automatically renew annually thereafter unless either party gives notice to terminate on or before October 1 of the calendar year prior to the automatic renewal. Each renewal shall be upon the same terms as set forth herein.

a. This Agreement shall be subject to immediate termination in the event that the present Mortgagee of the Premises demands its termination, or if the present Mortgagee of the Premises shall take control or obtain a receivership for the Premises (the date of notice by the Present Mortgagee to PVC of termination being herein called a "Forced Termination").

b. In the event of a Forced Termination, then PVC shall be entitled to any sums due for the current quarter upon Rent collected to date of Forced Termination and for any past due monies, but PVC shall not be entitled to payment from the Present Mortgagee from Rents collected after the date of Forced Termination.

c. The obligation of insurance shall survive termination and payment obligations shall survive termination.

d. As used herein, Present Mortgagee shall be the Secretary of Housing and Urban Development under the Mortgage and/or Regulatory Agreement of record encumbering the Premises.

8. Miscellaneous:

   a. This contract shall be interpreted under the laws of the Commonwealth of Pennsylvania.

   b. Any dispute hereunder shall first be submitted to mediation in Lehigh or Northampton County, Pennsylvania for a period of not less than 30 days. Any litigation that may be commenced shall only occur after the termination of mediation or the passage of 15 days from notice of intent to terminate mediation, and if commenced shall be commenced and maintained solely in the Courts of Common Pleas of Lehigh or Northampton County of Pennsylvania.

   c. Neither Trust nor PVC is or shall be an operator of the Personal Care Home pursuant to the terms hereof, and no services or other terms hereof are intended to compel any action which is within the scope of required licensure of any governmental agency or accreditation body.

   d. PVC will assist Trust in dealing with inquiry from lenders, auditors or others as part of its obligations hereunder.

   e. Nothing herein shall make PVC a partner, joint venture or otherwise a financial or other participant in Trust or its management or financial affairs.

   f. Financial or administrative services to Trust or Operator are not an obligation of PVC under this Agreement.

   g. This Agreement sets forth the full agreement between the parties relating to the matters addressed herein, and incorporates all present and prior oral statements, written memoranda, inducements, projections and/or other items.

IN WITNESS WHEREOF, the Trust and PVC have executed this Agreement intending to be legally bound as of the Effective Date set forth above.

**SAUCON TRUST** (Trust)
By: Saucon Management LLC, Trustee

By: _____
     Abraham Atiyeh,
     Manager

**PENNSYLVANIA VENTURE CAPITAL, INC.** (PVC)

By: _____
     Mickey Thompson,
     Chief Operating Officer

4

<u>MANAGEMENT AND SERVICES AGREEMENT</u>

Effective as of January 1, 2014 by and between PENNSYLVANIA VENTURE CAPITAL, INC., herein called PVC, and WHITEHALL FIDUCIARY LLC, as Trustee of the WHITEHALL TRUST herein called Trust.

*Witnesseth:*

*Whereas,* Trust is the owner of real property in the Township of Whitehall, Lehigh County, Pennsylvania, which is known as Unit 1 of Whitehall Manor Condominium and has the address of 1177 Sixth Street, Whitehall, Pennsylvania (the "Premises"); and

*Whereas,* the Premises is leased by Trust to Whitehall Manor, Inc. ("Operator"); and

*Whereas,* Operator leases the Premises for its licensed operation of a Personal Care Home and sublets for other ancillary or affiliated purposes; and

*Whereas,* the said Personal Care Home at the Premises as operated by Whitehall Manor, Inc. is known as Whitehall Manor; and

*Whereas,* under the loan documents for the Premises, certain obligations exist relating to the continuing maintenance, repair and condition of the Premises; and

*Whereas,* PVC employs professional and other skilled staff to provide facilities management and other support services, excluding matters specific to resident care, services or other aspects within the purview of licensing operation and management of personal care facilities and the financial operation of personal care homes; and

*Whereas,* under and subject to the terms hereof, PVC is willing to provide such services and assistance for Trust in areas other than matters specific to resident care, services or other aspects within the purview of licensing operation and management of personal care facilities and the financial and other management and direction of personal care facilities; and

Whereas, the Trustee of Trust believes it to be in the best interests of Trust and Operator that Trust obtains such services and assistance from PVC as more fully set forth herein.

NOW, THEREFORE, the parties hereto, intending to be legally bound, and for other good and valuable consideration, do hereby agree as follows:

1. *Recitals:* The above Recitals form a part of this Agreement and are incorporated herein as if fully set forth at length.

