**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LEHIGH VALLEY 1 LLC** | : | |
| | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO.  24-2627** |
| | : | |
| **WHITEHALL FIDUCIARY LLC** | : | |
| | : | |

| | | |
|---|---|---|
| **LEHIGH VALLEY 1 LLC** | : | |
| | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 24-2709** |
| | : | |
| **SAUCON TRUST** | : | |

| | | |
|---|---|---|
| **WHITEHALL FIDUCIARY LLC and** | : | |
| **SAUCON TRUST** | : | |
| | : | |
| v. | : | |
| | : | |
| **UNITED STATES DEPARTMENT OF** | : | |
| **HOUSING AND URBAN DEVELOPMENT,** | : | |
| *et al.* | : | |

**MEMORANDUM OPINION**

Henry, J.                                                     October 14, 2025

The instant matter involves two mortgage foreclosure actions brought by Lehigh Valley 1 LLC ("Lehigh"), against Whitehall Fiduciary LLC ("Whitehall"), and Saucon Trust ("Saucon"). These two cases were consolidated, and Whitehall and Saucon filed a Third-Party Complaint against the United States Department of Housing and Urban Development. In this Third-Party Complaint, Whitehall and Saucon take issue with the process by which HUD sold their mortgages to another party after Whitehall and Saucon had defaulted. HUD filed a Motion to

Dismiss the Third-Party Complaint. For reasons that will be discussed more fully below, HUD's motion to dismiss will be granted and the Third-Party Complaint will be dismissed.

## I.    __BACKGROUND__

M&T Realty Capital Corporation provided loans to Whitehall and Saucon secured by mortgages on each defendant's real property in Whitehall and Hellertown. Both the Whitehall property and the Hellertown property house senior living facilities and both loans are secured by a mortgage and a note. Amended Third-Party Complaint, Docket No. 61, ¶¶ 11, 16, 40, 45 ("Compl."). Whitehall and Saucon each also entered into a Regulatory Agreement with HUD that required the entities to undertake certain obligations, including making timely payments on their mortgages. Compl. ¶¶ 14, 43; Ex. A ("Reg. Agmt.")

In August of 2021, both Whitehall and Saucon defaulted on their mortgages when they stopped making the required payments. Compl. ¶¶ 26, 55. Due to the defaults, the total debts under the mortgages became due. Both mortgages were assigned by M&T to HUD. Compl. ¶¶ 34, 63. In June of 2023, after Whitehall and Saucon had been in default for nearly two years, HUD notified them of its intent to sell their mortgages. Compl. ¶¶ 68, 69; Ex. E. On July 28, 2023, HUD published notice in the Federal Register of its intent to sell the mortgages as part of a Multifamily and Healthcare Loan Sale. Compl. ¶¶ 74, 75; Ex. F ("Notice"). The sale was held by competitive sealed bids and was conducted pursuant to 12 U.S.C. § 1715z-11a(a). Notice, pp. 2-3. The Notice states that all mortgagors whose mortgages were being sold were ineligible to bid. Notice, p. 2.

Windstream Capital won the bid and purchased the mortgages, and on October 5, 2023, Windstream informed Whitehall and Saucon that it was the new mortgagee and that they had

until October 16, 2023, to pay the mortgages in full. Compl. ¶ 80, Ex. G. Windstream later assigned both mortgages to Lehigh, which filed the instant actions against Whitehall and Saucon.

On January 30, 2025, Whitehall and Saucon filed a Third-Party Complaint against HUD, and an Amended Third-Party Complaint on April 3, 2025. In response to the Amended Third-Party Complaint, HUD filed a motion to dismiss. The Amended Third-Party Complaint contains the following claims against HUD: 1) HUD violated the notice-and-comment requirements of the Administrative Procedures Act ("APA") by not providing adequate notice of the sale of the mortgages and prohibiting them from commenting in the rule-making process (Count I); 2) HUD violated the National Housing Act ("NHA") by excluding Whitehall and Saucon from the bidding process on the sale of their mortgages (Count II); 3) HUD violated 24 C.F.R. § 290, Disposition of Multifamily Projects and Sale of HUD-held Multifamily Mortgages, by selling the mortgages (Count III); 4) HUD violated Whitehall and Saucon's Fifth Amendment procedural and substantive due process rights by not allowing them to participate in the bidding process (Counts IV and V); and 5) HUD violated Whitehall and Saucon's Fifth Amendment right to equal protection by treating them differently from similarly situated entities (Count VI). The Complaint also includes a request for declaratory judgment, vacating the sale of the mortgages and declaring that HUD may not sell the mortgages without Whitehall and Saucon's participation in the bidding process (Count VII), monetary contribution from HUD for any liability due from Whitehall and Saucon to the current mortgage holder (Count VIII) and indemnification (Count IX). As I will discuss more fully below, HUD's motion will be granted, and the Third-Party Complaint will be dismissed in its entirety.

