IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEHIGH VALLEY 1, LLC, successor by assignment to WINDSTREAM CAPITAL, LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION, | : : : : : : : : : : | CIVIL ACTION NO. 24-2627 |
| Plaintiff | : | |
| v. | : : | |
| WHITEHALL FIDUCIARY LLC, as TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007 | : : : | |
| Defendant | | |

| | | |
|---|---|---|
| LEHIGH VALLEY 1, LLC, successor by assignment to WINDSTREAM CAPITAL, LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION, | : : : : : : : : : : | CIVIL ACTION NO. 24-2709 |
| Plaintiff | : | |
| v. | : : | |
| SAUCON TRUST U/T/A DATED OCTOBER 1, 2007 | : : | |
| Defendant | : | |

**NON-PARTIES WHITEHALL MANOR, INC. AND SAUCON VALLEY MANOR, INC.'S RESPONSE IN OPPOSITION TO RECEIVER'S MOTION TO ENFORCE COMPLIANCE WITH SUBPOENAS**

On September 3, 2025,[1] court-appointed receiver, Duane Morris LLP through Erin Duffy, Esq. ("Receiver") emailed the undersigned requesting the acceptance of service of two subpoenas with numerous documents requests directed to non-parties (the "Subpoenas"). A true and correct copy of the Subpoenas are attached to Receiver's present Motion to Enforce Compliance with its Subpoenas to Third Parties Whitehall Manor, Inc. and Saucon Valley Manor, Inc. (the "Motion" or "Mot.")[2] and marked Exhibits A and B. (ECF No. 141). None of the requests related to the only two issues relevant in this mortgage foreclosure action: whether a mortgage exists and whether defendants defaulted on such mortgage. Receiver's service of expansive, irrelevant document requests to non-parties violates Federal Rule of Civil Procedure 45(d)(1), which requires a party and attorney issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The requested documents also include information protected by the Health Insurance Portability and Accountability Act ("HIPAA"). The non-parties Whitehall Manor, Inc., Saucon Valley Manor, Inc., (the "Non-Party Tenants") respectfully request the Court deny Receiver's Motion.

I. **RELEVANT FACTUAL HISTORY**

This present litigation between Plaintiff and Defendants is a mortgage foreclosure action involving two real properties owned by Whitehall Fiduciary LLC, as Trustee of Whitehall Trust U/T/A Dated August 1, 2007 ("Defendant Whitehall") at 1177 6th Street, Whitehall, PA and

---

[1] Of note, the subpoenas are not dated or signed by Receiver, and therefore the date of the email transmission is considered the issuance date.

[2] Likewise, Non-Party Tenants note that Receiver ignored the Court's requirement that discovery disputes and motions related thereto must limit accompanying briefs to no more than five (5) pages. *See Hon.* Catherine Henry, *Policies & Procedures*, U.S. Dist. Ct. for the E.D. Pa. (Jan. 31, 2025) https://www.paed.uscourts.gov/sites/paed/files/documents/procedures/henpol.pdf. Because of Receiver's non-compliance, Non-Party Tenants are unable to respond to Receiver's expansive brief without additional pages.

11/28/2025 SL1 3867184v1 118398.00007

Saucon Trust U/T/A Dated October 1, 2007 ("Defendant Saucon") at 1050 Main Street, Unit # 1, Hellertown, PA (collectively the "Properties"). Plaintiff alleges Defendant Whitehall secured a loan in the principal sum of $15,788,700.00 in accordance with certain terms and conditions of a certain mortgage note dated January 26, 2012, and that Plaintiff is the current holder of the foregoing note and mortgage. (24-2627 at ECF No. 7, ¶¶ 11-13). Similarly, Plaintiff alleges Defendant Saucon secured a loan in the principal sum of $19,462,800.00 in accordance with certain terms and conditions of a certain mortgage note dated December 1, 2012, and that Plaintiff is the current holder of the foregoing note and mortgage. (24-2709 at ECF No. 9, ¶¶ 11-13). Plaintiff further alleges that both Defendant Whitehall and Defendant Saucon are in default of the respective notes and mortgages for failure to make required payments of principal and interest.

