IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEHIGH VALLEY 1 LLC, successor by assignment to WINDSTREAM CAPITAL LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION | : : : : : : : : | CIVIL ACTION<br><br>NO.  24-2627 |
| v. | : : : | |
| WHITEHALL FIDUCIARY LLC, as TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007 | : : : | |

| | | |
|---|---|---|
| LEHIGH VALLEY 1, LLC, successor by assignment to WINDSTREAM CAPITAL LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION | : : : : : : : : | CIVIL ACTION<br><br>NO. 24-2709 |
| v. | : : : | |
| SAUCON TRUST, U/T/A DATED OCTOBER 1, 2007 | : : | |

## RECEIVER'S SIXTH REPORT AND SUMMARY OF INVENTORY

COMES NOW Duane Morris LLP through Erin Duffy, Esq., Receiver ("Receiver") in the above styled and numbered cause and, pursuant to the Order Appointing Receiver entered by the Court on May 2, 2025 ("Receivership Order"), files this Sixth Report and Summary of Inventory.

### I.      RECEIVER'S SIXTH REPORT

1.      Pursuant to the Receivership Order, Receiver submits to the Court this Sixth Report for the senior living facilities owned by Whitehall Fiduciary LLC, as Trustee of Whitehall Trust U/T/A Dated August 1, 2007 ("Whitehall") at 1177 6th Street, Whitehall, PA and Saucon Trust U/T/A Dated October 1, 2007 ("Saucon") at 1050 Main Street, Unit # 1, Hellertown, PA (collectively the "Properties"). This Sixth Report pertains to the Properties comprising the

receivership as of December 3, 2025, and is more fully set forth on the attached **Exhibit "A"**, which is incorporated herein by reference.

2.      I hereby declare that the information contained in this Sixth Report is true, accurate and complete, to the best of my knowledge and belief.

## II.      SUMMARY OF INVENTORY

3.      Pursuant to paragraph 6(t) of the Receivership Order, Receiver also files this Summary of Inventory for the Property, as set forth in **Exhibit "A**." This Summary of Inventory reflects that Receiver has not, as of December 3, 2025, taken inventory of property.  To take an Inventory, Receiver will incur costs of hiring a third-party vendor. Receiver is not willing to undertake these advanced costs because: (i) Plaintiff has refused to reimburse Receiver for fees and costs incurred to date; and (ii) due to the failed cooperation of Defendants, their Tenants and principals, Receiver has been unable to obtain any source of revenue from the Properties. Once there is revenue generated consistent with the Receiver Order, Receiver will complete this task.

Dated:  December 3, 2025                           Respectfully submitted,

By:  _/s/ Erin Duffy_____
Erin M. Duffy (PA 93924)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
Tel.: (215) 979-1000
Fax: (215) 979-1020
emduffy@duanemorris.com

*Receiver, Duane Morris LLP*

<u>**EXHIBIT "A"**</u>

**RECEIVER'S SIXTH REPORT AND SUMMARY OF INVENTORY**

<u>**INTRODUCTION**</u>

Duane Morris through Erin Duffy, Esq. ("**Receiver**") was appointed as Receiver of two senior living facilities located at 1177 6th Street, Whitehall, PA ("**Whitehall Manor"**) and 1050 Main Street, Unit # 1, Hellertown, PA ("**Saucon Manor"**) ("**Properties**") following the entry of the Order Appointing Receiver entered on May 2, 2025. The following is a summary as of December 3, 2025.

<u>**STATUS OF THE PROPERTIES**</u>

*Overview:* The Whitehall facility is a personal care home and memory care facility. Saucon Manor is a personal care home and memory care facility. Receivers' attorneys physically inspected both properties on May 21, 2025, and on September 30, 2025. As noted last month, Receiver was notified that Good Shepherd Rehabilitation Hospital ("GSRH") is operating out of Saucon Valley Manor and is a lessee at the property. Receiver was notified that the landlord for the property directed Good Shepherd Rehabilitation to pay November rent to either Saucon Trust or Saucon Valley Manor, Inc. Receiver on Friday, October 31st sent by mail and email and FedEx a demand for such rental payments to be directed to the Receiver. Receiver then sent a non-party subpoena to GSRH, attached as **Exhibit 1**. GSRH then produced a Premises Use & Lease Agreement between GSRH and Whitehall Manor Inc. and a Premises Use & Lease Agreement between GSRH and Saucon Valley Manor Senior Living, LLC[1]. *See* **Exhibit 2**.

Good Shepherd Rehabilitation additionally sent a letter (attached as **Exhibit 3**) on November 24, 2025 to Plaintiff's counsel, counsel for Whitehall Manor Inc. and Saucon Valley Manor, Inc. ("Tenants"), and counsel for Receiver, stating:

> "Based upon our review of the Order, Receiver is the party that is legally entitled to collect all rents payable by GSRH for the Hellertown Property and the Whitehall Property and GSRH is prepared to direct all future rent payments to Receiver until such time as the receivership is terminated by the Court."

Counsel for Whitehall Manor Inc. and Saucon Valley Manor Inc. then sent on November 25, 2025, a letter on behalf of Tenants disputing GSRH's determination that Receiver is owed rental payments and threatening GSRH that:

> "[D]iversion of payment may also cause termination of services, goods and/or utilities from the sublessor, since such diversion of payment by GSRH from the provider/payor would make those

---

[1] Receiver is not yet aware of what, if any, relationship Saucon Valley Manor Senior Living LLC has with Saucon Valley Manor, Inc.

services uncompensated."

The above referenced letter is attached as **Exhibit 4**.

On November 26, 2025, Receiver responded to counsel for Whitehall Manor Inc. and Saucon Valley Manor Inc.'s letter stating unequivocally that Tenants must retract the November 25th dispute letter and that such a letter is in complete dereliction of the Receiver Order. Receiver made clear that it will hold Tenants liable for any amount of rental payments received for the properties in the underlying action. *See* **Exhibit 5**.

*Default By Tenants.*    Also on November 26, 2025, Receiver sent a notice of default to both Saucon Valley Manor, Inc. and Whitehall Manor, Inc., attached as **Exhibits 6 and 7**, respectively. The letter requests evidence that the Defendant consented to the subleases, record of any other subleases, and provides 30 days to cure the failure to obtain consent. The letter additionally requests within 30 days Tenants' most recent annual and quarterly financial statement, as provided by in the leases between Defendants and Tenants.

*Appointment:*    Since the last report post-appointment ("**Appointment**") as Receiver, Receiver has issued nonparty subpoenas to tenants and operators, Whitehall Manor, Inc. and Saucon Valley Manor, Inc. ("Tenants"), made demands for rental payment, and received and reviewed documents from Defendants. Receiver has developed the impression from its review that the properties are neither generating income nor in possession of meaningful income, as they have not collected rent from Tenants since March 2021, and do not appear to have a stream of income otherwise. That said, Receiver is making efforts to obtain rental payments from occupants of the properties, including Tenants, per the Receivership Order. Receiver has thus far been unable to obtain any requested documents from Tenants and has not received any rental payments from Tenants. Tenants have taken the position that despite the clear language of the Receiver Order, that Receiver has no right to collect rent directly from the occupants of the Property.  Receiver has encouraged the Lender to seek redress on that issue to the Court, but to date, Lender has not done so.

*Rent Collection & Occupancy:* Receiver has not collected any rents. In addition, Defendants have not turned over any rents collected prior to Appointment, or any rents collected following Appointment. Tenants have not to date responded to Receiver's request for rent, despite Receiver sending a request on September 9 and an additional follow up on September 18, 2025. Receiver filed a Motion for Sanctions on October 6, 2025 to address Receiver's continuing inability to procure the information necessary to collect rental fees. Per the above, Receiver has made additional efforts to obtain rent from recently discovered sublessees.

*Make Ready Status/Marketing:* Receiver lacks information about vacancy, occupancy, and number of move-ins and move-outs during all months since Appointment, and is thus unable to determine what, if any, prescribed plan may be necessary. However, counsel for Defendants indicated during inspections at the Whitehall and Saucon facilities that there are 31 vacancies at Whitehall Manor and only 1 full-room vacancy at Saucon Valley Manor. Receiver is unable to determine from this limited information whether Whitehall is anticipating additional occupants.

*Staff & Management:* Defendants state that they have no employees, and Tenants refuse to produce documents related to employees. Thus Receiver is not aware of how many, or which, employees are at the Properties, or the sufficiency of staffing to meet the needs of the residents.

*Licensing***:** Since the time of Appointment, upon information and belief, both Properties, remain in compliance with licensure requirements. However, Receiver intends to report Tenants to the Department of Licensing if the defaults on the Leases are not cured.

*Records & IT*: Following Appointment, Tenants have not yet provided Receiver with certain information needed for the operation of either Property, including a rent roll report, income statement or balance sheet, as noted above. Defendants have stated that they do not own or maintain an information technology system.

*Maintenance:* Following Appointment, Receiver has not identified outstanding maintenance issues and will re-assess upon further information.

