# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEHIGH VALLEY 1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **NO. 24-2627** |
| | ) | |
| WHITEHALL FIDUCIARY LLC, AS TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |
| LEHIGH VALLEY 1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **NO. 24-2709** |
| | ) | |
| SAUCON TRUST, U/T/A DATED OCTOBER 1, 2007, | ) ) | |
| | ) | |
| Defendant. | ) | |
| WHITEHALL FIDUCIARY LLC, AS TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007, and SAUCON TRUST, U/T/A DATED OCTOBER 1, 2007, | ) ) ) ) ) | |
| | ) | **NO. 24-2627/24-2709** |
| Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., | ) ) ) | |
| | ) | |
| Third Party Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO CERTIFY FINAL JUDGMENTS

**AND NOW COME**, Third-Party Plaintiffs, Whitehall Trust, U/T/A dated August 1, 2007 ("Whitehall Trust") and Saucon Trust, U/T/A dated October 1, 2007 ("Saucon Trust") (collectively known as "Third-Party Plaintiffs" or "Whitehall & Saucon" or the "Trusts"), by and through counsel, and submit this Memorandum of Law in support of the Motion to Certify Final Judgements pursuant to Federal Rule of Civil Procedure 54(b), dismissing the Third-Party Plaintiffs' Third-Party Complaint against Third Party Defendants, United States Department of Housing and Urban Development ("HUD") and Eric Scott Turner, in his Official Capacity as Secretary of HUD (the "Motion"). ECF No. 130 (24-2627); ECF No. 105 (24-2709).

In support, Whitehall Trust and Saucon Trust state as follows.

## I.     BACKGROUND

Whitehall Trust and Saucon Trust are the owners of property located at 1177 6th Street, Whitehall, Pennsylvania (the "Whitehall Property") and a property located at 1050 Main Street, Hellertown, Pennsylvania (the "Saucon Property"), respectively. Both entities entered into mortgage loan transactions with M&T Realty Capital Corporation ("M&T") that were insured by HUD pursuant to Section 232 of the National Housing Act ("NHA"), 12 U.S.C. § 1701 et seq.

In January 2012, Whitehall Trust entered into a Regulatory Agreement with HUD (the "Whitehall Regulatory Agreement") in connection with HUD's insurance of a mortgage loan secured by the Whitehall Property (the "Whitehall Mortgage Loan").

Similarly, in December 2012, Saucon Trust entered into a Regulatory Agreement with HUD (the "Saucon Regulatory Agreement") in connection with HUD's insurance of a mortgage loan secured by the Saucon Property (the "Saucon Mortgage Loan"). In each case, M&T was the lender, and HUD agreed to insure the loans, and each Trust was obligated to maintain compliance with federal and state regulations governing nursing home facilities on the respective properties.

Pursuant to the Regulatory Agreements, if either Whitehall Trust or Saucon Trust was unable to make a scheduled mortgage payment, HUD had discretion to authorize M&T to draw funds from an established reserve account to prevent a default. In fact, HUD exercised this discretion multiple times during the COVID-19 pandemic to preserve loan performance.

Commencing in 2020, as a result of the COVID-19 pandemic, the operator-tenants of both the Whitehall and Saucon Properties (collectively known as the "Operator Tenants") experienced significant financial hardship due to increased costs of personal protective equipment and restrictions on evicting non-paying residents. This directly impacted both Third-Party Plaintiffs' cash flows and Whitehall's & Saucon's ability to service their respective mortgage loans.

Whitehall Trust and Saucon Trust pursued options under the CARES Act and Emergency Declarations issued by then-President Donald J. Trump, which included a forbearance on mortgage payments for federally backed loans. They also requested that HUD continue drawing payments from the reserve accounts, which contained substantial sums previously deposited by the Third-Party Plaintiffs.

Initially, HUD complied, making three payments from each reserve account during the crisis. However, without prior notice and despite the continued insurance of the loans under Section 232, HUD abruptly ceased making payments from the reserve accounts, thereby exacerbating the Third-Party Plaintiff's financial hardship and default under their respective loan documents. This marked a material deviation from past practice and precipitated purported defaults. Despite numerous attempts by both Third-Party Plaintiffs to engage HUD in good-faith discussions or negotiate workout agreements, HUD refused and refused and refused. This contravened Section 5.5(A)(2) of Part III of the Section 232 Handbook, which mandates good faith workout efforts in the event of default.

Instead, in July 2023, HUD notified Third-Party Plaintiffs of HUD's intent to sell the Mortgage Loans at auction, prohibiting Whitehall & Saucon or their affiliates from participating. At the same time, after months of refusing to utilize the funds in the reserve accounts to make monthly payments on the loan documents, HUD unilaterally depleted the reserve accounts to reduce the balances due, without applying such funds toward a cure of the alleged defaults.