2. *Independent Parties:* At all times, PVC shall be an independent party and no employee or contractor of PVC shall be an employee or claim direct contractor status

1

with Trust or Operator. PVC shall assure that its employees and contractors are clearly informed that they are solely employed by PVC and look only to PVC for payment, unless otherwise specifically hereafter agreed to be a special circumstance and set fees, terms and other relevant matters relating to such special circumstance and fees are agreed at the time of such later special engagement. As of the date hereof, no special arrangements exist.

3. *Services:* PVC shall provide managerial and financial assistance, support and services, as well as professional services relating to facilities operation and management and design, including engineering, construction and building management and assistance with such other matters as requested by or for Trust, which shall include supervisory services for maintenance and other facilities management and assistance with commercial tenants and other matters not part of personal care services. Services may also include coordination of service providers in the event of a Casualty and assistance for leasehold improvements, but not including the services of contractors for such matters or actual personnel making interim repairs, service or performing such improvements. Such services shall be provided on an "as requested" basis and shall be performed or provided by PVC through its staff or contracted persons.

   a. The Services shall be for the primary benefit of Trust.
   b. Operator shall be a third party beneficiary of the services to be provided, but the parties agree that the benefit to Operator is solely as to physical plant maintenance and management assistance and services, and does not replace the maintenance personnel, security and other staff of Operator.
   c. Such third party benefit is solely relating to the physical structure and lands comprising the Premises, but does not deal with resident care, resident services or any employment or procedures of Operator.
   d. None of the Services shall be for the provision of any service which is required by law, regulation or insurance to be performed either by Operator as a licensed Personal Care Home or by a licensed manager or operator.

4. *Fees/Payment:* The services of PVC to Trust shall be compensated at the rate of Eight (8%) Percent of Collected Rents of Trust. Such fee is due in quarterly installments, in arrears, due on the last date of the calendar quarter and calculated upon the Rents collected by Trust relating to the Premises during the calendar quarter.

   a. The parties acknowledge that the calculation shall be made on or about the 15th day of the last month of each quarter and may be subject to additional charge to be computed and invoiced as applicable; and any later charge determined shortage in calculation is due 30 days after invoicing.
   b. Rent as used in this Section means the gross rental for use and occupancy of the Premises as is paid to Trust.
   c. In the event that PVC has not invoiced for services prior to the end of the calendar year for services, then it shall be deemed to waive any fees not

invoiced as of the end of February of the following year. The parties acknowledge that this arrangement is made to assure that Trust can timely and accurately file its calendar year financial statements, and PVC bears sole risk of potential loss from its own delay.

d. Payments not made by the due date shall incur a late fee of 5% of the amount due, unless specifically waived by PVC. Unpaid amounts over 30 days past due shall bear interest at 1.5% per month, retroactive to the due date, until paid in full, which interest shall accrue.

e. Trust shall promptly advise PVC of all payments received.

5. *Insurance:* Trust and/or Operator shall name PVC as an additional insured party for liability insurance coverages and relating to loss payment for materials of PVC upon the Premises or as allowed to be extended coverage.

6. *Confidentiality:* PVC acknowledges that information of Operator and residents and operations at the Premises are confidential and shall instruct its personnel and contractors to abide by confidentiality, nondisclosure and other applicable policies and protocols. PVC agrees that it will use its best efforts to maintain information and identity of persons as confidential and to educate and compel its staff regarding such obligations. Upon request, PVC will provide background information concerning personnel working at the Premises under this Agreement to Trust, which agrees to hold such information as confidential and not to make disclosure of such information without the express consent of PVC. The terms of the Lease for the Premises and of the Rents are confidential and shall not be disclosed by PVC without the express consent of Trust.

7. Term: The term of this Agreement shall be from January 1, 2014 to December 31, 2014, and shall automatically renew annually thereafter unless either party gives notice to terminate on or before October 1 of the calendar year prior to the automatic renewal. Each renewal shall be upon the same terms as set forth herein.

a. This Agreement shall be subject to immediate termination in the event that the present Mortgagee of the Premises demands its termination, or if the present Mortgagee of the Premises shall take control or obtain a receivership for the Premises (the date of notice by the Present Mortgagee to PVC of termination being herein called a "Forced Termination").

b. In the event of a Forced Termination, then PVC shall be entitled to any sums due for the current quarter upon Rent collected to date of Forced Termination and for any past due monies, but PVC shall not be entitled to payment from the Present Mortgagee from Rents collected after the date of Forced Termination.

c. The obligation of insurance shall survive termination and payment obligations shall survive termination.

   d. As used herein, Present Mortgagee shall be the Secretary of Housing and Urban Development under the Mortgage and/or Regulatory Agreement of record encumbering the Premises.