II.     **LEGAL STANDARD**

Under Fed.R.Civ.P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim. In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In reviewing a facial challenge, which contests the sufficiency of the pleadings, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In the instant matter, HUD's Rule 12(b)(1) motion sets forth a facial attack because it contends that the Amended Third-Party Complaint lacks sufficient factual allegations to establish an express waiver of sovereign immunity for any of Whitehall and Saucon's claims, and therefore, this Court lacks subject matter jurisdiction. If I find that this Court does not have subject matter jurisdiction over the case, I must dismiss the entire action. See *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.")

III.    **ANALYSIS**

First, it is well settled that "the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal quotations and citations omitted). "A waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *Id*. Any ambiguity as to consent to be sued must be construed strictly in favor of the sovereign, *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992).

4

In the instant matter, HUD argues that the Amended Third-Party Complaint fails to identify an express waiver of sovereign immunity for any of its claims. HUD Memo in Support of Motion to Dismiss, Docket No. 83, p. 7 ("HUD Memo"). HUD further argues that despite citing to 28 U.S.C. §§ 1331, 1343 and 2201 and the Administrative Procedures Act in the Amended Third-Party Complaint, Whitehall and Saucon do not "cite to an unequivocal waiver of sovereign immunity for the specific claims they assert against HUD." HUD Memo, p. 7. In response, Whitehall and Saucon argue that they did in fact plead a waiver of sovereign immunity for each specific claim asserted in their Amended Third-Party Complaint.

A.    **National Housing Act**

In their opposition to HUD's Motion to Dismiss, Whitehall and Saucon first argue that their Amended Third-Party Complaint identifies an express waiver of sovereign immunity under the National Housing Act ("NHA"), 12 U.S.C. § 1701 *et seq.* In response, HUD argues that the waiver of sovereign immunity found in the NHA does not apply because it disposed of the properties at issue in this matter pursuant to 12 U.S.C. § 1715z-11a(a), which is outside the scope of NHA's waiver.

It is true that the NHA contains a provision that expressly waives HUD's sovereign immunity in certain circumstances. 12 U.S.C. § 1702. However, Congress has granted HUD "flexible authority" in addressing multifamily projects under Section 1715z-11a(a) as follows:

> During fiscal year 1997 and fiscal years thereafter, the Secretary may manage and dispose of multifamily properties owned by the Secretary . . . and multifamily mortgages held by the Secretary on such terms and conditions as the Secretary may determine, *notwithstanding any other provision of law*.

12 U.S.C. § 1715z-11a(a) (emphasis added). HUD argues that section 1715z-11a(a), quoted above, is not part of the NHA and therefore, the waiver of immunity contained in Section 1702 of the NHA does not apply. In response, Whitehall and Saucon argue that the flexibility statute,

Section 1715z-11a(a), is "textually and structurally part of the NHA and should be treated accordingly." Whitehall and Saucon Memo of Law in Opposition to Motion ("Memo in Opp"), Docket No. 93, p. 7.

Whitehall and Saucon are incorrect, as section 1715z-11a(a), the flexibility statute, is not part of the NHA. First, it was not enacted as an amendment to the NHA, but rather as part of the Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act of 1997. *See* Codification to §1715z-11a(a) ("Section was enacted as part of the Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1997, and not as part of the National Housing Act which comprises this chapter.") Courts in other jurisdictions have examined this same issue and found that section 1715z-11a(a) is not part of the NHA and therefore, the NHA's waiver of sovereign immunity does not extend to section 1715z-11a(a). See *Ku v. United States*, 2012 WL 2864509 at *4 (S.D.N.Y. May 4, 2012); *Jewish Ctr. for Aged v. HUD*, 2007 WL 2121691, at *5 (E.D. Mo July 24, 2007), *aff'd on other grounds*, 508 F. App'x 14 (2d Cir. 2013).