Pursuant to an Order of the Court dated May 2, 2025, Receiver was appointed to take control of the Properties. *See* Order, ECF No. 65, *Lehigh Valley 1 LLC v. Whitehall Fiduciary LLC as Tr. of Whitehall Tr. U/T/A Dated Aug. 1, 2027*, No. CV 24-2627 (E.D. Pa. May 2, 2025) ("Order"). Receiver was vested with the "usual powers" over the Properties, including the ability to "demand, collect and receive the rents … and all personal property owned or utilized by Lehigh Valley 1 LLC … including all books, records, bank accounts … or other access information in the possession of or reasonably available to [Defendant] Whitehall, [Defendant] Saucon or their property managers." *Id*. ¶ 6.

Non-Party Tenants separately rent the respective Properties pursuant to written leases with Defendant Whitehall and Defendant Saucon Valley. Both Non-Party Tenants utilize the Properties to operate personal care facilities licensed by the Commonwealth of Pennsylvania. Non-Party Tenants' businesses are their own; neither Defendant Whitehall nor Defendant

3

Saucon have ownership interest in the personal care facilities, nor do they operate or hold a license to operate either facility. Non-Party Tenants are not, and have never been, considered "property managers" of the respective Properties or pursuant to the respective leases. *Id.*

By its nature and under the "usual" limitations of the law, the Court's Order appointing Receiver does not grant Receiver broad powers over non-parties to the lawsuit. *Id.* ¶ 1. Receiver may collect rents that would normally be paid to Defendants Whitehall and Saucon, and may take actions "necessary to preserve, maintain, operate, and manage the Propert[ies]." *Id.* ¶ 6(c). Non-Party Tenants' business operations, information related thereto, as well as information relating to Non-Party Tenants' clients, are not under the control or ownership of Defendants. Moreover, the Order does not expressly affect or alter the applicable scope of discovery governing subpoenas in federal courts.

For these reasons, Non-Party Tenants objected to the overly broad and unduly burdensome Subpoenas served upon them. Since the Subpoenas almost exclusively sought information unrelated to the claims and defenses at issue in the underlying litigation, Non-Party Tenants properly objected to the scope of the requests, as well as to the unnecessary burden they place upon business entities not parties to the underlying lawsuit.

## II. ARGUMENT

### A. Legal standard.

It is hornbook law that "standards for non-party discovery require a stronger showing of relevancy than for party discovery." *Zukoski v. Philadelphia Elec. Co.*, No. CIV. A. 93-4780, 1994 WL 637345, at *3 (E.D. Pa. Nov. 14, 1994) (denying discovery requests propounded upon non-parties as irrelevant to the underlying claims and defenses); *Rollstock, Inc. v. SupplyOne, Inc.,* No. 22-MC-20, 2022 WL 1443389, at *2 (E.D. Pa. May 6, 2022) (collecting cases). That

4

relevancy determination is governed by Federal Rule of Civil Procedure 26(b), which requires that discovery requests be "relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1); *Green v. Cosby*, 314 F.R.D. 164, 169 (E.D. Pa. 2016).

In addition, Federal Rule of Civil Procedure 45 governs the requirements for subpoenas served upon non-parties. Under the Rule, a party serving a subpoena on a non-party must take reasonable steps to avoid imposing an undue burden or expense on the non-party subject to the subpoena. Fed. R. Civ. P. 45(d)(1). In determining whether a subpoena imposes an undue burden, courts should "weigh the burden to the subpoenaed party against the value of the information to the serving party." *Rollstock, Inc.*, 2022 WL 1443389, at *1 (citations omitted). The "unwanted burden" put upon non-parties by a subpoena "is afforded special weight in evaluating the balance of competing needs in a Rule 45 inquiry." *Id.*; *Avago Techs. U.S., Inc. v. IPtronics Inc.*, 309 F.R.D. 294, 297 (E.D. Pa. 2015) ("Broader restrictions may be necessary to prevent a non-party from suffering harassment or inconvenience.").

Likewise, the "undue burden" category "encompasses situations where the subpoena seeks information irrelevant to the case or that would require a non-party to incur excessive expenditure of time or money." *Avago Techs. U.S., Inc.*, 309 F.R.D. at 297 (quoting *Cook v. Howard*, 484 Fed.Appx. 805, 812 n. 7 (4th Cir.2012)).