*Insurance:* Receiver requested additional insurance documentation and Receiver's Real Estate Department has reviewed the existing documentation and determined that it is compliant with the requirements in the leases. Receiver confirmed with counsel for Defendants that Defendants have renewed the required insurance and Receiver is in possession of the renewed insurance policies.

*Utilities and Contracts:* Receiver is unaware of any delinquency in utilities due to lack of records from Tenants.

*Litigation:* Upon information and belief, there was a pending Sheriff's sale of 1050 Main Street, Hellertown, PA, scheduled for August 8, 2025, which has since been resolved by payment plan. Receiver will monitor compliance with the payment plan, in which tenants will make monthly payments towards owed tax amounts. Tenants have as of November 30, 2025, made all required payments. Receiver requested confirmation of payment for the month of December.

*Inspection of the Property:* Receiver re-assessed the properties alongside representatives for the Plaintiff and counsel for Defendants on September 30, 2025. The Whitehall facility had multiple holes in the ceilings, in particular, holes in the lower floor ceilings, and evidence of water damage. Upon information and belief, Tenants' maintenance is in the process of addressing these issues. Receiver possesses notes regarding other observations and may, if needed, inquire into the status of repairs.

*Bank Account & Operations Overview:* Receiver provided Tenants and Defendants with bank account information to direct any rental payments to as of September 9, 2025.

*Receiver's Compensation:* Pursuant to paragraph 17 of the Order Appointing Receiver, Receiver is entitled to an hourly Receivership Fee of $975, and reimbursement of reasonable costs and expenses associated with the Receivership. Since inception, Receiver has incurred to date $ 246,390.09 in legal fees and business expenses associated with the Appointment of the Property.

EXHIBIT "A" – RECEIVER'S FIFTH REPORT

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEHIGH VALLEY 1 LLC, successor by assignment to WINDSTREAM CAPITAL LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION** | : : : : : : : : | **CIVIL ACTION**<br><br>**NO.  24-2627** |
| **v.** | : : : | |
| **WHITEHALL FIDUCIARY LLC, as TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007** | : : : : | |

| | | |
|---|---|---|
| **LEHIGH VALLEY 1, LLC, successor by assignment to WINDSTREAM CAPITAL LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION** | : : : : : : : : | **CIVIL ACTION**<br><br>**NO. 24-2709** |
| **v.** | : : : | |
| **SAUCON TRUST, U/T/A DATED OCTOBER 1, 2007** | : : : | |

## NOTICE OF INTENT TO SERVE SUBPOENA

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 45(a)(4), Receiver, Duane Morris LLP, through Erin Duffy, Esq., intends to serve a subpoena on The Good Shepherd Rehabilitation Hospital, which is not a party to the action, to produce the items listed in the subpoena attached hereto.

Dated:  November 13, 2025

Respectfully submitted,

By:  */s/ Brett L. Messinger*

Brett L. Messinger (63020)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
Tel.: (215) 979-1508
Fax: (215) 689-4903
blmessinger@duanemorris.com

*Counsel for Receiver, Duane Morris LLP*

# DuaneMorris®

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN

*FIRM and AFFILIATE OFFICES*

BRETT L. MESSINGER
PARTNER
DIRECT DIAL: +1 215 979 1508
PERSONAL FAX: +1 215 689 4903
*E-MAIL:* BLMessinger@duanemorris.com

*www.duanemorris.com*

HANOI
HO CHI MINH CITY
SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NORTH JERSEY
LAS VEGAS
SOUTH JERSEY
SYDNEY
MYANMAR

ALLIANCES IN MEXICO

November 13, 2025

VIA PROCESS SERVER

Good Shepherd Rehabilitation Hospital
850 South 5th Street
Allentown, PA 18103

**Re: Subpoena for Tenancy Records Per *Lehigh Valley 1, LLC v. Whitehall Fiduciary LLC*, and *Lehigh Valley 1, LLC v. Saucon Trust***

To Whom it May Concern:

This firm acts for the Receiver in the above-mentioned matter. We on October 31st issued a letter requesting information relating to past and ongoing rents and demanding turnover of rents associated with The Good Shepherd Rehabilitation Hospital's ("Good Shepherd") tenancy at the property located at 1050 Main Street, Unit # 1, Hellertown, PA, 18055, since the date of the Order of appointment, May 2, 2025.

We did not receive a response from Good Shepherd to our outreach and are thus issuing a subpoena to demand such information, pursuant to the Receivership Order attached hereto. The enclosed subpoena requests document production on **November 25, 2025**. Duane Morris LLP, through Erin Duffy Esq., will gladly reimburse you for the reasonable cost of the copies.

Please feel free to email the records if doing so is more convenient for your office. To the extent feasible, electronic transmission of records is preferred.

DUANE MORRIS LLP

30 SOUTH 17TH STREET                    PHONE: +1 215 979 1000    FAX: +1 215 979 1020
PHILADELPHIA, PA  19103-4196

DuaneMorris

Good Shepherd Rehabilitation Hospital
November 13, 2025
Page 2

Sincerely,

Brett L. Messinger

BLM

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Pennsylvania

| | |
|---|---|
| Lehigh Valley 1 LLC, successor by assignment to WINDSTREAM CAPITAL, LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION *Plaintiff*<br>v.<br>Whitehall Fiduciary LLC, as Trustee of Whitehall Trust U/T/A Dated August 1, 2007; Saucon Trust, U/T/A Dated October 1, 2007<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.    5:24-CV-02627 (CH)<br>5:24-CV-02709 (CH) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                   The Good Shepherd Rehabilitation Hospital

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached.

| Place: VIA email at BLMessinger@duanemorris.com or by mail to Duane Morris LLP, ATTN: Brett Messinger, 30 South 17th Street, Philadelphia, PA 19103. | Date and Time:<br><br>11/25/2025 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

Receiver, Duane Morris, LLP through Erin Duffy, Esq. _____ , who issues or requests this subpoena, are:

Brett Messinger; Duane Morris LLP, 30 South 17th Street, Philadelphia, PA 19103; 215-979-1508

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT TO SUBPOENA

### DEFINITIONS

1. "All" and "any" mean any and all.

2. "Communication" or "Communications" means any disclosure, transfer, or exchange of words, information, ideas, gestures, sounds, and/or images either from one person (or entity) to another (or others), or between two or more persons or entities, including, but not limited to, via e-mail, text message, instant message, voice message or any other written or verbal exchange.

3. "Related to" means in whole or in part pertaining to, constituting, containing, embodying, reflecting, identifying, stating, referring to, regarding, concerning, evidencing, supporting and/or in any way being relevant to the given subject matter.

4. "Good Shepherd" means Good Shepherd Rehabilitation Hospital or its affiliate, alleged tenant or occupant at 1050 Main Street, Hellertown, PA 18055:

5. The term "Document" includes all things within the meaning and scope of the term used in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedures, and the Federal Rules of Evidence, including all Communications.

6. "Communications" means and refers to every exchange of information of any nature, whether oral or written, from one person or entity to another, and any evidence of such exchange, including but not limited to correspondence, memoranda, emails, notes, logs, minutes, diaries, and calendars.

7. The connectives "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the Request most inclusive; and the term "including" shall mean "including without limitation."

8.  "Person(s)" or "individual(s)" means any natural person.

9.  All other terms used in these requests shall have their plain and ordinary meanings.

## REQUESTS

**YOU ARE COMMANDED** to produce at the time, date, and place set forth in the attached subpoena the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of such materials as they relate to Good Shepherd's tenancy at Saucon Valley Manor, located at 1050 Main Street, Hellertown, PA 18055:

1.  Any and all existing lease agreements related to Good Shepherd's tenancy at Saucon Valley Manor, since May 2, 2025;

2.  Any and all lease agreements between Good Shepherd and Whitehall Fiduciary LLC, since May 2, 2025;

3.  Any and all contracts with either Saucon Trust or Whitehall Fiduciary LLC that were or are in effect as of May 2, 2025; and

4.  Documents reflecting any rental payments related to tenancy at Saucon Valley Manor since May 2, 2025, detailing the date of such payments and the name of the recipient of the payment.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEHIGH VALLEY 1 LLC, successor by assignment to WINDSTREAM CAPITAL LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION** | : : : : : : : : | **CIVIL ACTION** |
| | : | |
| v. | : : | **NO.  24-2627** |
| | : | |
| **WHITEHALL FIDUCIARY LLC, as TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2027** | : : : | |

| | | |
|---|---|---|
| **LEHIGH VALLEY 1, LLC, successor by assignment to WINDSTREAM CAPITAL LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION** | : : : : : : : | **CIVIL ACTION**  **NO. 24-2709** |
| | : | |
| v. | : : : | |
| **SAUCON TRUST, U/T/A DATED OCTOBER 1, 2007** | : : | |

## ORDER

**AND NOW**, this 2nd day of May 2025, upon consideration of Plaintiff's Motion for Appointment of a Receiver (Docket No. 8 (24-2627) and Docket No. 17 (24-2709)), Defendants' opposition thereto, as well as all replies and sur-replies, and after oral argument being held, it is hereby **ORDERED** that Plaintiff's Motions are **GRANTED**. It is further **ORDERED** as follows:

### I.      APPOINTMENT OF THE RECEIVER

1.      Duane Morris LLP through Erin Duffy, Esq. is appointed as Receiver with the usual powers and  directions for the benefit of the Plaintiff of all the rents and profits now due and unpaid or to become due during the pendency of this mortgage foreclosure action, effective

immediately for all real and personal, tangible and intangible property (including, without limitation, all structures, leases, fixtures and moveable personal property, in addition to all of the property set forth in paragraph 6(a) hereof) owned by Whitehall Fiduciary LLC, as Trustee of Whitehall Trust U/T/A Dated August 1, 2007 ("Whitehall") at 1177 6th Street, Whitehall, PA and Saucon Trust U/T/A Dated October 1, 2007 ("Saucon") at 1050 Main Street, Unit # 1, Hellertown, PA (collectively the "Properties"); with respect to income of any kind; and with respect to any and all other property and property interests pledged or assigned to Plaintiff under the Loan Documents, as defined in the Complaints.