In a notice dated June 20, 2023, HUD informed Third-Party Plaintiffs of the planned sale but failed to provide a sale date or sufficient public notice on its website, as required. The actual notice of sale was not published until July 28, 2023, in the Federal Register, with the auction scheduled for August 30, 2023. Despite Third-Party Plaintiffs' willingness to bid and offer more than the final sale price, Whitehall Trust and Saucon Trust were excluded from bidding at the sale based on HUD's own prohibition. There were no statutes or regulations preventing Third-Party Plaintiffs' participation in the bidding.

4

HUD ultimately sold the Whitehall and Saucon Mortgage Loans to Windstream Capital, LLC ("Windstream"), closing the sale in September 2023.  ECF No. 7 (24-2627); ECF No. ___ (24-2709).  On October 5, 2023, Windstream notified Whitehall Trust of the alleged assignments. On May 15, 2024, the loans were further allegedly assigned to Lehigh Valley 1, LLC ("LV1"). ECF No. 7 (24-2627); ECF No. 9 (24-2709).

Throughout this process, HUD failed to provide Third-Party Plaintiffs with estoppel letters, balance statements, or proper accounting. The Trusts had previously sought to refinance or prepay the loans, but HUD refused, citing regulatory agreement defaults. These defaults were directly caused by HUD's refusal to exercise its discretion under the Regulatory Agreements to use reserve funds.

The actions taken by HUD not only contradicted its statutory and contractual obligations but were also inconsistent with the national public health emergency response and deprived the Trusts of property rights, all while HUD disposed of the loans at below-market prices (and at prices that were far below that Third-Party Plaintiffs would have paid to purchase the loans themselves).

The Trusts sought relief for the injuries caused by HUD's arbitrary and capricious conduct, and its failure to act in good faith under applicable federal law and regulatory agreements, when filing a Third-Party Complaints and, then an Amended Third-Party Complaints against HUD with the Court.  ECF No. 61 (24-2627).

On June 17, 2025, HUD filed Motions to Dismiss the Third-Party Complaints (the "Complaint").  After briefing, the Court granted HUD's Motion to Dismiss the Third-Party Complaints on October 14, 2025. ECF No. 130 (24-2627); ECF No. 105 (24-2709).

## II.    <u>LEGAL STANDARD</u>

When an action includes multiple claims or parties, a court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties," so long as the court "expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

## III.    <u>ARGUMENT</u>

In general, a ruling that disposes of some, but not all, claims or parties to a lawsuit is not an appealable "final judgment." 28 U.S.C. § 1291; <u>Elliott v. Archdiocese of New York</u>, 682 F.3d 213, 219 (3d Cir. 2012). Rule 54(b), however, permits a district court to "certify" such a ruling as a final judgment, enabling a party to appeal the ruling even while some aspects of the suit remain unresolved. In this way, Rule 54(b) "attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." <u>Elliott</u>, 682 F.3d at 220.

To be certified as a final judgment under Rule 54(b), a ruling must meet two conditions. First, the ruling must be final with respect to either a party or a claim, but not to <u>all</u> parties or <u>all</u> claims. Fed. R. Civ. P. 54(b). Second, there must be "no just reason for delay[ing]" an appeal of the decision. <u>Id</u>. The Court's decisions disposing of the claims described in Counts I through IX, ECF No. 59, satisfy both conditions.

### (1)    <u>The Court's Ruling Represent a Final Judgments for Purposes of Rule 54(b).</u>

A ruling may also be certified under <u>Rule</u> 54(b) when it is final with respect to one or more, but not all, of the claims presented by the litigation. In the multi-claim context, "[f]inality is defined by the requirements of 28 U.S.C. § 1291, which are generally

described as ending the litigation on the merits and leav[ing] nothing for the court to do but execute the judgment." <u>Sussex Drug Prod. v. Kanasco, Ltd.</u>, 920 F.2d 1150, 1153 (3d Cir. 1990) (quotation marks omitted).

The Court's rulings on the claims described in the Third-Party Complaint are final within the meaning of Rule 54(b). The Court has dismissed with prejudice the Third-Party Complaint for lack of subject-matter jurisdiction. ECF No. 104 at 4. Generally, dismissals with prejudice for lack of subject-matter jurisdiction end the litigation on the merits and confer appellate jurisdiction under Section 1291, Title 28, United States Code. <u>See</u> <u>Swiger</u> <u>v. Allegheny Energy, Inc.</u>, 540 F.3d 179, 180 (3d Cir. 2008) (subject-matter jurisdiction). Likewise, the Third Circuit views such dismissals as final for purposes of Rule 54(b) when they apply to some, but not all, claims. <u>See</u> <u>e.g.</u>, <u>Tomkins v. Pub. Serv. Elec. & Gas Co.</u>, 568 F.2d 1044, 1046 (3d Cir. 1977) (exercising jurisdiction over appeal from dismissal for failure to state a claim where district court certified judgment under Rule 54(b)); <u>Cooper</u> <u>v. Comm'r</u>, 718 F.3d 216, 220 (3d Cir. 2013); (exercising jurisdiction over appeal from dismissal for lack of subject- matter jurisdiction where district court certified judgment under Rule 54(b)); <u>Delaware Valley Citizens Council for Clean Air v. Davis</u>, 932 F.2d 256, 263–64 (3d Cir. 1991) (same).