8. Miscellaneous:

   a. This contract shall be interpreted under the laws of the Commonwealth of Pennsylvania.

   b. Any dispute hereunder shall first be submitted to mediation in Lehigh or Northampton County, Pennsylvania for a period of not less than 30 days. Any litigation that may be commenced shall only occur after the termination of mediation or the passage of 15 days from notice of intent to terminate mediation, and if commenced shall be commenced and maintained solely in the Courts of Common Pleas of Lehigh or Northampton County of Pennsylvania.

   c. Neither Trust nor PVC is or shall be an operator of the Personal Care Home pursuant to the terms hereof, and no services or other terms hereof are intended to compel any action which is within the scope of required licensure of any governmental agency or accreditation body.

   d. PVC will assist Trust in dealing with inquiry from lenders, auditors or others as part of its obligations hereunder.

   e. Nothing herein shall make PVC a partner, joint venture or otherwise a financial or other participant in Trust or its management or financial affairs.

   f. Financial or administrative services to Trust or Operator are not an obligation of PVC under this Agreement.

   g. This Agreement sets forth the full agreement between the parties relating to the matters addressed herein, and incorporates all present and prior oral statements, written memoranda, inducements, projections and/or other items.

IN WITNESS WHEREOF, the Trust and PVC have executed this Agreement intending to be legally bound as of the Effective Date set forth above.

**WHITEHALL TRUST** (Trust)
By: Whitehall Fiduciary LLC, Trustee

By: _____
    Abraham Atiyeh,
    Manager

**PENNSYLVANIA VENTURE CAPITAL, INC.** (PVC)

By: _____
    Mickey Thompson,
    Chief Operating Officer

# EXHIBIT 5

 **Outlook**

---

**Whitehall and Saucon - Entities, Management Companies, Lessees, Vendor, etc.**

---

**From** Raymond Lahoud, Esquire <rgl@raylahoud.com>

**Date** Wed 9/10/2025 5:40 PM

**To** Phillip Berger <berger@bergerlawpc.com>; BLmessinger@duanemorris.com <BLmessinger@duanemorris.com>; EMDuffy@duanemorris.com <EMDuffy@duanemorris.com>

**Cc** Matthew Kaufmann <Kaufmann@bergerlawpc.com>; Kendra Baldini <kbaldini@norris-law.com>; Rebecca J. Price, Esq. <rprice@norris-law.com>

Brett and Philip:

The following relates to the properties and the operation of the properties only:

## Saucon Trust (Hellertown Property)

1. **Saucon Trust (whose Trustee is Saucon Management LLC)** is the owner of the building in Hellertown.
2. **Pennsylvania Venture Capital, Inc.** provides management assistance.

   a. It is the management company – there is a management agreement that I attach to this document.
   b. It provides services on an oral agreement in 2024 and 2025
   c. It was not paid (and Saucon Trust did not accrue) Management Fees in 2024 and 2025

4. **Saucon Valley Manor, Inc.** is the lessee
5. **Brookside Commercial Construction Company, Inc.** provides labor and materials for renovation repair which are not handled by other service providers – services billed based on service done.
6. There is a Condominium Association which has the right to assess common area charges.
7. **Saucon Trust** has no employees.
8. **Saucon Management LLC** has no employees.

## Whitehall Trust (Whitehall Property)

1. **Whitehall Trust (whose Trustee is Whitehall Fiduciary LLC)** is the owner of the building
2. **Pennsylvania Venture Capital, Inc.** - Management Company

   a. It is the management company - – there is a management agreement that I uploaded to the secure server.
   b. It was not paid (and Saucon Trust did not accrue) Management Fees in 2024 and 2025

3. **Whitehall Manor, Inc.** is the lessee
4. **Brookside Commercial Construction Company, Inc.** provides labor and materials for renovation repair which are not handled by other service providers – services billed based on service done.
5. There is a Condominium Association which has the right to assess for common area charges.
6. **Whitehall Trust** has no employees
7. **Whitehall Fiduciary LLC** has no employees

Raymond G. Lahoud, Esquire

Lahoud Law Group, P.C.

Tower 6

600 Hamilton Street

Suite 330

Allentown, PA 18101

P: 484-544-0022

E: rgl@raylahoud.com

CONFIDENTIALITY NOTICE: This email, including any attachments, is intended solely for the use of the individual or entity to whom it is addressed and may contain confidential and privileged information. If you are not the intended recipient, be advised that any unauthorized review, use, disclosure, or distribution of this email is strictly prohibited. If you received this email in error, please notify the sender immediately and delete it from your system.