In their opposition, Whitehall and Saucon state that "most courts find that the flexibility statute is part of the NHA," Memo in Opp., p. 7, but do not cite to a single case that supports this proposition. That is this proposition is incorrect and there are no cases that support it, as the flexibility statute plainly states that it is not part of the NHA. Therefore, section 1715z-11a(a) is excluded from the waiver of sovereign immunity found in section 1702 of the NHA and the Court cannot review HUD's actions in this matter pursuant to the NHA.

### B.  Administrative Procedures Act

Next, Whitehall and Saucon argue that their Amended Third-Party Complaint identifies an express waiver of sovereign immunity under section 702 of the Administrative Procedures

Act, which provides that any "person ... aggrieved by agency action within the meaning of a relevant statute is entitled to judicial review thereof." 5 U.S.C. § 702. In response, HUD argues that there is no waiver under the APA because section 1715z-11a(a), the flexibility statute under which the mortgages in question were sold, provides HUD with broad discretion and therefore, judicial review is precluded.

Under the APA, the action of an agency such as HUD is not subject to judicial review when such action "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Specter v. Garrett*, 971 F.2d 936, 943 (3d Cir. 1992). This means that a court has no jurisdiction if the statute or regulation governing the challenged agency action "is drawn so that a court would have *no meaningful standard* against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (emphasis in original). Therefore, section 701(a)(2) requires dismissal when there is "no law to apply." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971).

Before the court may determine that an agency decision is unreviewable under section 701(a)(2), it must examine whether: 1) the action involves broad discretion, not just the limited discretion inherent in every agency action; 2) the action is the product of political, military, economic, or managerial choices that are not readily subject to judicial review; and 3) the action does not involve charges that the agency lacked jurisdiction, that the decision was motivated by impermissible influences such as bribery or fraud, or that the decision violates a constitutional, statutory, or regulatory command. *Davis Enterprises. v. U.S. E.P.A.*, 877 F.2d 1181, 1185 (3d Cir. 1989).

As for whether the decision of HUD to sell Whitehall and Saucon's mortgages involves "broad discretion," I must look to the statute under which the sale of the mortgages was

authorized. A review of the record shows that HUD sold the mortgages in question pursuant to

12 U.S.C. § 1715z-11a(a), titled "Disposition of HUD-owned Properties." This is evident from

the notice published by HUD in the Federal Register of its intent to sell the mortgages, which

states: "This is a sale of unsubsidized mortgage loans, pursuant to Section 204(a) of the

Department of Veterans Affairs and Housing and Urban Development, and Independent

Agencies Appropriations Act of 1997 (*12 U.S.C. § 1715z-11a(a)*))."  Compl., Ex. F (emphasis

added). Further, section 1715z-11a(a) states that HUD "may manage and dispose of multifamily

properties owned by the Secretary . . . and multifamily mortgages held by the Secretary on such

terms and conditions as the Secretary may determine, *notwithstanding any other provision of*

*law*." 12 U.S.C. § 1715z-11a(a) (emphasis added). Numerous courts have found that the

language contained in this provision, "notwithstanding any other provision of law," indicates that

Congress granted HUD broad discretion to dispose of these types of mortgages, and that section

1715z-11a(a) overrides any specified, contrary provision of law, including the right to agency

review contained in the APA. *Ku*, 2012 WL 2864509, at *4 (finding that the "notwithstanding

clause" indicates that section 1715z-11a(a) supersedes any other law that could hinder its

objectives); *Massie v. U.S. Dep't of Hous. & Urb. Dev.*, 2007 WL 184827, at *3-5 (W.D. Pa.

Jan. 19, 2007), *order vacated in part on other grounds on reconsideration*, 2007 WL 674597

(W.D. Pa. Mar. 1, 2007) (finding that the "notwithstanding clause" contained in 1715z-11a(a) is

"clear intent by Congress to preempt all other statutes and regulations."); *Jewish Ctr. for Aged*,

2007 WL 2121691, at *6 (stating that section 1715z-11a(a) results in HUD being immune from

APA review, as "APA's waiver would run afoul of the 'notwithstanding' clause found in [the

flexibility statute] that supersedes any other statute that hinders or impedes its objectives.");

*EGAE, LLC v. Fudge*, 2023 WL 5957144, at * 4, 5 (D. Ala. Sept. 13, 2023) (stating that in

enacting section 1715z-11a(a), Congress chose to include "strong, unambiguous language making clear that the discretion it accords HUD is not subject to 'any other provision of law.'")