In Pennsylvania, a "mortgage foreclosure is an *in rem* proceeding which seeks the limited determination of whether a default warrants subjecting the mortgaged property to judicial sale." *In re Thomas*, 626 B.R. 793, 802 (Bankr. E.D. Pa. 2021). To establish a claim for mortgage foreclosure, a plaintiff "must demonstrate the existence of an obligation secured by a mortgage, and a default on that obligation." *Wells Fargo Bank, N.A. v. 2600 E. Carson St. Assocs., L.P.*,

No. 2:17- CV-00764-CRE, 2018 WL 1183220, at *2 (W.D. Pa. Mar. 7, 2018). Relevance, therefore, is related to these discrete issues.

### B. Notwithstanding the appointment of Receiver, discovery is still limited by relevancy to the underlying claims and even more rigidly applied to non-parties.

As an initial matter, Receiver improperly and incorrectly attempts to stretch the bounds of discovery simply because a receiver has been appointed in this action. This is incorrect. According to Receiver,

> [W]hether the Request is related to the claims and defenses in this case is not relevant, so long as the Request seeks documents related to the Receiver's duties.[3]

*See e.g.*, Mot. at 7, 8, 9. Non-Party Tenants have not found, and Receiver has not shown, any authorities that expressly support such an expansive interpretation of the discovery rules.

The authorities Receiver relies upon do not support this expansion of the applicable scope of non-party discovery. Plaintiff's reliance upon *Sec. & Exch. Comm'n v. Chen*, 2016 WL 3598108, at*4 (C.D. Cal. Feb. 4, 2016) is without merit. Not only is *Chen* an unpublished decision from outside this Circuit, the underlying facts are highly distinguishable and the holding is far more limited than Receiver would lead the Court to believe. In *Chen*, and unlike the case at bar, the litigants opposing discovery were parties, not third parties. Crucial to the *Chen* court's

---

[3] Despite repeating this claim throughout the Motion, it is worth noting that Receiver's "Legal Standard" section states a different, albeit still incorrect, approach:

> Rule 26 provides that "the scope of relevance in discovery is not limited to the matters set forth in the operative complaint, but instead to 'any party's claim or defense.'" *Id*. (quoting Fed. R. Civ. P. 26(b)(1)). In the case of a Receiver's subpoena, such relevance can be found by looking to the Receiver's duties. *See, e.g., Sec. & Exch. Comm'n v. Chen*, 2016 WL 3598108, at*4 (C.D. Cal. Feb. 4, 2016).

Mot. at 12-13. As explained *infra*, this too misses the mark.

6

decision was the fact that the litigants had filed a motion to intervene, and thus "gain[ed] party status," meaning they could "engage in discovery [] and to be subject to discovery" under the scope applicable to parties to a case. *Chen*, 2016 WL 3598108, at *4. Once deemed parties, the *Chen* court held that the discovery sought was "relevant to plaintiff's claim of fraud" as well as to the receiver's unique duty to "pursue claims of the Receivership Entities to recover sums from third parties" and to "conduct such investigation and discovery as may be necessary to locate and account for all of the assets of or managed by the Receivership Entities[.]" *Id*. No comparable duties exist here, no claim for fraud has been alleged here, and the Non-Party Tenants have not intervened in the underlying action.

Likewise, *Grider v. Keystone Health Plan Cent., Inc.*, 2005 WL 2030456, at *7-8 (M.D. Pa. July 28, 2005) is inapplicable and otherwise supports Non-Party Tenants' objections to the scope of the Subpoenas. *See* Mot. at 15. The *Grider* decision rests upon unique circumstances, where a non-party was substantially involved in the plaintiff's litigation strategy. Specifically, the *Grider* court held that because the non-party has "'provided preliminary support and analysis to [the] plaintiffs' counsel, in a mutual effort to seek relief for Dr. Grider and other similarly situated Pennsylvania physicians' and that the PMS has 'continued to monitor the progression of this case and communicate with [the] plaintiffs' counsel as part of a common interest in obtaining relief for Pennsylvania physicians," his testimony was deemed "sufficiently relevant to the litigation." *Id*. at *2. Here, Receiver has shown no such "significant interest" or involvement by Non-Party Tenants and seeks far more than limited testimony. *Id*.