## II. TERM OF THE RECEIVER

2. The Receiver shall serve as the receiver for the Properties for a period which shall commence on the date of this Order and shall continue, notwithstanding the entry of judgment in favor of Lehigh Valley 1 LLC (by consent or otherwise), subject to the terms of paragraph 3 below, until the earliest to occur of: (i) the termination of such appointment by a subsequent Order of Court; (ii) Lehigh Valley 1 LLC's (or its nominee's, designee's or assignee's) acquisition of title to the Leasehold Estate through the delivery to Lehigh Valley 1 LLC (or its nominee, designee or assignee) of a sheriff's assignment or by assignment in lieu of foreclosure; or (iii) full payment of all sums due and owing under the "Loan Documents" (as defined in Plaintiff's Complaints).

3. Notwithstanding the terms of paragraph 2, at Lehigh Valley 1 LLC's request, and upon Court approval, following the occurrence of the events described in part (iii) of paragraph 2, the Receiver shall continue the receivership for such reasonable period as may be necessary to wind up the receivership.

4. The receivership may be terminated at any time by Lehigh Valley 1 LLC filing with the Court and serving upon the Receiver, Whitehall, and Saucon a Notice of Request to Terminate Appointment of the Receiver (a "Termination Request").

2

5.      Within 30 days after the termination of the receivership, the Receiver shall file with the Court and serve upon Lehigh Valley 1 LLC, Whitehall and Saucon its final report and accounting for the receivership, and the Receiver or Lehigh Valley 1 LLC may request that the Court enter an Order approving such final report and accounting and discharging the Receiver from its duties under this Order.

### III.      POWERS AND DUTIES OF THE RECEIVER

6.      The Receiver shall have all necessary powers to manage the rents and profits of the Property, including the following powers:

(a)      To enter and take immediate possession of the Property, and to demand, collect and receive the rents, income, revenues, proceeds and profits derived from tenants at the Property, their sublessees or any occupants in possession, including maintenance fees, management fees, special assessments and/or other charges relating to the Property, which are now due and unpaid or which may become due hereafter (collectively, the "Rents"), and all personal property owned or utilized by Lehigh Valley 1 LLC that relates to the management or operation of the Property, including all books, records, bank accounts, reserve accounts, cash on hand, keys, and combinations for locks or other access information in the possession of or reasonably available to Whitehall, Saucon or their property managers (collectively, the "Receivership Properties");

(b)      To access and use office equipment at the Properties used by Whitehall, Saucon or their property managers, including computer equipment, software programs and passwords;

(c)      To take all actions necessary to preserve, maintain, operate, and manage the Property. The Receiver must obtain Lehigh Valley 1 LLC's prior written consent before any such expenditures are made;

(d)      To employ counsel and, with the consent of Lehigh Valley 1 LLC, accountants or other professionals, contractors and support personnel and other persons necessary

3

in order to carry out its duties as the Receiver and to preserve, maintain and operate the Property, and to compensate such persons at competitive rates, without further Order of this Court, at their respective hourly rates, plus reimbursement of all reasonable and necessary out-of- pocket expenses;

(e)     To commence, prosecute, continue or defend actions at law or in equity (in its own name or in the names of Whitehall or Saucon) that the Receiver deems necessary to protect or preserve the Property, to recover possession of the Property, to collect the rents, or to evict or eject any tenants or occupants in accordance with applicable state laws;

(f)     To continue in effect, modify or terminate (if and to the extent terminable without penalty or premium unless such termination penalty or premium shall be paid by the Receiver) agreements, contracts, understandings or commitments entered into by Whitehall or Saucon with respect to the Properties, to the extent permitted by applicable law, and to make additional agreements and contracts reasonably necessary for the operation and preservation of the Properties;

(g)     To retain a reputable management company (including, but not limited to, an affiliate of the Receiver), maintenance personnel, broker, leasing agent and/or marketing agent to operate and manage the Properties, and to market the Properties for rent, without further order of this Court, but with the consent of Lehigh Valley 1 LLC, and at competitive rates plus reimbursement of its reasonable and necessary out-of-pocket expenses;

(h)     To pay all past-due and current insurance premiums, taxes, assessments, sewer and utility charges levied against the Properties, and (with the consent of Lehigh Valley 1 LLC) to purchase merchandise, construction and other materials, supplies and services as the Receiver deems necessary and advisable to assist the Receiver in performing its duties and to pay the ordinary and usual rates and prices;

(i)     To open and utilize any new bank accounts as the Receiver deems necessary

4

or desirable in connection, and the Receiver is authorized, empowered and directed to use Whitehall's and/or Saucon's tax identification number in connection with the revenue and expenses with respect to the Properties;

(j)     To make, enter into, enforce, terminate, modify or accept a surrender of any of the Leases (as defined in the Mortgage); to obtain and evict occupants (subject to applicable laws and regulations); to bring or defend any suits in connection with the Leases or Rents in its own name or in the name of Whitehall or Saucon; to compromise any Rents or other payments, income or proceeds that may become due; and to sue for or otherwise collect and receive all Rents, including those past due and unpaid. Rents and Leases shall be turned over to Receiver and the Defendant shall be enjoined and restrained from collecting the Rents and Leases of the Properties or interfering with Receiver's ability to collect said Rents and Leases. Tenants, **occupants, and licensees** of the Properties are enjoined from paying any rent or lease payment to the Defendant, its agents, servants or attorneys, and if they do so, they may be held liable to Receiver and Plaintiff for these sums;

(k)     To present for payment any checks, money orders or other forms of payment made payable to Whitehall, Saucon, their property managers, or any other agent, assignee or nominee of Whitehall or Saucon, which constitute Rents, endorse and collect the proceeds, to be used and maintained as elsewhere provided;

(l)     To keep the Properties insured (whether by the existing insurance coverages or new coverages), each of which insurance policy shall name the Receiver and Lehigh Valley 1 LLC as additional insureds, if permitted by the insurer, and shall comply, at a minimum, with the terms of the Loan Documents;

(m)     As Receiver, to use for any such purpose any funds of Whitehall or Saucon, including the Rents;

(n)     To notify all local, state and federal government agencies, all vendors and suppliers, and any and all others who provide goods and services to the Properties of its appointment as the Receiver;

(o)     Receiver is authorized to apply income from the Properties, subject to the lien rights of Lehigh Valley 1 LLC, as follows and in the following order to the extent funds are available: first, to pay Receiver's approved fees and expenses which include the Receiver's attorneys' fees related to the receivership; second, to pay all operating expenses with respect to the Properties (other than the obligations owed to Plaintiff under the Loan Documents); third, to pay all capital obligations with respect to the Properties; fourth, to fund reasonable reserves for anticipated operating expenses and capital obligations with respect to the Properties; and lastly, to pay the obligations owed to Plaintiff under the Loan Documents;

(p)     To take any and all steps necessary to receive, collect and review all mail or other parcels relating to the Properties addressed to Whitehall, Saucon and/or their property managers, including, but not limited to, mail or other parcels addressed to any post office boxes held in the name of Whitehall, Saucon, their property managers, or any other agent, assignee or nominee of Whitehall or Saucon, and to instruct the U.S. Postmaster and any other mail or parcel carrier or service to re-route, hold, and/or release said mail or other parcels to the Receiver; provided that any mail and other parcels addressed to Whitehall or Saucon that do not relate to the Properties and reviewed by the Receiver in the performance of its duties will be forwarded to Whitehall, Saucon or their property managers by the Receiver after its review;

(q)     With prior written consent and authorization from Lehigh Valley 1 LLC to delegate or assign any and all rights and powers of the Receiver set forth herein, in the reasonable discretion of the Receiver;

(r)     To apply to this Court for further direction and for such further powers as may be necessary to enable the Receiver to fulfill its duties;