The Court's rulings are, therefore, final for <u>Rule</u> 54(b) purposes and certification is appropriate.

**(2)    <u>There is No Just Reason for Delay.</u>**

When a district court has made dispositive rulings as to some, but not all, parties and claims, it may certify those rulings as appealable final judgments if it "expressly

determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). This determination

is a matter of the Court's discretion, to be made "in the interest of sound judicial

administration." Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 8 (1980).

The Third Circuit has explained that a district court exercising its discretion to

certify a final judgment under Rule 54(b) "should consider:"

> (1) the relationship between the adjudicated and unadjudicated
> claims; (2) the possibility that the need for review might or
> might not be mooted by future developments in the district
> court; (3) the possibility that the reviewing court might be
> obliged to consider the same issue a second time; (4) the
> presence or absence of a claim or counterclaim which could
> result in set-off against the judgment sought to be made final;
> [and] (5) miscellaneous factors such as delay, economic and
> solvency considerations, shortening the time of trial, frivolity
> of competing claims, expense, and the like.

Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 203 (3d Cir. 2006). These considerations

uniformly support certification here.

First, the adjudicated and unadjudicated claims at issue here are distinct. The

adjudicated claims are: following claims against HUD: (i) HUD violated the notice-and-

comment requirements of the Administrative Procedures Act (the "APA") by not providing

adequate notice of the sale of the mortgages and prohibiting them from commenting in the

rule-making process (Count I); (ii) HUD violated the National Housing Act (the "NHA")

by excluding Whitehall and Saucon from the bidding process on the sale of their mortgages

(Count II); (iii) HUD violated 24 C.F.R. § 290, Disposition of Multifamily Projects and

Sale of HUD-held Multifamily Mortgages, by selling the mortgages (Count III); (iv) HUD

violated Whitehall and Saucon's Fifth Amendment procedural and substantive due process

rights by not allowing them to participate in the bidding process (Counts IV and V); and (v) HUD violated Whitehall and Saucon's Fifth Amendment right to equal protection by treating them differently from similarly situated entities (Count VI). The Third-Party Complaint sought a declaratory judgment, vacating the sale of mortgages and declaring that HUD may not sell the mortgages without Whitehall and Saucon's participation in the bidding process (Count VII), monetary contribution from HUD for any liability due from Whitehall and Saucon to the current mortgage holder (Count VIII) and indemnification (Count IX). By contrast, the unadjudicated claims are not included in the Third-Party Complaint but are two mortgage foreclosure actions.

Second, because the adjudicated claims seek, among other remedies, the vacaturs of Third-Party Defendants' sales of mortgages, and the unadjudicated claims seek judgments of foreclosure of the mortgages that Third-Party Defendants sold. Should the Third Circuit grant the appeals, the underlying claims may become moot in that the assignments that Plaintiff alleges occurred between HUD and Plaintiff (through its predecessor) may fail, thus rendering the mortgage foreclosure claims (unadjudicated claims).

Third, it is unlikely that certification of the adjudication claims will oblige the Third Circuit to consider any issue twice. In summary, the issue presented by the adjudicated claims is whether sovereign immunity shields HUD from all the claims set forth in the Third-Party Complaint. The same issues cannot arise in future review of the unadjudicated claims as the unadjudicated claims bear no relation to whether sovereign immunity shields HUD from the entire Third-Party Complaint. See Carter v. City of Philadelphia, 181 F.3d 339, 346–47 (3d Cir. 1999) (holding that certification of final judgments under Rule 54(b)

posed "no real risk of duplicative appeals" when judgments were adjudicated based on defenses not available to remaining defendants).

Fourth, no claim or counterclaim in this action could result in any set-off against the adjudicated claims.  As courts have explained, counterclaims weigh against certification because of "[t]he possibility of a set-off if defendant recovers on a counterclaim may indicate that an immediate appeal should not be allowed, presumably because of the undesirability of awarding an amount that may be reduced by a subsequent judgment on defendant's counterclaim <u>Torchin v. Blue Shore Grill, LLC</u>, No. CIVIL 2011-115, 2012 WL 6634441, at *6 (D.V.I. Dec. 20, 2012) (quoting Wright & Miller, <u>Federal Practice and Procedure: Civil</u> s 2659 (1973)).