As Congress granted HUD broad discretion in 1715z-11a(a), there is no law to apply in order to determine if HUD's decision to sell the mortgages in question, as well as the method by which they were sold, was proper. Whitehall and Saucon cite to 12 U.S.C. § 1701z-11 and 24 C.F.R. §290.35 as potentially providing meaningful standards by which to evaluate HUD's actions under section 1715z-11a(a). However, this argument must fail, as section 1715z-11a(a)'s broad discretion to dispose of these types of mortgages supersedes both section 1701z-11 and 24 C.F.R. 290.35. See *Ku*, 2021 WL 2864509, at *4 (Section 1715-z11a(a) supersedes 1701z-11); *Massie*, 2007 WL 184827, at *3-4; *Acorn v. U.S. Dep't of Hous. & Urb. Dev.*, 2005 WL 8179274, at *5 (N.D. Ill. Oct. 5, 2005) (stating that 1715z-11a(a) "wipes out 'any law' that would interfere with HUD's discretion to manage and dispose of multifamily properties.").

Based on all the above, the first factor to consider in determining whether an agency action is reviewable under the APA shows that HUD has broad discretion to dispose of mortgages like those involved in the instant matter. This broad discretion is in line with a finding that HUD's actions in this matter are not reviewable under the APA. As to the second factor, HUD argues that whether and on what terms to sell mortgages is an "economic choice that is 'not readily subject to judicial review.'" HUD Memo, pp. 11-12. I agree with HUD on this factor, as it is in the best position to determine how mortgages like these should be sold. Lastly, as to the third factor, Whitehall and Saucon do not allege that HUD lacked jurisdiction over their mortgages, that the decision to sell them was motivated by impermissible influences such as bribery or fraud, or that the decision to sell them violates a constitutional, statutory, or regulatory

command. Accordingly, the three factors that I must examine before determining whether HUD's action are unreviewable under the APA all come down on the side of unreviewability.

Further, Whitehall and Saucon cited to no authority holding that a statute containing a "notwithstanding" clause is reviewable under the APA. As a final point, Whitehall and Saucon present extensive argument claiming that HUD promised them they would be able to bid on the mortgages during the auction process then excluded them from the sale. However, Whitehall and Saucon cannot cite to any document that supports this allegation. In fact, a review of the letter that HUD sent to Whitehall and Saucon informing them that their mortgages were to be sold stated "[n]either you, nor any of your principals, affiliates, or assigns can purchase the loan or qualify to bid in the loan sale." Compl., Ex. E. Further, the Notice published by HUD in the Federal Register stated that a "mortgagor or healthcare operator, including its principals, affiliates, family members, and assigns, with respect to one or more of the Mortgage Loans being offered in the Loan Sale" are "among those INELIGIBLE to bid on the Mortgage Loans being sold." Compl., Ex. F, p.2 (capitalization in original). This evidence contradicts Whitehall and Saucon's unsubstantiated allegations that they were promised to be able to bid on their own defaulted mortgages when they were sold.[1] Therefore, I find this argument to be unpersuasive.

Lastly, Whitehall and Saucon have failed to allege that any other claim contained in their Third-Party Amended Complaint contains an express waiver of sovereign immunity that would allow their claims against HUD to proceed. I find that section 1715z- 11a(a) gave HUD broad discretion to determine how and when to sell the mortgages in question and under what terms.

---

[1] I must point out the absurdity of this argument. Whitehall and Saucon are basically arguing that they should be permitted to default on their mortgages for lack of payment, and when HUD sells the mortgages, they should then be permitted to bid on them in amounts significantly less than their original debt. Allowing this course of action would result in a windfall for Whitehall and Saucon and should not be permitted.

Therefore, Whitehall and Saucon cannot prove that there was a waiver of sovereign immunity in this matter sufficient to establish that I have jurisdiction over the case, and the sale of the mortgages is not reviewable by this Court.

**III.**    **<u>CONCLUSION</u>**

For all the reasons set forth above, I will grant HUD's Motion to Dismiss Whitehall and Saucon's Amended Third-Party Complaint. The Amended Third-Party Complaint will be stricken, and HUD will be dismissed from the instant action. An appropriate order follows.