Finally, *Fed. Trade Comm'n v. AmeriDebt, Inc*., 2006 WL 8457086, at *4 (D. Md. Sept. 11, 2006) merely stands for the position that discovery into non-parties by a receiver may be relevant in the circumstances where the non-parties are suspected to possess "funds which may

7

be property of the Receivership." *Id*. at *4. Where that is the case, it may be found that there is "a legitimate and substantial basis for the materials sought by the Receiver." *Id*. Here, Receiver does not contend that Non-Party Tenants possess funds or other property that may be or are property of the Receiver. Instead, pursuant to this Court's Order, the Receiver may "collect" rents and payments owed, which Non-Party Tenants do not dispute. Order (ECF 65), ¶ 6(a).

Thus, none of the authorities relied upon by Receiver – and none that Non-Party Tenants could find after significant effort – support Receiver's contention that the applicable rules of discovery do not apply to the Subpoenas – or, more specifically, that Receiver may obtain any and all documents from non-parties if Receiver believes the documents are related to its duties.

### C. The Court's Order is far more limited than Receiver contends.

Moreover, even if the Court were to view the Subpoenas through the lens of the Receiver's duties under the Order appointing it (it should not), the Order is far more limited than Receiver would like to believe. Specifically, Receiver relies upon Paragraph 6(a) of the Order, which grants the Receiver the power to

> (a) To enter and take immediate possession of the Property, and to demand, <u>collect and receive the rents</u>, income, revenues, proceeds and profits derived from tenants at the Property, their sublessees or any occupants in possession, including maintenance fees, management fees, special assessments and/or other charges relating to the Property, which are now due and unpaid or which may become due hereafter (collectively, the "Rents"), and <u>all personal property owned or utilized by Lehigh Valley 1 LLC</u> that relates to the management or operation of the Property, including all books, records, bank accounts, reserve accounts, cash on hand, keys, and combinations for locks or other <u>access information in the possession of or reasonably available to Whitehall, Saucon or their property managers</u> (collectively, the "Receivership Properties")[.]

Order (ECF No. 65), ¶ 6(a) (emphasis added); *see* Mot. at 13-14.

8

Read correctly, the Order empowers Receiver to, in relevant part, collect rents and monies owed, as well as access documents and information owned by or in the possession of Defendants and/or their property managers. *See id*.

Non-Party Tenants are <u>not</u> property managers, nor do Defendant Whitehall or Defendant Saucon have any ownership interest in Non-Party Tenants' business information or documents related thereto. Non-Party Tenants merely rent the respective Properties and operate independent businesses on the premises. The Order does not grant Receiver *carte blanche* to disrupt the business practices of Non-Party Tenants or obtain the documents and information related to their operations, clients, vendors, or the like. Receiver's overly expansive reading of the Order is without merit and does not legitimize the overly broad and burdensome requests that make up the Subpoenas.

### D. Under the applicable scope of discovery, the vast majority of documents sought by the Subpoenas are irrelevant to the underlying claims and defenses.

Viewed under the correct lens – i.e., the applicable scope of non-party discovery under Federal Rules of Civil Procedure 26 and 45 – the vast majority of documents sought by the Subpoenas are irrelevant to the underlying claims and are therefore properly objectionable.

Under the proper scope of non-party discovery, specifically as it pertains to relevancy to the underlying claims and defenses, the discovery requests must be related to "the existence of an obligation secured by a mortgage, and a default on that obligation." *Wells Fargo Bank, N.A.*, 2018 WL 1183220, at *2.