6

(s)     To keep a true and accurate account of any and all receipts and expenditures for the Properties;

(t)     Receiver shall, within 30 days of qualification and appointment, provide Lehigh Valley 1 LLC, Whitehall and Saucon with an inventory of all property of which Receiver has taken possession. If Receiver subsequently comes into possession of additional property, Receiver will provide Lehigh Valley 1 LLC, Whitehall and Saucon with a supplemental inventory;

(u)     In addition to any financial, operating, and other reports and information required to be delivered pursuant to the Loan Documents, Receiver shall provide the following documents for the immediate preceding calendar month, which documents are believed by the Receiver as being true, correct, and complete as of the reporting date;

(i) a balance sheet, statement of income and expenses, statement of cash flows for the Properties and on a consolidated basis for all Properties;

(ii) a detailed rent roll for the Properties showing the occupancy of the respective Properties, name of each tenant, occupant, or customer and, for each tenant, occupant, or customer, the space occupied, the lease or occupancy commencement and expiration dates, the rent or fee payable, the rent or fee paid to date and the security deposit being held for such tenant, if any, and a leasing or rental activity report for the Properties each in detail reasonably satisfactory to Petitioner;

(iii) an aged payables report and an aged receivables report for the Properties;

(iv) a capital expenditure report for the Properties;

(v) all bank statements with monthly reconciliations; and

(vi) each of the above will be provided to Plaintiff on a monthly basis.

(v)     To pay all ordinary and reasonable costs associated with the Properties arising on or after the date of the Complaint, that were not invoiced by the vendor or provider prior to the date of this Order;

(w)     To open any new customer accounts necessary to effectively manage the Properties and/or to require Whitehall and/or Saucon to identify the Receiver as an authorized account user for any existing accounts;

(x)     To pay any pre-receivership obligations of Whitehall and Saucon authorized by Lehigh Valley 1 LLC;

(y)     To execute a W-9 as an attorney-in-fact for Whitehall and Saucon;

(z)     To notify tenants and other persons now or hereafter in possession of all or any portion of the Properties to pay all Rents directly to the Receiver;

(aa)     To exercise commercially reasonable discretion in determining whether to refund security deposit to a tenant, in whole or in part, in accordance with the applicable leases or agreements, and to pay any such funds from security deposits turned over from Whitehall, Saucon or (for tenancies arising after the date of this Order) security deposits paid by or on behalf of a tenant first, and then from cash flow generated from Rents, issues, profits, and income from the Properties.

(bb)     Receiver and Lehigh Valley 1 LLC are authorized to enter transactions by which Lehigh Valley 1 LLC may lend monies to Receiver (on a nonrecourse basis as to Receiver) to enable Receiver to perform its duties, which shall be secured by a first and prior lien and security interest on the Properties and on all other collateral of Lehigh Valley 1 LLC, in favor of Lehigh Valley 1 LLC as security for such on the same terms and conditions set forth in the Mortgage, subject, however, to the terms of paragraph (cc) below.

(cc)     Whitehall and Saucon shall hold in trust for Receiver (and not sell, transfer, assign, lend, pledge, hypothecate, return, reject, revoke or in any other way actually or

8

constructively dispose of, without Court approval or the written consent of Plaintiff), any certificate, deposit, fund, account, trademark, benefit, liquor or food license or permit, or other right or interest owned by it and used in connection with the Properties, and shall assign (to the extent assignable) any of the same to Receiver upon Receiver's written request.

(dd)    Notwithstanding anything contained in this Order, (1) any obligation or liability incurred by the Receiver during the receivership shall not be a personal obligation or liability of Whitehall or Saucon, but shall be collectible only out of the Properties, and the Receiver shall include the foregoing in each agreement, purchase order and other contract it enters into pursuant hereto, and (2) neither Whitehall, Saucon nor any of their affiliates shall be liable for any action or inaction of the Receiver. Receiver covenants not to sue or bring any claim, demand action or suit against Whitehall or Saucon directly or indirectly that is inconsistent with the foregoing and the nonrecourse nature of the obligations of Whitehall and Saucon pursuant to the terms and provisions of the Loan Agreement and other similar provisions contained in the Loan Documents.

7.    Neither the Receiver nor any person or entity employed by the Receiver (collectively, the "Receiver Parties") shall be liable to Whitehall, Saucon or to any third party for any act or omission which he, she, it or they have undertaken in good faith; provided, however, nothing contained herein shall release or limit the liability of the Receiver Parties arising from the gross negligence or willful misconduct of the Receiver Parties. The Receiver shall be entitled to all defenses and immunities provided under applicable law, including under *Barton v. Barbour*, 104 U.S. 126 (1881) and its progeny, for acts or omissions within the scope of the Receiver's appointment.

8.    Except as provided in this Order, the Receiver shall not be responsible for the payment of any services commissioned or incurred, or goods purchased, prior to the date of this Order, including utility invoices (including electricity, gas, water, sewer, garbage, phone/internet,

9

etc.), payroll and property vendors, all of which shall remain the responsibility of Whitehall or Saucon.

9.      No utility may terminate service to the Properties because of non-payment of pre-receivership obligations without prior order of this Court, nor may the continuation of any utility be conditioned upon the Receiver's payment of any pre-receivership consumption, charges or fees.

10.      No insurance company may cancel its existing current-paid policy without prior order of this Court.

## IV.      TURNOVER BY WHITEHALL AND SAUCON

11.      Whitehall, Saucon and all persons acting under their direction are ordered to immediately deliver to Receiver possession of the Properties and each of the following, to the extent owned by Whitehall or Saucon, in the possession or control of Whitehall or Saucon, and relating to the Properties without any right of offset or recoupment:

(a) Property-related information and other property management database files,

(b) All cash collateral for the indebtedness owed by Whitehall or Saucon to Plaintiff (whether consisting of cash on hand, cash in any and all bank accounts or other accounts, all rights to security deposits, if any, including but not limited to amounts that Whitehall or Saucon may have deposited with utility companies, and all other cash and cash equivalents);

(c) All keys to the Properties;

(d) All security deposits, rent, prepaid rent and other sums relating to the use, enjoyment, possession, improvement or occupancy of all or any part of the Properties, in each case, to the extent received by Whitehall or Saucon and any accounts in which any of the foregoing are deposited;

(e) A current list of the occupants of the Properties;

(f) Any and all current Properties accounts receivable and accounts payable reports;

**10**

(g) Any and all contracts in effect with respect to the Properties, and any material related correspondence;

(h) Any and all payroll records and other materials reasonably requested by Receiver and related to persons employed by Whitehall, Saucon or their property managers at the Properties;

(i) Certificates evidencing the insurance policies covering the Properties;

(j) Records showing any insured losses to the Properties in the past five years;

(k) Any and all bank statements relating to any accounts maintained by Whitehall or Saucon with respect to the Properties;

(l) The tax identification numbers of Whitehall and Saucon;

(m) Any and all other records pertaining to the management of the Properties to the extent such records are maintained; and

(n) All licenses, certificates, surveys, reports, communications and correspondence from the Commonwealth of Pennsylvania related to the Properties or operations of the Properties for the past twenty-four (24) months.

12. From and after the date Whitehall and Saucon deliver possession of the Properties to Receiver, Whitehall and Saucon shall continue to perform ·or cause to be performed at the sole cost and expense of Whitehall and Saucon all actions necessary for Whitehall and Saucon to keep their organizational status in good standing with their state of organization and the state where the Properties are located, if different, including, without limitation, the timely filing of all required annual reports, tax returns and other similar state and local filings and paying any required fees and charges.

13. Whitehall, Saucon and all persons acting under their direction are ordered to cooperate and use their best efforts to ensure a smooth transition of the management and operation of the Properties to the Receiver, including, but not limited to, requests for information or

**11**

documents that pertain to the maintenance, operation or leasing of the Properties or any efforts to collect any sums due;

14. Within three (3) days from the date of this Order, provide the Receiver with the name, title, address, telephone number and email address of a designated representative of Whitehall and Saucon with whom the Receiver shall communicate about the obligations expressed in this Order, and promptly notify the Receiver of any changes.

## V. NON-INTERFERENCE BY WHITEHALL AND SAUCON

15. Whitehall, Saucon and their officers, directors, general partners, limited partners, agents, property managers, architects, contractors, subcontractors and employees, and all other persons with actual or constructive knowledge of this Order and their agents and employees, are enjoined from:

(a) Interfering with the Receiver, directly or indirectly, in the management and operation of the Properties or in the collection of Rents;

(b) Extending, dispersing, transferring, assigning, selling, conveying, devising, pledging, mortgaging, creating a security interest in or disposing of the whole or any part of the Properties (including the Rents) without the prior written consent of the Receiver;

(c) Doing any act which will, or will tend to, impair, defeat, divert, prevent or prejudice the preservation of the Properties (including the Rents and licenses or certificates) or the interest of Lehigh Valley 1 LLC in the Properties or the Rents;

(d) Undertaking any efforts to cancel, terminate or modify the coverage provided by any existing insurance policies relating to the Properties before their respective expiration dates; or

(e) Transferring, selling, assigning, revoking, returning, terminating or canceling, or taking or failing to take any action that would compromise, without the consent of the Receiver, any contract, permit, approval, license, privilege, or right necessary for the operation

of business at or use and occupancy of the Properties.