Here, the Third-Party Defendants did not raise counterclaims against the Third-Party Plaintiffs.  Further, in being dismissed from the case, HUD was not granted any award.  In similar cases, courts have determined that the lack of a counterclaim is dispositive as to this factor: "[t]he fourth factor of the <u>Berckeley</u> test does not apply because the dismissed claims do not involve a counterclaim or cross claim that could result in setoff against the judgment sought to be made final." <u>S.E.C. v. Lucent Techs., Inc.</u>, No. CIV. 04-2315 (WHW), 2009 WL 4508583, at *6 (D.N.J. Nov. 16, 2009).  This factor thus weighs in favor of granting the Third-Party Plaintiffs leave to immediately appeal.

Finally, "depending upon the result on appeal, immediate appellate review could shorten the time for trial or eliminate the need for a trial altogether. . ." <u>Berckeley Inv. Grp., Ltd.</u>, 455 F.3d at 204.  And, the actions now before the Court seek to foreclose on two properties that Third-Party Plaintiffs own – to take permanent possession of the two

properties and to assume controlling authority of the Tenant Operators. Should the Court enter judgments of foreclosure, the consequences will be irreparable and irreversible. On the other hand, if the Third Circuit grant the appeals, the claims against Third-Party Defendants will proceed before the Court and could lead to the vacaturs of the mortgage sales in question in the Third-Party Complaint, which otherwise could have led to the Court's entering foreclosure judgments. Regardless of how quick or slow the underlying matter proceeds, should the Court enter judgments of foreclosure, Third-Party Plaintiffs will suffer severe prejudice that would be irreparable.

In <u>Waldorf v. Borough of Kenilworth</u>, the trial court granted a Rule 54(b) certification after finding that continued delay would impair the Plaintiff's substantive rights. 959 F. Supp. 675, 682 (D.N.J. 1997). Although the Defendant argued that the remaining issues would be quickly resolved with a liability trial, the Court determined that it was unclear how long trial and appeals would take and granted the Rule 54(b) certification. In the instant case, whether or not the Third-Party Plaintiffs would ultimately prevail on the merits against HUD will impair Third-Party Plaintiff's abilities to undue the irreparable harm that a judgment against Third-Party Plaintiffs in the underlying action would cause.

Finally, the legal rulings that underpin the Court's decision on the Third-Party Complaint are distinct from the central questions it is still considering with respect to the claims and defenses which remain live in the matter before the Court. Courts are naturally hesitant to grant immediate review where there is a possibility that such immediate appeal will lead to conflicting or contradictory precedent. However, as the Court explained in <u>Bush v. Adams</u>, "[t]here is also no just reason to delay an [where] [t]here is no overlap

between the claims against the dismissed defendants. . . and those against the remaining defendants."  629 F. Supp. 2d 468, 472 (E.D. Pa. 2009).[1]

Similarly, as here, where the claims against the Third-Party Defendants, while related to the claims and defenses in this litigation, are not dependent on the Third-Party claims, the Court should grant certification.  There is simply no danger that could arise from certification that any result from the Third Circuit would disrupt the law of the case or otherwise further complicate the proceedings.

In sum, there is no reason appellate review of the rulings on the Third-Party Complaint should not get underway immediately, and certification of these rulings now will serve the interests of justice.

There is no just reason for delay, and the Third-Party Plaintiffs respectfully request that this Court grant Rule 54(b) certification.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, Third-Party Plaintiffs, Whitehall Trust, U/T/A dated August 1, 2007, and Saucon Trust, U/T/A dated October 1, 2007, request that the Court grant this Motion to Certify Final Judgements pursuant to Federal Rule of Civil Procedure 54(b), dismissing the Third-Party Plaintiffs' Third-Party Complaint against Third Party Defendants, United States Department of Housing and Urban Development and Eric Scott Turner, in his Official Capacity as Secretary of HUD, and certifying said orders as Final

---

[1] The court in <u>Bush v. Adams</u> declined to order a Rule 54(b) certification notwithstanding the relevant factors favoring certification because the defendants did not take a position on the question and the plaintiffs opposed it.  629 F. Supp. 2d at 472.

Judgments.

Respectfully Submitted:

**LAHOUD LAW GROUP, P.C.**

Date: 12/09/2025

<u>/s/ Raymond G. Lahoud</u>
Raymond G, Lahoud, Esquire
PA Attorney I.D. No. 335380
600 Hamilton Street
Suite 300
Allentown, PA 18101
P:    (484) 544-0022
E:    rgl@raylahoud.com