Because the Subpoenas' requests seek documents and information outside of this limited scope, and subject to Section II(E) *infra*, Non-Party Tenants stand by their objections. To avoid mere repetition of Non-Party Tenants' objections – correct copies of which are included as

9

Exhibits D and E to Receiver's Motion – Non-Party Tenants offer brief summaries of the relevancy objections to several requests in the Subpoenas:

**Request No. 2**: "Any and all contracts that were or are in effect as of the date of the Receiver's appointment … [including] every single contract with vendors that provide services to the properties.
- **Irrelevance**: "every single contract," with any vendor, entered into by Non-Party Tenants related to their business operations are entirely unrelated to whether Defendants defaulted on their respective mortgages. Receiver apparently concedes the irrelevancy of this request, noting that "whether the documents are related to the 'claims and defenses' in the action is not relevant for purposes of the [S]ubpoenas." Mot. at 5.

**Request No. 3**: "Employee documents and payroll related to persons employed by the property managers, or any of their affiliates."
- **Irrelevance**: To the extent this request is seeking all "[e]mployee documents and payroll" related to Non-Party Tenants' business operations, employees and other staff, those documents will not pertain to whether Defendants defaulted on their respective mortgages. Receiver apparently concedes the irrelevancy of this request, noting that "whether the documents are related to the 'claims and defenses' in the action is not relevant for purposes of the [S]ubpoenas." Mot. at 6.

**Request No. 4**: Rent rolls for all occupants of the property. This shall include not only tenants under any leases, but every single person or entity that occupies the property under a lease, license agreement, occupancy agreement, care agreement or any other similar arrangement[….]
**Request No. 5**: Any and all documents which reflect for each occupant of the property either rent or a fee paid for such occupancy relationship or agreement.
- **Irrelevance**: Documents relating to Non-Party Tenants' funds from the clients it serves, as well as any specific care or residency agreements, will not pertain to whether Defendants defaulted on their respective mortgages. Receiver is appointed to collect rents out to the Properties; Receiver is not empowered to intrude upon the relationships between Non-Party Tenants and their respective clients. Receiver apparently concedes the irrelevancy of these requests, noting that "whether the documents are related to the 'claims and defenses' in the action is not relevant for purposes of the [S]ubpoenas." Mot. at 7, 8.

**Requests No. 6 and 7**: Any and all financial statements [&] Current bank account information (including bank statements from the time the Receiver's Order was entered, through the present).
- **Irrelevance**: Non-Party Tenants are separate legal entities, and the financial statements, including cash reserves and bank accounts, are entirely separate from whether Defendants (their landlords) defaulted on mortgages. Receiver apparently concedes the irrelevancy of these requests, noting that "whether the Request is related to the claims and defenses in this case is not relevant" Mot. at 9.

**Request No. 10**: All communications relating to any amendment to lease agreements, including all drafts of same.

10

- **Irrelevance**: Communications relating to any amendments to lease agreements and drafts of the same are unrelated to this mortgage foreclosure, as it does not pertain to whether Defendants defaulted on their respective mortgages. Receiver apparently concedes the irrelevancy of these requests, noting that "whether the Request is related to the claims and defenses in this case is not relevant" Mot. at 12.

   E. **Tenants have produced relevant information and are willing to produce additional documents specifically regarding the management of the Properties.**

Notwithstanding Section II(D), *supra*, and despite Receiver's arguments that Non-Party Tenants have so far "not produced a single requested document" (Mot. at 14), Non-Party Tenants have in fact produced (i) their respective leases, (ii) information concerning rents paid over the past five (5) years, and (iii) allowed Receiver and Plaintiff to physically inspect the Properties.

However, in an effort to amicably resolve this dispute and avoid further costs and burden imposed by the Subpoenas, Non-Party Tenants will produce documents responsive to the Subpoenas to the extent they seek information specifically concerning the management, maintenance, repair, and improvements of the Properties. These documents will include the following:

- Documents sufficient to show the maintenance of the buildings located at the Properties during 2025;

- Documents sufficient to show the repairs of the buildings at the Properties during 2025; and

- Documents sufficient to show any capital improvements at the Properties from 2024 to 2025.

- Any management agreements relating to the Properties presently in effect;

- Documents sufficient to show the payments made to any management companies in 2025;

- Contracts with vendors that provide services relating to the upkeep and maintenance of the property in effect in 2025, including:
    - Sewer bills;

11

- Water bills;
- Repair or maintenance contracts; and
- Contracts relating to construction at the Properties.