16. In the event Whitehall or Saucon fail to comply with the terms of this Order, the Receiver may seek assistance from the U.S. Marshal to enforce the same.

## VI. RECEIVER'S COMPENSATION

17. The Receiver shall be compensated at its standard hourly rates. The Receiver's fee will be $975 per hour and said monthly fee shall be deducted directly from the rents, income and revenue received by Receiver.

18. In addition to the Receiver's fees, the Receiver shall be reimbursed for its reasonable costs, including legal fees, travel expenses, and other business expenses associated with the Receivership. The Receiver may pay itself from Rents, the Receivership Properties, and from the sale of the Properties, if any.

19. The Receiver shall file monthly reports with the Court disclosing its compensation and reimbursement.

## VII. BANKRUPTCY OF WHITEHALL AND/OR SAUCON

20. If Whitehall and/or Saucon files a bankruptcy case during the receivership, Lehigh Valley 1 LLC shall give notice of the bankruptcy case to the Court and the Receiver. If the Receiver receives notice that the bankruptcy has been filed and that part of the bankruptcy estate includes the Properties (or any part of them) that are the subject of this Order, the Receiver shall have the following duties:

(a) The Receiver shall give prompt notice of the bankruptcy case to Lehigh Valley 1 LLC.

(b) The Receiver shall immediately contact Lehigh Valley 1 LLC and determine whether Lehigh Valley 1 LLC intends to move in the bankruptcy court for an order for: (i) relief from the automatic stay; and (ii) relief from the Receiver's obligation to turn over the Properties (11 U.S.C. § 543). If Lehigh Valley 1 LLC disclaims in writing any intention to make such a

13

motion or fails to file such motion within ten court days following its receipt of notice of the bankruptcy filing, the Receiver shall immediately turn over the Properties (or applicable portion thereof) to the appropriate entity (either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession) and otherwise comply with 11 U.S.C. § 543.

If Lehigh Valley 1 LLC intends to seek relief immediately from both the automatic stay and the Receiver's obligation to turn over the Properties, the Receiver may remain in possession and preserve the Properties pending the ruling on those motions unless otherwise ordered by the Bankruptcy Court. (11 U.S.C. § 543(a).) The Receiver's authority to preserve the Properties shall be limited as follows: (i) the Receiver may continue to collect Rents and other income; (ii) the Receiver may make only those disbursements necessary to preserve and protect the Properties; (iii) the Receiver shall not execute any new leases or other long-term contracts without the approval of this Court and the Bankruptcy Court; and (iv) the Receiver shall do nothing that would effect a material change in the circumstances of the Properties.

## VIII.   MISCELLANEOUS

21.     Without limiting any of the general or specific powers granted herein, Receiver is vested with all the powers, rights, and duties provided to receivers under applicable law, and may act in the name of Whitehall and/or Saucon without the approval or consent of the members, managers, directors, officers, partners, or other persons that would be legally required in the absence of the Receiver's appointment to approve or consent to such action.

22.     The Receiver shall notify all known creditors of Whitehall or Saucon of the entry of this Order by sending a copy of the Order to the creditor at its last known mailing address.

23.     Entry of this Order shall operate as a stay applicable to all persons and entities of:

(a) Any act, including without limitation the commencement or continuation of a judicial, administrative, or other action or proceeding including the issuance of process to obtain possession of Receivership Properties or to interfere with or exercise control over Receivership

Properties, other than the commencement or continuation of a judicial, administrative, or other action or proceeding to enforce any lien having priority over the rights of the Receiver in the Receivership Properties;

(b) Any act to create or perfect any lien against Receivership Properties to the extent that the lien secures a claim that arose before the date of this Order.

24. Without first obtaining leave of this Court, all creditors, directors, equity owners, employees, unions, and other persons, and all others acting on behalf of such person, including sheriffs, Marshals, other officers, deputies, servants, agents, are enjoined from:

(a) Terminating any service, whether utility or otherwise, to or for the Properties without first obtaining express authorization from this Court;

(b) Attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate the due date of any lease, loan, mortgage, indebtedness, security agreement or otherwise affecting the Receivership Properties;

(c) Doing any act to interfere with the Receiver taking control, possession, or management of the Receivership Properties, or to interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Properties;

(d) Engaging in any act to collect, assess, or recover Receivership Properties for a claim against Whitehall or Saucon that arose before the appointment of the Receiver;

(e) Exercising a right of set off against Receivership Properties for a debt owing to Whitehall or Saucon that arose before the appointment of the Receiver.

(f) Plaintiff reserves the right to terminate the Receiver at any time.

(g) This receivership will continue in effect until further order of the Court.

(h) Notwithstanding anything in this Order to the contrary, Lehigh Valley 1's consent shall not be required for Receiver to take actions or make expenditures necessary

to comply with federal and state law or directives regarding the operations of the Properties or to comply with state statutory and regulatory requirements.

BY THE COURT:

_s/ Catherine Henry_
**CATHERINE HENRY, J.**

# EXHIBIT 2

## PREMISES USE & LEASE AGREEMENT

MADE this 1st day of January 2022 be and between **Whitehall Manor INC**., a Pennsylvania corporation having an office at 1177 Sixth Street, Whitehall, Pennsylvania (hereinafter call WMI);

AND

**GOOD SHEPHERD REHABILITATION HOSPITAL.**, a Pennsylvania non-profit on-profit organization, having an office at 850 South Fifth Street, Allentown, Pennsylvania, 18103(hereinafter sometime referred to as GSRH).

BACKGROUND

WHEREAS, WMI owns and operates and Assisted Living Facility in Whitehall, PA, and services in multiple locations throughout the Lehigh Valley.

THEREFORE

The PARTIES herby agree to enter into a lease and management contract that will give Good Shepherd Rehabilitation Hospital exclusive rights to perform physical therapy services to the Residents at WMI.

*WITNESSETH:*

The parties hereto, intending to be; legally bound and for other good and valuable consideration, do hereby agree as follows:

1.      Under the terms and conditions of hereof, WMI leases one (1) year term to **GSRH** for the use of that certain area of 1,632 square feet, more or less, on the lower level of the Whitehall Manor Assisted Living Facility located at 1177 Sixth Street Whitehall Township, Lehigh County, Pennsylvania ( said building being called the property, and the leased portion being herein called the Premises) for the period from the date hereof through April 1, 2020 through May 31, 2021. (the "Term") for the purpose of providing Physical Therapy and associated medical services consistent with the needs and use of the Property and its residents.

2.      Unless GSRH shall be in default under the terms of this Lese during the Term (as it may have been extended) or give written notice to WMI not Less than thirty days prior to the scheduled termination of the Term, or WMI shall give notice of non-renewal thirty days or more prior to the scheduled expiration of the current term, this Lease shall renew for a period equal to the original term of the Lease commencing at the scheduled termination of the Term (the Extension), upon the same term and conditions as herein set forth, except that Base Rent Shall increase by 3%.

3.      GSRH shall pay to WMI a fee of $5,029. 00 per month due on the 1st day of each month for use of the Premises. Payment and Rent will commence upon treatment of the first patient. Tenant shall further be responsible for all utilities associated with the use. Utilities shall be separately metered and billable in the name of the tenant.

1

GSRH0001

4. Nonpayment of the rent/fee shall nullify all rights and/or privileges of GSRH, and shall permit WMI to immediately remove and dispose of all GSRH items on the Premises without liability, an shall entitle WMI to accelerate the rental/fees coming due to the balance of such term. Prior to declaration of a default, WMI will provide 10 days' notice of pending default to GSRH. Upon default, WMI may remove GSRH and all of its items from the property without further notice and without obligation to resort to legal process.

5. GSRH will be responsible for the billing and collection of all fees for physical therapy services provided to the residents at WMI.

6. WMI shall provide electricity and weekly general cleaning and daily trash removal from the premises as part of the fee set forth in Section 2. GSRH agrees that WMI is not obligated to safeguarding any information or items of GSRH, and that GHRH assumes full responsibility for all HIPAA requirements for patients treated by Good Shepard. Any items placed in trash shall be general refuse, and GSRH will, if applicable, arrange for appropriate disposal of "medial waste" from its operations. Any special requirements for GSRH shall be handled b it or otherwise arranged with WMI. Any additional services by WMI shall be provided for a responsible fee mutually agreed upon by both parties in advance which will be due as Additional Rental payable 10 days after invoicing. No portion of the Premises shall be used to store or distribute harmful or hazardous or illegal or dangerous materials or chemicals.