Because these documents relate to 2025, the Non-Party Tenants will produce them on or before January 31, 2025 to allow for year-end accounting to be completed.

These documents, coupled with Receiver's prior physical inspection of the Properties, will sufficiently demonstrate the Properties have been maintained appropriately and alleviate any purported concerns that form the basis for the additional and irrelevant document requests.

To that end, Non-Party Tenants will also produce a privilege log based upon this discrete scope of relevant documents. Non-Party Tenants are willing to meet and confer with Receiver regarding the time and place of the production of documents and privilege log.

Non-Party Tenants will not produce documents and information related to their respective business operations. Non-Party Tenants will also not produce any documents that have already been produced by Defendants, including insurance and tax information.

### F. Further compliance with the Subpoenas would be unduly burdensome.

Any further compliance with the Subpoenas, as demanded by Receiver, would impose "undue burden" upon Non-Party Defendants. Fed. R. Civ. P. 45(d)(3)(A). As explained in detail above, the vast majority of the Subpoenas' requests seek documents and information wholly irrelevant to the claims and defenses of this litigation. Specifically, the issue of "the existence of an obligation secured by a mortgage, and a default on that obligation." *Wells Fargo Bank, N.A.*, 2018 WL 1183220, at *2.

Courts in this district understand that "undue burden" applies to situations "where the subpoena seeks information irrelevant to the case or that would require a non-party to incur excessive expenditure of time or money." *Avago Techs. U.S., Inc.*, 309 F.R.D. at 297. The

Subpoenas, as written, seek irrelevant information and documents the compilation of would require unnecessary and substantial expenditure of time and expense.

As written, the Subpoenas do not limit the requests in any period of time and seek broad swathes of information. By way of example, Request No. 4 in each of the Subpoenas seeks "[r]ent rolls for all occupants," which includes every customer of Non-Party Tenants' businesses who may have stayed at the Properties under a "a lease, license agreement, occupancy agreement, care agreement or any other similar arrangement[.]" Exs. A, B, ¶ 4. Not only does the request seek information irrelevant to the underlying claims and defenses, responding to this request would require Non-Party Tenants to incur substantial costs and expenditure of time compiling any and all such relevant information pertaining to clients throughout the entirety of their respective business operations.

Because the Subpoenas seek both irrelevant information and an overly-expansive range of documents, compliance with the Subpoenas would necessarily impose undue burden upon Non-Party Tenants.

### G. The Subpoenas seek documents protected from disclosure by HIPAA.

Finally, Non-Party Tenants object to the Subpoenas to the extent they seek the disclosure of health information protected by HIPAA. As defined by 45 C.F.R. § 160.103, "Individually identifiable health information" is

> information that is a subset of health information, including demographic information collected from an individual, and:
> (1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and
> (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and
>   (i) That identifies the individual; or

13

(ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

To the extent the Subpoenas seek, for example, all "rent rolls" and "occupancy agreement[s]," compliance with such requests would require Non-Party Tenants to identify every patient for whom the Non-Party Tenants provide care, disclosing the type and/or level of care necessary for such patients, and detailing how much each patient is charged. Such disclosure is barred by HIPAA, and therefore properly objected to.

### III. CONCLUSION

Based on the foregoing, Non-Party Tenants respectfully request that this Court deny Receiver's Motion to Enforce Compliance with its Subpoenas to Third Parties Whitehall Manor, Inc. and Saucon Valley Manor, Inc.

Respectfully submitted,

STEVENS & LEE, P.C.

Date: November 28, 2025

By: *s/Elizabeth Ware*
Elizabeth A. Ware, Esq.
Attorney I.D. No. 312046
111 North Sixth Street
Reading, PA 19601
(610) 478-2210
Elizabeth.Ware@stevenslee.com

*Counsel for Whitehall Manor, Inc. and Saucon Valley Manor, Inc.*

14

# CERTIFICATE OF SERVICE

I, Elizabeth A. Ware, Esq., hereby certify that the foregoing document was electrically filed and served upon all counsel of record via the Court's CM/ECF system.


Date:  November 28, 2025    *s/Elizabeth Ware*
Elizabeth A. Ware

11/28/2025 SL1 3867184v1 118398.00007