7. GSRH has examined the premises and finds the Premises to be acceptable doe use by GSRH as the same now exist.

8. The Premises may be changed to another area of the Building if required by operations of WMI, provided that the move shall be to equivalent area in equivalent conditions and the costs to move equipment and any specialized connections will be paid by WMI, and provided GSRH deems the new area for proper treatment, patient care and patient and staff safety.

9. WMI may inspect, and allow others to inspect, the Licensed Premises, at any time, upon a 24-hour notice to GSRH. Any inspection shall not constitute a taking of the items or otherwise make WMI liable for their safekeeping. WMI shall have access to the Premises at all times for maintenance and repair of the Property.

10. Either party may terminate this Agreement without further liability in the event of a casualty or if the use by either party shall violate laws and insurance coverages of either party.

11. All persons coming to the property relating to GSRH shall abide by the rules and regulations concerning the Property, and the enforcement of the same by WMI.

12. GSRH shall insure all of its operations and personnel, and shall name WMI and the Property Owner as additional insured parties. GSRH shall carry at least $ 1 million per occurrence liability insurance. During the term hereof, WMI shall maintain, at its sole cost and expense, general liability insurance.

2

GSRH0002

13.     Landlord shall indemnify Tenant harmless from and against any and all claims, actions, damages, liabilities and expenses, including responsible attorney's fees and other professional fees, in connection with loss of life, personal injury and/r damage to property or person arising in or on the Demised Premises or any part thereof, occasioned wholly or partly by any act or omission of Landlord, its agents, officers, employees, contractors, or its social business invites.  The above mentioned indemnification shall include, but not be limited to, any and all environmental liability asserted against or incurred by Tenant as a result of the use or occupancy of the demised premises by landlord or its employees, agents, officers, employees, contractors or social or business invites.

14.     Tenant shall indemnify Landlord and save Landlord harmless from and against any and all claims, actions, damages, liabilities and expenses, including responsible attorney's fees and other professional fees, in connection with loss of life, personal injury and/or damage to person arising in or on the Demised Premises or any part thereof, occasioned wholly or partly by any act or omission of Tenant, its agents, officers, employees, contractors, or its social or business invites.  The above mentioned indemnification shall include, but not be limited to, any and all environmental liability asserted against or incurred by Landlord as a result of the use or occupancy of the Demised Premises by Tenant or its employees, agents, officer's employees, contactors or social or business invitees.

15.     This Agreement and all rights of GSRH are subordinate to the rights of the Property Owner ,[Whitehall Fiduciary, LLC Trustee] and the mortgage(s) now or hereafter granted by the Property Owner.

3

GSRH0003

IN WITNESS WHEREOF and intending to be legally bound, the parties have signed this Agreement on this, the day and year first above set forth.


SAUCON VALLEY MANOR SENOR LIVING, INC (WMI)


BY: _____ ⎡DocuSigned by:⎤ _____
                      │ *Nmita kapoor–Atiyeh* │
                      ⎣1A35305931F745A...⎦
            Nimita Kapoor-Atiyeh


GOOD SHEPHERD REHABILITION HOSPITAL (GSRH)


BY: _____ ⎡DocuSigned by:⎤ _____
                      │ *karen long* │
                      ⎣07B5C65CD7C74BB...⎦
Karen Long, Vice President, Operations for Outpatient Therapy


4


GSRH0004

### PREMISES USE & LEASE AGREEMENT

MADE this 1st day of January 2022 be and between **Saucon Valley Manor Senior Living**, LLC., a Pennsylvania corporation having an office at 1177 Sixth Street, Whitehall, Pennsylvania (hereinafter call SVMSL);

AND

**GOOD SHEPHERD REHABILITATION HOSPITAL.**, a Pennsylvania non-profit on-profit organization, having an office at 850 South Fifth Street, Allentown, Pennsylvania, 18103(hereinafter sometime referred to as GSRH).

BACKGROUND

WHEREAS, SVMSL owns and operates and Assisted Living Facility in Hellertown, PA, and services in multiple locations throughout the Lehigh Valley.

THEREFORE

The PARTIES herby agree to enter into a lease and management contract that will give Good Shepherd Rehabilitation Hospital exclusive rights to perform physical therapy services to the Residents at Saucon Valley Manor Senior Living, LLC.

*WITNESSETH:*

The parties hereto, intending to be; legally bound and for other good and valuable consideration, do hereby agree as follows:

1.      Under the terms and conditions of hereof, SVMSL leases one (1) year term to **GSRH** for the use of that certain area described and attached on Exhibit A and made part of hereof, located at the rear of Saucon Valley Manor Assisted Living Facility  located at 1050 Main Street, Borough of Hellertown, Northampton County, Pennsylvania ( said building being called the property, and the leased portion being herein called the Premises) for the period from the date hereof through April 1, 2020 through May 31, 2021. (the "Term") for the purpose of providing Physical Therapy and associated medical services consistent with the needs and use of the Property and its residents.

2.      Unless GSRH shall be in default under the terms of this Lese during the Term (as it may have been extended) or give written notice to SVMSL not Less than thirty days prior to the scheduled termination of the Term, or SVMSL shall give notice of non-renewal thirty days or more prior to the scheduled expiration of the current term, this Lease shall renew for a period equal to the original term of the Lease commencing at the scheduled termination of the Term (the Extension), upon the same term and conditions as herein set forth, except that Base Rent Shall increase by 3%.

3.      GSRH shall pay to SVMSL a fee of $ 5566.96 per month due on the 1st day of each month for use of the Premises. Payment and Rent will commence upon treatment of the first patient. Tenant

1

GSRH0005

shall further be responsible for all utilities associated with the use. Utilities shall be separately metered and billable in the name of the tenant.

4.        Nonpayment of the rent/fee shall nullify all rights and/or privileges of GSRH, and shall permit SVMSL to immediately remove and dispose of all GSRH items on the Premises without liability, an shall entitle SVMSL to accelerate the rental/fees coming due to the balance of such term. Prior to declaration of a default, SVMSL will provide 10 days' notice of pending default to GSRH. Upon default, SVMSL may remove GSRH and all of its items from the property without further notice and without obligation to resort to legal process.

5.        GSRH will be responsible for the billing and collection of all fees for physical therapy services provided to the residents at SVMSL.

6.        SVMSL shall provide electricity and weekly general cleaning and daily trash removal from the premises as part of the fee set forth in Section 2. GSRH agrees that SVMSL is not obligated to safeguarding any information or items of GSRH, and that GHRH assumes full responsibility for all HIPAA requirements for patients treated by Good Shepard. Any items placed in trash shall be general refuse, and GSRH will, if applicable, arrange for appropriate disposal of "medial waste" from its operations. Any special requirements for GSRH shall be handled b it or otherwise arranged with SVMSL. Any additional services by SVMSL shall be provided for a responsible fee mutually agreed upon by both parties in advance which will be due as Additional Rental payable 10 days after invoicing. No portion of the Premises shall be used to store or distribute harmful or hazardous or illegal or dangerous materials or chemicals.

7.        GSRH has examined the premises and finds the Premises to be acceptable doe use by GSRH as the same now exist.

8.        The Premises may be changed to another area of the Building if required by operations of SVMSL, provided that the move shall be to equivalent area in equivalent conditions and the costs to move equipment and any specialized connections will be paid by SVMSL, and provided GSRH deems the new area for proper treatment, patient care and patient and staff safety.

9.        SVMSL may inspect, and allow others to inspect, the Licensed Premises, at any time, upon a 24-hour notice to GSRH. Any inspection shall not constitute a taking of the items or otherwise make SVMSL liable for their safekeeping. SVMSL shall have access to the Premises at all times for maintenance and repair of the Property.

10.        Either party may terminate this Agreement without further liability in the event of a casualty or if the use by either party shall violate laws and insurance coverages of either party.

11.        All persons coming to the property relating to GSRH shall abide by the rules and regulations concerning the Property, and the enforcement of the same by SVMSL.

2

GSRH0006

12. GSRH shall insure all of its operations and personnel, and shall name SVMSL and the Property Owner as additional insured parties. GSRH shall carry at least $ 1 million per occurrence liability insurance. During the term hereof, SVMSL shall maintain, at its sole cost and expense, general liability insurance.

13. Landlord shall indemnify Tenant harmless from and against any and all claims, actions, damages, liabilities and expenses, including responsible attorney's fees and other professional fees, in connection with loss of life, personal injury and/r damage to property or person arising in or on the Demised Premises or any part thereof, occasioned wholly or partly by any act or omission of Landlord, its agents, officers, employees, contractors, or its social business invites.  The above mentioned indemnification shall include, but not be limited to, any and all environmental liability asserted against or incurred by Tenant as a result of the use or occupancy of the demised premises by landlord or its employees, agents, officers, employees, contractors or social or business invites.

14. Tenant shall indemnify Landlord and save Landlord harmless from and against any and all claims, actions, damages, liabilities and expenses, including responsible attorney's fees and other professional fees, in connection with loss of life, personal injury and/or damage to person arising in or on the Demised Premises or any part thereof, occasioned wholly or partly by any act or omission of Tenant, its agents, officers, employees, contractors, or its social or business invites.  The above-mentioned indemnification shall include, but not be limited to, any and all environmental liability asserted against or incurred by Landlord as a result of the use or occupancy of the Demised Premises by Tenant or its employees, agents, officer's employees, contactors or social or business invitees.

15. This Agreement and all rights of GSRH are subordinate to the rights of the Property Owner ,[Saucon Valley Manor, LLC, Trustee] and the mortgage(s) now or hereafter granted by the Property Owner.

3

GSRH0007

IN WITNESS WHEREOF and intending to be legally bound, the parties have signed this Agreement on this, the day and year first above set forth.

SAUCON VALLEY MANOR SENOR LIVING, INC (SVMSL)

BY: _____    *Nmita Kapoor–Atiyeh*
                          1A35305931F745A...            _____
　　　　　　　　　　　Nimita Kapoor-Atiyeh

GOOD SHEPHERD REHABILITION HOSPITAL (GSRH)

BY: _____    *karen long*
                          07B5C65CD7C74BB...    _____
Karen Long, Vice President, Operations for Outpatient Therapy

4

GSRH0008

# EXHIBIT 3



GRAIG M. SCHULTZ
Direct Dial: 610.351.0162
gschultz@flblaw.com

November 24, 2025

**VIA EMAIL**
Brett L. Messinger
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
BLMessinger@duanemorris.com

**VIA EMAIL**
Joel B. Wiener
STEVENS & LEE, P.C.
840 W. Hamilton Street, Suite 521
Allentown, PA 18101
joel.wiener@stevenslee.com

**VIA EMAIL**
Phillip D. Berger
BERGER LAW GROUP, P.C.
919 Conestoga Road
Building 3, Suite 114
Bryn Mawr, PA 19010
Berger@BergerLawPC.com

> RE:    **Lehigh Valley 1 LLC v. Whitehall Fiduciary LLC**
>        **E.D.P.A. No. 24-2627**
>
>        **Lehigh Valley 1 LLC v. Saucon Trust**
>        **E.D.P.A. No. 24-2709**

Dear Counsel:

Our office represents Good Shepherd Rehabilitation Hospital ("GSRH"). Based upon our review of the documents provided to GSRH, and a search of the above-referenced dockets, it is our understanding that:

1.    On January 1, 2022, GSRH entered into a lease agreement with Saucon Valley Manor, Inc. ("SVM") to provide physical therapy services to residents at SVM's assisted living facility located at 1050 Main Street, Hellertown, Pennsylvania (the "Hellertown Property").

2.    The Hellertown Property is owned by Saucon Trust.

3.    SVM is a tenant of the Hellertown Property.

November 24, 2025
Page 2

4. On January 1, 2022, GSRH entered into a lease agreement with Whitehall Manor, Inc. ("WM") to provide physical therapy services to residents at WM's assisted living facility located at 1177 Sixth Street, Whitehall, Pennsylvania (the "Whitehall Property").

5. The Whitehall Property is owned by Whitehall Fiduciary, LLC.

6. WM is a tenant of the Whitehall Property.

7. SVM and WM are represented by Mr. Wiener.

8. On June 14, 2024, Lehigh Valley 1 LLC ("LV1") filed a mortgage foreclosure action against Whitehall Fiduciary, LLC in the District Court for the Eastern District of Pennsylvania at Docket No. 24-2627.

9. On June 20, 2024, LV1 filed a mortgage foreclosure action against Saucon Trust in the District Court for the Eastern District of Pennsylvania at Docket No. 24-2709.

10. On July 31, 2024, LV1 filed a Motion to Appoint Receiver in case 24-2627.

11. On August 7, 2024, LV1 filed a Motion to Appoint Receiver in case 24-2709.

12. On May 2, 2025, the Court appointed Duane Morris LLP through Erin Duffy, Esq. as Receiver ("Receiver") in both mortgage foreclosure actions.

13. According to the Court's May 2, 2025 Order (the "Order"), Receiver shall have all necessary powers to manage the rents at the Hellertown Property and Whitehall Property and has the right to take immediate possession of the properties and to demand and collect and receive the rents from the properties' tenants and sublessees. Order at ¶ 6(a).

14. The Order specifically precludes GSRH from making rent payments to Whitehall Fiduciary LLC and/or Saucon Trust. *Id.* at ¶ 6(j).

15. On October 21, 2025, Mr. Berger, as counsel for LV1, demanded that GSRH tender its rent payments for the Hellertown Property and Whitehall Property to LV1.

16. On October 31, 2025, Mr. Messinger, as counsel for Receiver, demanded that GSRH tender its rent payments for the Hellertown Property and Whitehall Property to Receiver.



November 24, 2025
Page 3

17.   Mr. Wiener has also demanded that GSRH tender its rent payments for the Hellertown Property and Whitehall Property to the property owners.

Based upon our review of the Order, Receiver is the party that is legally entitled to collect all rents payable by GSRH for the Hellertown Property and the Whitehall Property, and GSRH is prepared to direct all future rent payments to Receiver until such time as the receivership is terminated by the Court.

Should Mr. Berger or Mr. Wiener object to our interpretation of the Order, I ask that you submit a written objection to me, along with the authority in support of your position, no later than 5:00 p.m. on Tuesday, November 25, 2025. Should we not receive an objection from you by that time, we will assume that you concur that all GSRH rent payments should be paid to Receiver.

Thank you for your attention to this matter.

Very truly yours,

GRAIG M. SCHULTZ

cc:   Good Shepherd Rehabilitation Hospital



# EXHIBIT 4

# Stevens & Lee

840 West Hamilton Street, Suite 521
Allentown, PA  18101
(610) 691-7111
www.stevenslee.com

T:  (610) 997-5097
F:  (610) 988-7214
joel.wiener@stevenslee.com

November 25, 2025

Graig Schultz, Esq.
Fitzpatrick, Lentz & Bubba
Via Email to gschultz@flblaw.com

RE: Good Shepherd Rehabilitation Hospital ("GSRH") – sublets from
Whitehall Manor, Inc. and Saucon Valley Manor, Inc.

Dear Mr. Schultz:

Your letter of yesterday afternoon compels response today in the event of disagreement with the proposal that GSRH pay the rentals due for its sublets to the Receiver for the Property Owner.

**Please be advised that each of Whitehall Manor, Inc. and Saucon Valley Manor, Inc. disagree with the proposed action.** Each also reserves all rights and claims against GSRH if the payments are made to others; and diversion of payment may also cause termination of services, goods and/or utilities from the sublessor, since such diversion of payment by GSRH from the provider/payor would make those services uncompensated.

The term of Section 6(a) identified by you fails to identify the differentiation between the landowner and the tenant-in-possession, and that your client's privileges arise from the tenant and use of a portion of its overall space and the additional provision of services, utilities and/or goods.

The tenants, under whose lease GSRH has occupancy of a portion of the space leased by the tenants disagree with the simplistic contention that GSRH is a "tenant of the Hellertown property" [and similarly the Whitehall property because GSRH is a tenant/licensee of the tenant (Whitehall Manor, Inc/Saucon Valley Manor, Inc.) and *GSRH occupies part of such entity's leased space – GSRH is not a direct tenant or licensee of the  Property Owner for which the Receiver was appointed*.

I am available to discuss the matter if you desire, but send this response to meet your deadline..

Very truly yours,
STEVENS & LEE

*Joel*

Joel B. Wiener

*Email copies to P. Berger, Esq. and B. Messinger, Esq.*

# EXHIBIT 5

# DuaneMorris®

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN

HANOI
HO CHI MINH CITY
SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NORTH JERSEY
LAS VEGAS
SOUTH JERSEY
SYDNEY
MYANMAR

ALLIANCES IN MEXICO

*FIRM and AFFILIATE OFFICES*

BRETT L. MESSINGER
PARTNER
DIRECT DIAL: +1 215 979 1508
PERSONAL FAX: +1 215 689 4903
*E-MAIL:* BLMessinger@duanemorris.com

*www.duanemorris.com*

November 26, 2025

Joel B. Wiener, Esq.
Stevens & Lee
840 W. Hamilton St., Ste. 521
Allentown, PA 18101

   Re:  Saucon/Whitehall- Good Shepherd, LV1, et al

Dear Joel:

   We are in receipt of your letter of November 25, 2025 to Graig Schultz, Esquire, written on behalf of Whitehall Manor, Inc. and Saucon Valley Manor, Inc.  You letter is in violation of the Receiver Order, which specifically provides that Receiver has the Power to "enter and take immediate possession of the Property, and to demand, collect and receive the rents, income, revenues, proceeds and profits derived from tenants at the Property, *their sublessees or any occupant in possession*."

   Section V of the Receiver Order further precludes Whitehall Manor, Inc. and Saucon Valley Manor, Inc., from "Interfering with the Receiver, directly or indirectly, in the management of the operation of the Properties or in *the collection of Rents*."

   Your letter is in complete dereliction of the Receiver Order and is actionable.  You will immediately retract it.   Not only is Good Shepherd required to pay the rent directly to Receiver, but so too are occupants and residents of the Properties, whether under a lease or some sort of other agreement.  We will hold your clients liable for any amounts that they received from any source.

   Reference is further made to the source of why Whitehall Manor, Inc. and Saucon Valley Manor, Inc. are bound by the Receiver Order, specifically, the Lessee Security Agreements (the "Security Agreements"). One Security Agreement was executed by each of Whitehall Manor, Inc. and Saucon Valley Manor, Inc, with the Original Lender (to which Lehigh Valley is the assignee).

DUANE MORRIS LLP

30 SOUTH 17TH STREET        PHONE: +1 215 979 1000  FAX: +1 215 979 1020
PHILADELPHIA, PA  19103-4196

Joel B. Wiener
November 26, 2025
Page 2



The Security Agreements provide certain rights in favor of Lehigh Valley, including a security interest in all Whitehall Manor, Inc. and Saucon Valley Manor, Inc.'s Property.  Property is described in Exhibit B of the Security Agreements, which includes, among other property, the following items:

> (c)    all rents, leases, income, revenues, issues, profits, royalties and other benefits arising or derived or to be derived from, or related to, directly or indirectly, the Premises, whether or not the property described in this item (c) constitutes accounts, chattel paper, documents, intangibles, instruments or money; . . .

Section 2(c) of the Security Agreements provides that the Property is to be turned over to Lehigh Valley upon an Event of Default. Section 8 defines an "Event of Default," to include Saucon Trust and Whitehall Trust's failure to make payment of the underlying Obligations.

Your continued interference in the Receiver's actions is actionable and illegal.

Sincerely,

Brett L. Messinger

BLM:ecm
cc:    Phillip D. Berger, Esq.
       Graig Schulz, Esquire

# EXHIBIT 6

# DuaneMorris®

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN

*FIRM and AFFILIATE OFFICES*

BRETT L. MESSINGER
PARTNER
DIRECT DIAL: +1 215 979 1508
PERSONAL FAX: +1 215 689 4903
*E-MAIL:* BLMessinger@duanemorris.com

*www.duanemorris.com*

HANOI
HO CHI MINH CITY
SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NORTH JERSEY
LAS VEGAS
SOUTH JERSEY
SYDNEY
MYANMAR

ALLIANCES IN MEXICO

November 26, 2025

Saucon Valley Manor, Inc.
1177 Sixth Street
Whitehall, PA 18052

Joel B. Wiener, Esquire
Stevens & Lee
840 W. Hamilton Street, Suite 521
Allentown, PA 18101

      **Re:**    **NOTICE OF DEFAULT**
              Lease Agreement between Saucon Trust (as successor) and Saucon Valley Manor, Inc. dated January 1, 2006, as amended (the "Lease")

Dear Sirs/Madams:

      This firm acts for Duane Morris LLP, by and through Erin Duffy, Esquire, who was appointed Receiver of the Property owned by Saucon Trust ("Saucon").

      Reference is made to: (i) the Lease; and (ii) the Premises Use & Lease Agreement dated as of January 1, 2022 (the "Sublease"), by and between Saucon Valley Manor Senior Living, LLC and Good Shepherd Rehabilitation Hospital.  It is unclear why Saucon Valley Manor Senior Living, LLC is identified as the Tenant in the Sublease.  Please clarify whether Saucon Valley Manor Senior Living LLC is a tenant of the property. For purposes of this letter, we will refer to both entities (if they are indeed separate) as "SVM".

      I am writing to provide this Notice of an Event of Default, consistent with Section 20 of the Lease, which provides:

      Each of the following events shall be an event of default ("Event of Default") by Tenant under the Lease:

DUANE MORRIS LLP

30 SOUTH 17TH STREET                                    PHONE: +1 215 979 1000    FAX: +1 215 979 1020
PHILADELPHIA, PA  19103-4196

November 26, 2025
Page 2



\*        \*        \*

(g)      Tenant shall fail to comply with any provision of this Lease other than those specifically referred to in this Section 20.

Consistent with Section 14 of the Lease, SVM was required to obtain written consent of Whitehall prior to entering into the Sublease.  Therefore, you will immediately, but no later than thirty (30) days from the date of this letter, cure the default by: (i) providing Receiver with the written consent for the Sublease, if such exists, or (ii) request written consent from the Receiver for such Sublease, which will be conditioned on sublease payments made directly to the Receiver.  Additionally, within thirty (30) days, please provide the Receiver with copies of any other sublease between SVM and any sublessees of the property, along with the approvals for such subleases as required under Section 14 of the Lease.  To the extent there are other subleases in effect and which were not approved, you will have 30 days to cure the failure to obtain consent.

Moreover, consistent with Section 33(e), please provide to us within thirty (30) days true and complete copies of SVM's most recent annual and quarterly financial statements prepared by SVM or SVM's accountants, together with a list of all information regarding sources of SVM's income.

Absent cure of the Event of Default, Receiver may take action as detailed in Section 21 of the Lease. Receiver reserves all rights and remedies.

Sincerely,

Brett L. Messinger

BLM:ecm

# EXHIBIT 7

# DuaneMorris®

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN

*FIRM and AFFILIATE OFFICES*

BRETT L. MESSINGER
PARTNER
DIRECT DIAL: +1 215 979 1508
PERSONAL FAX: +1 215 689 4903
*E-MAIL:* BLMessinger@duanemorris.com

*www.duanemorris.com*

HANOI
HO CHI MINH CITY
SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NORTH JERSEY
LAS VEGAS
SOUTH JERSEY
SYDNEY
MYANMAR

ALLIANCES IN MEXICO

November 26, 2025

Whitehall Manor, Inc.
1177 Sixth Street
Whitehall, PA 18052

Joel B. Wiener, Esquire
Stevens & Lee
840 W. Hamilton Street, Suite 521
Allentown, PA 18101

   RE: **NOTICE OF DEFAULT**
     Lease Agreement between Whitehall Fiduciary, LLC as Trustee and Whitehall Manor, Inc. dated August 14, 2008, as amended (the "Lease")

Dear Sirs/Madams:

  This firm acts for Duane Morris LLP, by and through Erin Duffy, Esquire, which was appointed Receiver of the Property owned by Whitehall Fiduciary, LLC, as Trustee of Whitehall Trust u/t/a dated August 1, 2007 ("Whitehall").

  Reference is made to: (i) the Lease and (ii) the Premises Use & Lease Agreement dated as of January 1, 2022 (the "Sublease"), by and between Whitehall Manor Inc. ("WMI") and Good Shepherd Rehabilitation Hospital.  I am writing to provide this Notice of an Event of Default, consistent with Section 7.01(D) of the Lease, which provides:

  Each of the following shall be an "Event of Default" under this Agreement:

       *  *  *

  D.  If the Lessee defaults in the due and punctual performance or observance of any other representation, agreement or covenants in this Lease Agreement and such default continues for thirty (30) days after written notice requiring the same to be remedied has been given to the Owner.

DUANE MORRIS LLP

30 SOUTH 17TH STREET        PHONE: +1 215 979 1000 FAX: +1 215 979 1020
PHILADELPHIA, PA  19103-4196

November 26, 2025
Page 2



Consistent with Section 5.09 of the Lease, WMI was required to obtain Whitehall's written consent prior to entering into any sublease. Therefore, you will immediately, but no later than thirty (30) days from the date of this letter, cure the default by: (i) providing Receiver with the written consent, if such exists, or (ii) request written consent from the Receiver for such sublease, which will be conditioned on sublease payments made directly to the Receiver.

Moreover, consistent with Section 3.06 of the Lease, WMI is in further default of its obligations to furnish Lender with "copies of its annual financial statements with respect to the Leased Premises within sixty (60) days after the close of Lessee's fiscal year . . . ."  You will immediately, but no later than thirty (30) days from the date of this letter, provide copies of such financial statements for the fiscal year last ending, and proof of compliance with Section 3.06 for each previous year.

We have also learned that there are one or more management companies engaged by WMI in the operation of the business.  We have no record of those being approved by Whitehall.  You will within thirty (30) days provide copies of Whitehall's approvals, or otherwise seek approval for the management companies that have been engaged.

Finally, if there are other subleases in force, please provide those as well or indicate in your response that there are none.  To the extent there are other subleases in effect and which were not approved, you will have 30 days to cure the failure to obtain consent.

Absent cure of the Event of Default, Receiver may take action as detailed in Sections 4.03 and 7.02 of the Lease. Receiver reserves all rights and remedies.

Sincerely,

Brett L. Messinger

BLM:ecm

## <u>CERTIFICATE OF SERVICE</u>

Erin M. Duffy certified that on this 3rd day of December, 2025, a true and correct copy of the foregoing Receiver's Sixth Report and Summary of Inventory was electronically filed and made available to the Clerk of Court.

DUANE MORRIS LLP

/s/ Erin M. Duffy
Erin M. Duffy